PRISON LAW OFFICE
DONALD SPECTER  #83925
STEVEN FAMA  #99641
SARA NORMAN  #189536
General Delivery
San Quentin, CA  94964
Telephone: (415) 457-9144
Facsimile: (415) 457-9151

PILLSBURY WINTHROP LLP
SHAWN HANSON  #109321
CAROLINE MITCHELL  #143124
50 Fremont Street
Post Office Box 7880
San Francisco, CA  94120-7880
Telephone: (415) 983-1000
Facsimile: (415) 983-1200

Attorneys for Plaintiffs

BINGHAM McCUTCHEN
WARREN E. GEORGE  #53588
Three Embarcadero Center
San Francisco, CA  94111
Telephone: (415) 393-2000
Facsimile: (415) 393-2286

BINGHAM McCUTCHEN
JOHN MORRISEY  #122194
355 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 680-6400
Facsimile: (213) 680-6499

FILED

ORIGINAL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARCIANO PLATA, et al.,

                              Plaintiffs,

        vs.

GRAY DAVIS, et al.,

                              Defendants.

No. C-01-1351 TEH

NOTICE OF MOTION, MOTION AND
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
PLAINTIFFS' REQUEST TO
ENFORCE THE FEE PROVISION OF
THE JUNE 20, 2002 ORDER

Date:      February 3, 2003
Time:      10:00 A.M.
Judge:     Honorable Thelton E.
           Henderson
Courtroom: 12

1                                    TABLE OF CONTENTS

2                                                                                              Page

3   NOTICE OF MOTION, MOTION AND DESCRIPTION OF RELIEF SOUGHT ..............1

4   MEMORANDUM OF POINT AND AUTHORITIES ...........................................................1

5   I.       INTRODUCTION. .................................................................................................1

6   II.      STATEMENT OF FACTS. .....................................................................................2

7            A.       Medical Care in the CDC. ...........................................................................2

8            B.       The First Round of Negotiations with the CDC. .........................................2

9            C.       The Complaint. .............................................................................................3

10           D.       The Second Round of Negotiations. ............................................................4

11           E.       Post-Settlement Proceedings. ......................................................................4

12                   1.       Motion to exclude Shumate prisoners from class. ..........................4

13                   2.       Approval of settlement. ..................................................................5

14           F.       Fee Negotiations. .........................................................................................5

15   III.    PLAINTIFFS ARE ENTITLED TO RECOVER THE FULL AMOUNT OF
              THEIR CLAIMED FEES AND EXPENSES. .........................................................5
16
              A.       The Court's Order Provides for the Payment of the Requested Fees,
17                     Costs and Expenses. .....................................................................................5

18           B.       Plaintiffs' Fees are Reasonable Because Plaintiffs Obtained Complete
                       Success and a "Monumental . . . and Historical  Advance in Prison
19                     Litigation. . . in the Area of Medical Need". ...............................................6

20           C.       Plaintiffs' Claimed Rates Are Reasonable. .................................................6

21           D.       Plaintiffs' Claimed Hours Are Reasonable. .................................................7

22                   1.       Fees related to negotiating the settlement. ......................................8

23                   2.       Fees Related to Preparation of the Complaint and to Proceeding with
                              Litigation. ........................................................................................8
24
                     3.       Use of Non-Attorney Personnel. ...................................................10
25
                     4.       Exercise of Billing Judgment. ......................................................10
26
     IV.     PLAINTIFFS' CLAIMED COSTS AND EXPENSES ARE
27            REASONABLE.....................................................................................................11

28   CONCLUSION ..................................................................................................................12

1

## TABLE OF AUTHORITIES

2
Page(s)

### Cases

3

4

Blum v. Stenson, 465 U.S. 886 (1986) .................................................................................... 6

Davis v. City and County of San Francisco,
    976 F.2d 1536 (9th Cir. 1992) ........................................................................................ 6

5

6

Farrar v. Hobby, 506 U.S. 103 (1992) .................................................................................... 6

7

Missouri v. Jenkins, 491 U.S. 274 (1989) .............................................................................. 6

8

### Statutes and Codes

9

United States Code
    Title 29, section 794a(b) ................................................................................................ 5
    Title 42, section 1988(b) ................................................................................................ 5
    Title 42, section 1997e(d) ............................................................................................ 10
    Title 42, section 12205 .................................................................................................. 5

10

11

12

### Rules and Regulations

13

Federal Rules of Civil Procedure
    Rule 23 ............................................................................................................................ 9

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    <u>NOTICE OF MOTION, MOTION AND DESCRIPTION OF RELIEF SOUGHT</u>

2        Please take notice that on Monday, February 3, 2003, at 10 a.m., there will be a

3    hearing on plaintiffs' request to enforce the fee provision of the June 20, 2002 order before

4    the Honorable Thelton E. Henderson in Courtroom 12 of the Northern District of

5    California, located at 450 Golden Gate Avenue, San Francisco, California.

6        Plaintiffs seek an award of reasonable attorneys' fees, costs and litigation expenses

7    under that order and under 42 U.S.C. § 1988(b), 42 U.S.C. § 12205 and 29 U.S.C.

8    § 794a(b) in the total amount of $825,331.72.[1]

9              <u>MEMORANDUM OF POINT AND AUTHORITIES</u>

10    I.    <u>INTRODUCTION.</u>

11        Medical care in the California Department of Correction ("CDC") has been the

12    subject of legal disputes for decades.  In 1999 plaintiffs' attorneys began negotiation with

13    the State aimed at eliminating widespread, systemic failures in the delivery of medical care

14    to tens of thousands of prisoners throughout the CDC.  When negotiation stalled, plaintiffs

15    filed a class action in April 2001 that, as subsequently amended, made broad claims on

16    behalf of 10 named plaintiffs and a class of all prisoners in the CDC, excluding those at

17    Pelican Bay.

18        Defendants recognized that the litigation, if it proceeded as other cases with

19    plaintiffs' counsel had, would be time consuming and burdensome, both financially and in

20    terms of other department resources, and included the risk of substantial exposure.  To the

21    credit of both parties, attorneys for plaintiffs and defendants were able to work together

22    through complex and difficult negotiations to reach a settlement that eliminated the need to

23    continue contentious litigation and that, when implemented, will substantially improve

24    medical care throughout the CDC.

25

26    _____

27    [1]  Plaintiffs will introduce the amount of fees to be requested in relation to collecting fees in
       their reply brief.

28

1    The plaintiffs' efforts in this case have resulted in what this Court described as

2  "monumental" relief that will bring more than $110 million in medical care and related

3  services to prisoners throughout the CDC over the course of implementation of the

4  settlement, making a real difference in countless numbers of lives.  There can be no debate

5  about the success of plaintiffs' effort.

6    Further, defendants stipulated to pay plaintiffs' reasonable fees and that stipulation

7  was incorporated into the June 20, 2002 Order of this Court.  The question that remains is

8  whether the amount that plaintiffs seek—$825,331.72 in attorneys' fees, costs and litigation

9  expenses—is reasonable under the circumstances of this case.  As we demonstrate below, it

10  is and therefore plaintiffs are entitled to an award of the full amount requested.

11    II.    STATEMENT OF FACTS.

12    A.    Medical Care in the CDC.

13    Medical care in the CDC has historically been plagued with problems and has been

14  demonstrably inadequate.  CDC itself has documented many of the problems, including

15  failures to screen patients requesting medical care, delays or worse, in follow-up

16  appointments, specialist referrals, outside medical appointments and emergency room care.

17  Declaration of Don Specter (Specter Decl.), Exh. F.  Other problems include scheduling

18  patients for appointments when their medical records are not available, failing to properly

19  medicate prisoners returning from outside medical facilities, and failure to provide

20  prisoners returning from other medical facilities with required follow up treatment.  *Id.*

21  Medical supplies were not available as needed and medical records were often out of date

22  with record information stacked in a backlog of files.  *Id.*  These, and myriad other

23  problems in the delivery of medical services in the CDC, pointed to the need for a system

24  wide, comprehensive remedy to improve delivery of medical services to all prisoners in the

25  CDC.

26    B.    The First Round of Negotiations with the CDC.

27    Because of the extensive deficiencies in the delivery of medical care in the CDC,

28  plaintiffs' counsel Donald Specter raised concerns about inadequate medical care with then-

1   director of the CDC, Cal Terhune, three times in 1999.  Specter Decl., ¶ 13.  In the first two

2   contacts, Mr. Specter expressed his concerns to Mr. Terhune, hoping to receive evidence of

3   improvement in the provision of medical care that would signal a change in the CDC's

4   policies to address the ongoing problems.  *Id.*  When there was no evidence of progress

5   after the first two contacts, Mr. Specter made clear in the third contact that the Prison Law

6   Office would file a class action, challenging the level of care provided by the CDC

7   systemwide.  *Id.*

8          Shortly thereafter, serious negotiations began between plaintiffs' counsel and

9   defendants.  *Id.*  Lengthy and difficult negotiations ensued.  Specter Decl., ¶ 14.  After

10  numerous meetings, telephone calls and the drafting of a stipulation, plaintiffs' counsel

11  reached agreement with the Attorney General's office and the CDC in the fall of 2000 on a

12  settlement.  *Id.*  The stipulation required, among other things, that the CDC develop plans

13  to provide constitutionally adequate medical care to prisoners in the CDC.  Specter Decl.,

14  ¶ 28.  Plaintiffs' counsel was informed, however, that the settlement could not be finalized

15  until it was approved by the Governor's office and the California Department of Finance.

16  Specter Decl., ¶ 14.  Plaintiffs' counsel was told that the settlement was presented to the

17  Governor's office in early Fall 2000, but no decision was forthcoming.  *Id.*

18         After waiting several months, Mr. Specter informed the state that the offer to settle

19  would remain open only until the day after the Governor announced the budget for the next

20  fiscal year in January 2001.  *Id.*  On that day, Mr. Specter was informed that the Governor

21  had not approved the agreement.  *Id.*

22         C.    The Complaint.

23         While negotiations to settle were going on and during the time that the settlement

24  was awaiting the Governor's approval, the Prison Law Office and Pillsbury Winthrop LLP

25  ("Pillsbury") were investigating medical conditions in the CDC, reviewing medical files

26  and interviewing prisoners in order to draft a complaint if the negotiations did not culminate

27  in a final settlement.  Specter Decl., ¶ 15.  In January  2001, this effort intensified.  *Id.*

28  After the State failed to give final approval to the settlement, plaintiffs filed their complaint

1   in this case in April 2001. *Id.* Defendants' counsel notified plaintiffs' counsel that he

2   believed the complaint was defective in several respects. Specter Decl., ¶ 22. Rather, than

3   litigate a motion to dismiss, plaintiffs' counsel spent a substantial amount of time making

4   the complaint more specific as to each plaintiff's efforts to obtain care and to exhaust their

5   administrative remedies. *Id.* The complaint, as subsequently amended, identified 10 named

6   plaintiffs in various CDC institutions throughout the state and was brought on behalf of a

7   class of all prisoners in the CDC who have been seriously injured because of defendants'

8   deliberate indifference to their serious medical needs in violation of the cruel and unusual

9   punishment clause of the U.S. Constitution, excluding those confined at Pelican Bay State

10  Prison. *See* Complaint Class Action, filed April 5, 2001; First Amended Complaint Class

11  Action, filed August 20, 2001; *see also* Specter Decl., ¶¶ 15, 22.

12      D.    The Second Round of Negotiations.

13      After the complaint was filed, the parties started a second round of negotiations. In

14  these negotiations, defendants wanted the plans that were contemplated by the original

15  stipulation to be completed and incorporated into the settlement and also wanted to

16  incorporate a more objective method of measuring compliance. Specter Decl., ¶ 28. As a

17  result, the parties engaged in lengthy and detailed negotiations of specific policies and

18  procedures to be included in the plan, as well as the audit instrument to be used to measure

19  compliance. *Id.* The final policies and procedures are approximately 800 pages long and

20  contained in 11 volumes. *Id.*

21      The second round of negotiations culminated in a final settlement document that

22  was submitted to this Court for approval in January 2002. *See* Stipulation for Injunctive

23  Relief, filed February 4, 2002 ("Stipulation"); Specter Decl., ¶ 30.

24      E.    Post-Settlement Proceedings.

25      1.    Motion to exclude Shumate prisoners from class.

26  The Stipulation provided:

27  [D]efendants shall move within sixty days after this Stipulation is approved
    by the Court for an order determining whether prisoners at CCWF and CIW
28  should be excluded from the class on the sole ground that they are not

1    similarly situated to plaintiffs because the previously litigated class action
     entitled. [*Shumate v. Wilson* (E.D. Cal.) CIV S-95-0619 WBS JFM P]. The
2    motion will not otherwise alter the burden of proof under Rule 23 or create a
     presumption concerning their inclusion.

3    Stip., ¶ 8. Defendants filed the motion on March 19, 2002. Plaintiffs opposed the motion.

4    After oral argument, this Court denied the motion. Order Denying Motion to Exclude

5    Previously Litigated and Remediated Institutions, dated May 21, 2002. The State has

6    appealed that decision and the appeal is currently pending in the Ninth Circuit.

7        2.    Approval of settlement.

8        Consistent with Federal Rule of Civil Procedure 23, notice was provided to the class

9    and a fairness hearing was scheduled for June 13, 2002. Specter Decl., ¶ 31. The parties

10   reviewed the comments received by the Court and participated in the hearing. *Id.* At the

11   hearing, the Court approved the settlement and signed the Stipulation for Injunctive Relief.

12   *Id.*

13
     F.    Fee Negotiations.
14
         Pursuant to this Court's local rule, the parties met to determine whether the
15
     attorneys' fees could be resolved through negotiation. The parties exchanged information
16
     and proposals, but were unable to reach agreement. Specter Decl., ¶ 32.
17
         III.    PLAINTIFFS ARE ENTITLED TO RECOVER THE FULL AMOUNT OF
18               THEIR CLAIMED FEES AND EXPENSES.

19       A.    The Court's Order Provides for the Payment of the Requested Fees, Costs
               and Expenses.
20
         The Court's June 20, 2002 Order incorporated the Stipulation, which in turn,
21
     contained the following provision governing the award of attorneys' fees, costs and
22
     expenses in this litigation:
23
         Plaintiffs may apply for reasonable attorney's fees to which they are entitled.
24       Defendants shall pay plaintiffs for 90% of the work performed in connection
         with this Stipulation at hourly rates set forth under the PLRA, 42 USC
25       § 1997e(d). Defendants shall pay plaintiffs for 10% of the work performed
         in connection with this Stipulation at hourly rates set for under the ADA and
26       §504 of the Rehabilitation Act.

27

28

1  Stip., ¶ 32.  The fees requested by this motion are all reasonable within the meaning of the

2  stipulation and should be ordered by the Court.

3       B.       Plaintiffs' Fees are Reasonable Because Plaintiffs Obtained Complete
                 Success and a "Monumental . . . and Historical  Advance in Prison
4                Litigation. . . in the Area of Medical Need".

5       "'[T]he most critical factor' in determining the reasonableness of a fee award 'is the

6  degree of success obtained.'"  *Farrar v. Hobby,* 506 U.S. 103, 114 (1992).  As the Court

7  recognized at the fairness hearing, the result achieved in this litigation is "monumental."

8  June 13, 2002 Transcript, 46:21, attached as Specter Decl., Exh. B.  As a result of this

9  litigation tens, perhaps hundreds, of thousands of prisoners in the CDC will have improved

10  medical care.  As this Court noted the litigation resulted in "very significant enforceable

11  relief that will greatly benefit the class and will fairly resolve the class claims that were

12  asserted in the Complaint."  *Id.,* 47:23-25.

13       In short, there is no room for debate about the success of the litigation.

14       C.       Plaintiffs' Claimed Rates Are Reasonable.

15       Plaintiffs are entitled to reasonable attorneys' fees consistent with the formula set

16  forth in the Stipulation and adopted by this Court's June 20, 2002 Order.  Courts have long

17  held that rates are reasonable when they are consistent with the prevailing rates in the legal

18  community.  *Blum v. Stenson*, 465 U.S. 886, 895 (1986); *Davis v. City and County of San*

19  *Francisco*, 976 F.2d 1536, 1545 (9th Cir. 1992).  Plaintiffs' attorneys have calculated the

20  portion of their fees not subject to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C.

21  § 1997e(d), at their current 2002 rates.  Specter Decl., ¶¶ 33, 36; Declaration of Caroline N.

22  Mitchell (Mitchell Decl.), ¶ 11, Exh. D.  Plaintiffs' attorneys have calculated that portion of

23  the fees subject to the PLRA at current PLRA rates.  Specter Decl., ¶ 36; Mitchell Decl.,

24  ¶ 11, Exh. D.  The United States Supreme Court has authorized the use of current rates to

25  compensate counsel for the delay in receiving their fees.  *Missouri v. Jenkins*, 491 U.S. 274,

26  289 (1989).

27       The Prison Law Office is the preeminent firm in the State for the conduct of prison

28  litigation.  It has almost 30 years of experience litigating the constitutionality of medical

1   care in California prisons.  Specter Decl., ¶¶ 8-9.  The principal lawyers from the Prison

2   Law Office on this case have extensive experience in this type of litigation and have been

3   repeatedly recognized for their expertise and accomplishments.  *Id.*, ¶¶ 2-7, 34.  The rates of

4   the Prison Law Office—for that portion of the fees not billed under the PLRA—represent

5   the amount that the Prison Law Office would bill regular fee-paying clients for non-

6   contingent hourly work, if that was the nature of their practice and represent the rates at

7   which the Prison Law Office charges the CDC in other cases.  Specter Decl., ¶ 33.

8        Pillsbury Winthrop also has extensive expertise in prison litigation.  Mitchell Decl.,

9   ¶ 7.  Pillsbury's lead attorney in this matter, Caroline Mitchell, has significant experience in

10  prison litigation and other civil rights litigation.  *Id.*, ¶¶ 4-5.  The rates that Pillsbury

11  Winthrop claims are the ordinary rates that the firm bills its fee-paying clients.  *Id.*, ¶ 10.

12  These rates, as well as the rates of the Prison Law Office, are consistent with the rates of

13  comparable Bay Area law firms.  *See* Specter Decl., ¶ 42.  These rates are consistent with

14  the amounts that defendants' have paid in other litigation involving similar claims.

15  Mitchell Decl., ¶ 10; *see also* Mitchell Decl., Exh. C.

16       McCutchen, Doyle, Brown & Enerson (now Bingham McCutchen) also provided

17  vital assistance in this case.  McCutchen's primary role was that one of McCutchen's senior

18  litigation partners, Warren George, provided expert advice and counsel on major matters of

19  strategic importance.  Specter Decl., ¶ 11 and Exh. E.

20       Additionally, in an exercise of billing judgment, plaintiffs' counsel have made a

21  further reduction in the billing rates for non-attorney time spent sending for clerical work to

22  adjust for any charges for time expended by paralegal during non-routine business hours

23  where particular, routine copying or filing tasks could have otherwise been performed by a

24  secretary that results in a reduction of $3,966.00.  Mitchell Decl., ¶ 13.

25       D.    Plaintiffs' Claimed Hours Are Reasonable.

26       After plaintiffs' complaint was filed, defendants submitted a budget request of

27  more than $40 million over a three year period to defend the case.  Specter Decl., ¶ 25.  That

28  figure underscores the scope and difficulty of the litigation plaintiffs undertook.  The

10662898v1                              - 7 -        NOT. OF MOT., MOT. & MPA IN SUP. PLS.' REQ. TO
                                                     ENFORCE FEE PROV.
                                                     Case No. C-01-1351 TEH

1   negotiations in this case began in 1999 and reached resolution in 2002.  The result was, at

2   various times, uncertain and it was therefore necessary for plaintiffs to simultaneously

3   prepare to move forward with litigation.  *Id.*, ¶ 15.  Ultimately, the plaintiffs' strategy was

4   successful and resulted in a settlement that will infuse the CDC's delivery of medical care

5   with more than $110 million over the course of implementation of the settlement.  Specter

6   Decl., ¶ 29.  In the context of these facts, the expenditure of time in this litigation was

7   reasonable.

8           1.    Fees related to negotiating the settlement.

9           Plaintiffs had to undertake significant work throughout the nearly 4 years of

10  negotiations leading up to the settlement.  This worked involved planning a strategic course

11  to persuade the State to act promptly on medical care; in-person meetings with

12  representatives of the Attorney General's office, the CDC and various other state offices;

13  and conversations with the legislature to obtain assistance in encouraging the CDC and the

14  Governor's office to proceed directly to resolution of this case rather than devoting

15  substantial resources to prolonged litigation.  Specter Decl., ¶¶ 13-14, 24-29.

16          The negotiations were prolonged and often stalled as a result of the hierarchy of

17  people who have to review the issue and provide guidance from the State.  Specter Decl.,

18  ¶¶ 14, 28.  The Prison Law Office's contact with the legislature to jump start this process at

19  various junctures was an essential part of advancing this settlement.  Specter Decl.,

20  ¶¶ 24-27.  In short, all of the fees plaintiffs are requesting relating to the negotiation of the

21  settlement and the legislative contacts by the Prison Law Office to advance negotiations

22  toward settlement contributed significantly to the outcome of this litigation and should be

23  deemed reasonable.

24          2.    Fees Related to Preparation of the Complaint and to Proceeding with
                  Litigation.
25

26          The key leverage that plaintiffs' counsel possessed in its negotiations with the State

27  was the prospect that if those negotiations did not bear fruit, litigation would ensue.

28  Accordingly, it was necessary for plaintiffs to prepare a complaint and to prepare to move

1    forward with that complaint in order to maintain the State's incentive to continue

2    negotiations.  Specter Decl., ¶ 15.

3           The process of preparing the complaint was time consuming and laborious.  The

4    hurdles that plaintiffs in prison civil rights litigation must overcome in order to succeed are

5    high and require extreme diligence in screening the claims of prospective plaintiffs.

6    Specter Decl., ¶¶ 16-22.  Additionally, in this action, because of the scope of the claims to

7    be raised by the complaint it was important to have named plaintiffs who had a broad range

8    of claims and who came from numerous institutions within the CDC.  *Id.*, ¶ 22.  This

9    involved extensive review of written correspondence from hundreds, if not thousands, of

10   prisoners to locate prisoners with claims that were not subject to defenses that could lead to

11   early dismissal of an otherwise meritorious complaint.  *Id.*, ¶¶ 20, 22.

12          Often, to collect reliable information, plaintiffs' counsel was required to meet with

13   the inmates in person and to review their medical files.  Mitchell Decl., ¶ 12 .   Interviews

14   of prospective plaintiffs and witnesses had to take place at the institutions.  Where possible,

15   non-attorneys were incorporated into this process to reduce the cost of the investigation.  *Id.*

16          Defendants contributed to the cost of this facet of the litigation.  Frequently,

17   plaintiffs' personnel encountered delays and impediments to their interviews and reviews.

18   For example, on occasions, inmates were made available for interviews, but their medical

19   files were not available on the same day, or vice versa—the file was available but the

20   inmate was not.  *Id.*  This necessitated multiple trips to some institutions because plaintiffs

21   could not complete the review of a particular prisoner in a single trip.  *Id.*   Further,

22   language and educational impediments also hindered communications with inmates and

23   prompted more frequent and longer face-to-face visits, sometimes with personnel who

24   could translate attending with someone else who would conduct the interview.  *Id.*  In short,

25   although time consuming, the visits to prisons to meet with prisoners and to review their

26   files were vital to the progress of this litigation.

27

28

1    3.    Use of Non-Attorney Personnel.

2    Plaintiffs made a concerted effort to ensure that people with lower billable hours

3    were used efficiently to substantially lower the cost of this litigation.  Mitchell Decl., ¶¶ 12,

4    13.  To advance this goal, non-attorneys were used extensively on this litigation, acting

5    under the guidance of attorneys.  Non-attorneys provided an array of vital functions on this

6    case, ranging from participating in the process of interviewing inmates to file maintenance.

7    *Id.*

8    The type of work that non-attorneys performed on this case is the same type of work

9    that they perform for clients who are paying for their time on billable matters.  Mitchell

10    Decl., ¶ 13.  This included filing and copying, especially where there are complex filing

11    protocols, as when documents have to be retained in some order other than pure

12    chronological order.  That was the case here for prisoners' records, because documents

13    pertaining to specific individuals have to be tracked and separately filed in a manner that

14    makes them retrievable both by the name of the person to whom they pertain, as well as by

15    the category of injury they present and chronologically as well.  *Id.*    Where secretaries and

16    copy services were the most efficient means of accomplishing a task, we also employed

17    those resources, but they are not reflected on a fee basis in this request.  Mitchell Decl.,

18    ¶ 13; Specter Decl., ¶ 41.

19    Additionally, plaintiffs' counsel has exercised billing judgment  and reduced

20    requested fees by an additional $10,000 to eliminate any claim for inappropriate billing by

21    non-lawyers.

22    4.    Exercise of Billing Judgment.

23    In addition to the reductions made as a result of billing judgment specifically

24    mentioned above, plaintiffs have made further reductions.  For example, plaintiffs have

25    eliminated billing for summer associate time, which has reduced the amount of fees

26    requested by $20,155.  Mitchell Decl., ¶ 12, Specter Decl., ¶ 41.  Plaintiff also exercised

27    billing judgment to eliminate $10,000 from the bill to compensate for any entries that

28    lacked extensive detail, although the level of detail set forth in the description of plaintiffs'

1   time is wholly consistent with the descriptions that are given to clients who are paying

2   hourly fees. Specter Decl., ¶ 41; Mitchell Decl., ¶ 11. Plaintiff also exercised billing

3   judgment to eliminate $10,000 of the time billed to preparation of the complaint. Specter

4   Decl., ¶ 41.

5        Plaintiffs exercised billing judgment to eliminate time billed to this matter that

6   related to press contacts or public relations matter, for a reduction of $5,728. Specter Decl.,

7   ¶ 41. Plaintiff eliminated all timekeepers billing fewer than 10 hours to this matter.

8   Mitchell Decl., ¶ 12. Plaintiff eliminated $1,578 in fees relating to legislative contacts.

9   Specter Decl., ¶ 41. Plaintiffs also reduced the claimed fees by $1,441 to account for

10  miscellaneous actions, such as attorneys taking materials to court to file, or voicemail

11  messages that might have been left more quickly that the increment of time assigned to

12  them in the bill. Specter Decl., ¶ 41.

13       Finally, the bills were reviewed and a $1,720 reduction was made to account for

14  billing errors. Specter Decl., ¶ 41.

15       The total amount of the reduction resulting from plaintiffs' exercise of billing

16  judgment is more than $71,000. Specter Decl., ¶ 41 and Exh. H.

17       IV.   PLAINTIFFS' CLAIMED COSTS AND EXPENSES ARE
              REASONABLE.
18

19       Plaintiffs' claimed costs and expenses are reasonable and represent those amounts

20  actually incurred by plaintiffs for travel, electronic research, copying costs and mail.

21  Mitchell Decl., ¶ 14; *see also* Declaration of Deborah Schwarz. Plaintiffs made no effort to

22  inflate these figures to build in a profit margin of any kind. *Id.*

23

24

25

26

27

28

NOT. OF MOT., MOT. & MPA IN SUP. PLS.' REQ. TO
ENFORCE FEE PROV.
Case No. C-01-1351 TEH

1    V.    CONCLUSION.

2    For the foregoing reasons, plaintiffs' motion should be granted.

3    Dated:  November 22, 2002.

4                                              PILLSBURY WINTHROP LLP
                                              SHAWN HANSON
5                                              CAROLINE N. MITCHELL
                                              50 Fremont Street
6                                              Post Office Box 7880
                                              San Francisco, CA  94120-7880
7

8                                              By _____
9                                                   Attorneys for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Docket No. C 01-1351 TEH

PROOF OF SERVICE BY MAIL

I, Margaret C. Landsborough, the undersigned, hereby declare as follows:

1.    I am over the age of 18 years and am not a party to the within cause. I am employed by Pillsbury Winthrop LLP in the City of San Francisco, California.

2.    My business address is 50 Fremont Street, San Francisco, CA 94105-2228. My mailing address is 50 Fremont Street, P. O. Box 7880, San Francisco, CA 94120-7880.

3.    I am familiar with Pillsbury Winthrop LLP's practice for collection and processing of correspondence for mailing with the United States Postal Service; in the ordinary course of business, correspondence placed in interoffice mail is deposited with the United States Postal Service with first class postage thereon fully prepaid on the same day it is placed for collection and mailing.

4.    On November 25, 2002, at 50 Fremont Street, San Francisco, California, I served a true copy of the attached document(s) titled exactly NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' REQUEST TO ENFORCE THE FEE PROVISION OF THE JUNE 20, 2002 ORDER by placing it/them in an addressed, sealed envelope clearly labeled to identify the person being served at the address shown below and placed in interoffice mail for collection and deposit in the United States Postal Service on that date following ordinary business practices:

**[See Attached Service List]**

I declare under penalty of perjury that the foregoing is true and correct. Executed this 25th day of November, 2002, at San Francisco, California.

_M. Landsborough_
Margaret C. Landsborough

10658703v4

## SERVICE LIST

### (USDC Northern District Case No. C-01-1351 THE)

Prison Law Office
Donald Specter
Steven Fama
Sara Norman
General Delivery
San Quentin, CA  94964
Telephone:  415-457-9144
Facsimile:  415-457-9151

Bingham McCutchen
Warren E. George
Three Embarcadero Center
San Francisco, CA  94111-4066
Telephone:  415-393-2000
Facsimile:   415-393-2286

Bingham McCutchen
John Morrisey
355 South Grand Avenue
Los Angeles, CA  90071
Telephone:  213-680-6400
Facsimile:  213-680-6499

Attorneys for Plaintiffs

State of California
Department of Justice
Bill Lockyer
John M. Appelbaum
David A. Carrasco
Michael J. Williams
Attorney General
1300 I Street
Suite 125
P.O. Box 944255
Sacramento, CA  94244-2550
Telephone:  916-445-2389
Facsimile:  916-324-5205

Attorneys for State of California