FUTTERMAN & DUPREE LLP
MARTIN H. DODD (104363)
160 Sansome Street, 17th Floor
San Francisco, California 94104
Telephone: (415) 399-3840
Facsimile: (415) 399-3838
martin@dfdlaw.com

*Attorneys for Receiver*
Robert Sillen

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCIANO PLATA, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> ARNOLD SCHWARZENEGGER, et al., <br><br> *Defendants*. | Case No. C01-1351 TEH <br><br> **RECEIVER'S REPLY TO RESPONSES OF PLAINTIFFS AND STATE PERSONNEL BOARD TO MOTION FOR WAIVER OF STATE LAW RE RECEIVER CAREER EXECUTIVE ASSIGNMENTS** |

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................................1

A. The SPB's Analysis Of The Receiver's Proposal Is Flawed And Its Proposed Solutions Are Equally Flawed. ...................................................................................2

    1. The RCEAs can be created by only a modest change in State law and do not threaten the State personnel system. ...............................................................2

        a. Except for the narrowly drawn modification to State law requested in this Motion, the Receiver intends to comply with State personnel law..............3

        b. It is necessary to the Receiver's remedial plans that RCEAs be State employees during and after the Receivership. .........................................5

        c. Even if the Receiver hires the full complement of 250 RCEAs, CDCR will remain below the median for all State agencies in the percentage of Career Executives employed. ...............................................................7

    2. The SBP's proposed "less intrusive" alternatives will not result in necessary change in the prison health care system and will only perpetuate the failings of that system. ................................................................................................7

B. It Is Premature For The Receiver To Describe All 250 RCEA Positions And He Should Not Be Required To Do So In Order To Obtain A Waiver Of State Law...............9

CONCLUSION.......................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Statutes**

2 Cal. Code Reg. § 548.151 .................................................................................................. 4

Cal. Gov't Code § 18546 ...................................................................................................... 3

Cal. Gov't Code § 18547 ................................................................................................... 3, 5

Cal. Gov't Code § 18990 ...................................................................................................... 3

Cal. Gov't Code § 18992 ...................................................................................................... 3

Cal. Gov't Code § 19889.2 ................................................................................................... 3

Cal. Gov't Code § 19889.3 ................................................................................................ 3, 4

Receiver Robert Sillen submits this reply to the responses filed by plaintiffs and the State Personnel Board ("SPB") to his motion for a waiver of State law as it pertains to the proposed Receiver Career Executive Assignment ("RCEA") positions.

## INTRODUCTION

Neither plaintiffs nor the SPB oppose the Receiver's motion in the abstract; indeed, both contend that they support the Receiver's goal of hiring additional skilled, high level managers from outside the State civil service system. Pltfs' Response, p. 2:11-12; SPB Response, pp. 1:2-4, 7:1-3. But both object to, or at least raise questions about, the Receiver's approach to achieving that goal. And, in the end, both argue that the RCEA program will fail when the Receiver's work is done and for the same reason: State law does not currently permit it. If this Court were to rely upon that as a rationale for denying the Receiver's motion, the Receivership would be rendered toothless and that portion of the Receivership order providing for waivers of State law would be just so many words. State law as currently constituted is inconsistent with a number of approaches the Receiver has taken to address the crisis in the prison health care system. In fact, a primary goal of the Receivership is to break the bonds that the State's "culture" of "trained incapacity" has produced. Receiver's First Bi-Monthly Report, p. 4:1-8. Whether State law must be changed in the future to permit the Receiver's programs to continue as constituted after he has completed his tasks or whether this Court must enter orders for permanent relief to accomplish the same result need not concern the parties or the Court at this stage. What may unfold in the future is purely speculative; what is not speculative is that a crisis exists that the Receiver intends to address and State law presents a stumbling block that must be overcome.

In addition to their concerns about the future, the SPB and plaintiffs raise a number of other objections to the Receiver's motion.

- SPB argues that the RCEA positions are more akin to "exempt" positions than to CEA positions under current State law. From that premise, SPB asserts that any order approving the Receiver's program should contain three provisos:

1

- - The positions have been created pursuant to this Court's remedial powers and are intended to have no impact on the State civil service system;
  - The RCEA positions should be explicitly deemed to be outside the civil service system, so that post-receivership, the RCEA employees have no rights or remedies within the civil service system; and,
  - To the extent the Court agrees that the RCEA positions are actually "exempt" positions within the meaning of State law, the Court should also waive Article 7, section 4 of the California Constitution.
- Alternatively, the SPB suggests what it considers to be "less intrusive" alternatives for achieving the Receiver's goals.
- Plaintiffs assert that the RCEA program is "too vague" for this Court to approve because the Receiver "does not fully explain" what the various RCEAs will be asked to do. Pltfs. Response, p. 2. SPB makes a similar argument. SPB Response, pp. 8-9. Therefore, plaintiffs say, the Court should order the Receiver to re-submit his motion "accompanied by job qualification requirements, a description of their duties, and an overall statewide medical managerial organizational structure for the proposed RCEA positions." Pltfs. Response, p. 7:9-11.

As discussed more fully below, both the SPB and plaintiffs misunderstand the Receiver's proposal. As a result, the concerns they express and the suggestions they make are not well-founded and should be rejected.

### A.  The SPB's Analysis Of The Receiver's Proposal Is Flawed And Its Proposed Solutions Are Equally Flawed.

#### 1.  The RCEAs can be created by only a modest change in State law and do not threaten the State personnel system.

The SPB implies that the RCEA concept is a radical departure from existing law and so antithetical to the State personnel system that RCEAs should be distanced from and never become part of that system. The SPB also suggests that the number of proposed RCEAs is unprecedented. The SPB's arguments are faulty and without foundation.

2

          **a.    Except for the narrowly drawn modification to State law requested in this Motion, the Receiver intends to comply with State personnel law.**

The SPB's arguments appear driven primarily by fear that approval of the Receiver's Motion is somehow the first step in a wholesale dismantling of the merit system. *See, e.g.,* SPB Response, pp. 5:24-6:19. Nothing could be further from the Receiver's intent.[1]

Some context for the Receiver's Motion is necessary. No one disputes that the CDCR is seriously lacking in competent and committed medical managerial staff. Findings of Fact and Conclusions of Law ("FCCL"), filed herein on October 5, 2005, pp. 5-8, 14-15. Significantly for this Motion, the Receiver has determined and the history of this case has demonstrated that there are no, or virtually no, current State employees with the skills, commitment and experience needed to take on the daunting task of managing the workings of the prison health care system. Supplemental Declaration of John Hagar ("Hagar Decl."), filed herewith, ¶ 6. Some mechanism is necessary to fill the empty ranks of leadership within the system; the Receiver has proposed his RCEA program as that mechanism.

While the Receiver does not disagree that State law would not currently permit his program to be implemented, he strongly disagrees that the RCEA program represents a profound change to the State personnel system. Career Executive Assignment ("CEA") positions are provided for by State law and are commonly used throughout State government. *See generally* Cal. Gov't Code §§ 18546, 18547, 18990, 18992 and 19889.3; Exhibit 1 to Supp. Hagar Decl. It is undisputed that CEA assignments are non-tenured, *i.e.,* "at will," and do not confer permanent status on the employees occupying fulfilling the CEA assignments. Cal. Gov't Code §§ 19889.2, 19889.3. CEA positions are, however, limited to (a) existing permanent civil servants; and (b) non-civil service legislative and exempt executive employees. *See* Cal. Gov't Code §§ 18546, 18990, 18992 and 19889.3. CEAs do not have a property interest in the assignment, but permanent civil service employees who occupy those assignments retain a property interest in a

---

[1] The SPB's objections to RCEAs – which are presumably based on SPB's desire to protect the integrity of the civil service system – are particularly puzzling since the civil service system has failed miserably at producing a sufficient number of qualified clinical managers in the prisons and the existing clinical managerial positions either deviate dramatically from or are not even classified as positions in the civil service system. Receiver's Motion, pp. 8-15.

3

1 position within the civil service, together with all the procedural protections that affords. Cal.
2 Gov't Code § 19889.3; 2 Cal. Code Reg. § 548.151.

3       The only aspect of this legislative framework that the Receiver seeks to alter involves
4 who may become an RCEA. He wishes to open up competition for the RCEA positions to any
5 and all qualified applicants, including those from outside the State service, so that the best person
6 for the job may be hired. Supp. Hagar Decl., ¶ 4. The effect of this one minor change would be
7 that newly hired employees, *i.e.*, those from outside State service, will be completely "at will,"
8 with no underlying property interest in civil service status and without the panoply of procedural
9 rights that such status implies. Id., ¶ 5.

10       Other than this single change, the Receiver does not request any modification to State
11 law. Thus, any tenured civil service employees selected for RCEA positions will retain their
12 underlying rights, consistent with the CEA program now available in the State system. Motion,
13 pp. 17:17-18:17, 20:21-24 and fns. 4 & 5. Conversely, any employee hired as an RCEA from
14 outside the State service will, upon termination of the assignment, be required to compete
15 successfully in a civil service examination if such employee wishes to attain permanent civil
16 service status. Supp. Hagar Decl., ¶ 5. Nor will such employee have any preference in hiring or
17 promotion to other positions over permanent civil service employees during or after their
18 employment in the RCEA position. Id.[2] Furthermore, the Receiver intends to work with SPB
19 and the Department of Personnel Administration ("DPA") to develop job descriptions and duties,
20 qualifications, classifications and salary ranges and intends to utilize a competitive examination
21 process to fill the positions. Id., ¶ 7.

---

[2] The Receiver notes that the SPB apparently misunderstood this point since it requested that this Court enter an order "that [RCEAs] will have no preference in hiring or promotion to other positions, over civil service employees, during or after their RCEA tenures." SPB Response, p. 9:23-25. Since the Receiver agrees with this proposition, such an order is unnecessary. The SPB couples its unnecessary request, however, with a much more troubling suggestion. The SPB asks this Court to order that RCEA positions have "none of the statutory rights that apply to CEAs. . . ." Based on discussions between the Receiver's staff and the SPB prior to the filing of this Motion, it appears that this request is nothing more than a backdoor attempt by the SPB to override California pension statutes as they may apply to RCEAs. Supp. Hagar Decl., ¶ 5 n.1. Read literally, the SPB's startling request could mean, for example, that RCEAs would be ineligible for Family Medical Leave, ineligible for medical benefits and have no protection from unlawful discrimination.

4

1	The SPB questions whether the proposed RCEA positions have the "high administrative
2	and policy influencing character" required by Gov't Code § 18547. SPB Response, p. 8. There is
3	no basis for SPB's concern. Indeed, this claim ignores the abject state of the CDCR; ignores a
4	culture of despair and defeat that affects many of the prison system's 65,000 employees;
5	disregards the high level leadership that will needed to turn the present horrid situation around;
6	ignores the size and widespread location of CDCR prisons; and, indicates a lack of understanding
7	of the number of managers and executives needed to run a medical delivery system as large and
8	complex as that in the CDCR. Supp. Hagar Decl., ¶ 11.

9	The SPB also quibbles with the Receiver's reliance on the fact that legislative and exempt
10	executive branch employees may compete for CEA assignments and that managerial
11	appointments in the DMV have been based on open examinations. The SPB argues that these
12	programs are not exact analogs for the RCEA positions the Receiver intends to create. This
13	argument misses the point. The Receiver does not contend that the RCEA positions would be
14	identical to or derive from the statutory authorization for those existing exceptions to State law.
15	The Receiver's point was only that hiring CEAs based on open examinations or from outside the
16	civil service system is not without precedent and, therefore, that RCEA positions can be similarly
17	created with only minor modifications to existing State statutes.

18	The Receiver asks only for the limited waiver of the five sections of the California
19	Government Code addressed by his Motion to effect one change: to permit open examinations
20	for the RCEA positions. Motion, pp. 22-23; id, ¶¶ 4-7. In all other respects the Receiver intends
21	to comply with and work within and through the existing civil service apparatus. The Court
22	should therefore reject the SPB's objections to the Receiver's Motion.

23	      **b.**    **It is necessary to the Receiver's remedial plans that RCEAs be State employees during and after the**
24	          **Receivership.**

25	The change in State law requested by the Receiver is critical to the success of the
26	Receiver's remedial program. Indeed, without the change in State law proposed, the Receiver
27	will find it difficult, if not impossible, to fulfill the mandate this Court has set for him. Supp.
28	Hagar Decl., ¶ 6. Eliminating the barriers that currently prevent the Receiver from hiring a

1  sufficient complement of qualified candidates – as determined by a competitive examination – is
2  essential because there are so few available employees within the State system to fill RCEA jobs.
3  The "at will" character of the positions serves the secondary purposes of (a) creating a cadre of
4  executives who will, by necessity, be motivated to implement the Receiver's remedial program
5  lest they be terminated; and, (b) providing the Receiver greater flexibility to engage in staffing
6  changes as needs and circumstances demand. Id.

7  But if the Receiver believes that non-tenured status for RCEAs is essential to the success
8  of his remedial program, it does not mean that he believes RCEAs should exist outside the State
9  civil service system or only for so long as the Receivership itself is in place. To the contrary, the
10 Receiver intends, and repeatedly indicated in his moving papers, that the employees who fill the
11 RCEA positions should be State employees under the rubric of the civil service system, even if
12 they lack the attributes of permanent status. E.g., Motion, pp. 15:24-27, 17:5-21.

13 The reason that the Receiver insists upon the RCEAs being part of the State system is "so
14 the State will be left with the capacity and leadership to maintain a constitutionally-adequate
15 health care system when it is returned by the Court to the State." Id., p. 15:25-27. The goal is to
16 construct a complement of "skilled, experienced and motivated clinical leaders" (id., p. 8:16)
17 who, when the Receivership terminates, will have the ability, desire and motivation to continue
18 providing constitutionally adequate health care to inmates.

19 The SPB, however, asks this Court to rule that the RCEA positions are only a creation of
20 this Court's remedial powers, are entirely outside the State civil service system, should remain
21 outside the civil service system and even, perhaps, should be terminated when the Receivership
22 ends. SPB Response, pp. 9:16-26. Rather than attempt to envision a personnel system that
23 includes "non-tenured civil service appointments" (Motion, p. 17:20-21) selected through a
24 competitive examination, the SPB asks this Court to approve a framework that would exist only
25 for the duration of the Receivership. SPB Response, pp. 6:1-7, 9:21-27. This is fundamentally
26 contrary both to the Receiver's goals and to the mandate given him by this Court.

27 Indeed, the SPB's proposed approach is a recipe for two equally unpalatable alternatives:
28 a permanent Receivership or guaranteed failure in the system when the Receivership ends. For

if, as SPB proposes, these positions are permitted to exist, if at all, only in a kind of State law limbo once the Receivership ends, the Receiver will find it difficult indeed to attract and retain qualified personnel and the benefits promised by the Receiver's approach (Motion, p. 20:14-20) will evaporate.[3]

        **c.    Even if the Receiver hires the full complement of 250 RCEAs, CDCR will remain below the median for all State agencies in the percentage of Career Executives employed.**

The SPB suggests that the addition of 250 RCEAs will significantly alter the character of the State civil service. SPB Response, pp. 5:16-26, 8:3-5. Not so. Career Executives, as a percentage of the labor force in all State agencies, range from .007% to 1.1%. Supp. Hagar Decl., ¶ 10 and Exh. 1 thereto. The median is .72%. At .2%, CDCR currently has the second lowest CEA utilization rate of any State agency. Even if the Receiver fills all 250 RCEA positions, the CEA and RCEA positions would comprise only .57% of the CDCR labor force, *i.e.*, still well below the median for all State agencies. Id.

The CEA utilization rate at the department level varies even more widely. In some departments, CEAs comprise a vastly greater percentage of the labor force than in CDCR. The SPB, for example, operates with a percentage of CEAs *fifteen times greater* than CDCR. See Exh. 1 to Supp. Hagar Decl. The addition of all 250 RCEAs will not have a noticeable impact on the State personnel system. It will, however, have a substantial impact on the CDCR and that is why the Receiver requests the authority to create and fill RCEA positions.

        **2.    The SBP's proposed "less intrusive" alternatives will not result in necessary change in the prison health care system and will only perpetuate the failings of that system.**

In rather half-hearted fashion the SPB offers up what it calls "less intrusive alternatives" to the Receiver's request for a waiver. SPB Response, pp. 6-7. They may be "less intrusive," but

---

[3] To underscore its insistence that the RCEA positions should come nowhere near the civil service system, the SPB argues that RCEAs are actually more akin to "exempt" employees than CEAs and then goes so far as to invite this Court to waive provisions of the State Constitution limiting the number of exempt positions in State government. SPB Response, p. 10. Such a startling request is far more radical than anything the Receiver has suggested. This Court need only waive one small aspect of existing State statutes to permit open examinations so that the Receiver can fill the ranks of critical managerial staff in the prison health care system. The SPB's more far reaching proposal to waive Constitutional provisions is entirely unnecessary.

7

they are neither meaningful nor workable alternatives to the Receiver's proposal.

The first of SPB's alternatives seems to consist only of streamlining the termination process during the probationary period for employees who otherwise would become tenured civil servants. SPB Response, p. 7:10-15. The second would entail creating civil service RCEA positions in parallel to standard CEA positions. Under this second approach, the Receiver could hire civil service employees into some managerial positions using existing CEA procedures and then hire from outside into the parallel, civil service positions. The latter employees, after their probationary period, would presumably have job tenure. Id., p. 7:16-22.

A significant failing of both "alternatives" is that they lack a defining feature of the proposed RCEAs: *i.e.*, ongoing non-tenured status for the employees in those positions. As indicated above, at-will status in the RCEA positions is important for two related reasons. Unquestionably, at-will employment provides a powerful incentive to employees to strive to perform at a consistently high level and enables employers to move more nimbly to eliminate problem employees or to restructure the work force when necessary to adapt to change. The alternatives the SPB proposes would have the characteristics of at-will employment only for limited periods of time and for limited numbers of managers. In fact, the second alternative appears to contemplate an odd dual structure whereby some managers would be at-will in the RCEA position while others of equal status would have job tenure.[4] Under either alternative, as time went by, the benefits derived from at-will status would be bled out of the system.

A further flaw in the SPB's second "alternative" is the unspoken premise that significant numbers of civil service employees are ready, willing and able to fill the managerial positions in the prison health care system. If that were the case, then presumably the problems in the prison health care delivery system would be less severe than they are. In fact, the current civil service ranks include few, if any, employees sufficiently qualified to fill the RCEA positions. FCCL, pp. 5-8, 14-15; Supp. Hagar Decl., ¶ 6; Motion, pp. 11-15, 18:22-23, 21:10-12, 22:2-3. Understood in this light, the SPB's two alternatives really collapse into one: the vast majority of managers would be hired from outside into newly-created civil service positions that carry with them

---

[4] The potential for employee discontent and low morale in such a structure ought to be obvious.

8

eventual job tenure and all of the procedural protections that implies. In other words, the SPB's proposal offers nothing in the way of real change, and in fact will perpetuate the structure that has helped bring about the culture of "trained incapacity" that this Court has so properly decried. Supp. Hagar Decl., ¶ 12. Any proposed solution that does not attack that trained incapacity at its roots should be unacceptable. This Court should reject the SPB's "less intrusive" alternatives.

**B.  It Is Premature For The Receiver To Describe All 250 RCEA Positions And He Should Not Be Required To Do So In Order To Obtain A Waiver Of State Law.**

In requesting that this Court deny the Receiver's motion until he has described in detail all 250 RCEA positions, their qualifications and duties and how they will fit into "an overall statewide medical managerial organizational structure," plaintiffs reveal that they do not grasp the Receiver's intentions and remain wedded to an inflexible "roll out" remedial model. Supp. Hagar Decl., ¶ 20. The "roll out" model is inconsistent with the Receiver's phased and pilot project approach. In this Motion, therefore, the Receiver is seeking basic authorization to hire RCEAs; he does not intend to create or fill all of these positions immediately. In fact, he has budgeted for only 100 for the upcoming fiscal year. Id., ¶ 16.

The Receiver intends generally to adopt the organizational structure developed by Mercer Corporation, and which is based on Mercer's in depth study of existing health care delivery systems. Supp. Hagar Decl., ¶ 15; Exhibit 1 to Receiver's Motion. Before the Receiver will undertake to implement the RCEA program statewide, however, he intends to move carefully and responsibly by:

    a. working with the SPB and DPA to establish positions, job qualifications and salaries;

    b. undertaking pilot projects at a limited number of California prisons, beginning in Summer 2007;

    c. establishing an appropriate recruitment and retention program;

    d. coordinating with the remedial programs in *Coleman*, *Perez* and *Armstrong* to ensure that health care delivery plans in those cases are consistent with, and do not unnecessarily duplicate, the Receiver's remedial program in this case; and,

9

      e.  filling high level regional and central office positions on a selective basis, after consultation with SPB and DPA.

Supp. Hagar Decl., ¶¶ 7, 16-19.

The Receiver does not intend simply to hire people into RCEA positions and throw them at the problem. Instead, the Receiver will work closely with the SPB and DPA to develop appropriate job descriptions and qualifications, civil service classifications and salary ranges for the positions and then develop a competitive examination process to produce a pool of qualified candidates. Motion, pp. 18:10-11, 20:21-2; Supp. Hagar Decl., ¶¶ 7, 19. And, then, as the Receiver has emphasized repeatedly, he will test and refine the RCEAs on a pilot basis in limited settings before applying them systemwide. *E.g.*, Motion, pp. 9:15-10:26; Supp. Hagar Decl., ¶ 18. Thus, RCEA positions will first be tested in three prisons this Summer and in senior nursing and physician positions at the regional level. In this fashion, the job descriptions, qualifications, functions and lines of authority can be developed and refined before the full complement of positions are filled throughout the system. Id., ¶¶ 18-19.

This phased approach is necessary because, quite frankly, the positions to be created are effectively new to the system and how they will work best when integrated into the system as a whole is currently unknown. Motion, p. 10:13-26. A step-by-step approach is particularly critical in light of the fact that health care delivery is central to the other class actions that are also currently pending. To avoid unnecessary duplication, expense and inefficiencies, the Receiver intends to work with the special master and court representatives in *Coleman, Perez* and *Armstrong* to ensure that the RCEA positions are consistent with the court orders and plans in those cases. Supp. Hagar Decl., ¶ 17. Of equal importance in this regard, the Receiver's own planned remedial processes are not fully underway. The Receiver wants to "test drive" his various approaches to fixing the problems in the health care delivery system and determine on a limited basis how they most effectively mesh with one another.

The Receiver should not be required to craft all 250 RCEA positions before it is clear what precise functions and responsibilities will be most effective for RCEAs generally, and

within each prison and region specifically. This Court should reject the calls for the Receiver to describe all 250 positions before he is permitted to commence hiring any RCEAs.

## CONCLUSION

The Receiver requests that the Court grant his motion for a waiver of State law to permit him to establish and hire RCEAs as proposed in his Motion.

Dated: May 25, 2007

FUTTERMAN & DUPREE, LLP

By /s/
Martin H. Dodd
Attorneys for Receiver Robert Sillen

# CERTIFICATE OF SERVICE

The undersigned hereby certifies as follows:

I am an employee of the law firm of Futterman & Dupree LLP, 160 Sansome Street, 17th Floor, San Francisco, CA 94104. I am over the age of 18 and not a party to the within action.

I am readily familiar with the business practice of Futterman & Dupree, LLP for the collection and processing of correspondence.

On May 25, 2007, I served a copy of the following document(s):

**RECEIVER'S REPLY TO RESPONSES OF PLAINTIFFS AND STATE PERSONNEL BOARD TO MOTION FOR WAIVER OF STATE LAW RE RECEIVER CAREER EXECUTIVE ASSIGNMENTS**

by placing true copies thereof enclosed in sealed envelopes, for collection and service pursuant to the ordinary business practice of this office in the manner and/or manners described below to each of the parties herein and addressed as follows:

___ BY HAND DELIVERY: I caused such envelope(s) to be served by hand to the address(es) designated below.

_X_ BY MAIL: I caused such envelope(s) to be deposited in the mail at my business address, addressed to the addressee(s) designated. I am readily familiar with Futterman & Dupree's practice for collection and processing of correspondence and pleadings for mailing. It is deposited with the United States Postal Service on that same day in the ordinary course of business.

___ BY OVERNIGHT COURIER SERVICE: I caused such envelope(s) to be delivered via overnight courier service to the addressee(s) designated.

___ BY FACSIMILE: I caused said document(s) to be transmitted to the telephone number(s) of the addressee(s) designated.

| | |
|---|---|
| Andrea Lynn Hoch<br>Legal Affairs Secretary<br>Office of the Governor<br>Capitol Building<br>Sacramento, CA 95814 | Brigid Hanson<br>Director (A)<br>Division of Correctional<br>Health Care Services<br>CDCR<br>P.O. Box 942883<br>Sacramento, CA 94283-0001 |
| Rochelle East<br>Deputy Attorney General<br>455 Golden Gate Avenue<br>Suite 11000<br>San Francisco, CA 94102-7004 | J. Michael Keating, Jr.<br>285 Terrace Avenue<br>Riverside, RI 02915 |

FUTTERMAN &
DUPREE LLP

12

RECEIVER'S REPLY RE RECEIVER CAREER EXECUTIVE ASSIGNMENTS
C01-1351 TEH

| | | |
|---|---|---|
| 1 | Bruce Slavin | Kathleen Keeshen |
| | General Counsel | Legal Affairs Division |
| 2 | CDCR – Office of the Secretary | California Department of Corrections |
| | P.O. Box 942883 | P.O. Box 942883 |
| 3 | Sacramento, CA 94283-0001 | Sacramento, CA 94283 |
| 4 | Richard J. Chivaro | Molly Arnold |
| | John Chen | Chief Counsel, Dept. of Finance |
| 5 | State Controller | State Capitol, Room 1145 |
| | 300 Capitol Mall, Suite 518 | Sacramento, CA 95814 |
| 6 | Sacramento, CA 95814 | |
| 7 | Laurie Giberson | Matthew Cate |
| | Staff Counsel | Inspector General |
| 8 | Department of General Services | Office of the Inspector General |
| | 707 Third St., 7th Fl., Ste. 7-330 | P.O. Box 348780 |
| 9 | West Sacramento, CA 95605 | Sacramento, CA 95834-8780 |
| 10 | Donna Neville | Warren C. (Curt) Stracener |
| | Senior Staff Counsel | Paul M. Starkey |
| 11 | Bureau of State Audits | Labor Relations Counsel |
| | 555 Capitol Mall, Suite 300 | Department of Personnel Administration |
| 12 | Sacramento, CA 95814 | Legal Division |
| | | 1515 "S" St., North Building, Ste. 400 |
| 13 | | Sacramento, CA 95814-7243 |
| 14 | Gary Robinson | Yvonne Walker |
| | Executive Director | Vice President for Bargaining |
| 15 | UAPD | SEIU |
| | 1330 Broadway Blvd., Ste. 730 | 1108 "O" Street |
| 16 | Oakland, CA 94612 | Sacramento, CA 95814 |
| 17 | Pam Manwiller | Richard Tatum |
| | Director of State Programs | CSSO State President |
| 18 | AFSME | CSSO |
| | 555 Capitol Mall, Suite 1225 | 1461 Ullrey Avenue |
| 19 | Sacramento, CA 95814 | Escalon, CA 95320 |
| 20 | Tim Behrens | Elise Rose |
| | President | Chief Counsel |
| 21 | Association of California State Supervisors | State Personnel Board |
| | 1108 "O" Street | 801 Capital Mall |
| 22 | Sacramento, CA 95814 | Sacramento, CA 95814 |
| 23 | Stuart Drown | Michael Bien |
| | Executive Director | Rosen, Bien & Asaro |
| 24 | Little Hoover Commission | 155 Montgomery Street, 8th Floor |
| | 925 L Street, Suite 805 | San Francisco, CA 94104 |
| 25 | Sacramento, CA 95814 | |
| 26 | | |
| 27 | | |
| 28 | | |

13

FUTTERMAN & DUPREE LLP

RECEIVER'S REPLY RE RECEIVER CAREER EXECUTIVE ASSIGNMENTS
C01-1351 TEH

| | |
|---|---|
| Miguel A. Neri<br>Deputy Attorney General<br>1515 Clay Street, Suite 2000<br>P.O. Box 70550<br>Oakland, CA 94612-0550 | John Hagar<br>Judges Reading Room<br>Law Library<br>450 Golden Gate Ave., 18th Floor<br>San Francisco, CA 94102 |

Dated: May 25, 2007

_____
Lori Dotson