United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARCIANO PLATA, et al.,

    Plaintiffs,

v.

ARNOLD SCHWARZENEGGER, et al.,

    Defendants.

NO. C01-1351 TEH

CLASS ACTION

<u>ORDER RE RECEIVER'S MASTER APPLICATION FOR ORDER WAIVING STATE CONTRACTING STATUTES, REGULATIONS, AND PROCEDURES, AND REQUEST FOR APPROVAL OF SUBSTITUTE PROCEDURES FOR BIDDING AND AWARD OF CONTRACTS</u>

    This matter comes before the Court on the Receiver's Master Application for Order Waiving State Contracting Statutes, Regulations and Procedures, and Approving Receiver's Substitute Procedures for Bidding and Award of Contracts ("Application"), filed April 17, 2007. Specifically, the Receiver seeks an order (1) "waiving any requirement that the Receiver comply with State statutes, rules, regulations and/or procedures governing the notice, bidding, award and protests only with respect to the contracts necessary to complete the projects described in [the] Application," and (2) "approving the substitute notice, bidding and award procedures developed by the Receiver to be utilized in connection with such contracts." Application at 1.

    On May 9, 2007, both the Plaintiffs and the Defendants (including the Governor and the relevant state agencies reporting to the Governor), filed separate statements of non-opposition to the Application. On May 15, 2007, the State Personnel Board filed a response addressing the implications of Article VII of the California Constitution for personal-services

contracts contemplated by the Receiver's Application. On May 25, 2007 the Receiver filed a reply thereto.

INTRODUCTION

In February 2006, this Court appointed a Receiver to take control of the delivery of medical services for prisoners confined in California state prisons. The Court took this extraordinary step of last resort because the State's conceded inability to discharge its constitutional obligations had led to such a crisis in the delivery of medical care in California state prisons that, on average, "one inmate needlessly dies every six to seven days due to constitutional deficiencies." *See* October 3, 2005 Findings of Fact and Conclusions of Law Re Appointment of Receiver at 1.

As part of his remedial efforts, the Receiver is undertaking a number of projects that require the use of contractors to provide goods or services. In particular, he has identified 13 projects in six areas: (1) Medical Records and Management of Patient Care, (2) Clinical Space, (3) Recruitment and Staff Accountability, (4) Emergency Response, (5) Fiscal Management, and (6) Pharmacy. The 13 projects include, *inter alia*: (1) an IT technical and operational infrastructure, (2) a clinical data warehouse, (3) telemedicine, (4) planning for construction of 5,000 multi-purpose medical beds, (5) recruitment and hiring, (6) peer review, (7) emergency response, and (8) fiscal controls. *See* Application at 10-31.

In its Order Appointing Receiver, the Court stated that the "Receiver shall make all reasonable efforts to exercise his powers, as described in this Order, in a manner consistent with California state laws, regulations, and contracts, including labor contracts." *See* Feb. 14, 2006 Order at Section II (D). The Court further provided, however, that the Receiver could request a waiver of state law in the event such waiver became necessary and other alternatives were inadequate:

> In the event, however, that the Receiver finds that a state law, regulation, contract, or other state action or inaction is clearly preventing the Receiver from developing or implementing a constitutionally adequate medical health care system, or otherwise clearly preventing the Receiver from carrying out his

2

> duties as set forth in this Order, and that other alternatives are inadequate, the Receiver shall request the Court to waive the state or contractual requirement that is causing the impediment.

*Id.* Pursuant to this provision, the Receiver seeks (1) a waiver of various state laws that normally govern state contracts for the 13 projects identified in this Application, and (2) approval of a more streamlined, substitute contracting process to apply to the 13 projects in lieu of state laws.

## DISCUSSION

### A. Application for Waiver

It is undisputed that the projects described in the Receiver's Application are integral to developing the different facets of a constitutionally adequate medical health care system within the California Department of Corrections and Rehabilitation ("CDCR"). As the Receiver details in his Application, however, the extensive web of statutes, rules, and procedures that comprise State contracting law make it extremely difficult, if not impossible, to enter into contracts in a reasonably quick or expedited fashion. No party disputes that the process typically can take several months for a single contract, and in some cases as long as two years. *See* Application at 5-9; Oct. 3, 2005 Findings of Fact and Conclusions of Law at 26-27. There is also no dispute that it would effectively stymie the Receiver's efforts to implement the projects identified in his Application in a timely manner if full compliance with the State's traditional contracting processes were required.

In addition, State inaction is clearly preventing the Receiver from moving forward with the contracts necessary to implement these projects promptly and otherwise carry out his duties. The Receiver has given the State multiple opportunities to expedite the contracting process so that the projects at issue can go forward in a timely manner. The State, however, has been unwilling or unable to satisfactorily address the problem and instead has advised the Receiver to seek a waiver. As the Receiver explains:

> [T]he Receiver's Chief of Staff and Staff Counsel, Jared Goldman, have [for example] met with State representatives on numerous occasions concerning

3

> specialty care contracts, hospital contracts, and registry contracts, among others. John Hummel, the Receiver's Chief Information Officer, has raised on numerous occasions in discussions with State representatives that State contracting procedure limits his ability to proceed with planned information technology projects. The Receiver and his Chief of Staff have conducted several meetings with State officials concerning the contracting barriers erected by State law to design/build and other alternative methods of timely, less expensive prison construction. At every meeting, without exception, State officials have acknowledged that many serious barriers exist to effectuating prompt remedial action. At no point has any State official identified any mechanism available under State contracting law and procedure that is available to speed up the process sufficiently to permit the Receiver to move forward at anything like the pace necessary to effect change in the prison healthcare system. Instead those State officials have consistently recommended that the Receiver 'get an order from the Federal Court' to waive State law.

Application at 33.

It is also significant that the identified projects are, as the Receiver describes, "interlinked and interdependent." *See* Application at 32. For example, an improved information technology system is a critical cornerstone for improving record keeping and document management. In turn, improved record keeping is a necessary foundation for improving pharmacy operations. In almost all cases, improved functioning will also require additional space. Given the interlocking nature of many of the projects, State contracting law requirements that significantly delay progress in one area would seriously impede progress in other areas as well.

In short, the Court concludes that the lengthy and cumbersome State contracting process, combined with State inaction, is clearly preventing the Receiver from implementing the 13 projects identified in his Application in a timely manner, and thus, timely addressing the crisis in the delivery of medical care. Nor has any party offered any alternative to the requested waiver to achieve a constitutional remedy in this instance. It thus appears that, absent a waiver, the Receiver would ultimately be "constrained by the very burdens that have impeded the State in dealing with the undisputed challenges in the prison health care system." *See* Application at 9. It would indeed be a hollow gesture to appoint a Receiver only to let him to become entangled in the same bureaucratic quagmire that has thwarted

4

prior efforts to provide constitutional medical care. As such, the Court concludes that the instant request for a waiver has merit.

At the same time, the Receiver has acknowledged, and this Court affirms, that the fundamental purposes underlying State contracting law should be preserved to the extent possible. These purposes are to prevent fraud and corruption, to ensure transparency and procedural fairness and to protect the public interest. *See e.g. Domar Electric, Inc. v. City of Los Angeles,* 9 Cal. 4th 161, 173, 176 (1994). Thus, the Receiver requests approval of three alternative contracting procedures – depending on the type and amount of contract at issue – that are "streamlined when compared to State procedures [yet] are designed to be transparent and fair and to obtain, in the Receiver's exercise of reasonable judgment, high quality goods and services at the best price." *See* Application at 36.

The Court agrees that alternative procedures should be utilized in order to preserve the purposes of the State's contracting laws to the extent possible without unduly compromising the Receiver's need to act in a timely and effective manner given the on-going crisis in the delivery of medical care in California's state prisons. While the Defendants and Plaintiffs have stated that they have no opposition to the Receiver's proposed alternative contracting procedures, the Court approves them with certain modifications to ensure that the interests cited above are balanced to the maximum extent possible.[1]

Accordingly, the Court approves the following three alternative bidding processes[2]:

---

[1] In the event that the Receiver finds, with the benefit of sufficient experience, that the alternative procedures (or some aspect thereof), are unduly compromising his need to act in a timely and effective manner, the Receiver may seek a further modification from the Court.

[2] The Receiver also notes that California law imposes substantive requirements on contracts and contractors that advance certain public policies. *See e.g.* Gov't Code § 12990(c) (requiring non-discrimination clause); Public Contract Code § 10128 (requiring contractors under certain public works contracts to comply with certain provisions of California Labor Code). *See* Application at 7 n.4. The Receiver is not seeking a waiver of these requirements but instead proposes that contractors be required to attest that they have read and are in compliance with the applicable requirements through the Receiver's web site.

5

(1) <u>Expedited Formal Bids</u>

This first process is designed to enable the Receiver to utilize an expedited bidding procedure that avoids the excessive delays typically occasioned by strict compliance with all State law contracting statutes, rules, and regulations but preserves many of the essential features of the state scheme (public notice, issuance of a Request for Proposal, competitive bidding and selection committee). The Receiver shall utilize the expedited formal bidding process, set forth below, on all higher cost contracts – i.e. those contracts whose total contract price is estimated to be valued at $750,000 or more. The expedited formal bidding process shall also presumptively apply to contracts whose total contract price is estimated to be valued at between $75,000 - $750,000, unless the Receiver determines that urgent circumstances require use of the urgent informal bidding process set forth below.

*Expedited Formal Bidding Procedures*

1. The Receiver shall develop and issue a Request for Proposal ("RFP") and will formally solicit at least three bids by posting the RFP on the Receiver's website and publishing the solicitation in a trade publication of general circulation and/or an internet-based public RFP clearinghouse for a period of at least one week (7 calendar days). The Receiver shall notify the parties whenever an RFP is posted on the Receiver's website. The Receiver may, in his discretion, identify and solicit additional bidders. If fewer than three bidders respond to the RFP, the Receiver shall make reasonable, good faith efforts to identify additional bidders and solicit their responses to the RFP.

2. The period for response to the RFP shall be at least 30 days.

3. The Receiver shall appoint a 3-person selection committee consisting of persons with relevant experience, none of whom are affiliated with, or otherwise have any conflict with, any bidder or the Receiver (or any member of his staff).

4. Criteria for selection of the successful bidder may, in the reasonable determination of the Receiver, include but not be limited to, such factors as cost, reputation of the bidder for responsiveness and timeliness of performance, quality of service or product performance, ability of the bidder to provide innovative methods for service delivery, and other similar factors the Receiver deems relevant.

   (a) The Receiver (or at his direction, the selection committee) may conduct interviews of some or all bidders, may respond to questions

---

The parties do not object to this approach and the Court concludes that it is reasonable under the circumstances.

6

posed by bidders and provide additional information to bidders. For contracts whose total contract price is estimated to be valued at $750,000 or more, the selection committee shall conduct interviews of at least the top two bidders.

(b) The selection committee shall provide a recommendation to the Receiver.

(c) The Receiver shall retain the discretion to reject the recommendation of the selection committee and award the contract to another deemed more qualified or to no one.

5. The Receiver shall list all bidders in his quarterly progress reports to the Court and identify the successful bidder. If fewer than three bidders responded to the RFP and/or any bidder responded to a direct solicitation by the Receiver, the Receiver will so note that fact in the report.

(2) <u>Urgent Informal Bids</u>

This second process is designed to provide the Receiver with the flexibility to move more quickly than permitted by the expedited bidding process when urgent circumstances require. Nonetheless, it still requires a competitive bidding process to the extent possible. The Receiver may utilize the urgent informal bidding process set forth below for contracts whose total contract price is estimated to be valued at between $75,000 – $750,000 if he determines that urgent circumstances do not permit sufficient time to utilize the expedited formal bidding process because:

(1) the additional delay that would result from utilizing the expedited formal bidding process would substantially risk endangering the health or safety of inmates or staff, or

(2) the contract is essential to the "critical path" of a larger project, and the additional delay that would result from utilizing the expedited formal bidding process would significantly interfere with timely or cost-effective completion of the larger project.

The Receiver may also utilize the urgent informal bidding process for any contract whose total contract price is reasonably estimated to be valued at less than $75,000.

*Urgent Informal Bidding Process*

7

> 1. The Receiver will make reasonable, good faith efforts to identify and solicit at least three proposals and will accept additional unsolicited bids that may be submitted.
>
> 2. The Receiver may in his discretion develop an RFP prior to soliciting bidders, establish a response period with respect to any such RFP, and/or establish a selection committee to assist in the selection of the successful bidder.
>
> 3. Criteria for selection of the successful bidder, in the reasonable determination of the Receiver or his staff, may include, but will not be limited to, cost, reputation of the bidder for responsiveness and timeliness of performance, quality of service or product performance, ability of the bidder to provide innovative methods for service delivery, and other similar factors the Receiver deems relevant.
>
> 4. The Receiver shall retain the discretion to award the contract to any bidder or to no bidder.
>
> 5. The Receiver shall identify all bidders, including the successful bidder, in his quarterly progress reports to the Court. For contracts whose total contract price is estimated to be between $75,000 - $750,000, the Receiver shall also provide the explanation for his determination that one (or both) of the criteria for using the urgent informal bid process were satisfied. If the Receiver is unable to obtain at least three bidders, he shall note that fact in the report.

(3) <u>Sole source bidding</u>

This third process is designed to permit the Receiver to utilize a sole source when the Receiver has determined, after reasonable effort under the circumstances, that there is no other reasonably available source. Sole source bidding shall only be used as a last resort. The Receiver shall identify any contract that is sole-sourced in the Receiver's quarterly progress reports to the Court along with an explanation as to the basis for the Receiver's determination that no other sources are reasonably available.

B. <u>Article VII of the California Constitution</u>

As noted above, the SPB's response to the Receiver's Application raises a concern "regarding the extent to which the [Receiver's requested] waiver of Government Code section 19130 and Public Contract Code section 10337 impacts the SPB's constitutional

8

role" with respect to the letting of personal-services contracts. *See* SPB Response at 2. As background, the SPB explains that the California Supreme Court has construed Article VII, §1 of the California Constitution to imply a "civil-service mandate" that restricts State agencies from contracting with private entities to perform work that the State has historically or customarily performed and which the State itself can perform adequately and competently. *See State Compensation Ins. Fund v. Riley*, 9 Cal. 2d. 126, 134-36 (1937). Over the years, a number of exceptions to this mandate have been codified in California Government Code §19130(a) - (b) in recognition of the State's need to enter into contracts for personal services in a variety of circumstances. *See e.g. Professional Engineers in California Government v. Kempton*, 40 Cal. 4th 1016, 1034 (2007); *see also* SPB Response at 3.

As the SPB further explains, the State may rely on any of the exceptions in § 19130(b) to justify a personal-services contract, and no prior review of the contract is required. *See* SPB Response at 4-5; Gov.'t Code § 19130(b). If the exclusive labor representative of the affected civil service employees challenges a personal services contract, the SPB, upon request, will review the contract to determine whether it was permitted under § 19130(b). *See* Public Contract Code § 10337(c); SPB Response at 5 ("For contracts justified under 19130(b), there is no requirement that a state agency give the Board prior notice of its *intention* to enter into the contract. The Board only reviews these contracts if it [sic] requested to do so by the exclusive representative of the impacted employees") (emphasis in original).[3]

In its response, the SPB recognizes that the personal services contracts described by the Receiver in his Application may well fall within one or more of the exceptions provided

---

[3] In contrast, a State agency seeking to justify a personal-services contract under § 19130(a) – which concerns "cost-savings" contracts – must provide the SPB with "prior notice of its intention to enter into that contract and the Board must give notice to the employee organizations that would otherwise perform the services that are the subject of the contract." SPB Response at 3-4; Calif. Gov't Code § 19131. According to the California Department of General Services, close to 2,500 personal services contracts have been awarded by state agencies within the last 12 months, with the vast majority (at least 95%) awarded pursuant to section 19130(b)). Hagar Supp. Dec. at ¶ 4.

9

1 for by § 19130(b). *See* SPB Response at 6.  Consistent with this, the SPB has previously
2 rejected a challenge to CDCR's practice of contracting out nursing services pursuant to
3 § 19130(b)(2)(10), finding that such contracts were "urgently needed in order to comply with
4 the federal courts' orders" in this and other cases involving the state prison system. *See*
5 Hagar Suppl. Dec. ¶ 7 and Ex. 1 at 5.

6       The SPB points out, however, that if the Court waives Calif. Gov't Code § 19130 and
7 Public Contract Code § 10337, the Receiver would no longer have the statutory basis for
8 invoking an exception to Article VII.  The statutory basis for SPB's review of employee
9 organization challenges to contracts entered into under Calif. Gov't Code §19130 would also
10 be eliminated.  The Court agrees that given the current record, and the SPB's representations
11 in its response, no waiver of these sections is necessary or appropriate.  Government Code
12 § 19130(b) provides the Receiver with an appropriate vehicle for complying with Article VII
13 of the California Constitution, and SPB review of any post-contract challenges pursuant to
14 Public Contract Code § 10337 would not unduly interfere with the remedial work of the
15 Receiver.  Notably, the Receiver has withdrawn his request for waiver of both Government
16 Code § 19130 and Public Contract Code §10337 in light of the SPB's response. *See*
17 Receiver's Reply at 4 (noting that it was not his intent to preclude review of personal
18 services contracts upon request of an employee organization but to avoid delay in the
19 execution of contracts necessary to critical patient care that pre-execution review would
20 entail).

22 CONCLUSION
23       Accordingly, and good cause appearing, and in light of all of the above, and the entire
24 record herein, it is HEREBY ORDERED AS FOLLOWS:

26       1. The following state codes and laws shall be waived <u>with respect to the 13 projects
27 identified in the instant Application</u>.  In the event the Receiver seeks a waiver with respect to

10

any project not specifically identified in this Application, a separate waiver request shall be required.

Government Code ("Gov't Code"): §§ 14825-14828 and State Contracting Manual ("SCM") §§ 5.10A, 5.75, 5.80 (governing advertisement of State contracts).

Public Contracts Code ("PCC") §§ 10290-10295, 10297, 10333, 10335, 10351, 10420-10425; Gov't Code § 14616; SCM §§ 4.00-4.11 (governing approval of contracts by Department of General Services ("DGS") and exemption from and consequences for failure to obtain DGS approval).

PCC §§ 10308, 10309, 10314; SCM vol. 2, State Administrative Manual ("SAM") §§ 3500-3696.3 (governing procurement of goods).

PCC §§ 6106, 10109-10126, 10129, 10140, 10141, 10180-10185, 10220, 10301-10306, 10340-10345, 10351, 10367, 10369; Gov't Code §§ 4525-4529.20, 4530-4535.3, 7070-7086, 7105-7118, 14835-14837; and Mil. & Veterans Code §§ 999-999.13; 2 California Code of Regulations §§ 1195-1195.6; SCM §§ 5.00-6.40 and Management Memo ("MM") 03-10 (governing competitive bidding, required language in bid packages, Non-competitive Bid ("NCB") procedures preferential selection criteria, contractor evaluations and notice, contract award and protest procedures for service, consulting service, construction project management and public works contracts).

PCC §§ 10314, 10346 (progress payment limitations)

Gov't Code § 13332.09 and MM 06-03 (governing vehicle purchases).

PCC §§ 12100-12113, 12120-12121, 12125-12128; SCM vol. 3; SAM §§ 4800-4989.3, 5200-5291 (governing procurement of IT, telecommunication and data processing goods and services and applicable alternate protest procedures)

Gov't Code §§ 13332.10, 14660, 14669, 15853 (governing acquisition and leasing of real property).

Gov't Code §§ 13332.19, 15815 (governing plans, specifications and procedures for major capital projects)

1  PCC § 10365.5, 10371; SCM § 3.02.4 (governing restrictions on and approval for
2  multiple contracts with same contractor)

4  2. The Receiver shall follow the alternative, streamlined, contracting procedures set
5  forth above in lieu of the waived state codes, laws, and procedures, with respect to the 13
6  projects identified in the instant Application.

8  3. In addition to the specific information identified above that the Receiver is required
9  to include in his quarterly progress reports to the Court, such reports shall contain a summary
10 that (1) specifies each contract the Receiver has awarded during the quarter, (2) provides a
11 brief description of each such contract, (3) identifies to which of the six categories of projects
12 discussed herein such contract pertains, and (4) identifies the method the Receiver utilized to
13 award the contract (*i.e.*, expedited formal bid, urgent informal bid, sole source).

15 .
16  IT IS SO ORDERED.

18 Dated: June 4, 2007
19                              THELTON E. HENDERSON
                                UNITED STATES DISTRICT JUDGE