IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCIANO PLATA, et al.,<br><br>                Plaintiffs,<br><br>   v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>                Defendants. | NO. C01-1351 TEH<br><br>ORDER GRANTING PLAINTIFFS' MOTION TO CONVENE THREE-JUDGE COURT |

This matter came before the Court on Wednesday, June 27, 2007, on Plaintiffs' motion to convene a three-judge court to consider issuing a prisoner release order pursuant to 18 U.S.C. § 3626(a)(3). The motion was heard jointly with a similar motion in *Coleman v. Schwarzenegger*, Case No. Civ. S-90-0520 LKK JFM, a case presided over by the Honorable Lawrence K. Karlton in the United States District Court for the Eastern District of California. After carefully considering all of the written and oral arguments presented to the Court in this case, including those contained in the parties' initial briefs filed in November and December 2006 and presented at the January 8, 2007 hearing, the Court now GRANTS Plaintiffs' motion for the reasons discussed below.

**LEGAL STANDARD**

The Prison Litigation Reform Act ("PLRA") provides that:

> no court shall enter a prisoner release order unless –
>
> (i)    a court has previously entered an order for less intrusive relief that has failed to remedy the deprivation of the

|   |   |                                                                              |
|---|---|------------------------------------------------------------------------------|
|   |   | Federal right sought to be remedied through the prisoner release order; and |
|   | (ii) | the defendant has had a reasonable amount of time to comply with the previous court orders. |

18 U.S.C. § 3626(a)(3)(A).  The term "prisoner release order" does not necessarily mean an order requiring the release of inmates; instead, the PLRA broadly defines the term as including "any order, including a temporary restraining order or preliminary injunctive relief, that has the purpose or effect of reducing or limiting the prison population, or that directs the release from or nonadmission of prisoners to a prison."  18 U.S.C. § 3626(g)(4).

"A party seeking a prisoner release order in Federal court shall file with any request for such relief, a request for a three-judge court and materials sufficient to demonstrate that the requirements of subparagraph (A) have been met."  18 U.S.C. § 3626(a)(3)(C).  A judge may also sua sponte request that a three-judge court be convened, provided that the requirements of subparagraph (A) have been met and the court "believes that a prison release order should be considered."  18 U.S.C. § 3626(a)(3)(D).

The PLRA provides that a three-judge court may only enter a prisoner release order "if the court finds by clear and convincing evidence that – (i) crowding is the primary cause of the violation of a Federal right; and (ii) no other relief will remedy the violation of the Federal right."  18 U.S.C. § 3626(a)(3)(E).  However, the statute does not require a district court deciding whether to convene a three-judge court to consider the likelihood that these criteria for entering a prisoner release order will ultimately be satisfied, and neither the parties' papers nor this Court's independent research revealed any authority for the proposition that such criteria must be considered at this stage of the proceedings.  Thus, the Court's analysis in deciding Plaintiffs' motion necessarily focuses on the requirements of 18 U.S.C. § 3626(a)(3)(A).  For purposes of deciding this motion, the Court therefore does not consider, for example, whether overcrowding is the primary cause of the unconstitutional nature of the delivery of medical health care in prisons, nor does the Court consider at this time the type of relief that a three-judge court might impose if it finds that a prisoner release order is warranted.

**PROCEDURAL HISTORY**[1]

Plaintiffs filed their motion on November 13, 2006, and the Court heard argument on January 8, 2007. Following the hearing, the parties submitted supplemental briefs at the Court's request, and the Court issued an order on Plaintiffs' motion on February 15, 2007. In that order, the Court set Plaintiffs' motion for a further hearing on June 11, 2007, and also directed the Receiver to report to the Court his assessment of how "overcrowding is interfering with his ability to successfully remedy the constitutional violations at issue." Feb. 15, 2007 Order at 4-5. The Court also directed the State to file a report with the Court discussing: (1) specific, concrete measures the State "has taken, is taking, or is planning to take" to reduce the number of inmates confined in state prisons over the next two years; (2) an estimate of when the Governor anticipated rescinding his October 2006 emergency proclamation regarding prison overcrowding; and (3) the current total population of inmates confined by the California Department of Corrections and Rehabilitation ("CDCR"). *Id.* The Receiver and the State timely filed their reports on May 15 and 16, 2007, respectively, and the parties submitted timely responses to those reports on May 29, 2007.[2]

On June 6, 2007, this Court vacated the June 11 hearing and scheduled Plaintiffs' motion for a joint hearing with a similar motion in *Coleman* on June 27, 2007, to be held at the United States District Court in Sacramento. The Court also granted the Receiver's June 4 request to file a supplemental report on overcrowding, which the Receiver filed on June 11, 2007. The parties were given leave to respond to the Receiver's supplemental report by June 18, 2007. Defendants filed a timely response, but Plaintiffs chose not to file a response.

---

[1] The factual background and procedural history of this case have been well-documented elsewhere. *See, e.g.*, Oct. 3, 2005 Findings of Fact & Conclusions of Law Re: Appointment of Receiver. The Court focuses its attention in this order on the procedural history of Plaintiffs' motion to convene a three-judge court.

[2] In his May 15 report, the Receiver also recommended three remedial courses of action. Those recommendations are not discussed in this order because the Court agrees with the Receiver that the "recommendations . . . should be addressed independently of plaintiff's [sic] request for a population cap." Receiver's Request for Permission to File Mot. to Implement Recommendations in Overcrowding Report at 3. The Receiver's request to file a motion to implement his three recommendations remains pending, and the Court will issue a separate order addressing that request at a later time.

3

Subsequent to the motion hearing, the CDCR Expert Panel on Adult Offender Reentry and Recidivism Reduction Programs published their "Report to the California State Legislature: A Roadmap for Effective Offender Programming in California," which Defendants submitted via a request for judicial notice on July 2, 2007. The following day, this Court ordered the parties to file supplemental briefs explaining "how, if at all, the courts should consider the expert panel's report in resolving the pending motions to convene a three-judge court." July 3, 2007 Order Requesting Add'l Briefing on Pls.' Mot. to Convene Three-Judge Court at 2. Defendants and Plaintiffs filed timely supplemental briefs on July 11 and 17, 2007, respectively.

The Court also received an amicus brief from Californians United for a Responsible Budget ("CURB") on June 13, 2007, and a supplemental amicus brief from the California Correctional Peace Officers Association ("CCPOA") on June 18, 2007. Although neither of these organizations sought leave to file amicus briefs, the Court nonetheless reviewed their arguments, including the oral arguments presented by the CCPOA, in considering Plaintiffs' motion.[3] The Court finds, however, that both amici raise arguments that concern whether a three-judge court should ultimately enter a prisoner release order and not whether this Court should request that a three-judge court be convened. Consequently, the amici's arguments are more appropriately addressed to any three-judge court that is convened, rather than to this Court at this time. CCPOA, in fact, candidly states in its supplemental amicus brief that it "does not purport to speak to constitutional violations or the question of whether a prisoner release order would remedy constitutional violations or even what such an order would look like," CCPOA Suppl. Amicus Br. at 5, and its arguments thus may not even be relevant to a three-judge court considering whether a prisoner release order should be entered.

---

[3]The Court granted CCPOA leave to file an amicus brief on Plaintiffs' motion on December 5, 2006, and CCPOA filed an amicus brief on December 11, 2006. CCPOA failed to seek leave from the Court to file a supplemental amicus brief and instead simply filed its supplemental brief with the Court. Similarly, although CURB included a request for leave in its amicus brief, it filed its brief without waiting for the Court to grant that request for leave.

4

**DISCUSSION**

In its February 15, 2007 order, this Court found that the remedial orders stipulated to by the parties and issued by the Court in June 2002 and September 2004 constituted "order[s] for less intrusive relief that [have] failed to remedy the deprivation of the Federal right sought to be remedied through the prisoner release order." 18 U.S.C. § 3626(a)(3)(A)(i). At the June 27, 2007 hearing, Defendants urged this Court to reconsider this finding, arguing that the order appointing the Receiver was a "culminating order" in this case and must be considered in determining whether to convene a three-judge court. The Court agrees with Defendants that the presence of the Receiver makes this case unique and, in fact, previously explained that Plaintiffs' motion "must be considered in the unique context of the recently initiated Receivership." Feb. 15, 2007 Order at 3. However, as Defendants acknowledged at the hearing, the stipulated orders from June 2002 and September 2004 are not irrelevant, and the Court continues to find them to be sufficient to satisfy the first requirement for convening a three-judge court. There can be no question that these orders were previously entered by the Court and constituted considerably less intrusive relief than a prisoner release order.

Moreover, as the Court noted in its order finding the appointment of a receiver to be appropriate, "[t]he Court has given defendants every reasonable opportunity to bring its prison medical system up to constitutional standards, and it is beyond reasonable dispute that the State has failed." Oct. 3, 2005 Findings of Fact & Conclusions of Law Re: Appointment of Receiver at 1. Similarly, the Court explained that it "has attempted to move defendants toward meeting constitutional standards by issuing a series of court orders with detailed objectives and measures. Unfortunately, defendants have repeatedly delayed their progress and ultimately failed to achieve even a semblance of compliance" with the June 13, 2002 stipulated order for injunctive relief or the September 17, 2004 stipulated order regarding the quality of patient care. *Id.* at 27. Thus, not only is it clear that the Court has previously entered orders for less intrusive relief; it is equally clear that Defendants have had a "reasonable amount of time" to comply with the June 2002 and September 2004 orders. 18 U.S.C. § 3626(a)(3)(A)(ii).

5

The only remaining question is how to interpret the "reasonable amount of time" requirement in the context of this case, where the Court appointed the Receiver to take control from Defendants over the medical health care system in California's prisons. It is true that the Receiver did not commence his duties until April 2006, and it is also true that the Receiver has only recently filed his proposed Plan of Action and is not due to file his final Plan of Action until November 2007. However, Defendants' position would essentially have this Court wait years to see if the Receiver's Plan of Action is able to remedy the constitutional deficiencies in this case, and the Court has already determined that such delay is neither necessary nor appropriate. Feb. 15, 2007 Order at 4. While the Court agrees that the Receiver has made much progress since his appointment, that fact does not render irrelevant the previous five years of complete and utter failure by Defendants to cure the constitutional deficiencies in their delivery of medical health care to prisoners. "Where life and death hang[] in the balance, courts must act to ensure that constitutional violations are cured sooner rather than later," *id.* at 3, and Defendants have already been given ample opportunity to attempt to bring the delivery of medical care to prisoners up to constitutional standards. It is beyond reason that a willing and competent institution would not be able to show – over a period of several years and with this Court virtually screaming at every step of the way – significant improvements in the hiring of medical personnel, the furnishing of adequate medical facilities, and the development of thoughtful and comprehensive plans for managing the delivery of medical health care. Yet that is precisely what has happened in this case, and it is why the appointment of the Receiver ultimately became necessary. To use the words of Defendants' counsel at the June 27, 2007 hearing, the appointment order was a "culminating order," and this Court finds it more reasonable to view such an order as the end of a series of less intrusive orders that failed to bring about any meaningful reform, rather than as a new beginning that requires this Court to wait more time, potentially years, to see whether the Receiver's plans will succeed or fail.

Had the Receiver reported to the Court that he did not view overcrowding to be a substantial impediment to implementing the reforms required in this case, the Court may well

6

have reached a different conclusion regarding the appropriateness of convening a three-judge court to consider a prisoner release order. However, quite to the contrary, the Receiver's reports indicate that overcrowding is a serious problem that impacts, for example, his ability to develop adequate reception centers and health facilities because of the high numbers of inmate transfers and the inadequate amount of available health care beds and other physical space. Receiver's Report Re: Overcrowding at 26-28. Overcrowding also negatively impacts the Receiver's ability to hire and retain competent medical and managerial staff. *Id.* at 24-26. Beyond that, the Receiver reports that:

> Every element of the Plan of Action faces crowding related obstacles. Furthermore, overcrowding does not only adversely impact the Receiver's substantive plans, it also adversely impacts on the very process of implementing remedies because overcrowding, and the resulting day to day operational chaos of the CDCR, creates regular "crisis" situations which call for action on the part of the Receivership and take time, energy, and person power away from important remedial programs.

*Id.* at 28-29. Although the Receiver asserts that his "Plan of Action will work" because "[f]ailure is not an option," and that "those . . . who think that population controls will solve California's prison health care problems . . . are simply wrong," he also explains that "[p]opulation limits may help effectuate a more timely and cost effective remedial process." *Id.* at 41, 42.

Tellingly, the Receiver's concerns about the impacts of overcrowding on his ability to reform the medical health care delivery system became even stronger in the weeks following his initial report. In his supplemental report, filed just four weeks after his initial report, the Receiver concluded that: "Mission changes, yard flips, and prison-to-prison transfers, aggravated by the limited alternatives imposed by overcrowding, are now assuming a size, scope and frequency that will *clearly* extend the timeframes and costs of the receivership and *may render adequate medical care impossible*, especially for patients who require longer term chronic care." Receiver's Suppl. Report Re: Overcrowding at 10 (emphases added). While the Court appreciates Defendants' statements that greater coordination between the State and the Receiver will alleviate some of the Receiver's concerns, such sentiments only

7

1  underscore the Receiver's expressed concerns that overcrowding presents serious problems
2  not only because of the substantive ways in which it interferes with delivery of medical care,
3  but also because of the amount of time and attention the Receiver must devote to dealing
4  with crowding-related issues.  It is clear to the Court that the crowded conditions of
5  California's prisons, which are now packed well beyond their intended capacity, are having –
6  and in the absence of any intervening remedial action, will continue to have – a serious
7  impact on the Receiver's ability to complete the job for which he was appointed: namely, to
8  eliminate the unconstitutional conditions surrounding delivery of inmate medical health care.

9        The Court acknowledges that the State has recently attempted to take action to reduce
10 prison crowding through Assembly Bill 900 ("AB 900"), which Governor Schwarzenegger
11 signed into law on May 3, 2007.  Even assuming that the provisions of this legislation were
12 to be timely implemented, however – which the Court has doubts about given the history of
13 delays in this case, the highly controversial and political nature of the subject matter, and the
14 conflicts that may sometimes arise between meeting constitutional standards and the tough-
15 on-crime approach to law enforcement espoused by some members of the California
16 Legislature – it is unclear whether the legislation would reduce the impacts of overcrowding
17 in any meaningful way.  For instance, Defendants' own estimates show only a slight
18 projected reduction in the male inmate population: from approximately 162,848 male inmates
19 in May 2007 to 159,939 male inmates in March 2008, and back up to 162,674 male inmates
20 in March 2009 – a net projected decrease of less than 200 inmates over two years.  May 16,
21 2007 Kernan Decl. ¶¶ 5, 12.  Defendants do not discuss any projected reduction to the
22 current (as of May 2007) female inmate population of 12,141, which leads this Court to
23 believe that there will be no significant reduction in the female inmate population either.  *See*
24 *id.* ¶ 5 (projecting female inmate population of 12,200 in March 2008 and 12,562 in March
25 2009, without taking into account "the impact [of] AB 900 and other population reduction
26 strategies" planned by the State).  In addition, Defendants failed to respond to the Receiver's
27 analysis that the State's plans to create more in-fill beds under AB 900 "does nothing to
28 address the serious levels of crowding within the CDCR's most dangerous high security

8

1 prisons" because only 190 in-fill beds are proposed for Level III, Level IV, and Security
2 Housing Unit ("SHU") inmates, whereas the State itself projects an increase of 7710 inmates
3 at these security levels between the 2007-08 and 2011-12 fiscal years. Receiver's Report Re:
4 Overcrowding at 39; *id.* at Ex. 26. Beyond that, AB 900 fails to address the critical
5 component of staffing – made even more critical by the undisputed fact that California's
6 prison system is currently severely understaffed in terms of both medical and correctional
7 officers – and fails to allocate adequate space for delivering health care, *id.* at 36-38.

8 In any event, the Court need not determine at this stage of the proceedings whether
9 AB 900 will prove to be effective at reducing crowding sufficiently so that it no longer has a
10 deleterious impact on the Receiver's ability to develop a constitutionally adequate medical
11 health care system in California's prisons. As Plaintiffs correctly argue, AB 900 and the
12 Receiver's Plan of Action may proceed simultaneously with a three-judge court's
13 consideration of the necessity for a prisoner release order. The same is true for any other
14 reforms being considered by the State, including those raised by the CDCR's expert panel
15 report. If, for example, the reforms in the expert panel report were actually implemented and
16 reduced levels of prison crowding as estimated, then a three-judge court may find that a
17 prisoner release order is not warranted. However, it would be premature for this Court to
18 make any determination at this time as to whether Plaintiffs will ultimately be able to bear
19 their burden of convincing a three-judge court "by clear and convincing evidence" that
20 "crowding is the primary cause" of the deprivation of constitutionally adequate medical
21 health care and that "no other relief will remedy" that deprivation. 18 U.S.C.
22 § 3626(a)(3)(E). To grant Plaintiffs' motion to convene a three-judge court, this Court need
23 only find that the two components of 18 U.S.C. § 3626(a)(3)(A) are satisfied – a finding the
24 Court reaches for all of the reasons discussed above and in its February 15, 2007 order.[4]

---

[4] Although no party raised this issue, it is unclear whether the requirement that the court "believe[] that a prison release order should be considered" applies to courts ruling on motions to convene a three-judge court brought by a party or only to courts considering a request to convene a three-judge court sua sponte. 18 U.S.C. § 3626(a)(3)(D). However, the Court need not decide that legal question because it concludes for all of the reasons discussed in this order that a prisoner release order should be considered, and the requirement, if it applies, is therefore satisfied.

9

**CONCLUSION**

As this Court has repeatedly stated, this case is unique because of the unprecedented size and scope of the Receivership, the appointment of which Defendants acknowledged was necessary given their own repeated failed attempts at meaningful reform. Of relevance to the pending motion, this case is also somewhat unique in that even Defendants acknowledge the seriousness of the overcrowding problem, which led the Governor to declare a state of emergency in California's prisons in October 2006. While there remains dispute over whether crowded conditions are the primary cause of the constitutional problems with the medical health care system in California prisons, or whether any relief other than a prisoner release order will remedy the constitutional deprivations in this case, there can be no dispute that overcrowding is at least part of the problem. The record is equally clear that the Receiver will be unable to eliminate the constitutional deficiencies at issue in this case in a reasonable amount of time unless something is done to address the crowded conditions in California's prisons. This Court therefore believes that a three-judge court should consider whether a prisoner release order is warranted under 18 U.S.C. § 3626(a)(3)(E).

Accordingly, and because this Court finds that the conditions specified in 18 U.S.C. § 3626(a)(3)(A) have been satisfied, IT IS HEREBY ORDERED that Plaintiffs' motion to convene a three-judge court to consider a prisoner release order is GRANTED. The Clerk shall serve a copy of this order on the Chief Judge of the United States Court of Appeals for the Ninth Circuit to satisfy the notification requirement of 28 U.S.C. § 2284(b)(1). For purposes of judicial economy and avoiding the risk of inconsistent judgments, the Court recommends that this case be assigned to the same three-judge court convened to consider the issuance of a prisoner release order in *Coleman v. Schwarzenegger*, Case No. CIV S-90-0520 LKK JFM (E.D. Cal.).

Although the Court has ordered that a three-judge court be convened, it also continues to encourage the parties to attempt an informal resolution of the issues raised by Plaintiffs' motion. Contrary to the views expressed by the *Coleman* plaintiffs' counsel at the June 27, 2007 hearing, a prisoner release order would, indeed, be a radical step, particularly given the

size of California's prison system. Such a step may not be necessary if, for example, the parties, in conjunction with the Receiver, were able to reach agreement that Plaintiffs' motion has become moot because AB 900 or any other subsequent action by the State removed overcrowding as a major impediment to bringing the delivery of inmate medical health care up to constitutional standards. This Court would like nothing more than to have the three-judge court be able to enter a consent judgment without the need for a prisoner release order. *See Roberts v. County of Mahoning*, Case No. 4:03 CV 2329, 2007 WL 1655505 (N.D. Ohio June 4, 2007) (case where three-judge court was convened but in which the parties reached agreement prior to the scheduled hearing on whether to issue a prisoner release order). However, unless and until such agreement is reached, the Court is convinced that a three-judge court's consideration of a prisoner release order remains warranted, and that it presents the most appropriate forum under the PLRA in which to weigh the impact of crowded conditions on the ability of the Receiver and Defendants to develop a constitutionally adequate inmate medical health care system.

**IT IS SO ORDERED.**

Dated: 07/23/07

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT