IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARCIANO PLATA, et al.,

    Plaintiffs,

v.

ARNOLD SCHWARZENEGGER, et al.,

    Defendants.

NO. C01-1351 TEH

CLASS ACTION

<u>ORDER RE (1) RECEIVER'S MAY 2007 PRELIMINARY PLAN OF ACTION, AND MOTION FOR ORDER MODIFYING STIPULATED INJUNCTION AND ORDERS ENTERED HEREIN, AND (2) PLAINTIFFS' MOTION FOR ORDER DIRECTING RECEIVER TO COMPLY WITH APRIL 4, 2003 ORDER ETC.</u>

This matter came before the Court on Monday, August 27, 2007 on the following matters: (1) Plaintiffs' Responses to the Receiver's May 15, 2007 Plan of Action, (2) the Receiver's Motion for an Order Modifying Stipulated Injunction and Orders Entered Herein, and (3) Plaintiffs' Motion for Order Directing Receiver to Comply with April 4, 2003 Order Re Production and Access to Documents. Having carefully considered the written and oral arguments presented, and the entire record herein, the Court addresses these matters in turn as set forth below.

I. <u>BACKGROUND</u>

On February 14, 2006, this Court appointed a Receiver to "provide leadership and executive management of the California prison medical health care delivery system with the

goals of restructuring day-to-day operations and developing, implementing, and validating a new, sustainable system that provides constitutionally adequate medical care to all class members as soon as practicable." Order Appointing Receiver ("OAR") at 2.  To this end, the Receiver was directed to develop a "detailed Plan of Action designed to effectuate the restructuring and development of a constitutionally adequate medical health care delivery system." *Id*.  The Court further ordered that "the Plan of Action . . . include a proposed time line for all actions and a set of metrics by which to evaluate the Receiver's progress and success." *Id.* at 2-3.  Because the Court contemplated that the Plan of Action would require ongoing modifications, the Receiver was also directed to "update and/or modify this Plan as necessary throughout the Receivership." *Id*. at 3.

As the above indicates, the Order Appointing Receiver envisioned that the Receiver would develop a comprehensive, new medical care delivery system.  The Court further contemplated that this new remedial plan would likely require modification of the two stipulated remedial orders that had been negotiated between the Plaintiffs and Defendants in 2002 and 2004.  Indeed it was the Defendants' failure to implement these two orders that ultimately led to the Court's appointment of the Receiver in 2006.  Accordingly, the OAR also directed the Receiver to submit recommendations, along with his Plan of Action, as to "which provisions of the (1) June 13, 2002 Stipulation for Injunctive Relief, and (2) September 17, 2004 Stipulated Order re Quality of Patient Care and Staffing Order and Injunction, should be carried forward and which, if any, should be modified or discontinued due to changed circumstances." *Id*. at 2.

On May 10, 2007, the Receiver filed his first Plan of Action.[1]  The Plan presents an "initial roadmap for the change necessary to bring the delivery of medical care in California's prisons up to Constitutional levels." May 2007 Plan of Action ("Plan" or

---

[1] The Plan of Action was originally due November 15, 2006.  The Court subsequently granted the Receiver's request to extend the time to file the Plan of Action and proposed metrics until May 15, 2007.  The Court also directed the Receiver to file a revised Plan of Action and metrics no later than November 15, 2007.

2

"POA") at 3. Drawing upon established conceptual frameworks articulated by the Institute of Medicine and the Malcolm Baldrige National Quality Program, the Plan of Action identifies seven primary goals and roughly 200 corresponding objectives. Plan at 14-15, 16-43; Hill Dec. ¶¶ 9, 11.

Also on May 10, 2007, the Receiver filed a motion to modify the June 13, 2002 and September 17, 2004 stipulated orders, as well as a December 1, 2005 order regarding clinical staffing (hereafter "Motion to Modify"). Plaintiffs subsequently filed a motion urging the Court to direct the Receiver to provide Plaintiffs with additional information pursuant to an April 4, 2003 Order regarding production of documents, and to take certain other actions (hereafter Motion for Production of Documents"). Plaintiffs also raised objections to the Plan of Action and opposed portions of the Receiver's Motion to Modify. The Court now addresses (1) Plaintiffs' objections to the Plan of Action, (2) the Receiver's Motion to Modify, and (3) the Plaintiff's Motion for Production of Documents.

## II. PLAINTIFFS' RESPONSES TO THE RECEIVER'S MAY 15, 2007 PLAN OF ACTION

The Receiver's May 15 2007 preliminary POA presents a plan for a comprehensive and systematic overhaul of the delivery of medical care within the California Department of Corrections and Rehabilitation ("CDCR"). Upon receipt of the Plan of Action, the Court provided the parties with an opportunity to file responses thereto. Defendants summarily responded that they "support the Receiver's Plan of Action to deliver medical care in California's prisons." Defs.' Response at 2. They further stated that they "remain committed to working with the Receiver and to helping him implement the Plan of Action." *Id*.

Plaintiffs' response does not take issue with the overall framework of the Plan of Action or the goals and objectives expressed therein. Plaintiffs primarily object, however, that the Plan lacks time lines, metrics, and concrete details as to how the goals and objectives will be achieved. The Court did not require, however, and does not expect, the Plan of Action to spell out, on a step-by-step basis, exactly how the Receiver intends to achieve the

3

extensive array of actions that will be required to implement every objective and goal set forth in the Plan.

The Court does, however, expect that the Receiver will provide time lines identifying when he expects to achieve the specific objectives set forth in the Plan. The Court understands that there are many variables in a complex undertaking such as this and that initial time lines may be subject to change. Restructuring of dysfunctional systems, however, is always a complex undertaking and the Court is not persuaded that the particular complexity of the task at hand makes it impossible to provide time lines for any of the objectives or that such time lines would be meaningless. Further, such bench marks are critical to the Court's oversight obligations in this case. Accordingly, the Court will direct that the next iteration of the Plan of Action, due November 15, 2007, identify those objectives, and/or specific portions thereof, that the Receiver plans to achieve within six months, 12 months, 24 months and 36 months from the date of the November 15, 2007 Plan of Action.[2]

With respect to metrics, the Receiver has surveyed the field and is developing a new standardized and rigorous system for measuring the delivery of medical care that utilizes both quantitative and qualitative methods as well as balanced scorecards for each facility. *See* POA at 43-50. By November 15, 2007, the Receiver intends to have met the following short- term goals with respect to metrics:

(A) an operational system to objectively measure the basics of *Plata* remedial plan compliance at no less than six pilot prisons;

---

[2] Given that the Receiver is prudently piloting certain remedies before implementing them on a state-wide basis, the Receiver should, in those cases, indicate in his time lines one date for piloting a remedy at a specified number of prisons and another for fully implementing the remedy (e.g. Objective "x" will be implemented on a pilot basis at four prisons within 12 months and implemented state-wide within 24 months).

The time lines shall be presented in two formats. First, the Plan shall include a separate chart that lists all objectives or components thereof that are expected to be piloted or achieved within six months, 12 months, 24, months and 36 months. Second, the text of the Plan shall indicate after each objective, whether the objective (or component thereof) is expected to be piloted or achieved within 6 months, 12 months, 24 months or 36 months.

4

(B) an accurate and objective operational system of mortality reviews; and

(C) an operational pilot program for institutional inspections and Plata remedial plan compliance.

*See* POA at 49-50.

These metric programs, and more sophisticated longer-term metrics will be developed under the auspices of the Receiver's Office of Evaluation, Measurement and Compliance. The Receiver plans to have this office operational by November 15, 2007.   The Court concludes that this is a reasonable time frame.  It expects, however, that the Receiver shall, consistent with the OAR, meet these deadlines and provide substantially more detail regarding these shorter-term, as well as longer-term, metric plans in his November 2007 POA.

III. Receiver's Motion for an Order Modifying Stipulated Injunction and Orders Entered Herein

A. Standard for Modification

Under Fed. R. Civ. P. 60, a court may modify a consent decree or stipulated judgment upon a showing that "a significant change in circumstances warrants [a] revision." *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383 (1992).  Once this standard is met, the Court should consider whether "the proposed modification is suitably tailored to the changed circumstance." *Id*.  The Court's authority to modify consent decrees pursuant to Rule 60 is not affected by the Prison Litigation Reform Act ("PLRA"). *Gilmore v. State of California* 220 F.3d 987, 1007 (9th Cir. 2000).[3]

In this case, there has clearly been a significant, unanticipated change in circumstances in this case since the entry of the stipulated orders referenced above – namely,

---

[3]The Court notes that a motion to modify a consent decree is typically brought by a party to the decree.  In this instance, the Receiver has been appointed by the Court to develop and implement a remedy in the place of Defendants.  Further, the Defendants have joined in, and incorporate by reference, the Receiver's Motion for an Order Modifying Stipulated Injunction and Other Orders Entered Herein.

5

1 the appointment of a Receiver to "provide leadership and executive management of the
2 California prison medical health care delivery system with the goals of restructuring day-to-
3 day operations and developing, implementing, and validating a *new*, sustainable system that
4 provides constitutionally adequate medical care to all class members as soon as practicable."
5 OAR at 2 (emphasis added). This appointment was necessitated by the undisputed facts –
6 also originally unforeseen – that (1) the medical delivery system was so grossly broken that
7 it required a restructuring that went well beyond the original stipulated order, and (2) the
8 State of California was incapable of effectively undertaking such a comprehensive remedy,
9 and indeed had admittedly been unable to implement even the more limited remedy
10 originally stipulated to by the parties.

11 Indeed, as indicated above, the Court contemplated at the time of the Receiver's
12 appointment that the new remedial scheme would require modifications of the original
13 stipulated orders. In short, this is not a situation in which a receiver could simply take the
14 parties' agreed upon remedy and implement it. Rather, in order to cure the constitutional
15 violations in this case a far more comprehensive, and in some respects, different, approach
16 than that originally stipulated to is warranted. As the Court noted at the hearing, one of the
17 reasons the State was incapable of implementing the original stipulated remedy is that the
18 CDCR either completely lacked the basic infrastructure necessary to implement the remedy,
19 or where such infrastructure was in place, it was wholly dysfunctional. The Receiver must
20 now create a functional infrastructure in virtually every key area of operations. The Receiver
21 is also pursuing a more team-based model of care rather than a solo-physician model, and is
22 prudently testing new remedies at select prisons on a pilot basis before implementing them
23 systemwide.

24 In sum, the Court readily finds that changed circumstances warrant review of the
25 stipulated orders at issue. Accordingly, the Court turns next to the merits of the specific
26 modifications requested – that is, to a determination of whether the requested changes are
27 "tailored to the changed circumstance." *Rufo*, 502 U.S. at 383.

6

B. <u>June 13, 2002 Stipulation for Injunctive Relief</u>

(1) *Policies and Procedures* (¶ 4)

Paragraph four directs the implementation of the "Health Care Services Division Policies and Procedures" ("Policies and Procedures"). These Polices and Procedures contain medical protocols that are designed to meet the minimum level of medical care required by the Eighth Amendment. The Receiver does not take issue with any particular protocol; on the contrary, he agrees that they must be part of the Plan of Action and represents that they currently remain in place. He seeks elimination of this element of the 2002 Stipulation, however, so that he has the flexibility to adapt, modify or jettison specific Policies or Procedures as the Plan of Action is further developed.

The Court understands and appreciates that, as this exceedingly complex remedial process moves forward, the Receiver must have the flexibility to set priorities, modify or replace existing medical related policies and procedures as needed, and respond to changing circumstances. At the same time, the Court is not persuaded that application of this general principle warrants eliminating all existing Policies and Procedures before the Receiver has determined which require modification or replacement and has replaced such Polices or Procedures with an alternative. Nor has the Receiver explained how retaining the Policies and Procedures pending these determinations would interfere with the remedial process. Rather, the Court concludes that the Receiver's need for flexibility can be accommodated by leaving the Policies and Procedures in place with the proviso that the Receiver can adapt, modify, eliminate, or create such policies as the Receivership progresses so long as the alternative Policies and Procedures meet minimum Eighth Amendment standards. In the event that the Receiver concludes that changes to a Policy or Procedure is warranted, he shall provide the parties with a copy of the modified or new Policy or Procedure and/or notice of

1 elimination of an existing Policy or Procedure, within 7 days of the effective date of the
2 change.[4]

4     (2) *Roll out Schedule* (¶ 5)
5 The Court agrees that the "roll-out" schedule for implementing the policies and
6 procedures originally contemplated by the parties is obsolete and incompatible with the
7 current Receivership and POA.  This paragraph shall be discontinued.

9     (3) *State-wide practices and procedures* (¶ 6)
10 The Receiver does not take issue with the propriety of any of the state-wide practices
11 and procedures identified in paragraph 6 but states that the Receiver will be addressing and
12 modifying the relevant standards as the POA moves forward. The Court is not persuaded that
13 the Receiver's need for flexibility will be undermined by retaining these few, basic
14 requirements in critical areas pending redesign of these areas in future months.  Of course,
15 once the Receiver develops new plans for the state-wide requirements (either individually or
16 collectively) he may substitute such plans so long as they comport with the minimum
17 requirements of the Eighth Amendment. The Receiver shall provide the parties with a copy
18 of any substitute state-wide plan(s) governed by paragraph 6 within 7 days of the effective

---

[4] As discussed *infra*, the Receiver is in charge of the remedy. Accordingly, the parties need not review such changes in advance.  Thus, this procedure modifies ¶ 24 of the Stipulation for Injunctive Relief which governs modification of the Stipulation.
    To the extent a dispute arises as to whether a change in a Policy or Procedure reduces the level of medical care to below minimum Eighth Amendment standards, Plaintiffs shall provide the Receiver with a brief description of the perceived deficiencies and request that the matter be addressed informally at the on-going monthly meetings between the Receiver and the Plaintiffs.  If no resolution is possible, Plaintiffs shall notify the Court of its position that the change in a Policy or Procedure reduces the level of medical care to below minimum Eighth Amendment standards, along with supporting authority.  The Court shall at that point determine what further proceedings, including possible referral to a Magistrate Judge, mediator, or outside expert, are appropriate. This procedure slightly modifies the dispute resolution procedures set forth in ¶¶ 26-28 of the Stipulation for Injunctive Relief.

8

1 date of the new plan.[5] At this point in time, however, the request to eliminate ¶ 6 is
2 premature.

4        (4) *Access to Information /Monitoring by Plaintiffs' Counsel* (¶¶ 7, 9-15)
5 The Receiver requests that these provisions be eliminated. He submits a rough draft
6 of a plan to substitute these provisions with monitoring by the California Office of Inspector
7 General ("OIG"). It appears to the Court that this request is at least in large part an
8 unfortunate consequence of the deterioration of the relationship between the Receiver and
9 Plaintiffs' counsel. While the Court is not interested at this juncture in allocating fault for
10 this unseemly, and seriously distracting, situation it does expect that the Receiver and
11 Plaintiffs' counsel will act in a professional manner to promptly mend relations so that this
12 Court and all concerned can focus efficiently on the large task at hand. To assist this process,
13 the Court shall appoint Starr Babcock,[6] on a *pro bono* basis, to facilitate discussions between
14 the Receiver and the parties for the purpose of developing a new monitoring system that
15 reflects the fact that this case is now in a new receivership phase – which necessarily and
16 fundamentally alters the roles of counsel from that envisioned by the June 2002 Stipulation.
17 In particular, the Receiver, not counsel, is in charge of developing the remedy, and the
18 Receiver reports to the Court – not counsel. At the same time, Plaintiffs' counsel represents
19 the Plaintiff class and thus retains an important role in monitoring progress toward achieving
20 minimum constitutional standards as a part of this representation. *Cf. Duran v. Carruthers*,

---

[5] *See supra* note 4. The Court contemplates that such notice shall only be required once a substitute plan is implemented state-wide, and not for every interim change that the Receiver may take during the plan development process. The Court expects, however, that significant interim changes will be addressed in the Receiver's quarterly progress reports. To extent that a dispute arises with respect to any substitute plan, the standards and procedures set forth in note 4 *supra* shall apply.

[6] A summary of Mr. Babcock's professional experience and background is attached to this Order.

9

1  885 F.2d 1492, 1495 (10th Cir. 1989) (affirming propriety of monitoring by plaintiffs in
2  prison class action notwithstanding monitoring by defendants and special master).
3  　　　　In short, while the Court agrees that involvement of the OIG would be a positive
4  development for many of the reasons set forth by the Receiver, it does not warrant
5  eliminating Plaintiffs' monitoring role in this case.  Rather, as noted above, a new monitoring
6  system must be fashioned that takes into account the fact that the case is now in a new
7  receivership phase.  Such a system should provide Plaintiffs' counsel with the ability to
8  monitor, in a meaningful manner, the progress being made toward achieving constitutionally
9  adequate medical care while at the same time not unduly burdening or interfering with the
10 remedial process.  As stated at the hearing, the Court is confident that if the Receiver and
11 counsel work together with Mr. Babcock in good faith they are capable of developing an
12 effective and efficient monitoring system that serves the mutually shared goal of achieving a
13 full remedy in this case as soon as practicable.  If, for some reason, however, a complete,
14 informal resolution of this issue is not possible, Mr. Babcock shall provide a
15 recommendation to the Court with respect to any issues that remain.

17 　　　　(5) *Compliance Monitoring* (¶¶ 19-23)
18 　　　　The Court concludes that it is not practical to apply the compliance monitoring system
19 developed in the June 13, 2002 Stipulation, designed with the original remedy and approach
20 in mind, to the current circumstances.  Accordingly, these provisions will be discontinued.

22 　　　　C. September 13, 2004 Stipulated Order Re Quality of Patient Care and Staffing
23 　　　　The Receiver seeks to eliminate six provisions of this Order.  Plaintiffs' counsel
24 oppose elimination of the following two:
25 　　　　(1) *Treatment of High Risk Patients* (¶¶ 13-16)
26 　　　　The Court agrees that paragraphs 13, 14, and 16 are obsolete as they refer to expired
27 dates and tasks to be undertaken by the parties, former Court experts, or "independent
28 physicians."  The Receiver has not adequately explained, however, why retaining paragraph

10

15,[7] pending substitution with new procedures, pursuant to POA Objective B.3.1.2, would interfere with the current remedial processes. Accordingly, the Court will discontinue paragraphs 13, 14, and 16. At this point, however, the discontinuation of paragraph 15 appears premature. The Receiver, however, may substitute a new plan for the treatment of high risk inmates so long as it comports with the minimum requirements of the Eighth Amendment. The Receiver shall provide the parties with a copy of the substitute plan within 7 days of the effective date of the change. *See supra* note 4.

(2) *QMAT Positions* (¶ 24)

The Court agrees that paragraph 24 is obsolete and should be eliminated. The September 13, 2004 Stipulation attempted to address the issue of peer review pursuant to Quality Management Assistance Teams ("QMAT"). The QMAT plan, however, was abandoned in 2005 before the appointment of the Receiver, due to a number of flaws including unreliable data collection methods and results. *See* Hill Dec. ¶¶ 21, 24, 28; Hagar Reply Dec. ¶ 10g; POA at 43-44. Given this experience, the Receiver decided not to revive the QMAT system but to move the few remaining QMAT clinicians into direct service positions and to focus on developing a new quality review system pursuant to objectives A.7-8, and C.6. In light of this history, the Court agrees that paragraph 24 should be discontinued.

D. December 1, 2005 Order Re Interim Remedies Relating to Clinical Staffing

As noted above, the OAR explicitly directed the Receiver to make recommendations with respect to the need for modifications in the June 2002 and September 2004 stipulations. The Receiver, however, also requests that the Court discontinue eight requirements set forth

---

[7] Paragraph 15 requires "all necessary steps to ensure that high-risk patients are treated by primary care providers that are designated to treat such patients."

11

1  in its December 1, 2005 Order Re Interim Remedies Relating to Clinical Staffing.[8]  This
2  Order was based on recommendations made by the Court's then correctional expert, John
3  Hagar, and were designed to afford the class relief pending the search for, and appointment
4  of, a Receiver.  Plaintiffs oppose elimination of the following four requirements:

6        (1)-(2) *Clinical Staff Hiring Procedures* (¶ 3a-b)
7        This paragraph provides for (1) an expedited process for making employment offers to
8  clinicians within 10 days of receipt of an applicant's written job application, and (2)
9  monitoring of such process by Plaintiffs.   The Receiver is currently piloting a 24-hour hiring
10 process at certain prisons and expects to take this system state-wide within the next six to
11 twelve months.  While the Receiver states that the 10-day process conflicts with the POA's
12 Objective A.8.3.3 of implementing a 24-hour system, it is not clear why this "conflict" would
13 interfere with the Receiver's remedial process since the December 1, 2005 order provides a
14 lower floor than the Receiver's POA.  Nor has the Receiver otherwise explained why,
15 beyond a general desire for flexibility, the 10-day requirement is proving burdensome or
16 otherwise interfering with the remedial process.  The Receiver, however, may substitute a
17 new hiring plan so long as it comports with the minimum requirements of the Eighth
18 Amendment.  The Receiver shall provide the parties with a copy of any such substitute plan
19 within 7 days of the effective date of the change.  *See supra* note 4.
20       The Receiver also states that the paperwork and tracking processes related to the
21 monitoring requirements have proven unduly time consuming and expensive.  Accordingly,
22 the Court refers the monitoring portions of paragraphs 3a-b to Mr. Babcock to facilitate an
23 informal resolution of this issue.

---

[8] While the December 1, 2005 Order is not a consent decree, and thus is not governed by *Rufo,* 502 U.S. 367, it is the "general rule" that every judicial tribunal has the inherent authority "'to correct its own errors or otherwise appropriately [] modify its judgment, decree, or order.'" *Bookman v. United States*, 453 F.2d 1263, 1265 (Ct. Cl. 1972) (citation omitted).

12

(3) *Supervision of recently hired physicians* (¶ 5a)

This paragraph provides that recently hired physicians working in a state prison in which *both* the Chief Medical Officer and the Chief Physician and Surgeon positions are vacant shall be supervised by the Regional Medical Director. The Receiver states, in conclusory form, that this provision should be eliminated because it does not provide the Receiver with sufficient flexibility. *See e.g.* Hagar Dec. ¶ 26 (stating that paragraph 5(a) "is not conductive to providing a flexible yet appropriate program for adequate clinical supervision"). While, as noted above, the Court agrees, as a general principle, that the Receiver needs flexibility, and indeed, the Court has afforded him significant latitude, the Court is not persuaded that a generic invocation of the need for flexibility is sufficient to permit the Court to determine that the requested modification is appropriate at this time. Nor has the Receiver indicated that he currently has a policy that differs from that provided for in paragraph 5(a) or otherwise explained how paragraph 5(a) interferes with the remedial process. Accordingly, the requested modification is premature. The Receiver may, however, replace paragraph 5(a) with a substitute policy so long as it meets minimum Eighth Amendment standards. The Receiver shall provide the parties with a copy of any such substitute policy within 7 days of the effective date of such policy.

(4) *Program to monitor health services provided by Registries (CMG/MHA/Staff Care)* (¶ 6g)

It is clear that at a minimum this provision requires modification given that one of the identified registries no longer provides services to the State while other registries not identified do provide such services. It is unclear, however, whether modification or elimination is appropriate at this point in time. While it appears that the "program to monitor prisoner health services provided by [registries CMG/MHA/Staff Care]," *see* Dec. 1, 2005 Order at ¶ 6g, was never operational, the Court has not been provided with any information as to whether a program was developed and if so its adequacy or lack thereof, the Receiver's current actions with respect to registry monitoring or time table for action on this issue, or the

13

actual impact of this provision on the remedial process. Accordingly, the motion to eliminate paragraph 6g is denied. The Receiver may, however, substitute a new plan for the monitoring of registries so long as it comports with the minimum requirements of the Eighth Amendment. The Receiver shall provide the parties with a copy of any such substitute plan within 7 days of the effective date of such plan.

IV. PLAINTIFFS' MOTION FOR ORDER DIRECTING RECEIVER TO COMPLY WITH APRIL 4, 2003 ORDER RE PRODUCTION AND ACCESS TO DOCUMENTS, ETC.

Plaintiffs raise four issues which are addressed in turn below.

A. Review of inmate letters to Receiver and medical follow up

Both the Receiver and counsel for Plaintiffs receive a significant volume of letters from inmates relating to the issue of medical care. Plaintiffs seek an order directing the Receiver to establish a process by which Plaintiffs' counsel can efficiently review (1) letters sent by inmates to the Receiver that are related to medical care complaints and (2) the Receiver's responses thereto (including any follow-up by clinicians). As the Court ruled at the August 27, 2007 hearing, the Order Appointing Receiver was not intended to confer a blanket confidentiality on all inmate letters sent to the Receiver. On the other hand, the Court is not persuaded that Plaintiffs' counsel need to review the letters sent to the Receiver or any clinical responses thereto for the purpose of effectively advising the class. Plaintiffs' counsel receives enough letters directly to inform them of the issues being raised by such letters . The Court will refer to Mr. Babcock, however, Plaintiffs' more limited request, articulated at the hearing, that the Receiver provide them with his responses (including any follow-up by clinicians on his behalf) in those few cases in which the Receiver has intervened in an individual matter and determined that there is a serious medical issue. The Court notes, however, that responding to individual letters by the Receiver is not part of the

14

systemic remedy that the Receiver has been charged with developing and implementing, and thus monitoring of these actions is not essential.

Finally, the Court agrees that it is appropriate to develop a system to ensure that the Receiver and Plaintiffs' counsel are not engaging in a duplication of effort with respect to the same individual inmate. The Court concludes that if the Receiver and Plaintiffs' counsel approach this issue in a spirit of cooperation, they should be able to informally devise such a system with the assistance of Mr. Babcock. Accordingly, this matter will be referred to him as well.

### B. Death Reviews

The current process for reviewing inmates is seriously flawed and is currently being revamped by the Receiver. According to the Receiver, he anticipates that the new system will be operational by November 2007, at which time adequate death review documentation will be available to the Plaintiffs. The Court concludes that Plaintiffs' request for additional information during this interim period would be unnecessarily burdensome and of limited benefit. Accordingly, this aspect of Plaintiffs' motion is denied.

### C. Short-Term Measures and Cooperation issues

It appears to the Court that these last two matters are essentially a byproduct of the deterioration in the relationship between the Receiver and counsel for Plaintiffs. The Court has already discussed its plans to address this situation and thus denies this portion of Plaintiffs' motion.

## V. **CONCLUSION**

Accordingly, and good cause appearing, it is HEREBY ORDERED that:

A. The Receiver's November 15, 2007 revised Plan of Action shall identify those objectives, and/or specific portions thereof, that the Receiver plans to achieve within six months, 12 months, 24 months and 36 months from the date of the November 15, 2007 Plan of Action.

B. The Receiver's Motion for Order Modifying Stipulated Injunction and Orders Entered Herein is granted in part and denied in part as follows:

   1. June 13, 2002 Stipulated Order

      (a) *Paragraph 4* (policies and procedures)

      The motion to eliminate paragraph 4 is denied as premature. The Receiver, however, may revise or replace an existing Policy or Procedure referenced in paragraph 4 so long as the alternative comports with the minimum requirements of the Eighth Amendment. The Receiver shall provide the parties with a copy of the revised or substituted and/or eliminated Policy or Procedure within 7 days of the effective date of the change.

      (b) *Paragraph 5* (roll-out requirements)

      The motion to eliminate paragraph 5 is granted.

      (c) *Paragraph 6* (state-wide requirements)

      The motion to eliminate paragraph 6 is denied as premature. The Receiver, however, may substitute a new plan for the state-wide requirements (individually or collectively) so long as the new plan(s) comport with the minimum requirements of the Eighth Amendment. The Receiver shall provide the parties with a copy of the substitute state-wide plan(s) within 7 days of the effective date of the new plan(s).

      (d) *Paragraphs 7, 9-15* (monitoring by Plaintiffs)

      The motion to eliminate paragraphs 7 and 9-15 is denied. The Court appoints Starr Babcock, on a *pro bono* basis, to facilitate discussions between the Receiver and the parties with respect to the development of a new monitoring system. If a partial or complete resolution of this matter is achieved, the Receiver and the parties shall submit a stipulation and proposed order to modify or replace paragraphs 7 and 9-

16

15. If a complete informal resolution is not possible, Mr. Babcock shall provide a recommendation to the Court with respect to any issues that remain.

   (e) *Paragraphs* 19-23 (compliance monitoring)

   The motion to eliminate paragraphs 19-23 is granted.

   2. <u>September 13, 2004 Stipulated Order Re Quality of Patient Care and Staffing</u>

   (a) The motion to eliminate paragraphs 13-14, 16-20, 23-24 is granted.

   (b) The motion to eliminate paragraph 15 is denied as premature. The Receiver, however, may substitute a new plan for the treatment of high risk inmates so long as it comports with the minimum requirements of the Eighth Amendment. The Receiver shall provide the parties with a copy of the substitute plan within 7 days of the effective date of such plan.

   3. <u>December 1, 2005 Order Re Interim Remedies Relating to Clinical Staffing</u>

   (a) The motion to eliminate paragraphs 2a-c, 5c, and 6d-e is granted.

   (b) The motion to eliminate paragraphs 3a-b, 5a, and 6g is denied as premature and/or for lack of information. The Receiver may, however, replace one or more of these paragraphs with a substitute policy so long as it meet minimum Eighth Amendment standards. The Receiver shall provide the parties with a copy of any such substitute policy within 7 days of the effective date of such policy.

   (c) The Court refers to Starr Babcock, on a *pro bono* basis, the monitoring portions of ¶¶ 3a-b for the purpose of facilitating an informal resolution of this issue.

Any dispute regarding substitutions or changes made pursuant to this paragraph (Paragraph V(B) of this Order), shall be governed by the procedures set forth in note 4 *supra*.

   C. Plaintiffs' Motion for Order Directing Receiver to Comply with April 4, 2003 Order Re Production and Access to Documents is denied. The Court, however, refers the following issues to Mr. Babcock for the purpose of facilitating an information resolution: (1)

17

the development of a system designed to avoid the duplication of effort with respect to letters received from individual inmates regarding medical care, and (2) whether the Receiver should provide Plaintiffs with his responses (including any follow-up by clinicians on his behalf) in those few cases in which the Receiver has, in response to a letter from an inmate, intervened in an individual case and determined that there is a serious medical issue.  If a partial or complete resolution of these two matters is achieved, the Receiver and the parties shall submit a stipulation and proposed order.   If a complete informal resolution is not possible, Mr. Babcock shall provide a recommendation to the Court with respect to any issues that remain.

D.  Plaintiffs' Motion to Strike Certain Evidence from Reply Brief is denied. Plaintiffs' Alternative Motion for Leave to File Sur-Reply is granted.

**IT IS SO ORDERED.**

Dated: September 6, 2007

THELTON E. HENDERSON
UNITED STATES DISTRICT JUDGE

**Starr Babcock**
**State Bar of California**
**180 Howard Street**
**San Francisco, CA 94117**

Senior Executive, State Bar of California

2000 – 2007      State Bar of California
                 Special Assistant to the Executive Director and Senior Executive

Serve as the Special Assistant to Executive Director Judy Johnson and at the direction of the Board of Governors managed the implementation of a comprehensive governance and strategic planning initiative for the State Bar. (In 2004, the Board adopted a long-term strategic plan and a continuing operational planning model consistent with judicial branch standards). Other duties include serving as State Bar staff liaison to the California Supreme Court, Judicial Council, and the California Judge's Association. Also participated in the drafting and development of SB 479, The Attorney Diversion and Assistance Program, later named the Lawyer Assistance Program (LAP).

Current assignments also include the oversight and management of all member programs including the LAP, Minimum Continuing Legal Education, State Bar Section Administration, and the Member Service Division.

1996-2000        Administrative Office of the Courts
                 Judicial Council of California
                 Managing Attorney

Direct management and supervision of staff attorneys and supporting administrative staff providing advice and counsel to the Chief Justice, the Judicial Council and its advisory committees, and the appellate and trial courts. Management and oversight responsibility for all litigation affecting the Judicial Council, the Administrative Office of the Courts, the trial courts and trial judges, and the appellate courts and justices, and trial court employees. Other duties included staffing the Jury Instructions Task Force and the Complex Litigation Pilot Program. participating in the preparation and presentation of the Office of General Counsel budget proposals as part of the yearly judicial branch budget process, and participating in the judicial branch strategic planning process.

Project manager for the implementation of Proposition 220 which to the abolishment of municipal courts and the unification of all California trial courts as superior courts. The project required significant negotiation with many trial courts and compliance with the state finance budget change proposal process to ensure compliance with overall planning deadlines.

**Government Practice**

Prosecuted attorneys charged with ethics violations in administrative proceedings as a member of the State Bars' Office of the Chief Trial Counsel and the Office of General Counsel (1988 to 1996). Lead counsel in the Keller/ Brosterhous arbitrations. Also argued

19

12 discipline and admission cases before the California Supreme Court and gave advice and counsel to the Board of Governors and its standing committees.

**Private Practice**

Practiced for 12 years in a small firm and as a solo practitioner with an emphasis on medical and legal malpractice cases as part of a general personal injury practice. Tried cases to verdict in both state and federal courts and acted as an arbitrator/mediator by court appointment and agreement of private litigants.

**Other Public Service**

1995-- Appointed by then Chief Judge Thelton E. Henderson as Chair of a Magistrate Selection Committee for the Northern District of California.

1998-2000-- Served as a member of the State Bar Committee of Bar Examiners (CBX). CBX is a statutory committee within the State Bar that develops and administers the bar exam, screens applicants for good moral character, and regulates California's law schools.

2002-- Appointed by Chief Justice Ronald M. George to serve on the California Supreme Court's Advisory Committee on Lawyer Regulation.

**Education**

Georgetown University Law Center                Licensed in California