IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>    Defendants. | NO. CIV S-90-0520 LKK JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>    Defendants. | NO. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br><u>ORDER ON MOTION FOR RECONSIDERATION AND/OR CLARIFICATION AND ORDER CONSOLIDATING REPUBLICAN ASSEMBLY AND SENATE INTERVENTIONS</u> |

  On October 23, 2007, the Sheriff, Probation, Police and Corrections Intervenors, the Republican Assembly and Senate Intervenors, and the District Attorney Intervenors filed a motion for reconsideration or clarification of the court's October 10, 2007 order bifurcating these proceedings and limiting the participation of the statutory intervenors in the first phase of the proceedings. The motion is addressed to the court's "inherent power" to modify its interlocutory orders prior to entry of final judgment. *Balla v. Idaho State Board of Corrections*, 869 F.2d 461, 465 (9th Cir. 1989) (citing *Marconi Wireless Telegraph Co. v. United States*, 320 U.S. 1, 47-48 (1943) and *John Simmons Co. v. Grier Brothers Co.*, 258 U.S. 82, 88 (1922)). *See* Mot. at 7. The moving intervenors request that they "be able to

fully participate in all aspects of the litigation" or, in the alternative, that Phase I be limited to the question of whether overcrowding is the primary cause of the violation of a federal constitutional right, and the remaining issues be resolved in Phase II with full participation by all intervenors. Mot. at 1-2. The *Coleman* and *Plata* plaintiffs have filed an opposition to the motion, and the moving intervenors have filed a reply.

The moving intervenors contend that there is no statutory basis for "excluding" them from any phase of this litigation, and that they were not given advance notice that they "should be prepared to address the propriety of exclusion from any portion of the proceedings." Mot. at 10. Neither of these contentions has merit. First, pursuant to the court's broad authority to make appropriate orders for the efficient conduct of proceedings, the court has limited the role of the intervenors to those matters in which they have a demonstrated interest. *See* Oct. 10, 2007 Order at 4. Nothing in the governing statute precludes this limitation.[1] The statute provides that officials and entities described therein have the right to intervene "in any proceeding relating to" a prisoner release order and grants standing to such parties "to oppose the imposition or continuation in effect of such relief." 18 U.S.C. § 3626(a)(3)(F). The moving intervenors have been granted the right of intervention afforded by the statute. Under the court's order they may participate fully in Phase II, which relates to the imposition and scope of a prisoner release order. Phase I relates only to the question of whether crowding is the primary cause of a constitutional violation and whether alternative relief would be adequate to resolve the problem. Only

---

[1] The moving intervenors rely on *Bowers v. City of Philadelphia*, Case No. 06-CV-3229, 2006 WL 2601604 (E.D. Pa. Sept. 8, 2006), to support their contention that they should also be allowed "full participation" in all aspects of these proceedings. *Bowers* was brought by a class of pre-trial detainees alleging violations of their constitutional rights caused by "severe overcrowding and lack of adequate facilities." *Bowers*, 2006 WL 2601604, at *1. The broad dicta in the opinion notwithstanding, the issue before the court in *Bowers* was the proper timing for intervention by a district attorney. The court allowed intervention while the case was still before a single district judge. The decision was based on that court's prudential determination that the district attorney "may very well play an active role in" resolution of the case, as well as that court's construction of relevant provisions of 18 U.S.C. § 3626. This court is not persuaded that the reasoning in *Bowers* requires reconsideration of the bifurcation order.

2

when Phase I is completed does the question of the imposition of a prisoner release order come before the court.

Second, all parties, including the intervenors, were given notice in the court's August 29, 2007 order that they should be prepared to advise the court "of their respective positions regarding the intervenors' roles in these proceedings." Aug. 29, 2007 Order at 2. Moreover, throughout the hearing on September 24, 2007, the court made it clear that the intervenors would "not be permitted to extend these proceedings through duplicative or unnecessary discovery or arguments." Transcript of Sept. 24, 2007 Proceedings at 19.[2]

Phase I of these proceedings focuses on whether two conditions precedent to consideration of a prisoner release order have been met: first, that "'crowding is the primary cause of the violation of a Federal right'" and second, that "'no other relief [other than a prisoner release order] will remedy the violation of the Federal right.'" Oct. 10, 2007 Order at 3 (quoting 18 U.S.C. §§ 3626(a)(3)(E)(I), (ii)). Phase II, if it is reached by the court, would address issues related to a prisoner release order, including "the effects of such an order on public safety, as well as whether such an order is narrowly drawn, extends no further than necessary, and is the least intrusive means necessary to correct the violation of the Federal right." *Id.* at 4.

The moving intervenors contend that bifurcation of the proceedings precludes them from presenting evidence in Phase I of several programs presently being implemented or expected to be implemented by various public officials. They assert that such evidence is relevant to resolving the second question in Phase I, whether any relief other than a prisoner release order will remedy the constitutional violation. None of the evidence that the moving intervenors wish to submit is relevant to this second question, because none of it concerns "relief [other than a prisoner release order]." The statute defines a prisoner release order very broadly. The definition includes "any order . . . that has the purpose or effect of

---

[2] The moving intervenors also point to the possibility that plaintiffs might seek some form of preliminary injunctive relief if they prevail in Phase I. There is nothing in the record that suggests that such relief would be sought, if at all, before the commencement of Phase II, or that any such relief might relate to a prisoner release order.

3

reducing or limiting the prison population." 18 U.S.C. § 3626(g)(4). All but one of the programs described by the intervenors are intended, by intervenors' own admission, to reduce or limit the state prison population.[3] Evidence related to these types of programs therefore does not bear on the second question of Phase I, but on issues that will arise, if at all, in Phase II. The intervenors will be afforded a full opportunity to present this evidence in Phase II of these proceedings, should this court reach Phase II.

It is worth noting that the statute's broad definition of a "prisoner release order" substantially constrains the scope of the second question of Phase I, because in addressing that question we can consider only the small universe of remedies that would not have "the purpose or effect of reducing or limiting the prison population." This includes such remedies as increasing the number of staff, improving staff training, and acquiring more or better medical equipment. The limited scope of this question reinforces our holding that the moving intervenors will not be prejudiced by the constraints on their participation in Phase I. If the court finds it necessary to reach Phase II, the intervenors will then have the opportunity to present evidence on the types of programs they discuss in their motion, because that evidence is directly related to whether any prisoner release order is "narrowly drawn, extends no further than necessary . . . and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A).

---

[3] The District Attorney Intervenors discuss Senate Bill 618, which they say "authorizes counties to develop comprehensive multi-agency plans to prepare non-violent offenders for re-entry into their communities upon their release on parole." Mot. at 17-18. The stated purpose of the measure is to, *inter alia*, decrease "the rate of recidivism and the concomitant prison population." *See* Mot. at 19. Similarly, the Sheriff Intervenors propose to tender evidence of "new and innovative community re-entry programs . . . designed to improve public safety by reducing recidivism." *Id.* at 20. The Probation Intervenors plan to present evidence of "a plan to provide enhanced probation services for 18 to 25 year olds" which, again, they argue "can result in a significant reduction in recidivism in this group, contributing to a significant and long-term decline in prison population." *Id.* at 21.

In their reply, the intervenors assert that these programs are only presented as examples and "are not the only programs or options about which Intervenors wish to introduce evidence." Reply at 3. With the exception of the bed expansion plan in AB 900, discussed below, the intervenors have presented nothing that suggests that they have a particular interest in, or evidence relevant to, court-ordered relief short of a prisoner release order that might remedy the Eighth Amendment violations in either of the underlying actions.

4

The moving intervenors propose that we read the statutory definition of "prisoner release order" very narrowly, so that in addressing the second question of Phase I we would consider "options which may lead to reductions in [sic] prison population by means other than a compelled release or cap." Reply at 3. The intervenors stand to gain nothing by this reading of the statute. Even if we accepted their definition – which flatly contradicts the plain language of the statute – we would still be compelled by efficiency concerns to bifurcate the proceedings as the intervenors now suggest: in Phase I we would hear evidence related to whether crowding is the primary cause of the constitutional violation, and we would limit intervenors' participation in this phase for the reasons given in our October 10, 2007 order. We would then be required to move the question of alternative relief to Phase II. At this point, the intervenors would be in precisely the same position they are in now: only if we reached Phase II would they present evidence on the types of programs they describe in their motion. The only difference would be that intervenors would be able to participate in the examination of the question whether such relief as increased staffing would remedy the violations, an area in which they have no particular interest or expertise.[4]

For all of the foregoing reasons, the October 23, 2007 motion of the Sheriff, Probation, Police and Corrections Intervenors, the Republican Assembly and Senate Intervenors, and the District Attorney Intervenors for reconsideration or clarification of this

---

[4] The only evidence that any of the moving intervenors wish to submit in Phase I that does not concern a program with "the purpose or effect of reducing or limiting the prison population" is evidence related to "the intent, status, and effect of Assembly Bill 900," which provides for the construction of new beds. Mot. at 19. In Phase I, the court must decide whether there is any "relief" other than a prisoner release order that will remedy the Eighth Amendment violations in these cases. This bill, however, does not constitute "relief" that may be the subject of a court order, because the legislature has already enacted the essential elements of the plan. *See* 18 U.S.C. § 3626(g)(9). Many of the other possible solutions discussed by moving intervenors are also existing programs created by acts of the state legislature and are therefore not "relief" that the court can consider in Phase I. The court does not reach the question of what evidence of legislative intent concerning AB 900 might be relevant to these proceedings, but notes that well-established principles of construction govern the interpretation of legislative enactments.

The Republican Legislator Intervenors also contend that "unlike Defendants," they "are equipped to address the challenges of implementing AB 900 from within the State Assembly and Senate." Mot. at 19-20. The implementation of this bill, however, falls to the State executive officials who are the original parties to this action, and not to a subset of state legislators.

5

court's October 10, 2007 order is GRANTED IN PART AND DENIED IN PART. After consideration of the arguments presented by the parties and review of the relevant provisions of law, the bifurcation order filed October 10, 2007 is confirmed. The scope of matters to be considered in Phase II of these proceedings, should this action reach that phase, is clarified in accordance with this order.

On November 2, 2007, the moving intervenors filed a request for a stay of the October 10, 2007 order pending ruling on their motion for reconsideration. Intervenors' November 2, 2007 request for a stay is moot and is therefore DENIED.

The Republican Senate and Assembly Intervenors intervened in this action separately. However, they have overlapping interests, as demonstrated by the fact that they made a consolidated argument in the October 23, 2007 motion, and refer to themselves collectively as the "Legislator Intervenors." These interventions shall therefore be consolidated, and the two groups of legislators shall jointly file all future motions and other documents.

**IT IS SO ORDERED.**

Dated:      11/9/07            /s/
                               STEPHEN REINHARDT
                               UNITED STATES CIRCUIT JUDGE
                               NINTH CIRCUIT COURT OF APPEALS


Dated:      11/9/07            _____
                               LAWRENCE K. KARLTON
                               SENIOR UNITED STATES DISTRICT JUDGE
                               EASTERN DISTRICT OF CALIFORNIA


Dated:      11/9/07            _____
                               THELTON E. HENDERSON
                               SENIOR UNITED STATES DISTRICT JUDGE
                               NORTHERN DISTRICT OF CALIFORNIA