FUTTERMAN & DUPREE LLP
MARTIN H. DODD (104363)
JAMIE L. DUPREE (158105)
160 Sansome Street, 17th Floor
San Francisco, California 94104
Telephone: (415) 399-3840
Facsimile: (415) 399-3838
martin@dfdlaw.com

*Attorneys for Receiver*
Robert Sillen

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCIANO PLATA, et al., | Case No. C01-1351 TEH |
| *Plaintiffs,* | **RECEIVER'S SUPPLEMENTAL APPLICATION NO. 2 FOR ORDER WAIVING STATE CONTRACTING STATUTES, REGULATIONS AND PROCEDURES, APPROVING RECEIVER'S SUBSTITUTE PROCEDURE FOR BIDDING AND AWARD OF CONTRACTS** |
| v. | |
| ARNOLD SCHWARZENEGGER, et al., | |
| *Defendants.* | |

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................1

FACTUAL BACKGROUND ................................................................................................1

    A.    Appointment of the Receiver ..............................................................................1

    B.    Receiver's Master Application for a Waiver of State Contracting Law ................2

    C.    The June 4, 2007 Order Granting the Master Application ....................................2

    D.    Description Of The Projects That Are The Subject Of This Supplemental Application. ........................................................................................................5

    E.    Good Cause Exists To Waive State Contracting Law And Procedures For The Above-Referenced Projects To Ensure That Receiver Can Achieve His Court-Ordered Mandate To Provide Constitutional Medical Care To The State's Prisoners. ......................................................................................10

    F.    The Receiver Will Comply With The Substitute Bidding Process Procedures Approved By The Court In Its June 4, 2007 Order, Which Comply With The Essential Goals Of State Contracting Procedures....................12

CONCLUSION.................................................................................................................13

FUTTERMAN & DUPREE LLP

1

## TABLE OF AUTHORITIES

2

Page(s)

3  **Statutes and Rules**

4  Gov't Code § 13332.09 ...................................................................................11

5  Gov't Code § 13332.10 ...................................................................................12

6  Gov't Code § 13332.19 ...................................................................................12

7  Gov't Code § 14616 ........................................................................................11

8  Gov't Code § 14660 ........................................................................................12

9  Gov't Code § 14669 ........................................................................................12

10  Gov't Code § 15815 ........................................................................................12

11  Gov't Code § 15853 ........................................................................................12

12  Gov't Code §§ 14825 – 14828 ........................................................................11

13  Gov't Code §§ 14835-14837 ...........................................................................11

14  Gov't Code §§ 4525 – 4529.20 .......................................................................11

15  Gov't Code §§ 4530-4535.3 ............................................................................11

16  Gov't Code §§ 7070-7086 ...............................................................................11

17  Gov't Code §§ 7105-7118 ...............................................................................11

18  Mil. & Veterans Code §§ 999-999.13 .............................................................11

19  PCC § 10129.....................................................................................................11

20  PCC § 10314.....................................................................................................11

21  PCC § 10333.....................................................................................................11

22  PCC § 10346.....................................................................................................11

23  PCC § 10351.....................................................................................................11

24  PCC § 10365.5..................................................................................................12

25  PCC § 10367.....................................................................................................11

26  PCC § 10369.....................................................................................................11

27  PCC § 6106.......................................................................................................11

28  PCC §§ 10109 – 10126......................................................................................11

ii

1  PCC §§ 10180 – 10185................................................................................................11

2  PCC §§ 10290 – 10295................................................................................................11

3  PCC §§ 10301 – 10306................................................................................................11

4  PCC §§ 10340 – 10345................................................................................................11

5  PCC §§ 10420 – 10425................................................................................................11

6  PCC §§ 12100 – 12113................................................................................................11

7  PCC §§ 12120 – 12121................................................................................................11

8  PCC §§ 12125 – 12128................................................................................................11

9  2 CCR §§ 1195 – 1195.6.............................................................................................11

10

11  **Other Authorities**

12  State Administrative Manual ("SAM") §§ 3500 – 3696.3..........................................11

13  SAM §§ 4800 – 4989.3................................................................................................11

14  SAM §§ 5200 – 5291...................................................................................................11

15  State Contracting Manual ("SCM") § 3.02.4.............................................................12

16  SCM §§ 4.00 – 4.11....................................................................................................11

17  SCM §§ 5.00 – 6.40....................................................................................................11

18  SCM vol. 2..................................................................................................................11

19  SCM vol. 3..................................................................................................................11

20  California Prison Health Care Receivership Corporation. Prison Medical Care
21     System Reform: Plan of Action. May 2007.........................................................6, 7

22  Gould DA, et al. New York City Palliative Care Quality Improvement Collaborative.
       *Joint Commission Journal on Quality and Safety*. 2007: 33.307 ................................9

23  NIH National Asthma Education and Prevention Program. Expert panel report: guidelines
24     for the diagnosis and management of asthma: update on selected topics 2002..........................6

25  The Breakthrough Series: IHI's Collaborative model for achieving breakthrough
       improvement. (2003) Boston, Massachusetts: Institute for Healthcare Improvement ...............9

26  Wagner EH. Chronic disease management: What will it take to improve care for
       chronic illness? Effective Clinical Practice. 1998; 1(1): 2-4........................................7

27

28

Futterman &
Dupree LLP

iii

Receiver's Suppl. Contracting Waiver Application No. 2
C01-1351 TEH

# INTRODUCTION

Receiver Robert Sillen ("Receiver") submits this Supplemental Application No. 2 for an order (1) waiving any requirement that the Receiver comply with State statutes, rules, regulations and/or procedures governing the notice, bidding, award and protests with respect to contracts (collectively "State Contracting Procedures") necessary for the retention of consultants to assist in the investigation, analysis, design and implementation of quality improvement programs within the prison medical system for the purpose of eliminating preventable deaths, including specifically a pilot project for preventing deaths from asthma; and, (2) approving substituted notice, bidding and contract award procedures for such projects identical in form to the procedures approved by this Court in its order, dated June 4, 2007, granting Receiver's Master Application for a Waiver of State Contracting Law for certain projects (the "June 4, 2007 Order").

The Receiver makes this application on the grounds that if he were required to comply fully with existing State Contracting Procedures, he would be unreasonably constrained in his ability to accomplish the goals the Court has set for him.  In order for the Receiver to fulfill in a timely fashion the charge this Court has given him, the Receiver requires the waiver requested in this application so that he is not hampered by the same bureaucratic procedures that have prevented the State itself from solving the problems of the California prison medical delivery system.  Adherence to the streamlined contracting procedures approved by this Court in its June 4, 2007 Order will further the goals of the State Contracting Procedures, but without stalling the Receiver's progress in implementing the changes necessary to provide constitutional medical care.

# FACTUAL BACKGROUND

## A.    Appointment of the Receiver

In the face of the unprecedented and ongoing crisis in the California prison health care system and the apparent inability of the State to address that crisis, on February 14, 2006, this Court appointed the Receiver and gave him a mandate to move forward expeditiously to remedy the deficiencies in the system.  The Court vested in the Receiver the duty to control, oversee,

1

1 │ supervise and direct all administrative, personnel, financial, accounting, contractual, legal and

2 │ other operational functions of the medical delivery component of the California Department of

3 │ Corrections and Rehabilitation ("CDCR").  In addition to those very broad powers, this Court

4 │ established a procedure by which the Receiver could request waivers of State laws and contracts

5 │ when necessary for him to accomplish his work.

6 │ 7 │ 8 │ 9
> In the event, however, that the Receiver finds that a state law, regulation, contract, or other state action or inaction is clearly preventing the Receiver from developing or implementing a constitutionally adequate medical health care system, or otherwise clearly preventing the Receiver from carrying out his duties as set forth in this Order, and that other alternatives are inadequate, the Receiver shall request the Court to waive the state or contractual requirement that is causing the impediment.

10 │ Order Appointing Receiver ("Order"), filed February 14, 2006, p. 5:4-9.

11 │ **B.     Receiver's Master Application for a Waiver of State Contracting Law**

12 │         On April 17, 2007, the Receiver filed a master application for an order (1) waiving any

13 │ requirement that the Receiver comply with State Contracting Procedures with respect to the

14 │ contracts necessary to implement certain projects described therein; and (2) approving substituted

15 │ notice, bidding and contract award procedures for such projects (the "Master Application").  In

16 │ that Master Application, the Receiver set out in some detail the complex web of State

17 │ Contracting Procedures impeding his ability to fulfill his court-ordered mandate to provide

18 │ constitutional medical care to the State's prisoners, and his proposed process to streamline those

19 │ procedures to accomplish the goals the Court has set out for him.  The Master Application was

20 │ designed to thoroughly address the legal and factual rationale for waivers of State Contracting

21 │ Procedures in the context of this receivership, and to permit subsequent follow-up waiver

22 │ applications (such as this one) without the need to repeat such rationale.  Master Application,

23 │ p. 3:11-15.

24 │ **C.     The June 4, 2007 Order Granting the Master Application**

25 │         In the June 4, 2007 Order, the Court granted the Receiver's Master Application.  In that

26 │ Order, the Court noted "that absent a waiver, the Receiver would ultimately be constrained by the

27 │ very burdens that have impeded the State in dealing with the undisputed challenges in the prison

28 │ health care system.  It would be a hollow gesture to appoint a Receiver only to let him to become

1   entangled in the same bureaucratic quagmire that has thwarted prior efforts to provide

2   constitutional medical care. As such, the Court concludes that the instant application for a

3   waiver has merit." June 4, 2007 Order at p. 4:23-5:2 (citations and quotations omitted).

4        The Court also approved a streamlined contracting procedure for the Receiver's use in

5   connection with the projects listed in the Master Application. The three alternative bidding

6   processes approved in the June 4, 2007 Order are:

7        (1)    Expedited Formal Bids

8        The Receiver shall utilize the expedited formal bidding process on all higher cost

9   contracts – i.e., those contracts whose total contract price is estimated to be valued at $750,000 or

10  more. The expedited formal bidding process shall also presumptively apply to contract whose

11  total contract price is estimated to be valued at between $75,000 - $750,000, unless the Receiver

12  determines that urgent circumstances require use of the urgent informal bidding process. June 4,

13  2007 Order at p. 6:6-11.

14  *Expedited Formal Bidding Procedures*

15  1.    The Receiver shall develop and issue a Request for Proposal ("RFP") and will
          formally solicit at least three bids by posting the RFP on the Receiver's website
16        and publishing the solicitation in a trade publication of general circulation and/or
          an internet-based public RFP clearinghouse for a period of at least one week (7
17        calendar days). The Receiver shall notify the parties whenever an RFP is posted
          on the Receiver's website. The Receiver may, in his discretion, identify and
18        solicit additional bidders. If fewer than three bidders respond to the RFP, the
          Receiver shall make reasonable, good faith efforts to identify additional bidders
19        and solicit their responses to the RFP.

20  2.    The period for response to the RFP shall be at least 30 days.

21  3.    The Receiver will appoint a 3-person selection committee consisting of persons
          with relevant experience, none of whom are affiliated with, or otherwise have any
22        conflict with, any bidder or the Receiver (or any member of his staff).

23  4.    Criteria for selection of the successful bidder may, in the reasonable determination
          of the Receiver, include but not be limited to such factors as cost, reputation of the
24        bidder for responsiveness and timeliness of performance, quality of service or
          product performance, ability of the bidder to provide innovative methods for
25        service delivery, and other similar factors the Receiver deems relevant.

26        a.    The Receiver (or, at his direction, the selection committee) may conduct
                interviews of some or all bidders, answer questions posed by bidders and
27              provide additional information to bidders. For contracts whose total
                contract price is estimated to be valued at $750,000 or more, the selection
28              committee shall conduct interviews of at least the tope two bidders.

FUTTERMAN &
DUPREE LLP

1        b.      The selection committee shall provide a recommendation to the Receiver.

2        c.      The Receiver will retain the discretion to reject the recommendation of the
                 selection committee and award the contract to another bidder deemed
3                more qualified or to no one.

4    5.  The Receiver shall list all bidders in his quarterly progress reports to the Court
         and identify the successful bidder.  If fewer than three bidders responded to the
5        RFP and/or any bidder responded to a direct solicitation by the Receiver, the
         Receiver will so note that fact in the report.
6

7    June 4, 2007 Order at p. 6:13-7:9.

8        (2)     Urgent Informal Bids

9        The Receiver may use an alternative second process when urgent circumstances require

10   the Receiver to move more quickly than permitted by the expedited formal bidding process, but

11   competitive bidding is still required to the extent possible.  The Receiver may utilize the urgent

12   informal bidding process for contracts whose total contract price is estimated to be valued at

13   between $75,000 - $750,000 if he determines that urgent circumstances do not permit sufficient

14   time to utilize the expedited formal bidding process because:

15       a)      the additional delay that would result from utilizing the expedited formal

16               bidding process would substantially risk endangering the health or safety

17               of inmates or staff, or

18       b)      the contract is essential to the "critical path" of a larger project, and the

19               additional delay that would result from utilizing the expedited formal

20               bidding process would significantly interfere with timely or cost-effective

21               completion of the larger project.

22       The Receiver may also utilize the urgent informal bidding process for any contract whose

23   total contract price is reasonably estimated to be valued at less than $75,000.

24   June 4, 2007 Order at p. 7:11-25.

25       *Urgent Informal Bidding Process*

26   1.  The Receiver will make reasonable, good faith efforts to identify and solicit at
         least three proposals and will accept additional unsolicited bids that may be
27       submitted.

28

FUTTERMAN &
DUPREE LLP

2.   The Receiver may, in his discretion, develop an RFP prior to soliciting bidders, establish a response period with respect to any such RFP and/or establish a selection committee to assist in the selection of the successful bidder.

3.   Criteria for selection of the successful bidder, in the reasonable determination of the Receiver or his staff, may include, but will not be limited to, cost, reputation of the contractor for responsiveness and timeliness of performance, quality of product or service, ability of the bidder to provide innovative methods for service delivery, and other similar factors the Receiver deems relevant.

4.   The Receiver will retain the discretion to award the contract to any bidder or to no bidder.

5.   The Receiver will identify all bidders, including the successful bidder, in his quarterly progress reports to the Court. For contracts whose total contract price is estimated to be between $75,000 - $750,000, the Receiver shall also provide the explanation for his determination that one (or both) of the criteria for using the urgent informal bid process were satisfied. If the Receiver is unable to obtain at least three bidders, he will note that fact in the report.

(3)   <u>Sole Source Bidding</u>

Finally, the Receiver may utilize a sole source when he has determined, after reasonable effort under the circumstances, that there is no other reasonably available source. Sole source bidding shall only be used as a last resort. The Receiver shall identify any contract that is sole-sourced in the Receiver's quarterly progress reports to the Court along with an explanation as to the basis for the Receiver's determination that no other sources are reasonably available. June 4, 2007 Order at p. 8:16-23.

**D.   Description Of The Projects That Are The Subject Of This Supplemental Application.**

**Quality Improvement Projects, Including Specifically The Asthma Initiative[1]**

*a.   Description of the problem.* In 2003, as part of the *Plata* remedial program, the CDCR introduced a nominal chronic care program to address the deficiencies of the sick call model of primary care. Inmates with one of nine conditions were to be enrolled as chronic care patients and seen at regular intervals by qualified providers. The *Plata* remedial program was a failure on many fronts for many reasons, including inadequate medical records, almost non-existent information technology, and a shortage of qualified clinicians and managers.

---

[1] The facts set forth in this portion of the application are based on the Declaration of Terry Hill, M.D. ("Hill Decl."), filed herewith.

5

1    In the Findings of Fact and Conclusions of Law ("FFCL"), dated October 3, 2005, this

2    Court concluded that very significant numbers of preventable deaths occurred in the prisons each

3    year, as many as one every six or seven days. FFCL, pp. 10-13.   In his efforts to address these

4    fundamental problems, the Receiver is rapidly deploying healthcare information technology and a

5    sophisticated pharmacy management system, and hiring increasing numbers of qualified

6    clinicians and managers.  For example, the Pharmacy and Therapeutics Committee has adopted

7    medication guidelines for acute and chronic asthma based on the National Asthma Education and

8    Prevention Program Expert Panel Report (Update 2002).[2]  But the CDCR still lacks a quality

9    improvement infrastructure, clinicians are unfamiliar with process redesign, and episodic care

10   rather than planned care is still the norm.  There is still no care coordination or case management

11   program, no decision support, and precious little patient education.

12   An analysis of all CDCR inmate-patient deaths occurring in 2006 revealed that serious

13   problems still remain.  According to that analysis, there were 18 preventable deaths and as many

14   as 48 possibly preventable deaths.[3]  The study concluded that asthma accounted for the single

15   highest number of preventable deaths.  The analysis goes on to describe the system inadequacies

16   and imperatives for change:

17       CDCR medical staff has been working in an environment of care characterized by
         crowded and poorly equipped clinical areas.  The medical record systems are
18       outdated and medical information is difficult to retrieve.  The dispensing of
         prescribed drugs is often delayed, and there is an unreliable system for refilling
19       medications for the treatment of chronic medical diseases such as diabetes,
         hypertension, asthma and coronary heart disease.  The drug profile information is
20       unreliable.  Practices in many of the prisons focus on episodic care rather than
         continuity of care and preventive medicine.  The environment does not guarantee
21       patient confidentiality, and the culture does not promote patient advocacy.

22       The CDCR must create a culture of patient safety, in which clinicians readily
         identify mistakes and system vulnerabilities and in which all staff share in the
23       responsibility for optimal patient outcomes. Systems should be reviewed or
         redesigned to support this end.
24

25   The analysis concludes with a number of recommendations for quality improvement initiatives,

26   _____
     [2] NIH National Asthma Education and Prevention Program. Expert panel report: guidelines for the diagnosis and
27   management of asthma: update on selected topics 2002. Available at
     http://www.nhlbi.nih.gov/guidelines/archives/epr-2_upd/index.htm.
28   [3] California Prison Health Care Receivership Corporation. Prison Medical Care System Reform: Plan of Action. May
     2007. See www.cprinc.org/materials.htm.

1  which the Receiver anticipates implementing in the coming months and years.  Because asthma

2  figured so prominently in the deaths studied, the analysis recommended that asthma be the focus

3  of the first full-fledged quality initiative.

4         *b.*    *Description of the Project.*  The Receiver's Plan of Action[4] draws heavily

5  from work by the Institute of Medicine ("IOM") over the past decade in response to the quality

6  crisis within mainstream American health care.  According to the IOM, health care should be

7  safe, effective, patient-centered, timely, efficient, and equitable.  The IOM has endorsed adoption

8  of chronic care programs.

9        The Chronic Care Model[5] includes a number of interlocking components that together

10  encourage high-quality chronic disease management.  The Chronic Care Model has been

11  successfully implemented in settings serving uninsured patients, the homeless, migrants, and

12  minority populations, often using the Model for Improvement promulgated by the Institute for

13  Healthcare Improvement.[6]

14        The Receiver intends to embark on a series of quality improvement ("QI") projects.  In

15  keeping with the recommendations of the 2006 inmate death analysis, the first of the QI

16  programs that the Receiver will undertake is an Asthma Initiative.  The Asthma Initiative aims to

17  eliminate preventable patient deaths due to undiagnosed or uncontrolled asthma.  It will also act

18  as a model for, and provide a testing ground for implementation of, future interdisciplinary QI

19  projects.  For example, the Asthma Initiative will engage all six of the organizational change

20  strategies that the IOM considers necessary to improve health care: (a) redesign of care processes

21  based on best practices; (b) use of information technology for clinical information and support

22  for caregivers; (c) increasing and deepening clinical knowledge and skills; (d) development of a

23  team-based, rather than a physician-centric, delivery system; (e) coordination of care; and (f)

24  incorporation of performance and outcome measurements for improvement and accountability.

25  In addition, the Asthma Initiative will demonstrate how to use data to inform the clinical care

26  [4] California Prison Health Care Receivership Corporation. Prison Medical Care System Reform: Plan of Action. May
2007. See www.cprinc.org/materials.htm.

27  [5] Wagner EH. Chronic disease management: What will it take to improve care for chronic illness? *Effective Clinical
Practice.* 1998;1(1):2-4.

28  [6] See: How to Improve at www.ihi.org/IHI/Topics/Improvement/ImprovementMethods/HowToImprov.

FUTTERMAN &
DUPREE LLP

1    process while orienting our providers and management staff to patient safety issues.  The end

2    result of this specific disease management initiative will be a heightened awareness of chronic

3    disease management leading to the improved care of other conditions and the beginning of a

4    safety culture.

5         The focus of the Asthma Initiative will be full-fledged, real-world practice redesign.  The

6    initiative leaders and ground-level clinicians must work together to address a multitude of issues

7    to redesign the processes of care.  For example, there is no mystery with regard to the need to

8    assess the breathing capacity of asthma patients at each visit, but in the CDCR there is no

9    agreement as to how to do so.  Who will do the assessments, and how?  Who will do the

10   documentation, and how should verbal communication occur between patient and nurse, nurse

11   and physician, physician and patient?  What is the role of a respiratory therapist?  How can we

12   assure that information flows from on-site urgent care, off-site emergency department, or off-site

13   consultant back to the yard clinic at the next appointment?  More specifically, how should we

14   address these questions now—in a system with chaotic medical records, pharmacies and

15   laboratories, in which nurses and physicians have rarely worked together in teams, and in which

16   custody and healthcare staff have often worked at cross purposes?

17        In order to achieve significant practice change and clinical improvement, the Asthma

18   Initiative will involve headquarters, regional, and institutional staff, pharmacy/Maxor staff, and

19   the external clinical and organizational change consultants.  The local interdisciplinary teams will

20   include provider, nursing, pharmacy, health records, and clerical staff.  Each local

21   interdisciplinary team will be lead by a clinical champion well-respected by his/her peers.  The

22   external clinical change experts will provide a change package, project management, and QI

23   technical support.  The project will follow established clinical guidelines.  The pharmacy

24   information system will identify patients using asthma medications.  Data on medication usage

25   will help stratify patients by severity.

26

27

28

1    The Asthma Initiative design will derive from the original Breakthrough Series Learning
2 Collaboratives.[7] Adaptations of the collaborative model have proven to be effective and
3 efficient.[8] The initiative will engage a small number of facilities initially, but staff from all 33
4 prisons should have the opportunity to participate in the initiative within a year. The initial
5 Asthma Initiative sites will be selected based on local leadership capacity, organizational
6 resource availability, pharmacy stability, and prior implementation of a pharmacy information
7 system, all factors that will also contribute to success in the Asthma Initiative. The pilot sites
8 chosen will have been exposed to QI tools and process redesign; therefore, these sites are most
9 likely to embrace a QI collaborative pilot and the chronic care model.

10    Although the CDCR's 33 prisons often differ in their patient populations, organizational
11 cultures, and clinical effectiveness, they share a core set of policies and procedures. Their
12 limited heterogeneity and autonomy should allow faster dissemination of practice improvement
13 than could be achieved among separate organizations.

14    As indicated above, in addition to addressing the specific problem of preventable deaths
15 from asthma, the Asthma Initiative will provide critical training and information for the
16 development and implementation of future QI initiatives. The Receiver will report to the Court
17 on the progress of the Asthma Initiative and will report to the Court as new QI projects are
18 undertaken.

19    *c.*    *Description of the contracts necessary to implement the Project.* As part
20 of its overall QI project, the Receiver plans to undertake contracts with organizations and
21 consultants for technical assistance, project management, education, training, evaluation, and
22 consultation for the design and implementation of QI, peer review, and leadership programs,
23 including chronic care management, coordination of care, care process redesign, utilization of
24 management, and incorporation of performance and outcome measurements for improvement
25 and accountability.

26
27 [7] The Breakthrough Series: IHI's Collaborative model for achieving breakthrough improvement. (2003) Boston, Massachusetts: Institute for Healthcare Improvement.
28 [8] Gould DA, et al. New York City Palliative Care Quality Improvement Collaborative. *Joint Commission Journal on Quality and Safety.* 2007: 33.307.

9

1   Specifically with respect to the Asthma Initiative, the Receiver has issued a Request for

2   Proposal ("RFP") for technical assistance, education and training, and evaluation services.  The

3   selected contractor will be engaged to lead an interdisciplinary initiative with CDCR staff aimed

4   at eliminating preventable patient deaths due to undiagnosed or uncontrolled asthma. A copy of

5   the RFP is attached as Exhibit A to the Hill Decl.  The Receiver has made it clear in the RFP that

6   the contract cannot be awarded unless and until this Court approves the waiver of contracting

7   procedures requested in this application.

8   **E.     Good Cause Exists To Waive State Contracting Law And Procedures For The**
        **Above-Referenced Projects To Ensure That Receiver Can Achieve His Court-**
9       **Ordered Mandate To Provide Constitutional Medical Care To The State's**
        **Prisoners.**
10

11   As set forth in Receiver's Master Application, the State Contracting Procedures are

12   complex, cumbersome and extremely time-consuming and have had real, day-to-day and very

13   serious adverse impacts on the CDCR's ability to provide adequate medical care in its prisons

14   and on the Receiver's ability to implement necessary, timely, and inter-related remedial

15   measures.  The Receiver submits that, on their face, State Contracting Procedures are much too

16   slow, much too bureaucratic and insufficiently nimble to accommodate the Receiver's efforts to

17   bring the projects described to fruition or to make meaningful change to the prison healthcare

18   system in a timely fashion.

19   This Court has found that the process by which State contracts are developed, reviewed,

20   bid and awarded contributes to and exacerbates the numerous failings in the prison health care

21   system. *See* FFCL at pp. 26-27.  In the June 4, 2007 Order, the Court noted that "[t]here is no

22   dispute that it would effectively stymie the Receiver's efforts to implement the projects identified

23   in his [Master] Application in a timely manner if full compliance with the State's traditional

24   contracting processes were required." June 4, 2007 Order at p. 3:18-20.  Based on the Receiver's

25   showing in the Master Application, the Court granted a waiver of State Contracting Procedures

26   for those projects listed in Receiver's Master Application in the June 4, 2007 Order.

27   For the same reasons, the Court should grant this Supplemental Application No. 2.  The

28   projects at issue are critical to the systemic changes necessary to achieve constitutional medical

FUTTERMAN &
DUPREE LLP

1    care in the State's prisons.  Without a waiver of State Contracting Procedures, Receiver will be

2    forced to spend months if not years obtaining vendors before these projects could move forward.

3    Receiver submits that compliance with State Contracting Procedures will prevent him from

4    accomplishing his mandate.  Given what is at stake, Receiver does not have months or years to

5    wait before implementing significant changes.  A waiver is appropriate.

6         Based on the foregoing, the Receiver requests a waiver of State Contracting Procedures to

7    the extent they would otherwise apply only to the projects and contracts described above,

8    including but not limited to, the following:

9         Government Code ("Gov't Code") §§ 14825 – 14828 and State Contracting Manual

10   ("SCM") §§ 5.10A, 5.75, 5.80 (governing advertisement of State contracts).

11        Public Contracts Code ("PCC") §§ 10290 – 10295, 10297, 10333, 10335, 10351, 10420 –

12   10425; Gov't Code § 14616; SCM §§ 4.00 – 4.11; (governing approval of contracts by

13   Department of General Services ("DGS") and exemption from and consequences for failure to

14   obtain DGS approval).

15        PCC §§ 10308, 10309, 10314; SCM vol. 2, State Administrative Manual ("SAM") §§

16   3500 – 3696.3 (governing procurement of goods).

17        PCC §§ 6106, 10109 – 10126, 10129, 10140, 10141, 10180 – 10185, 10220, 10301 –

18   10306, 10340 – 10345, 10351, 10367, 10369; Gov't Code §§ 4525 – 4529.20, 4530-4535.3,

19   7070-7086, 7105-7118, 14835-14837; and Mil. & Veterans Code §§ 999-999.13; 2 CCR §§ 1195

20   – 1195.6; SCM §§ 5.00 – 6.40 and Management Memo ("MM") 03-10 (governing competitive

21   bidding, required language in bid packages, Non-competitive Bid ("NCB") procedures,

22   preferential selection criteria, contractor evaluations and notice, contract award and protest

23   procedures for service, consulting service, construction project management and public works

24   contracts).

25        PCC §§ 10314, 10346 (progress payment limitations).

26        Gov't Code § 13332.09 and MM 06-03 (governing vehicle purchases).

27        PCC §§ 12100 – 12113, 12120 – 12121, 12125 – 12128; SCM vol. 3; SAM §§ 4800 –

28   4989.3, 5200 – 5291 (governing procurement of IT, telecommunication and data processing

11

1   goods and services and applicable alternate protest procedures).

2          Gov't Code §§ 13332.10, 14660, 14669, 15853 (governing acquisition and leasing of real

3   property).

4          Gov't Code §§ 13332.19, 15815 (governing plans, specifications and procedures for

5   major capital projects).

6          PCC §§ 10365.5, 10371; SCM § 3.02.4 (governing restrictions on and approval for

7   multiple contracts with same contractor).

8   **F.    The Receiver Will Comply With The Substitute Bidding Process Procedures
            Approved By The Court In Its June 4, 2007 Order, Which Comply With The**

9   **Essential Goals Of State Contracting Procedures.**

10         As discussed above, in approving the Master Application, the Court approved three

11  bidding processes: Expedited Formal Bidding; Urgent Informal Bidding; and Sole Source

12  Bidding. June 4, 2007 Order at p. 6:18:8:23. For the projects described in this supplemental

13  waiver application, as indicated above, the Receiver proposes to follow the bidding procedures

14  approved by the Court in the June 4, 2007 Order. The Receiver submits that the streamlined

15  processes approved by the Court will permit him to move expeditiously to accomplish his

16  mandate while at the same time providing sufficient safeguards to the public and the public fisc

17  in the contracting process. He seeks approval of those bidding procedures for the projects

18  subject to this application.

19         In addition, in his Master Application, the Receiver noted that State law requires

20  provisions and certifications that address particular public policies, e.g., antidiscrimination laws.

21  As with contracts to be entered into pursuant to the June 4, 2007 Order, Receiver proposes to

22  publish the provisions requiring contractor certifications of compliance on his website and

23  include a single representation in the contracts he awards to the effect that the contractor has

24  read, and attests that he/she/it is in compliance with, the required provisions. Alternatively, the

25  Receiver may simply incorporate into its agreements standard contractor certification provisions

26  promulgated by the California Department of General Services, and which are available online.

27  Receiver seeks authorization to use either procedure with respect to the projects described above

28  at his discretion.

FUTTERMAN &
DUPREE LLP

**CONCLUSION**

For all the foregoing reasons, therefore, the Receiver respectfully requests an order (1) waiving any requirement that the Receiver comply with State Contracting Procedures only with respect to the contracts necessary to complete the Receiver's planned Quality Improvement projects including, but not limited to, the Asthma Initiative; and, (2) approving the same substituted notice, bidding and award procedures approved by the Court in its June 4, 2007 Order for such contracts.

Dated:  November 20, 2007

FUTTERMAN & DUPREE LLP

By:_____/s/_____
　　　　　Martin H. Dodd
　　　　　Attorneys for Receiver Robert Sillen

1

**CERTIFICATE OF SERVICE**

2          The undersigned hereby certifies as follows:

3          I am an employee of the law firm of Futterman & Dupree LLP, 160 Sansome Street, 17th

4    Floor, San Francisco, CA  94104.  I am over the age of 18 and not a party to the within action.

5          I am readily familiar with the business practice of Futterman & Dupree, LLP for the

6    collection and processing of correspondence.

7          On November 20, 2007 I served a copy of the following document(s):

8          **RECEIVER'S SUPPLEMENTAL APPLICATION NO. 2 FOR ORDER WAIVING STATE CONTRACTING STATUTES, REGULATIONS AND PROCEDURES,**
9          **APPROVING RECEIVER'S SUBSTITUTE PROCEDURE FOR BIDDING AND AWARD OF CONTRACTS**

10   by placing true copies thereof enclosed in sealed envelopes, for collection and service pursuant to

11   the ordinary business practice of this office in the manner and/or manners described below to

12   each of the parties herein and addressed as follows:

13   ___    BY HAND DELIVERY:  I caused such envelope(s) to be served by hand to the address(es) designated below.

14    _X_   BY MAIL:  I caused such envelope(s) to be deposited in the mail at my business address,
15         addressed to the addressee(s) designated.  I am readily familiar with Futterman &
           Dupree's practice for collection and processing of correspondence and pleadings for
16         mailing.  It is deposited with the United States Postal Service on that same day in the
           ordinary course of business.

17   ___    BY OVERNIGHT COURIER SERVICE:  I caused such envelope(s) to be delivered via
           overnight courier service to the addressee(s) designated.

18   ___    BY FACSIMILE:  I caused said document(s) to be transmitted to the telephone number(s)
19         of the addressee(s) designated.

20   Andrea Lynn Hoch                          Robin Dezember
     Legal Affairs Secretary                   Director (A)
21   Office of the Governor                    Division of Correctional Health Care Services
     Capitol Building                          CDCR
22   Sacramento, CA 95814                      P.O. Box 942883
                                               Sacramento, CA 94283-0001

23   Bruce Slavin                              Kathleen Keeshen
     General Counsel                           Legal Affairs Division
24   CDCR – Office of the Secretary            California Department of Corrections
     P.O. Box 942883                           P.O. Box 942883
25   Sacramento, CA 94283-0001                 Sacramento, CA 94283

26   Richard J. Chivaro                        Molly Arnold
     John Chen                                 Chief Counsel, Dept. of Finance
27   State Controller                          State Capitol, Room 1145
     300 Capitol Mall, Suite 518               Sacramento, CA 95814
28   Sacramento, CA 95814

FUTTERMAN &
DUPREE LLP

| | | |
|---|---|---|
| 1 | Laurie Giberson<br>Staff Counsel | Matthew Cate<br>Inspector General |
| 2 | Department of General Services<br>707 Third St., 7th Fl., Ste. 7-330 | Office of the Inspector General<br>P.O. Box 348780 |
| 3 | West Sacramento, CA 95605 | Sacramento, CA 95834-8780 |

1 | Laurie Giberson
Staff Counsel
2 | Department of General Services
707 Third St., 7th Fl., Ste. 7-330
3 | West Sacramento, CA 95605

Matthew Cate
Inspector General
Office of the Inspector General
P.O. Box 348780
Sacramento, CA 95834-8780

4 | Donna Neville
Senior Staff Counsel
5 | Bureau of State Audits
555 Capitol Mall, Suite 300
6 | Sacramento, CA 95814

7 |

Warren C. (Curt) Stracener
Paul M. Starkey
Labor Relations Counsel
Department of Personnel Administration
Legal Division
1515 "S" St., North Building, Ste. 400
Sacramento, CA 95814-7243

8 | Gary Robinson
Executive Director
9 | UAPD
1330 Broadway Blvd., Ste. 730
10 | Oakland, CA 94612

Yvonne Walker
Vice President for Bargaining
CSEA
1108 "O" Street
Sacramento, CA 95814

11 | Pam Manwiller
Director of State Programs
12 | AFSME
555 Capitol Mall, Suite 1225
13 | Sacramento, CA 95814

Richard Tatum
CSSO State President
CSSO
1461 Ullrey Avenue
Escalon, CA 95320

14 | Tim Behrens
President
15 | Association of California State Supervisors
1108 "O" Street
16 | Sacramento, CA 95814

Elise Rose
Counsel
State Personnel Board
801 Capital Mall
Sacramento, CA 95814

17 | Stuart Drown
Executive Director
18 | Little Hoover Commission
925 L Street, Suite 805
19 | Sacramento, CA 95814

California State Personnel Board
Office of the Attorney General
1515 Clay Street, 20th Floor
P.O. Box 70550
Oakland, CA 94612-0550

20 | J. Michael Keating, Jr.
285 Terrace Avenue
21 | Riverside, RI 02915

Peter Siggins
California Court of Appeals
350 McAllister Street
San Francisco, CA 94102

22 |

Elijah J. Sandoval
23 | State Prison Corcoran
K-7613/3A05-132L
24 | P.O. Box 3461
Corcoran, CA 93212-3461

Gary Alan Smith
#E-40032
5134, CMC-E
PO Box 8101
San Luis Obispo, CA 93409

25 |

26 | Dated: November 20, 2007

_Lori Dotson_ (signature)
Lori Dotson

27 |

28 |

FUTTERMAN &
DUPREE LLP