IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARCIANO PLATA, et al.,

              Plaintiffs,

v.

ARNOLD SCHWARZENEGGER, et al.,

              Defendants.

NO. C01-1351 TEH

ORDER GRANTING IN PART AND DENYING IN PART RECEIVER'S MOTION FOR WAIVER OF STATE LAW REGARDING PHYSICIAN CLINICAL COMPETENCY

      This matter comes before the Court on the Receiver's motion for a waiver of state law regarding physician clinical competency. After carefully considering the voluminous briefing and record in this case and relevant law, the Court now GRANTS IN PART and DENIES IN PART the Receiver's motion to waive state law to allow changes to the physician peer review process. As discussed below, the Court finds that changes to the existing system of physician peer review within the California Department of Corrections and Rehabilitation ("CDCR") are constitutionally required. The Court further finds that the majority of the changes proposed by the Receiver should be adopted as unopposed. Finally, the Court concludes that the State Personnel Board ("SPB") must review the medical findings of physician peer review panels under the "substantial evidence" standard proposed by the Receiver rather than the "great weight" standard proposed by the SPB,[1] and that implementing a "substantial evidence" standard of review does not violate the California Constitution.

---

[1] These proposed standards are discussed more fully in the discussion below.

**PROCEDURAL BACKGROUND**

When the Court appointed a Receiver on February 14, 2006, it ordered him to "make all reasonable efforts to exercise his powers, as described in this Order, in a manner consistent with California state laws, regulations, and contracts, including labor contracts." Feb. 14, 2006 Order Appointing Receiver at 5. Recognizing that compliance with state laws may not always be possible, however, the Court's order also provided that:

> In the event . . . that the Receiver finds that a state law, regulation, contract, or other state action or inaction is clearly preventing the Receiver from developing or implementing a constitutionally adequate medical health care system, or otherwise clearly preventing the Receiver from carrying out his duties as set forth in this Order, and that other alternatives are inadequate, the Receiver shall request the Court to waive the state or contractual requirement that is causing the impediment.

*Id.*

The Receiver initially filed the instant motion requesting a waiver of state law regarding physician clinical competency over one year ago, on April 25, 2007. The Court established a briefing schedule on May 1, 2007, and the parties, as well as two amici – the Union of American Physicians and Dentists ("UAPD") and the SPB – filed timely responses to the motion on May 22, 2007. Plaintiffs and Defendants both filed statements of non-opposition. The UAPD, which had significant input into the peer review process the Receiver proposed in his motion, also filed a brief in support of the motion and asked only that the Court clarify certain issues in its order. The only initial opposition to the motion was filed by the SPB, which contended that the Receiver's proposal was unconstitutional and that the standard for waiving state law had not been satisfied.

On June 15, 2007, Plaintiffs filed a second brief, explaining that the SPB's opposition raised issues that were previously unknown to them. Although Plaintiffs continued to believe that the Receiver's proposal was preferable to the status quo, Plaintiffs explained that they had certain reservations to the Receiver's motion being granted in full. The Receiver also filed a reply brief on June 15, 2007.

On June 26, 2007, the Court granted the SPB's request to file a supplemental response, which the SPB filed on July 6, 2007. Shortly thereafter, the Receiver informed the Court that he was continuing to discuss the peer review issue with the SPB in hopes of reaching agreement, and the matter remained under submission for several months.

Such discussions were ultimately unproductive, and the Receiver consequently filed a supplemental memorandum in support of his motion on January 7, 2008. On January 11, 2008, the Court ordered Plaintiffs and the SPB to file supplemental oppositions, which both timely filed on January 22, 2008. The Court also ordered the Receiver to file a supplemental reply by January 29, 2008.

With the appointment of a new Receiver, who continued to attempt to resolve the peer review issue informally, the parties stipulated several times to extensions of time for the Receiver to file his reply brief. Unfortunately, the Receiver's repeated efforts failed to resolve this matter, and the Receiver finally filed his supplemental reply memorandum on April 14, 2008. The Court subsequently granted the SPB's request to file a final opposition brief, which the SPB timely filed on May 5, 2008.

**FACTUAL BACKGROUND**

As indicated by its title, this motion concerns the review of the clinical competency of physicians who practice in California's prisons. When this Court found the appointment of a receiver to be necessary in this case, it noted that:

> it is an uncontested fact that, on average, an inmate in one of California's prisons needlessly dies every six to seven days due to constitutional deficiencies in the CDCR's medical delivery system. This statistic, awful as it is, barely provides a window into the waste of human life occurring behind California's prison walls due to the gross failures of the medical delivery system.

Oct. 3, 2005 Findings of Fact & Conclusions of Law Re: Appointment of Receiver ("FF&CL") at 1-2.

Such failures include significant shortcomings regarding CDCR physician quality and oversight. For example, the Court found that, based on testimony by one of the Court

3

experts, "20-50% of physicians at the prisons provide poor quality of care," and that, based on an August 2004 survey by CDCR's Health Care Services Division, "approximately 20 percent of the CDCR physicians had a record of an adverse report on the National Practitioner Databank, had a malpractice settlement, had their license restricted, or had been put on probation by the Medical Board of California." *Id.* at 8.  The Court concluded that "the incompetence and indifference of these CDCR physicians has directly resulted in an unacceptably high rate of patient death and morbidity." *Id.*  CDCR attempted to "identify and remove from patient care those practitioners believed to be providing substandard care" through the Quality in Corrections Medical program ("QICM"), but "QICM has encountered considerable obstacles to implementation and as of yet has not satisfactorily addressed the problems of incompetence and indifference." *Id.* at 9.

The Court further found that peer review – "the periodic review of work by similarly qualified professionals" – was "performed universally by health care organizations" to maintain quality control but was either "'bogus or . . . not done at all'" within CDCR. *Id.* at 16 (quoting testimony by court expert).  Without adequate peer review, "untrained physicians who make mistakes will continue to make them because there is no one to identify and correct their mistakes." *Id.* (quoting July 16, 2004 report by court experts).  Such "failure to perform adequate investigation of medical staff results in incompetent and abusive staff continuing to provide dangerous care." *Id.* at 25.

The Receiver reached a similar conclusion in his first bi-monthly report, filed on July 5, 2006:

> While the CDCR has attempted to establish various procedures to investigate clinician misconduct, including the delivery of woefully inadequate medical care, these efforts have not been successful.  In some cases the clinicians under investigation have been removed from patient care duties; however, because of untimely investigations and discipline, they continue at full pay on the CDCR payroll for, in some instances, several years after the commencement of the investigation.

Receiver's First Bi-Monthly Report at 8.

4

Currently, physician peer review in CDCR is performed by the Professional Practices Executive Committee ("PPEC"), which includes physicians, dentists, psychiatrists, and psychologists. Upon investigation, the PPEC prepares a recommendation for final proposed action by the Governing Body, which is not required to include physicians and which, until the Receiver's chief medical officer was recently placed on the Governing Body by the Receiver, included only non-physician managers and executives. If the PPEC proposes an adverse privileging action, the physician may appeal that proposed action and obtain an evidentiary hearing presided over by a state administrative law judge ("ALJ") who has been trained to conduct licensing hearings for the California Medical Board. A committee of three physicians selected by CDCR management determines by majority vote whether, under a preponderance of the evidence standard, the PPEC's proposed action is reasonable and warranted. The committee then issues a recommendation to the Governing Body, which renders a final decision regarding privileges. However, privileging is not currently a condition of employment for physicians at CDCR. Consequently, even if the Governing Body revokes all privileges, the physician remains employed until a separate administrative investigation is completed; a notice of adverse action is served; another evidentiary hearing is held before an ALJ appointed by the SPB; and the SPB appeals process is completed.

Thus, the privileging decision and the employment decision are currently two distinct processes, often separated by many months and potentially producing inconsistent findings of fact. A physician deemed by his or her peers to be incompetent to practice medicine in the prisons remains employed unless and until the separate employment hearing process, which does not involve peer review, determines that adverse employment action should be taken. In addition to devaluing the medical opinions of the PPEC and physician-members of the committee that reviews the PPEC's proposed actions, this dual process may result in conflicting factual findings and certainly results in significant expense. For example, between April 2005 and April 2007, CDCR "paid almost $3.1 million in salaries for time not worked by physicians placed on paid administrative time off to avoid an imminent risk of harm to patients while awaiting final adjudication of cases necessary before terminations

5

could take effect." Mynhier Decl. ¶ 2 (Ex. 2 to Mot. filed on April 25, 2007). Additionally, while these physicians are on administrative time off, the already short-staffed prisons operate under even leaner staffing conditions, thus reducing the availability of care to inmates and potentially resulting in unnecessary loss of lives. The Receiver summarized some of the challenges posed by the current dual system in his fourth bi-monthly report, filed on March 20, 2007:

> The original PPEC process addressed only peer review. It did not take into consideration the due process issues required during the discipline of State civil servants. Therefore, absent a second, time consuming, and expensive investigation and prosecution before the State Personnel Board ("SPB"), it is impossible to terminate the employment of dangerous medical providers (when a provider is deemed to be a danger to patients and PPEC determines there is no effective remediation or training, privileges must be suspended, restricted or revoked). In actual practice, a pattern developed where PPEC revoked practicing privileges, an action that led to the provider's removal from patient care, but the provider has remained a CDCR employee, often receiving his or her full salary while on ATO [administrative time off]. In practice, the CDCR "dual" process presents an unacceptable and cumbersome situation in which the potential exists to have an employee removed from their duties, yet remain a fully paid State employee.

Receiver's Fourth Bi-Monthly Report at 45.

To reduce the inefficiencies inherent in the present system, as well as to strengthen the meaning given to the privileging decision reached as a result of peer review, the Receiver seeks modification of the existing process by, among other changes, eliminating the two separate evidentiary hearings before different ALJs for privileging and employment decisions in favor of a single evidentiary hearing. Rather than receiving an evidentiary hearing after the PPEC recommends a privileging action but before such action is finally implemented by the Governing Body, the Receiver proposes that the Governing Body would directly review the PPEC's recommendations and, if appropriate, issue a combined notice relating to both privileges and termination of employment. The Receiver further proposes that the Governing Body be chaired by the Receiver's chief medical officer, thus ensuring that the Governing Body does not consist solely of non-medical personnel.

6

Under the Receiver's original proposal, attached as Exhibit 3 to the motion papers filed on April 25, 2007, both the privileging and employment actions would take effect after a pre-deprivation opportunity to respond, and they would remain in effect unless overturned in subsequent proceedings. If the physician appealed, he or she would be granted a single evidentiary hearing, presided over by a state ALJ, that would address both the privileging and employment decisions. The ALJ would make evidentiary and procedural rulings, but all medical determinations and privileging decisions would be made by a Judicial Review Committee ("JRC"), which would be comprised of three physicians chosen jointly by the Governing Body and the physician under review from a list of independent physicians provided by the California Medical Association Institute for Medical Quality ("CMAIMQ").[2] The JRC would decide, by a majority vote, whether the physician would be allowed to continue to maintain privileges to practice medicine in California's prisons. If the JRC concluded, by a preponderance of the evidence, that the physician should no longer maintain privileges, the physician's termination would be sustained. The JRC's decision could then be appealed to the SPB, which would be allowed to review the decision as to whether the physician should be terminated from state service but not whether the physician should be privileged to practice medicine in prisons.

**DISCUSSION**

**I.    Constitutional Need for Reform of the Peer Review Process**

The factual background outlined above demonstrates the inadequacies of the existing physician peer review system, which no party nor amicus disputes is in clear need of reform. A meaningful peer review procedure is a necessary component of a constitutionally adequate health care system. As this Court noted in its case involving Eighth Amendment challenges to medical care delivery (among other issues) at Pelican Bay State Prison, peer review is "all but indispensable to providing adequate care" and "should be instituted to improve the

---

[2] If the CMAIMQ were unwilling or unable to provide such a list, the Receiver and UAPD would jointly establish an alternate method of selecting a physician pool for the JRC.

7

quality of care." *Madrid v. Gomez*, 889 F. Supp. 1146, 1258 (N.D. Cal. 1995). Thus, the lack of "genuine peer review" was one of the reasons why the Court found the health care delivery system at Pelican Bay to be "constitutionally inadequate." *Id.* at 1258-59.

In addition, although not dispositive on the constitutional question, it is significant that both the federal and state legislatures have recognized the critical role of effective peer review. For example, in passing the Health Care Quality Improvement Act, the United States Congress found that the "increasing occurrence of medical malpractice and the need to improve the quality of medical care" were "nationwide problems" that could "be remedied through effective professional peer review." 42 U.S.C. §§ 11101(1), (3). Similarly, the California legislature has found and declared that "[p]eer review, fairly conducted, is essential to preserving the highest standards of medical practice," and that "[p]eer review that is not conducted fairly results in harm both to patients and healing arts practitioners." Cal. Bus. & Prof. Code §§ 809(a)(3)-(4).

## II. Narrowing the Scope of the Dispute

In his final reply filed on April 14, 2008, the Receiver asked this Court to rule on the proposal presented in his original motion papers. However, while this motion has been pending and the Receiver's negotiations with the SPB ongoing, the Receiver has expressed his willingness to compromise on certain issues. For example, in his supplemental memorandum filed on January 7, 2008, the Receiver stated that under his proposal, the ALJ who presides over the evidentiary hearing "will be available to adjudicate affirmative defenses raised by the physician" under review, including contentions "that the referral to hearing by the peer review body was motivated by retaliation for whistle blowing, unlawful bias or discrimination or a conflict of interest." Jan. 8, 2008 Suppl. Mem. Re: Physician Competency Determinations at 9. In the same memorandum, the Receiver stated his willingness "to permit SPB-employed ALJs to preside over privileging hearings in the manner otherwise provided in those procedures, as long as the SPB ALJs receive special training in privileging matters." *Id.* at 10.

8

1  Similarly, in his quarterly report filed on March 14, 2008, the Receiver explained that
2 he "informed the Board [SPB] he believes the right compromise is for the Board to apply the
3 'substantial evidence standard' when reviewing medical judgments by physicians who are
4 trained to make medical judgments." Receiver's Seventh Quarterly Report at 31-32. Under
5 that standard, the SPB-appointed ALJ and the SPB itself would be allowed to review medical
6 judgments of the peer review panel, but they could not substitute their own opinions for those
7 of the peer review panel on medical issues "absent some unmistakably clear procedural error
8 or evident bias," *id.* at 31 – i.e., unless there is not substantial evidence to reasonably support
9 the peer review panel's decision.

10  While such statements do not necessarily prevent the Receiver from seeking the relief
11 he originally requested, the Court nonetheless considers the Receiver's concessions as
12 evidence that the Receiver does not believe all of the components of his original proposal are
13 necessary to creating a constitutional system of delivering medical care to inmates in
14 California's prisons, or that no alternatives except for his original proposal would be
15 constitutionally adequate. Given the standard required for waiving state law, the Court
16 therefore declines to adopt the Receiver's original proposal in full and instead narrows its
17 consideration to a procedure that incorporates all of the modifications the Receiver was
18 prepared to accept during his negotiations with the SPB.

19  The parties and both amici support the majority of the procedural changes proposed
20 by the Receiver. The only significant dispute is between the Receiver and the SPB and
21 concerns whether the SPB should be required to review decisions of the peer review panel
22 under a "substantial evidence" standard.[3] During its negotiations with the Receiver, the SPB
23 would not agree to that standard of review and instead proposed that the ALJ and SPB as a
24 whole be permitted to weigh evidence as to medical findings, but that they also be required to
25 give "great weight" to the findings of the peer review panel. Under the SPB's proposal, if
26 the ALJ or the SPB deviated from the peer review panel's findings, they would be required to

---

[3]The Court addresses UAPD's requests for clarification and a stay on pending peer review proceedings, as well as Plaintiffs' requests for outside monitoring and for the Receiver to submit a revised set of proposed policies, in Section V of this order.

9

explain their reasons for doing so and to attach the peer review panel's findings to their decisions. Thus, the primary issue for this Court to decide is whether the SPB should review the peer review panel's findings under the "substantial evidence" standard proposed by the Receiver or the "great weight" standard proposed by the SPB.

### III. The SPB's Constitutional Argument

The primary argument raised by the SPB in opposition to the Receiver's motion is that the Receiver's proposal would require waiver of the California state constitution, and not just a waiver of state statutes and procedures. To support its position, the SPB relies heavily on the California Supreme Court's decision in *State Personnel Board v. Department of Personnel Administration*, 37 Cal. 4th 512 (2005) (hereinafter "*SPB v. DPA*"). In that case, the court considered whether disciplinary procedures adopted in memoranda of understanding (MOUs) of four state employee bargaining units, and subsequently passed into law by the California legislature, violated article VII, section 3 of the California Constitution. That section provides that the SPB "shall enforce the civil service statutes and, by majority vote of all its members, shall prescribe probationary periods and classifications, adopt other rules authorized by statute, and review disciplinary actions." Cal. Const. art. VII, § 3. The procedures at issue allowed bargaining unit members "to challenge disciplinary actions either by seeking review before the State Personnel Board or by pursuing an alternative grievance/arbitration procedure that bypasses the State Personnel Board." *SPB v. DPA*, 37 Cal. 4th at 516. The court held that such procedures violated the state constitution because:

> It would be inimical to California's constitutionally mandated merit-based system of civil service, which is administered by the State Personnel Board, to wholly divest that board of authority to review employee disciplinary actions in favor of an MOU-created review board. This is so because a state civil service based on the merit principle can be achieved only by developing and consistently applying uniform standards for employee hiring, promotion, and discipline. By vesting in the nonpartisan State Personnel Board the *sole* authority to administer the state civil service system (Cal. Const., art. VII, § 3), our state Constitution recognizes that this task must be entrusted to [a] *single* agency,

10

>    the constitutionally created State Personnel Board.  Because
>    employee discipline is an integral part of the civil service system,
>    the State Personnel Board's *exclusive* authority to review
>    disciplinary decisions is a critical component of the civil service
>    system.

*Id.* at 526-27.  As indicated by the court's language throughout its opinion, the court's concern was that a disciplinary review system may not entirely bypass review by the SPB. *See, e.g., id.* (noting that a disciplinary system could not "*wholly divest*" the SPB of authority (emphasis added)); *id.* at 516 (stating the question to be resolved as whether "*bypass* of the State Personnel Board" violates the state constitution (emphasis added)); *id.* at 524 (noting that the MOUs at issue "permitt[ed] disciplined state employees to *bypass* review before the State Personnel Board in favor of pursuing a grievance/arbitration procedure outside the Board" (emphasis added)); *id.* at 525-26 (framing the issue in the case as "whether the Legislature could, consistent with section 3, subdivision (a) of article VII, allow employees challenging disciplinary actions to *bypass* review before the State Personnel Board" (emphasis added)); *id.* at 527 (describing procedures at issue as "allowing a disciplined employee the option of *bypassing* review by the [SPB] in favor of an MOU-created agency").

   As the SPB correctly observes, one of the four MOUs challenged in the *SPB v. DPA* case – an amended MOU with the firefighters' union – did not involve a wholesale abandonment of the SPB's review process.  However, even the amended MOU's process is materially distinguishable from the disputed procedures in this case.  The amended MOU with the firefighters' union allowed employees to choose whether to seek review before the SPB or to bypass such review by pursuing a grievance procedure through a "board of adjustment." *Id.* at 516-17.  If the board of adjustment could not reach a majority decision, then the employee could pursue arbitration. *Id.* at 517, 522 ("employees [of the firefighters' union] can pursue arbitration only if the Board of Adjustment fails to reach a decision").  Under the amended MOU, the arbitrator's decision would be "submitted to the State Personnel Board to ensure that the decision does not conflict with 'merit principles.'" *Id.* at 518.  Thus, if an employee initially opted to seek review through the board of adjustment, the SPB would become part of the process only when the board of adjustment could not reach a

11

majority decision. In the procedure under consideration in this case, by contrast, an SPB-appointed ALJ would preside over an evidentiary hearing in every case, and the full SPB would review the ALJ's and peer review panel's findings and recommendations.

Because of these significant factual differences, this Court does not find that the procedure in dispute in this case runs afoul of article VII, section 3, of the California Constitution as interpreted by the California Supreme Court. Unlike the facts in *SPB v. DPA*, the only dispute between the Receiver and the SPB in this case is the standard of review, not whether review by the SPB will occur at all. Contrary to the SPB's arguments, the California Supreme Court's decision in *SPB v. DPA* therefore does not require a constitutional waiver for the changes to the peer review process under consideration. Moreover, the state constitution provides only that the SPB "shall . . . review disciplinary actions," Cal. Const. art. VII, § 3; it does not set forth the standard under which the SPB shall review disciplinary actions, nor does it provide, for example, that the SPB must be allowed to make its own factual findings or weigh credibility of all witnesses. While these may be statutory provisions that govern how the SPB currently operates, the SPB has pointed to no authority providing that they are requirements of the state constitution. Put simply, because the procedure at issue here does not seek to bypass review by the SPB, the Court rejects the SPB's argument that the disputed peer review procedure would require waiver of article VII, section 3, of the California Constitution.

## IV. "Substantial Evidence" or "Great Weight" Standard of Review

Having determined that the procedure under review would not require a constitutional waiver, this Court now turns to the heart of the dispute between the Receiver and the SPB: whether the SPB and its ALJs need only give "great weight" to the findings of the peer review panel, or whether a more deferential "substantial evidence" standard should be applied. More specifically, in light of this Court's prior orders, the Court must decide whether the "substantial evidence" standard is necessary to ensuring a constitutionally adequate system of health care delivery in California's prisons, which includes a

12

1  determination as to whether the "great weight" standard would be inadequate.  *See* Order
2  Appointing Receiver at 5 (establishing standard for requesting waiver of state law).
3        After careful consideration, the Court concludes that the Receiver's proposed
4  "substantial evidence" standard of review satisfies the requirements set forth by the Court for
5  waiving state law.  Under the SPB's proposal, the SPB and its ALJs would have to give
6  "great weight" to the findings of the peer review panel, but that degree of deference is
7  ultimately so amorphous as to be meaningless.  The SPB's proposal does not, for example,
8  discuss what "great weight" means or under what circumstances the SPB or its ALJs would
9  be justified in deviating from the peer review panel's findings despite giving such findings
10 "great weight."  Instead, the proposal provides only that reasons must be given for such
11 deviations.  The end result is that having a "great weight" standard of review is functionally
12 equivalent to giving no deference to the peer review panel's findings; the result would be the
13 same in either case: namely, the SPB and its ALJs would be permitted to make their own
14 determinations based on the evidence as to the medical competency issues raised.
15       However, peer review is just that: review by one's peers.  If the SPB and its ALJs –
16 who are not trained in medicine – were allowed to substitute their determinations on medical
17 issues for those of the peer review panel, then the system would no longer be one of peer
18 review.  An adequate peer review system simply cannot allow a layperson to substitute his or
19 her own weighing of the evidence for that of a panel of peers.  Consequently, a process that
20 allowed the SPB and its ALJs to do so – even one that required that "great weight" be given
21 to the peer review panel's findings – would be constitutionally inadequate.
22       The "substantial evidence" standard of review ultimately proposed by the Receiver,
23 on the other hand, strikes an appropriate balance between ensuring that the system effectively
24 gives meaning to the findings of the peer review panel and ensuring that state employees'
25 rights are adequately protected.  Indeed, the UAPD helped the Receiver draft his original
26 proposed policy, and the union's support for the Receiver's proposal indicates that physicians
27 themselves do not believe that the proposal will violate their due process rights.  Moreover,
28 by allowing the SPB to review the employment decision and consider such affirmative

13

defenses as whistleblowing and retaliation that are outside the scope of the peer review panel's expertise, the procedure under consideration appropriately limits the scope of deference to be given to the peer review panel to the panel's findings that are based on its medical expertise. Allowing review of the peer review panel's medical findings under a "substantial evidence" standard will also serve as a check to ensure that the peer review panel is not reaching decisions that are not reasonably supported by the evidence.

In light of all of the above, the Court finds that the "substantial evidence" standard of review is required to ensure a meaningful peer review process, which in turn is a required part of a constitutionally adequate health care system, and that allowing review under a "great weight" standard would be inadequate. Accordingly, sufficient grounds exist for granting the Receiver's application for a waiver of state law to the extent that the proposed peer review system was modified during the Receiver's negotiations with the SPB.

## V.     Other Issues

The Court now turns to several remaining issues raised in the briefing on this motion. First, the Receiver requests an order that staff privileges, as defined by California Business and Professions Code section 805(a)(4), be made a condition of employment for physicians providing clinical care in the CDCR. This unopposed request is granted. While the UAPD and the SPB dispute whether such a condition would allow revocation of privileges to form the basis for a non-cause termination pursuant to California Government Code section 19585, the peer review procedures proposed by the Receiver do not address that issue, and the Court therefore need not decide it. However, the Court makes clear that, to protect the due process rights of physicians, staff privileges of a physician may not be revoked, as opposed to temporarily suspended, until after the physician has had a pre-deprivation opportunity to respond. The parties and amici do not disagree that it is critical to continue to allow the temporary suspension of privileges if a physician is suspected of posing a danger to patients.

Second, pursuant to the UAPD's request, the Court notes that its decision on the Receiver's motion does not preclude other efforts for peer review. As the UAPD observes,

14

1  such efforts may be able to help identify deficiencies in the quality of care being provided to
2  inmates and may also, where appropriate, contribute to referrals to the PPEC.

3  Third, the UAPD requests that this Court stay all pending privileging proceedings
4  while the new procedure is refined and implemented.  The Court agrees that such a stay
5  would be beneficial, and the parties, the Receiver, and the SPB do not object.  However, the
6  Court is aware of the three-year statute of limitations for bringing adverse actions under
7  California Government Code section 19635, and the Court does not intend for a stay to
8  preclude any warranted adverse actions on statute-of-limitations grounds.  Accordingly, the
9  UAPD's request for a stay is granted, provided that the physician under review agrees to
10 waive the statute of limitations that may otherwise prevent adverse action under California
11 Government Code section 19635.

12 Fourth, the Court considers Plaintiffs' request for outside monitoring of the peer
13 review process by the Office of the Inspector General.  As Plaintiffs do not dispute, peer
14 review proceedings are confidential under California Evidence Code sections 1156-1157.7.
15 These provisions were "enacted upon the theory that external access to peer investigations
16 conducted by staff committees stifles candor and inhibits objectivity." *Matchett v. Superior*
17 *Ct.*, 40 Cal. App. 3d 623, 629 (1974) (discussing section 1157).  Peer review proceedings
18 can, however, be made public if a physician files suit "claiming wrongful or arbitrary
19 exclusion from hospital staff privileges." *W. Covina Hosp. v. Superior Ct.*, 153 Cal. App. 3d
20 134, 137 (1984) (discussing section 1157(c)).  The Court agrees with the Receiver that this
21 exception provides a sufficient check on arbitrary or unreasonable privileging decisions.
22 Moreover, the Receiver's medical staff will be involved in the peer review process through
23 the Governing Body, and such involvement – analogous to the court experts' monitoring of
24 peer review in the Court's *Madrid* case, referenced by Plaintiffs in their January 22,
25 2008 filing – will provide an additional check on the process.  The Court therefore finds no
26 need to waive confidentiality of peer review proceedings to allow outside monitoring.

27 Finally, the Court turns to Plaintiffs' request that the Receiver be required to prepare a
28 revised set of proposed policies.  The Court grants that request because the policies attached

15

1  as Exhibit 3 to the Receiver's initial motion no longer describe the Receiver's actual
2  proposals, nor do they include the "substantial evidence" standard of review decided on by
3  the Court in this order.

4  When the Receiver revisits the proposed policies, he shall give careful attention to the
5  composition of the Governing Body and the weight the Governing Body must give to the
6  PPEC's findings.  For the reasons discussed in this order, if the Governing Body includes
7  voting members not trained in medicine, the "great weight" standard initially proposed by the
8  Receiver, Ex. 3 to Mot. at 20, may be inappropriate.  In addition, the Receiver may want to
9  draft the policies in such a way that re-drafting will not be necessary once the prison medical
10 health care system has been returned to the control of the state; for example, the Receiver
11 may wish to consider adding alternatives where the policies specify that "[t]he Governing
12 Body shall consist of the Receiver's Chief Medical Officer and other members appointed by
13 the Receiver." *Id.*

## CONCLUSION

In accordance with the above discussion, the Receiver's motion for waiver of state law regarding physician clinical competency is GRANTED IN PART and DENIED IN PART.  The Court does not find good cause to adopt the peer review procedures initially proposed by the Receiver because the Receiver later expressed his willingness to modify those procedures, thus indicating that not all aspects of the initial proposal are necessary to ensuring a constitutional system of delivering health care to inmates.  However, good cause exists to adopt the policies that no party or amicus opposes, and good cause also exists to require the SPB and its ALJs to review the peer review panel's medical findings under a "substantial evidence" standard. Accordingly, IT IS HEREBY ORDERED that:

1. The Receiver, or his designees, shall meet and confer with the parties and both amici, or their designees, to revise the proposed policies based on the Court's rulings.

2. As part of the meet-and-confer process, the SPB shall take the lead in preparing an implementation plan that includes deadlines, for example, for completing training of the SPB

16

ALJs who will be conducting the evidentiary hearings; entering into a contract with CMAIMQ to provide a pool of physicians for use on the peer review panels; and hiring any additional SPB staff necessary to implement the proposed policies.

3. The Receiver shall submit the revised proposed policies and implementation plan for the Court's approval, along with an updated proposed order, on or before **June 20, 2008.**

4. Ideally, the revised policies and implementation plan shall be accompanied by a stipulation or statements of non-opposition from the parties and amici.  However, if any party or amicus believes that the revised policies do not conform to this Court's order, then they may file a statement explaining the basis for that belief on or before **June 25, 2008.**  The parties and amici are advised that the Court will only entertain objections on grounds that the policies do not conform to the Court's order; no new objections that could have been made to the Receiver's original proposed policies will be considered, nor will the Court entertain a motion to reconsider its ruling on the "substantial evidence" standard.

5. Pursuant to the UAPD's unopposed request, all pending privileging proceedings involving CDCR physicians are stayed until the revised peer review policies are approved by the Court and implemented, provided that the physician under review agrees to waive the statute of limitations that may otherwise prevent adverse action under California Government Code section 19635.

**IT IS SO ORDERED.**

Dated:   05/23/08

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT