IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARCIANO PLATA, et al.,

                Plaintiffs,

v.

ARNOLD SCHWARZENEGGER, et al.,

                Defendants.

NO. C01-1351 TEH

ORDER APPROVING RECEIVER'S TURNAROUND PLAN OF ACTION

On June 6, 2008, the Receiver filed a "Turnaround Plan of Action." Having carefully reviewed the Receiver's plan, the Court now approves that plan as a reasonable and necessary strategy to address the constitutional deficiencies in California's prison health care system.

The Court originally ordered the Receiver to file a plan of action by November 13, 2006, but subsequently granted the former Receiver's request to extend the deadline for filing an initial plan of action to May 15, 2007, with a revised plan due by November 15, 2007. Upon review of the Receiver's initial plan, the Court concluded that the plan lacked adequate metrics and timelines and ordered the Receiver to include more detailed benchmarks in the revised plan of action.

After the Receiver filed the revised plan on November 15, 2007, the Court convened an advisory working group to review the plan and determine how best to assemble an advisory board for this case. The group included legal and medical experts, including two of the Court's correctional health care experts in this case, as well as individuals with significant state government experience. The members of the advisory group were: Mr. Richard Bayquen, Ms. Donna Brorby, Dr. Henry Chambers, Ms. Kara Dansky, Ms. Jean Fraser, Dr. Joe Goldenson, Ms. Kathleen Howard, Professor J. Clark Kelso, Ms. Madeleine

LaMarre, Dr. David Lawrence, Dr. Mary McDevitt, Mr. Arnold Perkins, Mr. William Turner, Mr. William Vickrey, and Professor Robert Weisberg.  All but Ms. Fraser and Dr. Lawrence attended a meeting with the Court on December 8, 2007.  As the Court previously explained:

> The Receiver, as well as counsel for Plaintiffs and Defendants, made presentations to and answered questions from the advisory working group at that meeting.  The group subsequently reached two main consensus opinions during closed-session discussions.  First, the advisory group recommended that a professional planner be hired to assist the Receiver in revising the Plan of Action so that it both complied with the Court's orders and directions and could serve as a useful leadership document that would provide a common vision for all stakeholders.  In addition, the working group was unanimous in its recommendation that an advisory board be formed to assist in the planning process and, more broadly, to advise the Court on issues relating to the Receivership's operation and progress towards implementing a prison medical care system that meets constitutional standards.

Jan. 23, 2008 Order Appointing New Receiver at 3-4.  The Court agreed with and adopted both recommendations in its January 23, 2008 order appointing J. Clark Kelso as the new Receiver.  Regarding the plan of action, the Court ordered its Pro Bono Special Assistant to "assist the [new] Receiver in reworking the November 15, 2007 Plan of Action so that it is a more useful leadership document." *Id.* at 5.  The Court further ordered the Receiver and Pro Bono Special Assistant to "consider how best to choose and use the services of a professional planner to assist in this process." *Id.*  Through a competitive bidding process, the Receiver and Pro Bono Special Assistant subsequently selected Michael Wright of the Results Group to assist as a planning consultant.

On March 11, 2008, the Receiver released a draft strategic plan for a thirty-day period of public comment.  The Receiver released a revised draft plan for a seven-day period of public comment on April 21, 2008.  The comments received, and the Receiver's responses thereto, are available on the Receiver's website at http://www.cprinc.org/materials.htm.

The Court convened a second advisory working group meeting on May 3, 2008, to review and help refine the new Receiver's revised plan.  The membership of the working group remained the same, with the exception of Professor Kelso, who had since been

2

1   appointed by the Court to be the new Receiver.  Ms. Fraser and Dr. Lawrence were able to
2   attend this second meeting, but the following individuals were not: Mr. Bayquen,
3   Dr. Chambers, Ms. Dansky, Dr. McDevitt, and Mr. Vickrey.  This second meeting differed in
4   structure from the December 2007 meeting in that counsel for both parties, as well as the
5   Receiver, his chief of staff, and chief medical officer, participated in the meeting in its
6   entirety.  The meeting also included participation by one representative each from the
7   California Department of Corrections and Rehabilitation and the Office of the Inspector
8   General.

9       Following this productive planning meeting, the Receiver and his staff worked with
10  the planning consultant and his team to refine the draft plan and develop a final plan of action
11  that considered comments from the public and all stakeholders, including counsel for both
12  Plaintiffs and Defendants.  The final plan is intentionally called a "turnaround plan of action"
13  rather than a "strategic plan" based on input received from the advisory working group and
14  stakeholders at the May 3, 2008 meeting.  The Court agrees with this change in terminology;
15  the plan is not strictly a strategic plan in that it does not present a complete vision of how to
16  operate California's entire correctional health care system.  Instead, the plan – as it should –
17  focuses more narrowly on bringing the delivery of health care in California's prisons up to
18  constitutional standards.  The vision statement set forth in the plan is appropriate given the
19  nature of this case and the legal underpinnings for the appointment of a Receiver: "As soon
20  as practicable, provide constitutionally adequate medical care to patient-inmates of the
21  California Department of Corrections and Rehabilitation (CDCR) within a delivery system
22  the State can successfully manage and sustain."  Plan at 1.  The Receiver's proposed mission
23  is similarly appropriate: "Reduce avoidable morbidity and mortality and protect public health
24  by providing patient-inmates timely access to safe, effective and efficient medical care, and
25  integrate the delivery of medical care with mental health, dental and disability programs."
26  *Id.* at 2.

27      Additionally, the Court finds the plan's six strategic goals to be necessary to bring
28  California's medical health care system up to constitutional standards, and the Court is

3

1 satisfied that the objectives and action items identified in the plan will help the Receivership
2 achieve those six goals.  The Court is further pleased that the plan contains both deadlines
3 and metrics for evaluating the Receivership's progress on each measurable action item.

4      In approving the Receiver's turnaround plan of action, the Court emphasizes that, as
5 with any such plan, this plan must remain a living document.  Indeed, as the Court ordered
6 when it originally appointed a Receiver, the Receiver must update or modify the plan of
7 action "as necessary throughout the Receivership."  Feb. 14, 2006 Order Appointing
8 Receiver at 3.  The Receiver and his staff will bear primary responsibility for determining
9 when and how such modifications must be made, and the advisory board appointed on
10 June 6, 2008, will also assist the Court and the Receivership on this issue.

11      The Court notes that the turnaround plan of action does not contain every level of
12 detail required for implementation.  However, this is by design, as the plan of action was
13 never intended to be a detailed set of policies and procedures to govern the day-to-day
14 practices of health care delivery within the CDCR.  To the contrary, the plan should be a
15 higher-level view of the Receivership and its goals that also provides a mechanism – in this
16 case, specific action items with deadlines – for measuring the Receivership's progress
17 towards achieving its goals.  The plan recently submitted by the Receiver fulfills these
18 objectives, and the Court therefore APPROVES the "Turnaround Plan of Action" filed by the
19 Receiver on June 6, 2008, as the plan of action for moving this case forward.  The Court is
20 hopeful that timely implementation of this plan will remedy the deficiencies that led to the
21 creation of the Receivership, and that California prison inmates will finally receive a level of
22 medical health care that meets the requirements of the United States Constitution.

23

24 **IT IS SO ORDERED.**

25

26 Dated:  06/16/08

                                      THELTON E. HENDERSON, JUDGE
27                                       UNITED STATES DISTRICT COURT

28