IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCIANO PLATA, et al.,<br><br>           Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>           Defendants. | NO. C01-1351 TEH<br><br>ORDER DENYING MEDICAL DEVELOPMENT INTERNATIONAL'S APPLICATION FOR LEAVE TO SUE RECEIVER IN STATE COURT |

This matter comes before the Court on an application by Medical Development International ("MDI") for leave to sue the Receiver in state court. Upon careful consideration of the issues presented, the Court DENIES MDI's application for the reasons discussed below.

**BACKGROUND**

The Court described the factual background underlying MDI's proposed complaint against the Receiver in its April 16, 2007 order and will not repeat that detailed factual history here. *See* Apr. 16, 2007 Order Denying Mot. to Shorten Time at 2-6. In brief, MDI challenges actions taken by the Receiver in connection with MDI's provision of physician and hospital services to inmates at two institutions within the California Department of Corrections and Rehabilitation ("CDCR"): California State Prison, Los Angeles County ("LAC") and California Correctional Institution in Tehachapi ("CCI").

The proposed complaint, attached as Exhibit 1 to the Dillon Declaration, alleges the following:[1] After this Court appointed Robert Sillen as Receiver but prior to the effective date of the Receiver's appointment, MDI began negotiating with the CDCR to provide services at LAC and CCI. MDI and the CDCR never executed a final contract, but MDI was permitted to begin providing services on September 1, 2006.

A few months later, CDCR staff questioned whether MDI's scope of work constituted corporate practice of medicine in violation of California law. The CDCR worked with MDI to prepare a restructured agreement that eliminated any such concerns. This contract had been approved by the CDCR and MDI by December 26, 2006, but was "abruptly seized" by the Receiver's chief of staff in early January 2007. Proposed Compl. ¶ 39. The Receiver "suspended the process of finalizing the restructured agreement and unilaterally stopped payments on all invoices submitted by MDI." *Id.* ¶ 40. The last payment MDI received from the CDCR was on January 5, 2007.

The Receiver met with MDI on February 16, 2007, when the Receiver reiterated to MDI his concerns that MDI was unlawfully practicing medicine without a license and "represented that MDI could be paid for services rendered if it were determined that MDI needed no medical license." *Id.* ¶ 47. The Receiver also instructed MDI to continue working at LAC and CCI without payment.

On March 7, 2007, MDI provided the Receiver with a legal opinion letter – prepared by MDI's own counsel – that MDI was engaged in non-medical administrative work and therefore did not require a medical license. The Receiver "refused to accept the opinion and alternative contract proposals previously accepted by the CDCR's legal department." *Id.* ¶ 51. On March 27, 2007, the Receiver "demanded that MDI procure an advisory opinion, within ten days, from the Medical Board of California," which MDI contends does not provide such opinions within such short notice on request from private parties. *Id.* ¶ 52. The

---

[1] For the purposes of considering MDI's application for leave to sue the Receiver, the Court assumes the truth of the facts alleged in the complaint. As might be expected, the Receiver, in his opposition papers, disputes some of those allegations, but the Court need not resolve those disputes at this time.

2

Receiver also demanded that MDI produce certain contractual arrangements MDI had with health care providers in its referral network. MDI was willing to provide this information if the Receiver signed a confidentiality agreement, but the Receiver never agreed to do so. On April 7, 2007, "the Receiver terminated all contact with MDI and physically expelled MDI personnel from LAC and CCI without warning." *Id.* ¶ 55.

Based on the above allegations, MDI filed suit against then-Receiver Sillen, in both his individual and official capacities, and the CDCR on September 17, 2007, in Sacramento County Superior Court. The Receiver removed the action to the United States District Court for the Eastern District of California under the federal officer removal statute, 28 U.S.C. § 1442. The Receiver and the CDCR subsequently moved to dismiss the complaint, and the Honorable William B. Shubb granted both motions on February 14, 2008. In his decision, Judge Shubb concluded that the court lacked subject matter jurisdiction because: (1) MDI failed to obtain leave to sue the Receiver from this Court and (2) 28 U.S.C. § 959(a), which provides that receivers "may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with [receivership] property," did not apply to MDI's claims. *Med. Dev. Int'l v. Cal. Dep't of Corrections & Rehab.*, No. CIV. S-07-2199 WBS EFB, 2008 WL 436930 (E.D. Cal. Feb. 14, 2008) (also attached as Ex. 3 to Dillon Decl.) (hereinafter "*MDI v. CDCR*"). MDI appealed the dismissal to the United States Court of Appeal for the Ninth Circuit, but the parties stipulated to a stay of that appeal until September 15, 2008, to allow time for MDI to file the instant application in this Court. MDI now seeks leave to sue the current Receiver, J. Clark Kelso, in his official capacity in state court. The proposed complaint also names the CDCR as a defendant.

**DISCUSSION**

As an initial matter, MDI contends that it does not need permission from this Court to sue the Receiver. However, MDI properly does not ask this Court to re-visit that issue – which was already decided adversely to MDI by Judge Shubb and is currently on appeal –

3

and the Court focuses its discussion on the only issue presented for resolution: whether the Court should grant MDI leave to sue the Receiver in state court.

The Court first notes that even if MDI filed suit against the Receiver in state court, the Receiver appears to have an absolute right to remove the case to federal court under 28 U.S.C. § 1442(a)(1), which allows a federal officer sued in state court "in an official or individual capacity for any act under color of such office" to remove the case to federal court. *See also* 28 U.S.C. § 1442(a)(3) (allowing removal by "[a]ny officer of the courts of the United States for any act under color of office or in the performance of his duties"). MDI does not and cannot dispute that the Receiver, as an appointee of this Court, qualifies as a federal officer, and MDI cites no authority for the proposition that granting leave to sue the Receiver would foreclose the Receiver's statutory right to removal.

Turning to the merits of MDI's application, the Court may refuse MDI's request for leave to sue if MDI fails to set forth a prima facie case against the Receiver or if MDI's claims are without foundation. *In re Kashini*, 190 B.R. 875, 885 (B.A.P. 9th Cir. 1995) (cited with approval by *In re Crown Vantage, Inc.*, 421 F.3d 963 (9th Cir. 2005)); *Dunscombe v. Loftin*, 154 F.2d 963, 966 (5th Cir. 1946). Put another way, leave to sue should be granted only "where it is made to appear that a cause of action is stated upon which it can be said there is reasonable probability of recovery." *Driver-Harris Co. v. Indus. Furnace Corp.*, 12 F. Supp. 918, 919 (W.D.N.Y. 1935). Even if MDI makes out a prima facie case, this Court may nonetheless exercise its discretion to deny leave to sue the Receiver in another court and instead choose to maintain jurisdiction over MDI's claims based on "the balancing of the interests of all parties involved." *Kashini*, 190 B.R. at 886-87 (cited with approval by *Crown Vantage*, 421 F.3d at 976).

After careful review of MDI's proposed complaint, the Court concludes that MDI has failed to set forth a prima facie case on which there is a reasonable probability of recovery because the Receiver would be immune from MDI's suit. MDI does not contest that this Court acted within its jurisdiction to appoint the Receiver, nor does MDI contest that the Receiver is generally entitled to invoke quasi-judicial immunity to bar suits for damages.

4

Instead, MDI contends that the Receiver is not entitled to immunity in this case because the acts complained of are not judicial in nature. The Court rejects MDI's argument for the reasons discussed below.

MDI is, of course, correct that absolute judicial or quasi-judicial immunity "does not apply to non-judicial acts, i.e., the administrative, legislative, and executive functions that judges may on occasion be assigned to perform." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001) (citing *Forrester v. White*, 484 U.S. 219, 227 (1988)).[2] Thus, in *Forrester*, the Supreme Court held that a judge "was not entitled to absolute immunity for his decisions to demote and discharge" a probation officer because such decisions "were not themselves judicial or adjudicative"; instead, the judge "was acting in an administrative capacity when he demoted and discharged" the probation officer. *Forrester*, 484 U.S. at 229-30. In determining whether an act may form the basis for immunity, "the relevant inquiry is the 'nature' and 'function' of the act, not the 'act itself.'" *Mireles v. Waco*, 502 U.S. 9, 13 (1991) (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)) (case noting that the relevant "act" was "directing police officers to bring counsel in a pending case before the court," rather than directing "police officers to carry out a judicial order with excessive force"). "[I]f only the particular act in question were to be scrutinized, then any mistake of a judge in excess of his authority would become a 'nonjudicial' act, because an improper or erroneous act cannot be said to be normally performed by a judge. If judicial immunity means anything, it means that a judge 'will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority." *Id.* at 12-13 (quoting *Stump*, 435 U.S. at 362).

//

//

---

[2] In *Kohlrautz v. Oilmen Participation Corporation*, the Ninth Circuit held that state law governs official immunity issues "where a state court-appointed receiver has been sued under state law for alleged tortious abuse of process using state courts." 441 F.3d 827, 833 (9th Cir. 2006). However, it is not disputed that federal law should govern this case involving a federal receiver appointed by a federal court, nor does MDI argue that "there is a material difference between the federal and state law for official immunity," as there was in *Kohlrautz*, *id.* at 831.

5

MDI attempts to analogize this case to the sort of administrative action at issue in *Forrester*. However, as the Ninth Circuit has explained:

> *Forrester* simply acknowledged that "[r]unning through our cases, with fair consistency, is a 'functional' approach to immunity questions. . . ." 108 S. Ct. at 542. The cases recognizing absolute immunity for court-appointed receivers are all premised on this same functional approach to immunity. The cases reason that the receiver functions as an arm of the court by making decisions about the operation of a business that the judge otherwise would have to make. *A receiver operates a business only because the court has directed him to do so in connection with a case pending before the court. This situation is dramatically different from a judge's administrative hiring and firing decisions for subordinate court personnel, which have no connection to litigation pending before the court.*

*New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1303 n.6 (9th Cir. 1989) (emphasis added). Consequently, a receiver is absolutely immune from suit for functions "intimately connected with his receivership duties." *Id.* at 1304 (finding absolute immunity based on charges of mismanagement but not for allegations of theft or slander); *see also Mullis v. U.S. Bankruptcy Court*, 828 F.2d 1386, 1390-91 (9th Cir. 1987) (finding absolute immunity for a bankruptcy trustee for alleged "acts or omissions within the ambit of the trustee's official duties").[3]

Here, as Judge Shubb correctly explained:

> . . . [This Court] charged the receivership with the "duty to control, oversee, supervise, and direct all administrative, personnel, financial, accounting, *contractual*, legal, and other operational functions of the medical delivery component of the [CDCR]." [Feb. 14, 2006 Order Appointing Receiver] OAR at 2 (emphasis added). [This Court] supplemented this responsibility by explicitly providing that, in deployment of the aforementioned duties and directives, "the Receiver and his staff shall have the status of officers and agents of this Court, and as such shall be vested with the same immunities as vest with this Court." *Id.* at 6.

---

[3]MDI contends that *Mullis* is inapplicable to this case because it is "limited to claims brought against a receiver personally," Reply at 3 n.4, and MDI seeks leave to sue the Receiver in his official capacity only. However, nothing in *Mullis* indicates that the trustee was sued only in his individual capacity. Moreover, the Ninth Circuit has elsewhere explicitly applied absolute immunity analysis to cases involving claims brought against officials in their official capacity. *E.g., Duvall*, 260 F.3d 1124 (individual defendants named in their official capacities only); *see also, e.g., Sadoski v. Mosley*, 435 F.3d 1076 (9th Cir. 2006) (individual defendants sued in both official and individual capacities, but no distinction made between these two capacities when discussing absolute immunity); *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916 (9th Cir. 2004) (same).

> Because [MDI's] lawsuit challenges [the Receiver's] conduct in terminating whatever quasi-contractual relationship may have existed when he suspected illegality on the part of [MDI], the lawsuit challenges [the Receiver's] conduct in performing the very duties [this Court] set up the receivership to perform.

*MDI v. CDCR*, 2008 WL 436930, at *4. Put another way:

> [MDI's] causes of action against [the Receiver] do not arise from tortious conduct or negligent acts pursuant to day-to-day, routine, or ordinary business operations unrelated to his official responsibilities. Rather, [MDI] challenges the very core of [the Receiver's] authority and administration of the CDCR medical services system – i.e., duties explicitly prescribed in [this Court's] creation of the receivership.

*Id.* at *3 (citation omitted). This is in contrast to cases in which "a receiver or trustee has been sued in his/her capacity as an employer, or for torts committed by agents of the estate/business in receivership during the course of routine or day-to-day operations distinct from the receiver's official responsibilities." *Id.*

Because MDI challenges actions taken by the Receiver that go to the core of his judicially conferred duties, the Receiver is immune from suit based on MDI's allegations under the Ninth Circuit precedent cited above. Consequently, MDI has failed to state a prima facie case against the Receiver in which there is a reasonable probability of recovery, and the Court does not find good cause to grant MDI leave to sue the Receiver.

**CONCLUSION**

With good cause appearing for the reasons discussed above, MDI's application for leave to sue the Receiver in state court is hereby DENIED.

**IT IS SO ORDERED.**

Dated: 06/24/08

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

7