IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>    Defendants. | NO. CIV S-90-0520 LKK JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>    Defendants. | NO. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR RECONSIDERATION OF THE MAGISTRATE JUDGE'S AUGUST 14, 2008 ORDER |

    Pending before this Court is defendants' motion for reconsideration of the magistrate judge's August 14, 2008 order requiring Governor Arnold Schwarzenegger, Chief of Staff Susan Kennedy, and Deputy Cabinet Secretary Robert Gore to submit to depositions by plaintiffs. The Court GRANTS the motion as to the Governor and his Chief of Staff, and DENIES it as to the Deputy Cabinet Secretary.

## I.    Factual and Procedural Background

    The plaintiffs in these proceedings allege that California's prisons are overcrowded and that the overcrowding is the primary cause of serious and persistent violations of

prisoners' constitutional rights to adequate medical and mental health care.  The Three-Judge Court that has been convened has authority under the Prison Litigation Reform Act (PLRA) to issue a "prisoner release order."  Before issuing such an order, however, the Court must determine that overcrowding of California prisons is the primary cause of the violation of plaintiffs' constitutional rights and that no other relief will remedy the violation.  18 U.S.C. §§ 3626(a)(3)(E)(i) and (ii).  The Court must also consider whether the order would have an "adverse impact on public safety."  18 U.S.C. § 3626(a)(2).

On June 30, 2008, and again on July 10, plaintiffs noticed the depositions of Governor Schwarzenegger, Chief of Staff Kennedy, and Deputy Cabinet Secretary Gore in preparation for calling them as trial witnesses.  Defendants objected, and the parties submitted their dispute to the magistrate judge.  On August 14, 2008, the magistrate judge issued an order requiring the three officials to submit to depositions.  Defendants moved for reconsideration.  On August 19, 2008, the Court stayed the depositions and ordered briefing.  The Court now reaches the merits of the magistrate judge's order.

## II.    Standard

Federal Rule of Civil Procedure 72(a) provides that non-dispositive pretrial matters may be decided by a magistrate judge, subject to reconsideration by the district judge.  The district judge shall, upon reconsideration, modify or set aside any part of the magistrate judge's order which is "found to be clearly erroneous or contrary to law."  Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636 (b)(1)(A).

Discovery motions regarding depositions are non-dispositive pretrial motions within the scope of Rule 72(a) and 28 U.S.C. § 636(b)(1)(A), and thus subject to the "clearly erroneous or contrary to law" standard of review.  *Rockwell Intern., Inc. v. Pos-A-Traction Industries, Inc.*, 712 F.2d 1324, 1325 (9th Cir. 1983) (per curiam).  "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

*//*

*United States v. U. S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *Anti-Monopoly, Inc. v. General Mills Fun Group, Inc.*, 684 F.2d 1316, 1318 (9th Cir. 1982).

## III.   Analysis

As the magistrate judge recognized, the settled rule across the circuits is that absent extraordinary circumstances, high-ranking officials may not be subjected to depositions or called to testify regarding their official actions. *See Kyle Engineering Co. v. Kleppe*, 600 F.2d 226, 231 (9th Cir. 1979) ("Heads of government agencies are not normally subject to deposition."); *see also Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007); *Stagman v. Ryan*, 176 F.3d 986 (7th Cir. 1999), *cert. denied*, 528 U.S. 986 (1999); *In re United States of America*, 985 F.2d 510, 512 (11th Cir. 1993) (per curiam), *cert. denied sub nom.*, *Faloon v. United States*, 510 U.S. 989 (1993); *Simplex Time Recorder Co. v. Secretary of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985); *Sweeney v. Bond*, 669 F.2d 542 (8th Cir. 1982), *abrogated on other grounds by O'Hare Truck Service, Inc. v. City of Northlake*, 518 U.S. 712 (1996). The extraordinary circumstances test may be met when high-ranking officials "have direct personal factual information pertaining to material issues in an action," and "the information to be gained is not available through any other sources," *Bogan*, 489 F.3d at 423.

Two reasons underlie the reluctance of courts to allow discovery of high-ranking officials. The first is to protect the officials from discovery that will burden the performance of their duties, particularly given the frequency with which such officials are likely to be named in lawsuits. *See In re United States*, 985 F.2d at 512. The second is to protect the officials from unwarranted inquiries into their decision-making process. *See United States v. Morgan*, 313 U.S. 409, 422 (1941).

In the case before us, the parties agree, explicitly or implicitly, that the depositions in question may not be taken absent "extraordinary circumstances." Plaintiffs assert that this case presents such circumstances because each prospective deponent possesses "unique personal knowledge" of facts critical to the resolution of the dispute. Opp'n at 1. They allege that the Governor's office has been active in preparing and implementing policies to

3

reform California's prisons. They also allege that the Governor and his aides have personally undertaken a number of actions to alleviate prison conditions, including issuing an Emergency Proclamation, urging the enactment of AB 900, proposing a budget in early 2008 that contemplated releasing prisoners, and establishing "strike teams" that are in charge of implementing AB 900. Opp'n at 7-8. Deputy Cabinet Secretary Gore manages the strike teams and reports directly to high-ranking members of the Governor's office, including Chief of Staff Kennedy, regarding their findings and activities. Evenson Decl., Ex. E & R. Plaintiffs contend that the Governor and his aides thus have personal knowledge of information relating to issues in this case, including whether "overcrowding is the primary cause" of the constitutional violations, whether "no other relief will remedy the violation," and whether a "prisoner release order" would have an "adverse impact on public safety." Opp'n at 1.

**A. The Governor and Chief of Staff Kennedy**

      The Court first considers the magistrate judge's order requiring the Governor and his Chief of Staff to submit to depositions. Plaintiffs wish to depose these two officials in order to question them about the implementation of AB 900, the measures they have taken or proposed to alleviate prison conditions, and the statements they have made in regard to overcrowding and the progress of prison reform. They contend that they are entitled to question the Governor and his Chief of Staff about their actions and about the factual bases underlying their actions or statements. Assuming that the information that could be gained by posing such questions would be relevant to the issues before the Court and would otherwise be discoverable, plaintiffs must still show that there are "extraordinary circumstances" that justify deposing the two high-ranking officials, specifically that they possess personal knowledge of facts critical to the outcome of the proceedings and that such information cannot be obtained by other means.

      The Court notes that plaintiffs have not cited any circuit court cases that have found "extraordinary circumstances" sufficient to allow depositions of Governors, or their top

aides, or, for that matter, any other high-ranking officials. In the one circuit case that plaintiffs do cite, the court dismissed the petition for a writ of mandamus for lack of jurisdiction and thus did not reach the merits of the district court order authorizing a notice of deposition to the Commissioner of the FDA. *See In re Kessler*, 100 F.3d 1015, 1018 (D.C. Cir. 1996). In all the other circuit cases cited by the parties, the court denied requests to depose high-ranking officials, determining, for example, that the official did not have first-hand information relevant to the action, *see, e.g.*, *Stagman*, 176 F.3d at 994 (disallowing depositions where the Illinois Attorney General was not the ultimate decisionmaker responsible for dismissing the plaintiff); that other officials could testify to the same information, *see, e.g.*, *Sweeney*, 669 F.2d at 546 (disallowing depositions of the Governor because the same information could be obtained from other officials); *In re United States*, 985 F.2d at 512 (concluding the same in the case of the Commissioner of the Food and Drug Administration (FDA)); or that the information was available through other avenues, *see, e.g.*, *Simplex*, 766 F.2d at 587 (concluding that published reports and agency documents provide sufficient information regarding the Occupational Safety and Health Act (OSHA) and Administration policies); *Kyle*, 600 F.2d at 231 (concluding that interrogatories could be substituted for depositions).

     Plaintiffs cite to several district courts that have allowed depositions to proceed against high-ranking officials. The Court discerns three themes in these cases. First, courts have allowed depositions when there are allegations that the official acted with improper motive or acted outside the scope of his official capacity. *See, e.g.*, *Bagley v. Blagojevich*, 486 F. Supp. 2d 786, 789 (C.D. Ill. 2007) (permitting deposition where plaintiffs alleged that the Governor ordered their jobs eliminated in retaliation for their attempt to organize on behalf of a union that was a rival to a group that had contributed heavily to his election campaign); *Detoy v. City and County of San Francisco*, 196 F.R.D. 362, 370 (N.D. Cal. 2000) (permitting deposition where the chief of police took the "unusual" step of intervening personally in disciplinary proceedings against a police officer to ensure lighter discipline for the officer); *Virgo Corp. v. Paiewonsky*, 39 F.R.D. 9, 10 (D.V.I. 1966) (permitting deposition

of a Governor accused of taking arbitrary actions as a result of Congressional pressures and personal friendships). Second, at least one district court order cited by plaintiffs permitted depositions regarding the official acts of a mayor when the court was satisfied that he had "pertinent, admissible, discoverable information which [could] be obtained only from him." *Atlanta Journal & Constitution v. City of Atlanta Dep't of Aviation*, 175 F.R.D. 347, 348 (N.D. Ga. 1997).[1] Third, courts have been more willing to allow depositions when they have doubts as to whether an official is sufficiently "high-ranking" to merit protection from depositions. *See, e.g.*, *Green v. Baca*, 226 F.R.D. 624, 649-50 (C.D. Cal. 2005) (allowing depositions in part because "precluding [the County Sheriff's] testimony altogether is [not] warranted" given that he may not even be considered a high-ranking government official); *Detoy*, 196 F.R.D. at 369-70.[2]

      The survey of the case law above does not persuade the Court that this case presents "extraordinary circumstances" that justify taking the depositions of the Governor of California and his Chief of Staff. Both are "high-ranking officials" who deserve protection from the burden of depositions. *See Alexander v. F.B.I.*, 186 F.R.D. 1, 3 (D.D.C. 1998) (holding that "very senior government officials" like Assistants to the President should not ordinarily be deposed); *cf. Green*, 226 F.R.D. at 649-50. There is no allegation that they acted outside the scope of their official duties or with improper motive, *cf. Bagley*, 486 F. Supp. 2d at 789; *Virgo Corp.*, 39 F.R.D. at 10, but, most important here, plaintiffs have not carried their burden of establishing that no other person possesses the information in question, particularly other members of the Governor's office or his administration, or that such information may not be obtained by other means.

---

[1] This is a case-specific inquiry, and the order in *Atlanta Journal & Constitution* does not reveal what evidence the court relied on to reach its conclusion.

[2] The Court does not find persuasive other district court decisions cited by plaintiffs that failed to explain specifically how the high-ranking official was personally involved in the alleged acts or why other officials were not capable of providing that information. *See, e.g.*, *Prima Zona Exploratoria de Puerto Rico, Inc. v. Calderon*, 154 F. Supp. 2d 245 (D.P.R. 2001).

6

When the Governor acts within the parameters of his official duties by, for example, issuing orders or proposing reform legislation, it is likely that other lower-ranking members of his office or administration would have relevant information about his actions. Indeed, plaintiffs have not shown that the Governor or his Chief of Staff have any personal knowledge that lower-ranking officials or policy experts do not have, whether regarding prison conditions, effects of certain remedies, the potential impact on public safety of a prisoner release order, or the State's plans for confronting these issues. *See Deukmejian v. Superior Court of Marin County*, 143 Cal. App. 3d 632 (Cal. Ct. App. 1983) (disallowing depositions of a Governor in a case challenging prison conditions because he had no unique information regarding the conditions). In particular, plaintiffs have not shown that the Governor or his Chief of Staff have any information that other staff members in the Governor's office, for example, Deputy Cabinet Secretary Gore, or other officials in his administration, do not have. *See Bogan*, 489 F.3d at 424 (noting that the Bogans could have pursued discovery from other City employees, including the Mayor's aides, before seeking to depose the Mayor). It is not sufficient simply to make allegations to such effect in a conclusory manner; rather, a party seeking to depose a high-ranking official must make a showing as to what efforts have been made to determine whether the information is otherwise available and the extent to which their efforts failed to uncover such information.[3] The Court therefore concludes that the magistrate judge clearly erred in ordering the depositions of the Governor and his Chief of Staff. The motion for reconsideration is granted as to the two high-ranking officials.

The Court notes, however, that plaintiffs have argued that the interrogatories that they served on the Governor have been answered by "evasive, boilerplate responses." Opp'n at 15. Responses of the nature alleged are strongly disfavored. In such instances, plaintiffs may ordinarily move to compel further responses and may serve requests for admissions.

---

[3] It is also possible that some of the information sought is available in reports and other public documents, *see Simplex*, 766 F.2d at 587, or could be obtained through requests for admissions, *cf. Kyle*, 600 F.2d at 231.

7

1  Because plaintiffs may have believed that in light of the non-responsive nature of the
2  answers they would be permitted to obtain by way of deposition the information that they
3  had unsuccessfully sought, the Court will permit plaintiffs to move to compel further
4  responses for a period of ten days from the date of this order.  During that time, plaintiffs
5  may also serve requests for admissions on the Governor and his Chief of Staff.  The Court,
6  however, will not entertain any further motions for reconsideration on the basis of such
7  additional discovery.

### B.  Deputy Cabinet Secretary Robert Gore

Plaintiffs contend that they are entitled to elicit information from Gore, the Deputy Cabinet Secretary, about the strike team's work in implementing AB 900, including its progress, the "roadblocks" encountered, and its effect on the overcrowding crisis.  Opp'n at 13.  This information appears to be material to the case, and Gore, as the official managing the strike team and reporting on its progress, appears to be the most likely person to have knowledge on this subject.  Also, as a member of the Governor's office, he likely possesses information about the Governor's past and future proposals for prison reform as well as the Governor's public statements regarding issues material to this case that would not be possessed by officials of the California Department of Corrections and Rehabilitation. Although plaintiffs have not questioned the defendants' assertion that Gore is a high-ranking official, he is clearly of a significantly lower rank than the Governor and the Chief of Staff. Accordingly, it would be less intrusive to allow the taking of Gore's deposition than that of the Governor or his Chief of Staff.  *See Bogan*, 489 F.3d at 424.  In fact, the defendants themselves freely acknowledge that "the least intrusive order would be to allow the deposition of Robert Gore . . . ."  Reply at 9.

The Court also notes that this is not a routine case: Gore is the official in charge of managing the development and implementation of reforms that defendants themselves contend may affect the resolution of the controversy.  Accordingly, permitting plaintiffs to take Gore's deposition will not expose high-ranking officials to notices of depositions in

future cases. *Cf. In re United States of America*, 985 F.2d at 512 (allowing testimony of the FDA Commissioner in every case that he prosecutes would monopolize his time).  This case is proceeding to trial on an expedited basis and the discovery proceedings have already resulted in numerous complex disputes.  Under the circumstances, the Court will not require any further showing regarding alternative sources before allowing Gore's deposition to proceed.  In sum, given Gore's role with respect to prison reform and his duties regarding the collection and transmission of information, the Court cannot conclude that the magistrate judge clearly erred or acted contrary to law in allowing his deposition to proceed.  The motion for reconsideration is denied as to Deputy Cabinet Secretary Gore.

Defendants may, however, assert the deliberative process privilege as to specific questions, when they deem it appropriate to do so, but must lay a specific foundation on the record for such assertions.  If necessary, the parties may then seek the assistance of the magistrate judge, who will then have a more adequate basis for considering whether the deliberative process privilege applies to particular questions, including whether plaintiffs' "need for the [information] and the need for accurate fact-finding override the government's interest in non-disclosure." *F.T.C. v. Warner Commc'ns. Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984).  The magistrate judge shall resolve any further disputes as early as practicable.

**IV.    Conclusion**

For the reasons stated herein, defendants' request for reconsideration of the magistrate judge's August 14, 2008 ruling is GRANTED as to depositions of Governor Schwarzenegger and Chief of Staff Kennedy, and DENIED as to Deputy Cabinet Secretary Gore.

**IT IS SO ORDERED.**

Dated:   09/15/08                                             /s/
                                                                    STEPHEN REINHARDT
                                                                    UNITED STATES CIRCUIT JUDGE
                                                                    NINTH CIRCUIT COURT OF APPEALS

Dated: 09/15/08

_____
LAWRENCE K. KARLTON
SENIOR UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF CALIFORNIA

Dated: 09/15/08

_____
THELTON E. HENDERSON
SENIOR UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF CALIFORNIA

10