UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCIANO PLATA, et al., | Case No. C01-1351 TEH |
| *Plaintiffs*, | **SECOND ORDER FOR FURTHER PROCEEDINGS RE: RECEIVER'S MOTION FOR CONTEMPT** |
| v. | |
| ARNOLD SCHWARZENEGGER, et al., | |
| *Defendants.* | |

This matter comes before the Court on Receiver J. Clark Kelso's motion for order adjudging Defendants California Governor Arnold Schwarzenegger and California State Controller John Chiang in contempt for failure to fund the Receiver's capital projects. The Court has considered the papers submitted in support of and in opposition to the motion, and the arguments of counsel presented at hearings on October 6, 2008, and October 27, 2008.

The Court identifies the following prior Court Orders and events evidencing Defendants' lack of compliance culminating in the Receiver's motion:

1. On June 13, 2002, Defendants stipulated to injunctive relief and agreed to bring California's prison medical system up to Constitutional standards. The stipulated injunction provides in part that "the court shall have the power to enforce the stipulation through specified performance and all other remedies permitted by law."

2. On October 3, 2005, the Court issued Findings of Fact and Conclusions of Law detailing the long history of constitutional violations in California's prisons system and the failure of the State to comply with remedial orders attempting to cure the unconstitutional conditions.

3. On February 14, 2006, the Court issued an Order Appointing Receiver (OAR), conferring on the Receiver all of the powers of the Secretary of the CDCR with respect to delivery of medical care and suspended the Secretary's exercise of those powers during the Receivership.

4. The OAR provides in paragraph IV that Defendants in this action shall pay all costs incurred in the implementation of the Receiver's policies, plans, and decisions.

5. The OAR also provides in paragraph VI that Defendants in this action shall fully cooperate with the Receiver in the discharge of his duties.

6. On November 15, 2007, the former Receiver filed a Plan of Action (POA) and on March 13, 2008, the current Receiver filed the Turnaround Plan of Action (TPA).

7. Defendants never objected to either the POA or the TPA, but instead consented to them after receiving them, reviewing them, and participating directly and indirectly in planning and informational meetings regarding the plans.  Nor did Defendants object to the entry of an Order on February 26, 2008 approving a Construction Coordination Agreement calling for the construction of 10,000 beds under the Receiver's leadership.

8. The TPA was approved by the Court and entered as an order by the Court on June 16, 2008.

9. The TPA states that its implementation is estimated to cost $7 billion.

10. The Receiver, Defendants, and the Court have determined or otherwise agreed that the implementation of the TPA is necessary to bring the prison healthcare system to constitutional standards.

11. The Receiver has already begun implementation of the plans and Defendants have previously provided funds as needed by the Receiver.

12. The Receiver needs additional funds immediately for the project to continue.

13. The failure to provide these funds would result in the dispersion of the project management teams, effectively bringing the project to an end and ultimately resulting in much higher cost to the State.

1    Good cause therefore appearing, the Court now Orders as follows:

2    (1)  Defendants are to transfer $250 million to the Receiver no later than November 5,

3    2008.

4    (2)  If Defendants fail to transfer $250 million to the Receiver by November 5, 2008,

5    Defendants are hereby ORDERED TO SHOW CAUSE starting at 9:00 AM on November 12,

6    2008, or as soon thereafter as counsel may be heard, why they should not be held in contempt for

7    failing to comply with this Order to continue funding implementation of the Receiver's

8    previously approved plans.  On November 7, 2008, the parties shall file with the Court a notice

9    identifying any witnesses they intend to call at the hearing.  The Court will issue a more detailed

10   scheduling order, including time limits, closer to the hearing date.

12   IT IS SO ORDERED.

14   Dated:   10/27/08

By: _____
Thelton E. Henderson, Judge
United States District Court

