1  JONES & MAYER
   Martin J. Mayer (SB # 73890)
2  Michael R. Capizzi (SB # 35864)
   Kimberly Hall Barlow (SB # 149902)
3  Ivy M. Tsai (SB # 223168)
   3777 North Harbor Boulevard
4  Fullerton, California 92835
   (714) 446-1400; Fax (714) 446-1448
5  e-mail: mjm@jones-mayer.com
   e-mail: mrc@jones-mayer.com
6  e-mail: khb@jones-mayer.com
   e-mail: imt@jones-mayer.com
7
   Attorneys for Law Enforcement
8  Intervenor-Defendants

9  ROD PACHECO
   District Attorney, County of Riverside
10 4075 Main Street, First Floor
   Riverside, California 92501
11 Telephone: (951) 863-8436
   Fax: (951) 955-0190
12 William E. Mitchell
   Assistant District Attorney
13 (CSB # 108483)

14 Attorneys for District Attorney Defendant Intervenors

15

16                  IN THE UNITED STATES DISTRICT COURTS

17              FOR THE EASTERN DISTRICT OF CALIFORNIA

18              AND THE NORTHERN DISTRICT OF CALIFORNIA

19    UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

20      PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

21

22 RALPH COLEMAN, et al.,              Case No: CIV S-90-0520 LKK JFM P

23              Plaintiffs,            **THREE-JUDGE COURT**

24    vs.                             [F.R.C.P. 24; 18 U.S.C. § 3626(a)(3)(F)]

25 ARNOLD SCHWARZENEGGER, et
   al.,                              **LAW ENFORCEMENT AND DISTRICT**
26                                    **ATTORNEYS INTERVENORS' TRIAL**
              Defendants.             **BRIEF**
27

28

-1-
LAW ENFORCEMENT AND DISTRICT ATTORNEY INTERVENORS' TRIAL BRIEF

| | |
|---|---|
| MARCIANO PLATA, et al.,<br><br>          Plaintiffs,<br><br>     vs.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>          Defendants. | Case No.: C01-1351 TEH<br><br>**THREE-JUDGE COURT** |

TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

Defendant Intervenors Sheriffs, Police Chiefs, Chief Corrections Officer and Chief Probation Officers (Law Enforcement Intervenors) and Defendant District Attorney Intervenors (District Attorney Intervenors) respectfully submit the following trial brief under Eastern District Local Rule 16-285. Those issues addressed in the Parties Joint Pre-Trial Statement as required by order of this Court will not be repeated herein.

I.      STATEMENT OF FACTS

The Coleman and Plata cases have been pending for many years. The issues in these proceedings before this Three-Judge Court involve the constitutional adequacy of the mental health services and medical care provided to inmates in California prisons. In *Coleman*, a trial took place in 1992 and a Special Master was appointed in 1995 to oversee the development of a constitutionally compliant mental health care system. The case is in the remedial phase, with ongoing implementation of plans that have corrected or will correct alleged constitutional violations. In the *Plata* case, a Receiver was appointed in February 2006 to take charge of the medical care provided inmates in California prisons.

In October 2006, Governor Schwarzenegger declared a state of emergency, calling California's prison system severely overcrowded, and CDCR began transferring inmates to private facilities in other states. The California Correctional and Peace Officers Association (CCPOA) filed suit, challenging this policy. Based on the Governor's emergency declaration, in November 2006, the plaintiff-prisoners in the *Plata* and *Coleman* actions filed motions to

LAW ENFORCEMENT AND DISTRICT ATTORNEY INTERVENORS' TRIAL BRIEF

1   empanel a Three-Judge Court to consider an immediate reduction in the prison population in the

2   form of a court-ordered mass prisoner release order under the federal Prison Litigation Reform

3   Act ("PRLA") (18 U.S.C. § 3626).   Despite the State no longer operating prison healthcare,

4   Plaintiffs' motion was granted on July 23, 2007 and a Three-Judge Court was created.

5       These intervenors became parties to the case through their statutory right of intervention

6   under the PRLA.  The parties represented by this trial brief include 67 Sheriffs, Police Chiefs

7   and Chief Probation Officers, and 20 District Attorneys, all of whom oppose the issuance of

8   prisoner release order in this case.

9       II.    LEGAL AND FACTUAL ISSUES TO BE DETERMINED AT TRIAL.

10      Under the Prison Litigation Reform Act, a prisoner release order may only be

11  issued if certain prerequisite facts are proven and upon consideration of alternative forms

12  of relief and impacts to public safety.  First, the Plaintiffs must prove by clear and

13  convincing evidence that crowding is the primary cause of the violation of a Federal

14  right.  18 U.S.C. §3626(a)(3)(E)(r).  While these Intervenor parties do not intend to

15  introduce evidence on these issues, they believe that Plaintiffs cannot meet their burden

16  of proof on this critical threshold issue, and reserve their right to argue this issue at trial.

17      Plaintiffs also bear the burden of proof on the remaining issues to be determined

18  by the Court.  These issues are:  (1) whether other relief (other than a prisoner release

19  order) will remedy the constitutional violation (18 U.S.C. § 3626(a)(3)(E)(ii)); and (2)

20  Whether an order for prospective relief can be narrowly drawn, extend no further than

21  necessary to correct the violation of the Federal right, is the least intrusive means necessary

22  to correct the violation of the Federal right, and whether there is any adverse impact on

23  public safety or the operation of a criminal justice system caused by the relief (to which

24  the court must accord substantial weight) (18 U.S.C. § 3626(a)(1)(A).

25      Framed another way, it is Plaintiffs' burden to prove that the alleged

26  constitutional deprivations previously found to have occurred are still continuing, that

27  the primary cause of these deprivations is overcrowding, that no alternatives are

28  available to resolve the overcrowding except a prisoner release order, and that the relief

LAW ENFORCEMENT AND DISTRICT ATTORNEY INTERVENORS' TRIAL BRIEF

1  they propose is narrowly drawn, the least intrusive means of correcting the violations,

2  and there will be no adverse impacts on public safety or operation of a criminal justice

3  system caused by the proposed order.

4       As this Court has previously pointed out, the PLRA broadly defines a "prisoner

5  release order" to include orders that *explicitly* direct the release or nonadmission of

6  prisoners as well as those that can *indirectly* lead to prison population limits or releases.

7  *See*, 18 U.S.C. § 3626(g)(4) (defining a "prisoner release order" to include "any order,

8  temporary restraining order or preliminary injunction that has the purpose or effect of

9  reducing or limiting the prison population, or that directs the release from or

10  nonadmission of prisoners to a prison).

11      I.    <u>Plaintiffs cannot meet their burden of proof that overcrowding is the cause</u>

12            <u>of the constitutional violations found.</u>

13       Intervenors believe the evidence will show that many of the constitutional

14  deprivations previously found to exist no longer exist, are out of the control of the State,

15  and/or are caused by factors other than overcrowding.  The evidence to be presented in

16  these proceedings will establish that significant efforts have already been made and are

17  continuing to address the overcrowding issues in our prisons.  The inmate population is

18  considerably less than it was last year at this time and further reductions are expected to

19  continue.  Some of the factors and measures that account for the reductions in the prison

20  population are lower admissions from court, lower returns of parolees to custody, shorter

21  sentences, and out-of-state transfers.  In addition, the evidence shows that the primary cause

22  of deficiencies in medical care and mental health care, if any, are caused by such other factors as

23  the lack of mental and medical health care professionals throughout the state generally and

24  particularly those who are able or willing to work in prisons.   Moreover, Plaintiffs cannot show

25  how simply releasing prisoners, regardless of their status, will address any of the problems of

26  which they complain.    How will releasing prisoners with mental health care needs and medical

27  care needs get their needs addressed?  How will the release of members of the general prison

28  population without mental or medical health care needs improve the care provided to those

1 | remaining in custody?  How will a general release improve record keeping and transfer times, or

2 | increase the number and qualifications of medical and mental health professionals in the state or

3 | in the prisons?

4 | II.     <u>Plaintiffs cannot meet their burden of proof that no other relief will remedy</u>

5 |       <u>the violation of the Federal rights at issue.</u>

6 |       These Intervenors do not dispute the many efforts made by the courts and the court

7 | appointed Special Master and Receiver to improve the delivery of medical and mental

8 | health care in the prisons – indeed it appears that these efforts have effectuated

9 | substantial improvements.  These Intervenors believe that these efforts are themselves an

10 | alternative to a prisoner release order in that the individual trial courts, through either the

11 | Special Master and/or the Receiver, or under their own authority, may order increased

12 | treatment space, additional hiring and pay, improvement of records systems to reduce

13 | waiting time, and many other remedies that neither directs the release from prison of any

14 | prisoners nor prevents the admission of any prisoners into prison.  Court orders directed

15 | at the infrastructure of the medical and mental health care delivery systems have a direct

16 | nexus to the improvements needed to attain constitutionally adequate care in the prisons.

17 | Such orders are indisputably less intrusive and harmful to public safety than an early

18 | release of prisoners and a prison population cap.

19 | III.     <u>Plaintiffs cannot meet their burden of proof that no narrower or less</u>

20 |       <u>intrusive relief than a general release and prison population cap can be</u>

21 |       <u>ordered by this Court.</u>

22 |       The proposed general population reduction advanced by Plaintiffs' expert would not be

23 | narrowly drawn and would extend further than necessary to correct the violations in issue in this

24 | case.  While it would reduce the prison population, there is no direct nexus to improvements in

25 | the delivery of medical or mental health care.  Additional measures, which the Receiver is

26 | already addressing, would still be required.   Intervenors believe that the evidence will show that

27 | releasing a general population prisoner will have no impact on the quality, availability or speed

28 | of provision of mental or medical care to the class members.  And, releasing sick and mentally ill

1  people into the communities early under a release order directed at class members will do

2  nothing to get them the mental health care and medical care they need and will likely have an

3  even greater adverse impact on public safety than an order directed at the general population.

4      If the Court determines that it is necessary to reduce the prison population in order to

5  achieve constitutional levels of medical and mental health care in the prisons, then alternatives to

6  a prisoner release order must be found.  Plaintiffs cannot show that the relief they seek can be

7  obtained without harm to public safety. Whether couched as "alternatives" to a prisoner release

8  order or "narrower and less intrusive" orders having the effect of reducing the prison population,

9  the evidence at trial will show that many alternatives to the general prisoner release order

10  proposed by Plaintiffs exist and can be successfully implemented.

11      While there is no question that prison overcrowding exists, recent policy changes,

12  legislative changes, and changes in attitudes have demonstrated the potential to lower state

13  prison populations without a prison cap or prisoner release order. These changes will be less

14  intrusive than a prisoner release order or population cap and they will involve far less adverse

15  consequences on local communities and the administration of justice. They will, however, take

16  time and funding to demonstrate results.  The SB 618 Program is a perfect example of a less

17  intrusive measure that would safely work to reduce the overall prison population.

18      The SB 618 Community Reentry Program is a comprehensive, multi-agency program

19  designed to transition non-violent parolees back into the community from prison through

20  treatment, education and vocational assistance.  SB 618 is intended to address the high rates of

21  recidivism by providing an evidence-based plan for reintegration into the community.  The

22  rehabilitation process begins at the time of the plea bargain and ends eighteen months after

23  release from prison.  The evidence will show that it is already having a marked effect on

24  recidivism rates of the individuals offered the opportunity to participate.

25      The SB 618 program can turn the prison and parole system into what it was intended to

26  be, a system that attempts to rehabilitate people so they do not come back through the system.

27  Recidivism will never be eliminated, but it can be decreased by providing people with some tools

28  that will assist them in making the right choices when they are released.  Replicating the SB 618

LAW ENFORCEMENT AND DISTRICT ATTORNEY INTERVENORS' TRIAL BRIEF

1  program in other counties would have a dramatic impact on reducing the prison population by

2  lowering the recidivism rate of nonviolent repeat offenders.

3       This is just the type of evidence based program that works in providing genuine

4  rehabilitation while offering the most protection to society and to the prisoners themselves.

5  Providing these types of services to criminals early – when they are in the county system and/or

6  on probation – is more effective than waiting until they have gone to prison.  Statewide

7  implementation of SB 618 and similar programs, funding of community re-entry facilities,

8  enhanced funding of probation services, providing counseling, training and re-entry services in

9  county jails and in the prisons prior to releasing prisoners, enhancing parole supervision and

10  services, etc., will have the ultimate effect of not only bringing the prison population down, but

11  will also reduce recidivism, provide genuine help and rehabilitation opportunity to prisoners, and

12  improve public safety.

13      IV.   <u>A prisoner release order as proposed by Plaintiffs would have a devastating</u>

14            <u>impact on public safety and criminal justice systems throughout the State.</u>

15       There will be substantial evidence presented at trial that the relief proposed by Plaintiffs

16  will not result in a long-term reduction in prison population, and will, inevitably and irrefutably

17  increase crime and victimization at a time when our society as a whole and our individual

18  communities are least able to afford it.   The evidence to be offered by the Law Enforcement

19  Intervenors' and the District Attorney Intervenors' witnesses in these proceedings will

20  demonstrate the likely adverse impacts of a prisoner release order on local jails, courts,

21  rehabilitative programs, and law-abiding citizens.  Lessening the length of prison terms to reduce

22  the prison population will have the adverse effect of increasing crime in the local communities,

23  increasing congestion in the courts, and compromising the integrity of the criminal justice

24  system. A prisoner release order would exacerbate already severely overcrowded county jails,

25  and would jeopardize the safety of their operation.  A prison population cap will not ensure,

26  promote or encourage lawful behavior or rehabilitation. It does just the opposite: Releasing

27  prisoners early allows for the commission of new crimes sooner and more crimes over time,

28  affording prisoners more opportunities to commit more crimes.

1       For example, trends and figures show that Riverside County is already experiencing

2   adverse public safety impacts due to jail crowding in the form of additional crime and failures to

3   appear in court. The records show that the great majority of the defendants who are being

4   released early from county jail have committed or are charged with drug, theft and other property

5   crimes. If a prisoner release order or prison population cap is imposed, more jail inmates will be

6   displaced by an increasing state prison population in the county jails, resulting in more serious

7   and dangerous types of offenders being released to the community. The additional crimes

8   committed by this growing number and increasingly more serious class of offender poses a

9   substantial threat to the lives and property of the law-abiding citizens of Riverside County. This

10  increased number of crimes will be in addition to new crimes that will be committed by the

11  prisoners released early from state prison.   This same experience will be replicated in every

12  county in the State, particularly those who are already experiencing court imposed caps or

13  overcrowding in their county jail facilities.

14      III.    CONCLUSION

15      It is time for genuine reform of California's prisons.  But what Plaintiffs propose is not

16  reform. It is instead just a shell game, in which prisoners get moved out of state prisons without

17  regard to their risk to the community, their rehabilitation status, their need for medical or mental

18  health care or their access to the resources they need once released.  They in turn are bound to

19  reoffend at an extraordinarily high rate, bringing increased crime, tragic loss, victimization and

20  fear to the communities that are already struggling with inadequate resources to deal with those

21  currently living in these communities who need mental health care, substance abuse treatment,

22  medical care, education and job training, domestic violence and anger management counseling,

23  housing, and jobs.  Because Plaintiffs propose to do nothing to address either services to

24  prisoners pre-release, or provision of services to those in the community and those proposed to

25  be released, more crime will lead to more arrests, prosecutions, trials and crowding at county and

26  city jails, pushing criminals down and out into the communities they have already victimized.

27  Moving the problem is not solving the problem.  A prisoner release order should not be entered.

28

1

Respectfully submitted,

2

DATED:    November 3, 2008          JONES & MAYER

3

4

By: _____/s/_____
5                                    Kimberly Hall Barlow
                                     Attorneys for Sheriff, Probation, Police
6                                    Chief, and Corrections Intervenor-
                                     Defendants
7

8       ROD PACHECO, DISTRICT ATTORNEY
        COUNTY OF RIVERSIDE
9
        By:_____/s/_____
10                                   William E. Mitchell
                                     Attorneys for District Attorney Intervenors
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW ENFORCEMENT AND DISTRICT ATTORNEY INTERVENORS' TRIAL BRIEF