IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARCIANO PLATA, et al.,

               Plaintiffs,

    v.

ARNOLD SCHWARZENEGGER, et al.,

               Defendants.

NO. C01-1351 TEH

ORDER DENYING DEFENDANTS' MOTION TO STAY OCTOBER 27, 2008 ORDER

       This matter comes before the Court on Defendants' motion to stay the Court's October 27, 2008 order requiring Defendants to transfer $250 million to the Receiver in furtherance of the Receiver's work to remedy the undisputed and ongoing constitutional inadequacies in the delivery of medical care in California's prisons. The Court originally ordered Defendants to transfer the required funds by November 5, 2008, but extended the deadline until today, pending argument on Defendants' motion to stay. For the reasons discussed below, the Court finds good cause to DENY Defendants' motion. Accordingly, as stated in the Court's November 3, 2008 order, Defendants shall transfer $250 million to the Receiver by the end of the day today or, if they fail to do so, be prepared on November 12, 2008, to show cause as to why contempt should not be entered.

**BACKGROUND**

       The Court will not repeat the long factual and procedural history of this case in detail here. In brief, Plaintiffs filed this class action on April 5, 2001, to remedy violations of the Eighth Amendment to the United States Constitution resulting from inadequate delivery of

1 medical care to California inmates.  After Defendants admitted their inability to comply with
2 the injunctive relief to which they stipulated, and following several days of evidentiary
3 hearings, this Court entered findings of fact and conclusions of law on October 3, 2005,
4 finding the appointment of a receiver to be necessary to remedy the constitutional violations
5 in this case because the State demonstrated – indeed, admitted – that it was incapable of
6 doing so on its own.  Since that time, the Court has entered numerous orders regarding the
7 Receiver's appointment and the remedial plans undertaken by the Receiver on behalf of the
8 State.

As part of his remedial plan, the Receiver proposed construction projects that would both upgrade clinical space at existing prisons and result in entirely new healthcare facilities. The Court approved these projects with Defendants' consent.

After the Receiver's multiple efforts to obtain financing for his facilities programs through the legislative process and other non-legislative means failed earlier this year, the Receiver filed a motion for contempt on August 13, 2008.  Through that motion, which remains pending, the Receiver seeks an order adjudging Defendants Governor Arnold Schwarzenegger and Controller John Chiang in contempt for failure to fund the Receiver's remedial projects and/or an order compelling Defendants to fund such projects.  Until Defendants' opposition papers to the Receiver's contempt motion, Defendants never objected to any of the Receiver's facilities programs, his other remedial plans, or his authority to undertake any of these projects.

The Court heard oral argument on the Receiver's motion on October 6, 2008.  On October 8, 2008, the Court ordered a further hearing on October 27, 2008, "to determine the availability of, and the procedures for transferring to the Receiver for the purpose of continuing his capital projects, $250 million in unencumbered funds appropriated by AB 900." Oct. 8, 2008 Order for Further Proceedings Re: Receiver's Mot. for Contempt at 1. Following the October 27, 2008 hearing, the Court entered an order requiring Defendants to transfer $250 million to the Receiver.  It is that order that forms the basis for Defendants' pending motion to stay.

2

**DISCUSSION**

**I.     Jurisdiction**

Defendants first argue that this Court lacks jurisdiction over any further proceedings related to the Court's October 27, 2008 order, including the contemplated show cause hearing if Defendants fail to comply, because Defendants have appealed the order. While Defendants correctly state the general proposition that filing a notice of appeal confers jurisdiction on the appellate court and divests the district court of jurisdiction over the matters appealed, *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (per curiam); *McClatchy Newspapers v. Central Valley Typographical Union No. 46*, 686 F.2d 731, 734 (9th Cir. 1982), the Court must determine whether this general principle applies to the procedural posture of this case.

Defendants argue that this case is analogous to *Donovan v. Mazzola*, 761 F.2d 1411 (9th Cir. 1985), which concerned appeal of a district court's order to pay contempt fines.[1] In that case, the defendants appealed the district court's order finding defendants in contempt and imposing daily fines. Subsequent to the notice of that first appeal, the district court held proceedings to determine the final amount of fines to be imposed. Defendants then filed a second appeal challenging those further proceedings. In ruling on defendants' second appeal, the Ninth Circuit reversed the district court's actions taken subsequent to the first notice of appeal because the filing of that appeal divested the district court of jurisdiction to quantify sanctions. *Id.* at 1415. Here, by contrast, Defendants have appealed an order setting further proceedings regarding the Receiver's motion for contempt; no order finding contempt has been entered, and no sanctions have been imposed.[2]

---

[1] *Donovan* did not involve a receivership or other circumstances in which the district court was supervising a continuing course of conduct. *Cf. Hoffman v. Beer Drivers & Salesmen's Local No. 888*, 536 F.2d 1268, 1276 (9th Cir. 1976).

[2] The order from which Defendants appeal is clearly a component of the Court's proceedings concerning the Receiver's August 13, 2008 motion for contempt. *See, e.g.,* Oct. 8, 2008 Order for Further Proceedings re: Receiver's Mot. for Contempt at 1 ("[T]he Court adopts the Receiver's suggestion and HEREBY ORDERS, as an intermediate step short of a contempt finding, further proceedings to determine the availability of, and the procedures for transferring to the Receiver for the purpose of continuing his capital projects, $250 million in unencumbered funds appropriated by AB 900.").

3

1    The Ninth Circuit has repeatedly held that contempt orders are not appealable until the
2 district court has adjudicated the contempt motion and imposed sanctions. *See, e.g.*, *S.E.C. v.*
3 *Hickey*, 322 F.3d 1123, 1127 (9th Cir. 2003) ("Even if the underlying action has proceeded to
4 a final judgment, an adjudication of civil contempt is not appealable until sanctions have
5 been imposed." (internal emphasis, quotation marks, and citation omitted)); *Gates v. Shinn*,
6 98 F.3d 463, 467 (9th Cir. 1996) (holding that a post-judgment contempt order imposing
7 sanctions, even where sanctions are stayed, qualifies as a final order for purposes of appeal);
8 *Stone v. City & County of San Francisco*, 968 F.2d 850, 854 (9th Cir. 1992) ("As a general
9 rule, contempt orders against a party to pending proceeding are not considered final under 28
10 U.S.C. § 1291. Where the contempt order is a post-judgment order imposing sanctions,
11 however, the order may be final for the purposes of § 1291. A consent decree is considered a
12 final judgment despite the fact that the district court retains jurisdiction over the case."
13 (internal emphasis and citations omitted)); *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1145
14 (9th Cir. 1983) ("Once the finding of contempt has been made and a sanction imposed, the
15 order has acquired all the elements of operativeness and consequence necessary to be
16 possessed by any judicial order to enable it to have the status of a final decision under §
17 1291.") (internal quotation marks and citation omitted). Based on this line of precedent, this
18 Court finds that its October 27, 2008 order – which merely set further proceedings if
19 Defendants failed to act, and did not enter a finding of contempt, let alone impose sanctions –
20 is a non-appealable order.
21    In their notice of appeal, but not in their motion to stay, Defendants assert three
22 alternate grounds of appellate jurisdiction: 28 U.S.C. § 1292(a)(1), the collateral order
23 doctrine, and the *Forgay-Conrad* rule. For the reasons discussed below, none of these
24 grounds is applicable to this case. First, 28 U.S.C. § 1292(a)(1) provides that courts of
25 appeals "have jurisdiction of appeals from [i]nterlocutory orders of the district courts . . .
26 granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or
27 modify injunctions, except where a direct review may be had in the Supreme Court." 28
28 U.S.C. § 1292(a)(1). The October 27, 2008 order, however, requires payment in furtherance

4

of prior orders of the Court and does not fall under any of the provisions of this statute. *See F.T.C. v. Overseas Unlimited Agency, Inc.*, 873 F.2d 1233, 1235 (9th Cir. 1989) ("Since the . . . Order did nothing more than direct that funds be turned over to a receiver, we lack jurisdiction. A simple 'turnover' order made pursuant to a previously unappealed order appointing a receiver does not constitute an 'injunction' within the meaning of 28 U.S.C. § 1292(a)(1).").

Second, for the collateral order doctrine to apply, "the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978) (footnote omitted). Here, the October 27, 2008 order does not conclusively determine the disputed question – whether Defendants are in contempt for failing to fund the remedial plan in this case – nor does it resolve an issue completely separate from the merits of this action. Moreover, the order may be reviewed on appeal if this Court finds Defendants in contempt and imposes sanctions. Thus, none of the requirements of the collateral order doctrine is satisfied.

Finally, "under the *Forgay-Conrad* rule, an order is final if it requires the immediate turnover of property and subjects the party to irreparable harm if the party is forced to wait until the final outcome of the litigation." *Matter of Hawaii Corp.*, 796 F.2d 1139, 1143 (9th Cir. 1986) (citing *Forgay v. Conrad*, 47 U.S. 201 (1848) (case regarding order requiring transfer of "lands and slaves")). This doctrine does not apply to the October 27, 2008 order because Defendants have failed to show how they will suffer irreparable harm if they are not allowed to appeal the order immediately. Furthermore, Defendants have failed to present any argument as to why this rule would apply in the face of explicit Ninth Circuit authority that "orders requiring that funds be turned over to a receiver are nonappealable." *S.E.C. v. Am. Principals Holdings, Inc.*, 817 F.2d 1349, 1350 (9th Cir. 1987) (reaching conclusion following review of other courts of appeals in considering appealability of interlocutory receivership orders under 28 U.S.C. § 1292(a)(2)); *see also S.E.C. v. Black*, 163 F.3d 188, 195 (3d Cir. 1998) ("[Section] 1292(a)(2) . . . is interpreted narrowly to permit appeals only

5

from the three discrete categories of receivership orders specified in the statute, namely orders appointing a receiver, orders refusing to wind up a receivership, and orders refusing to take steps to accomplish the purposes of winding up a receivership.").

In light of all of the above, the Court concludes that its October 27, 2008 order, which neither entered a finding of contempt nor imposed sanctions, is non-appealable. Accordingly, Defendants' notice of appeal of that order does not divest this Court of jurisdiction: "Where the deficiency in a notice of appeal, by reason of . . . reference to a non-appealable order, is clear to the district court, it may disregard the purported notice of appeal and proceed with the case, knowing that it has not been deprived of jurisdiction." *Ruby v. Sec'y of U.S. Navy*, 365 F.2d 385, 389 (9th Cir. 1966).

## II. Merits

The Court thus turns to the merits of Defendants' motion to stay. When considering whether to grant a stay pending appeal, a court must balance the following factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also, e.g., Golden Gate Rest. Ass'n v. City & County of San Francisco*, 512 F.3d 1112, 1115-16 (9th Cir. 2008); *Nat'l Res. Def. Council, Inc. v. Winter*, 502 F.3d 859, 863 (9th Cir. 2007). Over time, the Ninth Circuit has reformulated these factors into a continuum of tests that assess the same elements. At one end of this continuum, the court should grant a stay pending appeal if the moving party shows that there is a strong likelihood of success on the merits and the possibility of irreparable injury to the moving party. *See Golden Gate Rest. Ass'n*, 512 F.3d at 1115-16. At the other end, the court should grant the stay if the moving party demonstrates that "serious legal questions are raised and that the balance of hardships tips sharply in its favor." *Id.* at 1116 (citing *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983)). The Court should

//

6

1 additionally consider where the public interest lies. *Golden Gate Rest. Ass'n*, 512 F.3d at
2 1116 (citing *Winter*, 502 F.3d at 863).

### A. Balance of Hardships

The Court first considers the balance of hardships and risk of irreparable harm in this case. If Defendants fail to provide the Receiver with the $250 million ordered by the Court, the Receiver's construction programs will soon come to a halt, resulting in several months of unnecessary delay, in addition to any time required for the Ninth Circuit to adjudicate Defendants' appeal. Contrary to Defendants' assertions, the declarations submitted by the Receiver demonstrate that, if there is a cessation in the current construction and planning projects, work cannot immediately begin anew upon receipt of funding at some later date. Moreover, Defendants' suggestion that the Receiver use part of his annual operating budget to fund the construction programs while Defendants and the California Legislature consider whether to provide additional funding is nonsensical. Any funds diverted from the Receiver's annual operating budget would only bring the California prison medical care system further out of compliance with the Constitution.

Defendants also mistakenly argue that the Court need only consider harm to the Receiver in the form of delay, and that any harm to Plaintiffs is both too uncertain and too far off in the future to weigh in the Court's analysis. However, although Defendants correctly state that portions of the Receiver's construction will not be completed in the near future even if funding is provided, the Receiver also needs funding to continue immediate construction projects at existing facilities. More importantly, any delay in funding the Receiver's projects directly results in present, irreparable harm to Plaintiffs. As noted in prior orders of this Court, Defendants' failure to develop and maintain a constitutionally adequate system of delivering medical care to California's prisoners results in needless suffering and death. While the Receiver's efforts have undoubtedly improved the California prison health care system, those improvements are only the beginning of curing the constitutional violations at issue in this case. The Receiver has recently released an analysis of inmate deaths in 2007, which found that three deaths were preventable and sixty-five

7

1 deaths were possibly preventable, and that there were nearly 300 extreme departures from the
2 standard of care. This means that, in 2007, a preventable or possibly preventable inmate
3 death occurred, on average, every five or six days. Thus, even small delays in implementing
4 the remedial plan in this case have the potential to result in additional needless suffering and
5 loss of life.

6 By contrast, Defendants claim only economic hardship if a stay were denied. Such
7 financial hardship cannot outweigh the human suffering and preventable and possibly
8 preventable deaths that will occur if a stay is not imposed. *See Lopez*, 713 F.2d at 1437
9 ("little difficulty concluding that the balance of hardships tips decidedly" in favor of
10 "preventable human suffering" rather than "financial concerns"); *Golden Gate Rest. Ass'n*,
11 512 F.3d at 1126 ("balance of hardships tips sharply" in favor of "preventable human
12 suffering" compared with "entirely economic" injuries).

13 Defendants' claim of economic hardship is even less compelling in this case because
14 the $250 million at issue here has already been allocated by Assembly Bill 900, section 28,
15 "for capital outlay to renovate, improve, or expand infrastructure capacity at existing prison
16 facilities" and "may be used for . . . architectural programming, engineering assessments,
17 schematic design, preliminary plans, working drawings, and construction" – precisely the
18 purposes for which the Receiver intends to use the funds.[3] It is undisputed that these funds
19 remain unencumbered. In addition, Defendants have repeatedly agreed at every stage of the
20 remedial process that the Receiver's facilities program is a necessary component of the
21 constitutional remedy in this case. They have failed, for example, to object to any of the
22 several versions of the Receiver's plans that involved renovation and construction of new
23 facilities, or to any of the Receiver's requests for waivers of state law concerning the
24 Receiver's facilities programs.[4] Where, as here, Defendants have both consented to the

---

[3] AB 900 approved additional funds specifically for medical and mental health care construction. However, notwithstanding that the legislation has been in effect for more than one year, these funds have never been made available.

[4] Defendants further rely on an argument that the Receiver's Turnaround Plan and the Court's February 26, 2008 coordination order specifically stated that funding would be approved by the legislature. However, the funding discussions in these documents were

8

1 Receiver's plans and allocated funding that can be used to further those plans, any claim of
2 economic hardship carries even less weight than it might under different circumstances; it
3 certainly does not constitute a risk of irreparable harm to Defendants. Accordingly, the
4 Court concludes that the balance of hardships tips sharply in favor of denying a stay.

### B. Public Interest

The public interest, which "is inseparable from the issues relating to the relative hardship suffered by the litigants," *Lopez*, 713 F.2d at 1437, also weighs against a stay. When evaluating the public interest, courts are "not bound by the government's litigation posture" and should instead "make an independent judgment as to the public interest." *Id.* It is clearly in the public interest to ensure that constitutional rights are protected, and that needless suffering and death are avoided. On the other hand, the Court recognizes the State's current fiscal crisis and understands that a balanced budget is also in the public interest. Significant financial difficulties do not, however, outweigh the public interest in ensuring that the State protects the welfare of its citizens and complies with the United States Constitution. In addition, because the funds in question have already been allocated to improve prison facilities, Defendants' contention that the money requested by the Receiver and ordered by the Court "represents funds that would be taken away from vital state programs," Mot. to Stay at 12, is utterly unpersuasive.

### C. Likelihood of Success on the Merits

Similarly, the Court finds unpersuasive Defendants' arguments that they are likely to succeed on the merits of their appeal. As discussed in Section I above, the Court concludes that its October 27, 2008 order is a non-appealable order; Defendants are therefore unlikely

---

estimated costs only. In addition, while the Receiver stated in Appendix A to the Turnaround Plan that he anticipated that funding for the facilities projects would be through lease revenue bonds, nothing indicated that those bonds would necessarily require legislative approval. Similarly, while the coordination agreement approved on February 26, 2008 referenced funding through AB 900, the agreement further stated that it remained to be determined whether such funding would be adequate. Most importantly, nothing in the Turnaround Plan, the coordination agreement, or any orders of this Court modified Defendants' responsibility to pay "[a]ll costs incurred in the implementation of the policies, plans, and decisions of the Receiver relating to the fulfillment of his duties under this Order." Feb. 14, 2006 Order Appointing Receiver at 7 (section IV).

9

1 to prevail on their instant appeal for that reason alone.  Moreover, even if Defendants' appeal
2 were procedurally proper, Defendants would nonetheless be unlikely to succeed on the merits
3 for the reasons discussed below.

### 1. The Prison Litigation Reform Act

Defendants raise two arguments under the Prison Litigation Reform Act ("PLRA"): first, that the statute prohibits this Court from ordering construction of prisons and, second, that this Court has failed to comply with the statute's requirements for entering prospective relief.  The Court addresses each argument in turn below.

#### a. 18 U.S.C. § 3626(a)(1)(C)

First, Defendants contend that this Court is barred by 18 U.S.C. § 3626(a)(1)(C) from entering an order for construction of prisons without the State's consent.  This section of the statute provides that:  "Nothing in this section shall be construed to authorize the courts, in exercising their remedial powers, to order the construction of prisons or the raising of taxes, or to repeal or detract from otherwise applicable limitations on the remedial powers of the courts."  18 U.S.C. § 3626(a)(1)(C).

This argument fails on its face because, as discussed above, the State has consented to the Receiver's facilities program in this case.  Additionally, the $250 million that is the subject of the Court's October 27, 2008 order will be used not for construction of prisons, but for the renovation of health-care facilities in existing prisons and the planning for construction of new facilities.

Furthermore, Defendants' interpretation of § 3626(a)(1)(C) is flawed.  The statute provides only that "[n]othing in this section shall be construed" to authorize courts to order construction of prisons.  The plain-language interpretation of this language is that the PLRA does not, in and of itself, authorize federal courts to order prison construction, but that the PLRA does not repeal the courts' equitable powers to remedy the violation of constitutional rights.  Had Congress intended to bar courts from ordering prison construction under any

27 //
28 //

10

circumstances, it would have done so explicitly.[5] *Compare* 18 U.S.C. § 3626(a)(1)(C) *with* 18 U.S.C. § 3626(a)(1)(B) (providing that "[t]he court *shall not order any prospective relief*" under certain conditions (emphasis added)). Not only is this the plain-language reading of the statute, but the Ninth Circuit has also adopted this interpretation of similar language. *Cabazon Band of Mission Indians v. Wilson*, 37 F.3d 430, 432-33 (9th Cir. 1994) (interpreting statute providing that "nothing in this section shall be interpreted as conferring upon a State . . . authority to impose any tax, fee, charge, or other assessment upon an Indian tribe or upon any other person or entity authorized by an Indian tribe to engage in a class III activity," and explaining that "failure to confer authority" cannot be equated with "prohibition"). Defendants are therefore unlikely to succeed on an appeal based on 18 U.S.C. § 3626(a)(1)(C). Given the Ninth Circuit's interpretation of similar language in *Cabazon*, Defendants have failed even to raise a serious question on appeal.

### b.   18 U.S.C. § 3626(a)(1)(A) and (B)

Defendants also contend that the Court's October 27, 2008 order fails to comply with the provisions of the PLRA that require certain findings before the Court grants prospective relief or waives state law. Under 18 U.S.C. § 3626(a)(1)(A), a "court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." Similar findings are required before a court may grant prospective relief that requires a waiver of state law:

> The court shall not order any prospective relief that requires or permits a government official to exceed his or her authority under State or local law or otherwise violates State or local law, unless –
>
> (i) Federal law requires such relief to be ordered in violation of State or local law;

---

[5]It is not clear that, even if Congress had so intended, it would have had authority to bar a court from ordering construction of prisons without concern for whether such construction was necessary to correct a constitutional violation. *See Gilmore v. California*, 220 F.3d 987, 1002-03 (9th Cir. 2000) ("Congress is free to alter the standard that determines the scope of prospective relief for unconstitutional prison conditions so long as the restrictions on the remedy do not prevent vindication of the right.").

11

>> (ii) the relief is necessary to correct the violation of a Federal right; and
>
> (iii) no other relief will correct the violation of the Federal right.

18 U.S.C. § 3626(a)(1)(B).

Contrary to Defendants' assertions, the Court has repeatedly stated that implementation of the Receiver's Turnaround Plan of Action, which includes the construction program now disputed by Defendants, is necessary to remedy the constitutional violations in this case. *E.g.*, June 16, 2008 Order Approving Receiver's Turnaround Plan of Action at 3. Similarly, when the Court waived state laws regarding the Receiver's plans to update clinical facilities at existing prisons and plan for design and construction of 10,000 new health care beds, the Court explicitly found that the projects:

> are critical to establishing a constitutional system of medical care delivery in California's prisons, and that failure to obtain a waiver of state law would prevent the Receiver from achieving that goal in a timely fashion. Moreover, no party has identified any alternatives to the requested waiver that would achieve a constitutional remedy in this instance, nor does any party oppose the requested waiver.

July 2, 2008 Order Granting Receiver's Supplemental Application No. 6 for Order Waiving State Contracting Statutes, etc. at 2; *see also* July 1, 2008 Order Granting Receiver's Supplemental Application No. 5 for Order Waiving State Contracting Statutes, etc. at 2; Dec. 20, 2007 Order Granting Receiver's Supplemental Application No. 3 for Order Waiving State Contracting Statutes, etc. at 2; June 4, 2007 Order Re: Receiver's Master Application for Order Waiving State Contracting Statutes, Regulations, and Procedures at 3.

Significantly, the Court has made these findings, approved the Receiver's facilities plans, and granted waivers of state law with the complete support of Defendants. Not only have Defendants failed to object to or appeal any of the relevant orders, but State officials and employees have also been involved in the Receiver's construction planning efforts from their inception. *E.g.*, Sept. 22, 2008 Hagar Decl. ¶¶ 3-6; Sept. 22, 2008 Cambra Decl. ¶¶ 2-5. Such involvement reaches to the highest level of the California Department of Corrections and Rehabilitation ("CDCR"). *See, e.g.,* Apr. 11, 2008 Dezember Decl. ¶ 2 (Ex. D-3 to

12

Sept. 22, 2008 Dodd Decl.) (declaration from Robin Dezember, Chief Deputy Secretary of Correctional Health Care Services of the CDCR, stating that he has "met regularly with John Hagar, Chief of Staff of the *Plata* Receiver's Office, to coordinate the *Plata* and *Coleman* construction efforts"). Defendants have not once – even in these contempt proceedings – suggested any relief that would be less intrusive than the program proposed by the Receiver. Moreover, Defendants have affirmatively relied on the Receiver's construction program in other proceedings by, for example, arguing that the Receiver's plan of action and construction of medical beds – and Defendants' cooperation in implementing the Receiver's plans – obviated the need for a three-judge court to consider entering a prisoner release order. *See, e.g.,* Defendants' May 16, 2007 Report in Response to the Court's Feb. 15, 2007 Order. Defendants are now estopped from seeking "advantage [in these proceedings] by taking an incompatible position." *Risetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996).

In light of all of the above, the Court concludes that Defendants are unlikely to prevail on their arguments concerning 18 U.S.C. §§ 3626(a)(1)(A) or (B).

### 2. Receiver's Authority for the Construction Program

Next, Defendants argue that the Receiver lacks authority to proceed with the construction program, in the absence of consent from the State. This argument is entirely without merit. As explained above, Defendants have, in fact, consented to the Receiver's program by their failure to object to or appeal any of the Court orders authorizing the program or its component projects, by their active participation in the construction planning, and by their reliance on the construction program in other court proceedings. Even had they not done so, however, Defendants' argument that the Court's appointment of the Receiver did not give the Receiver the authority to undertake construction projects is incorrect. The Court's February 14, 2006 Order Appointing Receiver conferred broad authority on the Receiver to bring the delivery of medical care to California inmates up to constitutional standards:

> The Receiver shall provide leadership and executive management of the California prison medical health care delivery system with the goals of restructuring day-to-day operations and developing, implementing, and validating a new, sustainable system that provides constitutionally adequate medical care to all class members as soon as practicable. To this end, the Receiver shall have the duty to control, oversee, supervise, and direct all administrative, personnel, financial, accounting, contractual, legal, and other operational functions of the medical delivery component of the CDCR.

Feb. 14, 2006 Order Appointing Receiver at 2 (section I.A). The order further provided that the Receiver shall "develop a detailed Plan of Action designed to effectuate the restructuring and development of a constitutionally adequate medical health care delivery system," and that "[a]ll costs incurred in the implementation of the policies, plans, and decisions of the Receiver relating to the fulfillment of his duties under this Order shall be borne by Defendants." *Id.* at 2 (section I.B), 7 (section IV). Nothing in the Court's Order Appointing Receiver, nor any subsequent orders, limited the Receiver's duties or powers – or Defendants responsibility to bear the costs of the Receivership – such that the facilities program lies outside of the Receiver's authority.

### 3. Eleventh Amendment

Finally, Defendants contend that they are likely to succeed on appeal because the October 27, 2008 order to transfer funds to the Receiver violates the State's sovereign immunity under the Eleventh Amendment to the United States Constitution. However, contrary to Defendants' characterization, this is not a request by the Receiver for monetary relief, nor does this case concern recovery of money from the State; instead, the October 27, 2008 order involves requiring the State to pay for injunctive relief to remedy undisputed and ongoing federal constitutional violations. This is clearly permissible under the Eleventh Amendment: "[R]elief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury." *Papasan v. Allain*, 478 U.S. 265, 278 (1986); *see also Ex parte Young*, 209 U.S. 123 (1908) (allowing suits for prospective injunctive relief against state officials). Thus, no violation of the Eleventh Amendment occurs when "the fiscal

14

consequences to state treasuries" are "the necessary result of compliance with decrees which by their terms were prospective in nature." *Edelman v. Jordan*, 415 U.S. 651, 667-68 (1974).

Moreover, the Court rejects Defendants' assertion that this case "cries out for application of the Supreme Court's decision in *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997)." Mot. to Stay at 10. In *Coeur d'Alene*, the Supreme Court held that the Eleventh Amendment barred a Native American tribe's quiet title action against the State of Idaho because of the State's "special sovereignty interests" in maintaining control over its own land and water. 521 U.S. at 281, 287-88. The Ninth Circuit has subsequently held that *Coeur d'Alene* was a "unique, narrow exception" to *Ex parte Young*. *Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1048 (9th Cir. 2000). Defendants have cited no authority for the proposition that an impact on the public fisc, no matter how significant, qualifies under this narrow exception. Neither have Defendants cited any authority for the proposition that violations of federal rights may continue whenever a state contends that the remedy would be too costly.[6] To the contrary, as noted above, ordering relief to correct the violation of federal law does not run afoul of the Eleventh Amendment even when the effect on the state's treasury is "substantial." *Papasan*, 478 U.S. at 278. Consequently, the Court does not find that Defendants are likely to prevail on their argument that the October 27, 2008 order violates the State's sovereign immunity under the Eleventh Amendment.

**CONCLUSION**

In short, for the reasons discussed above, the Court's October 27, 2008 order is non-appealable. Defendants' appeal of that order therefore does not divest this Court of

---

[6] Moreover, Defendants' argument focuses on the $8 billion originally requested by the Receiver to fund his entire facilities program, while their motion to stay concerns the Court's October 27, 2008 order to pay a much smaller amount. Additionally, even if the Court must eventually rule on the Receiver's request for $8 billion, the record is clear that the Receiver is not asking for that entire amount to be drawn as an immediate transfer. The Receiver has, for example, consistently stated his approval of bond financing – which, contrary to Defendants assertion at oral argument, need not always require legislative approval. More importantly, both the Receiver and this Court have emphasized the phased approach of the Receiver's construction program, as well as the Receiver's intention to evaluate the contemporaneous need for each phase prior to beginning work on that phase.

15

jurisdiction. On the merits, Defendants have failed to demonstrate that the balance of hardships or the public interest weighs in their favor. They have also failed to persuade the Court that they have any significant likelihood of success on appeal. Accordingly, Defendants' motion to stay the Court's October 27, 2008 order is DENIED.

The Court's October 27, 2008 order, as modified on November 3, 2008, therefore remains in effect, and Defendants shall transfer $250 million to the Receiver by the end of the day today. If they fail to do so, then:

1. The Court shall conduct a show cause hearing, beginning at **9:00 AM on November 12, 2008,** regarding whether a finding of contempt should be entered for Defendants' failure to comply with the Court's October 27, 2008 order.

2. The show cause hearing shall be scheduled for three consecutive days, from 9:00 AM to 12:00 noon, and 1:30 PM to 4:30 PM. However, Defendants and the Receiver need not use all of this time to make their presentations; to the contrary, the Court expects the hearing to proceed as expeditiously and efficiently as possible.

3. On or before **November 10, 2008, at 12:00 noon**, the Receiver and Defendants shall file a notice with the Court listing any witnesses they intend to call at the hearing.

**IT IS SO ORDERED.**

Dated: 11/07/08

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT