```
Volume 1
Pages 1 - 41
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE THELTON E. HENDERSON,

LAWRENCE K. KARLTON, AND STEPHEN REINHARDT

| | | |
|---|---|---|
| Marciano Plata, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | NO. C 01-01351-TEH |
| | ) | |
| Arnold Schwarzenneger, et al., | ) | |
| | ) | San Francisco, California |
| Defendants. | ) | Monday |
| | ) | November 10, 2008 |
| _____ | ) | 1:35 p.m. |
| Ralph Coleman, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | NO. CIV S90-0520-LKK |
| | ) | |
| Arnold Schwarzenneger, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**For Plaintiffs:**     Prison Law Office
                        General Delivery
                        San Quentin, CA  94964
                        (510) 280-2621
                        (510) 280-2704 (fax)
                   **BY:  REBEKAH EVENSON**
                        **STEVEN FAMA**
                        **ALISON HARDY**
                        **SARA NORMAN**
                        **DONALD SPECTER**

(Appearances Continued On Next Page)

**Reported By:  Lydia Zinn, CSR #9223, RPR**
              **Official Reporter - U.S. District Court**

```
 1   APPEARANCES (CONT'D)
     For Plaintiffs:          K & L Gates, LLP
 2                            55 Second Street, Suite 1700
                              San Francisco, CA  94105-3493
 3                            (415) 882-8200
                              (415) 882-8220 (fax)
 4                     BY:    EDWARD P. SANGSTER

 5   For Coleman              Rosen, Bien & Galvan, LLP
     Plaintiffs:              315 Montgomery Street, 10th Floor
 6                            San Francisco, CA  94104
                              (415) 433-6830
 7                            (415) 433-7104 (fax)
                       BY:    MICHAEL W. BIEN
 8                            LISA ELLS
                              JANE KAHN
 9                            MARIA V. MORRIS
                              AMY WHELAN
10
     For Leman Defendants:    State of California
11                            Department of Justice
                              Office of the Attorney General
12                            1300 I Street
                              Sacramento, CA  95814
13                            (916) 324-5373
                              (916) 322-8288 (fax)
14                     BY:    LISA A. TILLMAN

15   For Defendant:           State of California
                              Department of Justice
16                            Office of the Attorney General
                              455 Golden Gate Avenue, Suite 11000
17                            San Francisco, CA  94102-7004
                              (415) 703-5735
18                            (415) 703-5843 (fax)
                       BY:    DANIELLE F. O'BANNON
19
     For Defendants:          Hanson, Bridgett, LLP
20                            425 Market Street, 26th Floor
                              San Francisco, CA  94105
21                            (415) 777-3200
                              (415) 995-3424 (fax)
22                     BY:    S. ANNE JOHNSON
                              PAUL BRIAN MELLO
23                            SAMANTHA TAMA

24

25
```

```
 1   APPEARANCES (CONT'D)
     For District Attorney    District Attorney, County of Riverside
 2   Intervenors:             82-675 Highway 111, Fourth Floor
                              Indio, CA  92201
 3                            (760) 863-8422
                        BY:  WILLIAM E. MITCHELL
 4
     For Legislator           Akin Gump Strauss Hauer & Feld, LLP
 5   Intevenors:              580 California Street, Suite 1500
                              San Francisco, CA  94104-1036
 6                            (415) 765-9500
                              (415) 765-9501 (fax)
 7                       BY:  STEVEN KAUFHOLD

 8   For Law Enforcement      Jones & Mayer
     Intevenors:              3777 N. Harbor Boulevard
 9                            Fullerton, CA  92835
                              (714) 446-1400
10                            (714) 446-1448 (fax)
                        BY:  KIMBERLY HALL BARLOW
11
     For Plaintiff            Carroll, Burdick & McDonough
12   Intervenor CCPOA:        44 Montgomery Street, Ste. 400
                              San Francisco, California  94104
13                            (415) 743-2534
                              (415) 989-0932 (fax)
14                       BY:  GREGG MCLEAN ADAM
                              JAMES W. HENDERSON, JR.
15                            NATALIE LEONARD

16   For County of            Office of the County Counsel
     Santa Barbara            105 East Anapamu Street #201
17   Intervenors:             Santa Barbara, CA  93101
                              (805) 568-2950
18                            (805) 568-2982 (fax)
                        BY:  KELLY D. SCOTT
19
     For County               Office of the County Counsel
20   Intervenors:             County of Santa Clara
                              70 West Hedding Street
21                            9th Floor, East Wing
                              San Jose, CA  95110-1770
22                            (408) 299-5917
                              (408) 292-7240 (fax)
23                       BY:  THERESA FUENTES

24

25
```

```
 1   APPEARANCES (CONT'D)
     For County of          Office of Michael P. Murphy
 2   San Mateo              County Counsel, San Mateo County
     Intervenors:           Hall of Justice and Records
 3                          400 County Center, 6th Floor
                            Redwood City, CA  94063-1662
 4                          (650) 363-4746
                            (650) 363-4034 (fax)
 5                     BY:  CAROL L. WOODWARD

 6   For County of          Office of the County Counsel
     Sonoma Intervenors:    Sonoma County
 7                          575 Administration Drive, Room 105A
                            Santa Rosa, CA  95403
 8                          (707) 565-2421
                            (707) 565-2624 (fax)
 9                     BY:  ANNE L. KECK

10

11               (THE HONORABLE LAWRENCE K. KARLTON
                    APPEARED VIA VIDEOCONFERENCE)
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1            THE CLERK:  Please be seated.  Calling Civil Case

 2  C. 01-1351, Plata versus Schwarzenegger; S90-0520, Coleman

 3  versus Schwarzenegger.

 4            Please state your appearances, counsel.

 5            MR. BIEN:  Good afternoon, your Honor.  Michael Bien,

 6  on behalf of Coleman class.

 7            THE CLERK:  Can you see?

 8            JUDGE HENDERSON:  Can you see?

 9            Sorry, counsel.  We were wondering if Judge Karlton's

10  with us.

11            JUDGE KARLTON:  Yes, I am.

12            JUDGE HENDERSON:  Hi, Larry.  We couldn't see you.

13            Go on, Counsel.

14            MR. SPECTER:  Okay.  Donald Specter, from the Prison

15  Law Office, for the plaintiffs, your Honor.  And with me is

16  Rebecca Evenson, Michael -- well, Ed Sangster, and a lot of

17  other people from the Prison Law Office.

18            JUDGE HENDERSON:  Okay.

19            MR. ADAM:  For CCPOA, Gregg Adam, Natalie Leonard,

20  and James Henderson, of Carroll, Burdick & McDonough.

21            JUDGE HENDERSON:  Thank you, counsel.

22            MR. MELLO:  Good afternoon, your Honor.  Paul Mello,

23  of Hanson Bridgett.  Along with me from Hanson Bridgett are

24  Samantha Tama and Anne Johnson, for defendants.

25            MS. TILLMAN:  Good afternoon.  Lisa Tillman, on
```

1  behalf of the Coleman defendants.  Also here on behalf of the

2  Coleman defendants are Connie LeLouis and Danielle O'Bannon,

3  from  the Attorney General's office.  Thank you.

4       **MR. MITCHELL:**  Good afternoon.  William Mitchell,

5  with the District Attorney Intervenors.

6       **MS. BARLOW:**  Good afternoon, your Honors.

7  Kimberly Hall Barlow, on behalf of the 67 Law Enforcement

8  Intervenors:  sheriffs, police chiefs, chief probation

9  officers.

10       **MS. KECK:**  Good afternoon, your Honors.  Anne Keck,

11  Deputy County Counsel, on behalf of the Sonoma County

12  Intervenors.

13       **MS. FUENTES:**  Good afternoon, your Honor.

14  Theresa Fuentes, on behalf of Santa Clara County, and also as

15  lead counsel for the County Intervenors.

16       **MR. KAUFHOLD:**  Good afternoon, your Honor.

17  Steve Kaufhold, from Akin, Gump, Strauss, Hauer, & Feld, for

18  the Legislative Intervenors.  I think we're all right.

19       **JUDGE HENDERSON:**  Okay.  Good afternoon.

20       Welcome.  We're going to begin.  As you can see,

21  Judge Karlton is in Sacramento, and is appearing by video.

22       We're going to begin with rulings on the motions *in*

23  *limine*.  And those rulings are as follows.  And we will not be

24  following up with written explanations of these rulings.

25       Plaintiffs' motion *in limine* number one is granted as

1    to the exclusion of witnesses from the courtroom and the

2    provision of transcripts to witnesses who have not yet

3    testified.   The motion is denied as to the provision of filed

4    testimony to witnesses.

5            Plaintiffs' motion *in limine* number seven is granted

6    as to Mr. McIntosh's testimony regarding the survey.   As to

7    Mr. McIntosh's testimony of the rate of disease, the motion is

8    denied if such testimony is based on the PPIC report, but is

9    otherwise granted.

10           Defendants' motion *in limine* number six to exclude

11   evidence of settlement discussions is granted.

12           This ruling shall also extend to exclude the

13   referee's report from evidence.

14           Defendants' motion *in limine* number 13 to limit the

15   trial testimony of Dr. Beard to the scope of his deposition is

16   granted.

17           The motion to exclude testimony by Mr. Hennessee is

18   denied.

19           The Law Enforcement Intervenors' motion *in limine*

20   regarding the testimony of Dr. Austin is denied, except that

21   plaintiffs may not introduce evidence of any analysis by

22   Dr. Austin of the documents relied on by Mr. Dyer and by

23   Mr. Powers that Dr. Austin performed after his deposition.

24           All other motions *in limine* are denied.

25           As to the parties' motions to exclude hearsay from

1   expert reports, which, as they now stand, would have us go

2   through everything and find the hearsay, the parties and

3   intervenors shall meet and confer over specific objections, and

4   file a joint statement setting forth any remaining disputes at

5   least three court days prior to each expert's testimony.

6              Now we're going to go to plaintiffs' motion for

7   reconsideration regarding the sealing of the Heaney deposition.

8   Let's hear that motion.  We got the plaintiffs' motion late.

9   And we originally granted it on the understanding that there

10  was no opposition.  Since there is, who wants to argue that for

11  plaintiffs?

12             **MS. ELLS:**  I will, your Honor.

13             **THE REPORTER:**  I'm sorry.  Are you Ms. Ells?

14             **MS. KECK:**  Your Honor, I think we've reached an

15  agreement about that.

16             **THE COURT:**  Oh, fine.  We accept almost all

17  agreements.

18             **MS. KAHN:**  Ms. Kahn, for plaintiff.  May I join?

19             I think we've reached an agreement just to seal the

20  two pages, I think, that refer to the portion of the deposition

21  that refers to the OIG report.

22             **THE COURT:**  Mm-hm.  Is that correct?

23             **MS. TILLMAN:**  That is correct, your Honor.  We will

24  double-check.  And we will file a stipulation with the Court

25  stating concisely what pages and what lines are then sealed

1  pursuant to the Court's previous protective order to seal any

2  and all OIG reports.  And we'll make that a proposed order of

3  the Court.

4          **THE COURT:**  Great.  That's fine.

5          **MS. TILLMAN:**  Thank you.

6          **THE COURT:**  Thank you, Counsel.

7          **JUDGE HENDERSON:**  Okay.  Let's review the trial

8  schedule.

9          Remind you -- I'm sure you are well aware of it --

10  the starting date is Tuesday, November 18th, at 9:15 a.m.  Our

11  general schedule will be 9:15 a.m. to 4:30 p.m.  Tuesdays

12  through Friday.  No trials on Monday.

13          There will be some dark days which I'll give you now.

14  There will be no trial during Thanksgiving week.  On Friday,

15  December 5th, we will end at 1:30.  We hope to be done by then,

16  but if not, there will be -- not by then, but by December 16th

17  and 17th, but if not, there will be no trial on Tuesday and

18  Wednesday, December 16th and 17th.

19          We've mentioned time limits in the past, but we're

20  not going to set any at this time; but we expect the parties

21  and the intervenors to proceed efficiently.  And, depending

22  upon how that proceeds, we may impose time limits if we see

23  that there's a lot of cumulation, repetitiveness, and other

24  inefficient uses of everyone's time, but again --

25          **JUDGE KARLTON:**  May I interrupt for a moment?  I

1  thought we had agreed that the proposal of the parties to limit

2  opening statements to 15 minutes a side would be granted.

3          **JUDGE HENDERSON:**  That is correct.  And I was coming

4  to that later, Harry -- Larry.  Excuse me.

5          **JUDGE KARLTON:**  All right.

6          **JUDGE HENDERSON:**  But, yes, let's just do that now.

7  The parties have proposed for the six parties that will be

8  making opening statements -- we have accepted your stipulation

9  to limit opening statements to 15 minutes each.

10         Thank you, Larry.

11         Regarding undisputed facts, parties and intervenors

12 are to meet and confer.  And you're to file a joint statement

13 of indisputed fact.  We simply cannot use the undisputed facts

14 as you've set them forth here, because it's not clear that

15 they're undisputed.

16         So we're going to ask you to meet and confer and file

17 a joint statement of undisputed facts on or before this

18 Thursday, November 13th.  Only statements that are truly

19 undisputed by all parties and intervenors should be included in

20 that joint statement.

21         Regarding exhibits, parties and intervenors are again

22 to meet and confer regarding the proposed exhibits.  Any

23 objections to any party's proposed exhibits must be filed on or

24 before this Thursday, November 13th.

25         The parties shall also by that date file a joint

1   statement listing all undisputed exhibits.  Any exhibit to

2   which no timely objections are received shall automatically be

3   admitted into evidence at the start of trial.

4           There was a question from counsel regarding the

5   number of exhibits that needed to be provided.  And only one

6   copy of exhibits need to be provided during the trial; but

7   because the three judges will go their separate ways as we work

8   on our ruling, by the conclusion of trial, the parties and

9   intervenors shall lodge with each Judge's chambers a complete

10  copy of all exhibits.  Again, that's by the end of the trial.

11          As to stipulations, the stipulations in the pretrial

12  conference statement are all granted.  And that includes the

13  stipulation regarding the lawyers that may appear for the

14  intervenors -- three different lawyers appearing on behalf of

15  the intervenors.

16          Your Honor, I think we need to speak about

17  Dr. Thomas.

18          **MR. MELLO:**  So there is a stipulation and a joint

19  pretrial conference statement with respect to Dr. Thomas, and

20  agreement to producing him out of order, if it's out of order,

21  on December 11th.  The Plata defendants' medical expert -- he

22  will be recuperating from nonelective, serious surgery.  And so

23  I do not believe there is a stipulation that if his

24  recuperation takes longer, as the pretrial conference states,

25  that he can appear by video.

1          **JUDGE HENDERSON:**  Mm-hm.

2          **MR. MELLO:**  So that's the difference in the

3   stipulation, correct?  And we'd just like to alert the Court

4   that if his recuperation doesn't go well, we may move to allow

5   him to testify by video, because he's in Florida, and he is

6   recovering from surgery; but that part of the stipulation is

7   not part that's agreed to between the parties; that they agree

8   that he can appear by video if it goes longer, if he has

9   trouble recuperating.  I just want to be clear.  And I probably

10  wasn't, but I wanted to make sure that that stipulation wasn't

11  being entered by the Court, because there was an agreement.

12         **JUDGE HENDERSON:**  Okay.  That is now clear, if it

13  wasn't before.

14         **MR. SPECTER:**  Yeah.  That's right, your Honor.  We'll

15  see how his recuperation goes.  And then, as the trial

16  progresses, we'll alert you to whatever you -- whatever motions

17  need to be made or whatever agreements there are about his

18  testimony.

19         **THE COURT:**  Okay.  Let us know in plenty of time.

20         **MR. SPECTER:**  Yes.  We will.

21         **MR. MELLO:**  Okay.  Thank you, your Honor.

22         **JUDGE HENDERSON:**  Okay.  Thank you, Counsel.

23         As to witnesses, the parties and intervenors have

24  stipulated to exchange trial witness schedules one week in

25  advance.  And these witnesses' schedules shall also be provided

1  to the Court on that same schedule.  And they must list the

2  intended testimony for each day of trial; not simply a name or

3  a list of the witnesses for the week, but a short statement of

4  the intended testimony and the areas that the witnesses will go

5  into.

6          Mr. Specter.

7          **MR. SPECTER:**  Yes, your Honor.  Well, I think we've

8  provided with the Court with almost the entire testimony of all

9  of the witnesses, because they have been -- their written

10  direct has been filed with the Court.

11          **JUDGE HENDERSON:**  Mm-hm.  Yeah.  Okay.

12          **MR. SPECTER:**  Were you suggesting that we provide you

13  with a summary of that, or --

14          **JUDGE HENDERSON:**  That's what I was thinking;

15  certainly not the whole testimony, but bullet points as to the

16  areas that they will be going into.

17          **MR. SPECTER:**  Okay.  Very good.

18          **JUDGE KARLTON:**  It is important that we know a week

19  in advance which direct testimony.  Could be reading.  That's

20  an important thing for us to be supplied with.

21          **MR. SPECTER:**  In light of that fact, we understand

22  that since the most of the trial is going to be

23  cross-examination, since all of the direct -- or 90 percent of

24  the direct testimony is coming in through written

25  declaration --

1          **JUDGE HENDERSON:**  Mm-hm.

2          **MR. SPECTER:**  -- the party presenting the witness can

3   give a schedule, but the party who are doing the

4   cross-examination is really going to control how much time is

5   going to be taken up with each witness, because, as you recall

6   from one of the earlier orders, the experts get only a half an

7   hour on direct.

8          **JUDGE HENDERSON:**  Right.

9          **MR. SPECTER:**  And the percipient witnesses get 15.

10  So the party presenting the witness actually knows when they

11  are going to be done, but it's all kind of dependent on the

12  cross-examination as to being able to schedule the witnesses.

13          And I say this to suggest that once the party

14  presents the witness, has -- has given the schedule, then the

15  people who are going to be cross-examining the witness should

16  try to give the other party a reasonable time estimate, so that

17  we can let you know what the -- how many witnesses are going to

18  be testifying.  We can plan around that.

19          Otherwise, we don't have any control over --

20          **JUDGE HENDERSON:**  Well, taken -- and I haven't talked

21  to Judge Karlton and Judge Reinhardt.  My own rule -- and let's

22  talk about it now -- is the shame is to run out of witnesses

23  before the end of the day.  It's not a lot of shame listing

24  more witnesses than we get to.

25          **MR. SPECTER:**  Is that --

```
 1          JUDGE HENDERSON:  Is that your concern:  that we
 2  won't know how long the day will go?
 3          MR. SPECTER:  That's half of it.  And the other half
 4  is we have witnesses flying in from all over the country.
 5          JUDGE HENDERSON:  Fair enough.
 6          MR. SPECTER:  And we don't know when to schedule
 7  them.  And a lot of the intervenors have people coming from out
 8  of the Bay Area, so that's the issue.
 9          JUDGE HENDERSON:  Okay.  That's fair enough.  So I'll
10  ask the -- those who are cross-examining to go into more detail
11  as to what they will cross-examine on.  And make your best
12  estimate as to how long that cross-examination will take, so
13  that we can schedule.
14          MR. MELLO:  May I, your Honor?
15          JUDGE HENDERSON:  Yes.
16          MR. MELLO:  Defendants actually had a proposal.  And
17  I know the Courts -- that they weren't going to talk about time
18  limits, but sort of in the interests of trying to move this
19  along and have better clarity, for our witnesses, defendants
20  had a proposal with respect to limits on cross and redirect.
21          JUDGE HENDERSON:  Mm-hm.
22          MR. MELLO:  Was the Court interested in hearing that?
23          JUDGE HENDERSON:  Have you talked to plaintifs about
24  that?
25          MR. MELLO:  I have spoken to counsel on our side.  It
```

1  came up on our call last week, but there was no agreement.

2        **JUDGE HENDERSON:**  We're not going to stand here and

3  argue about it now, but let's hear the proposal.

4        **MR. MELLO:**  The proposal was for -- the Court's

5  identified that they believed the time of the experts, I think,

6  is worth twice as much as the non experts.  So our proposal was

7  to allow for two hours of cross of experts, and then one hour

8  of redirect, and then time for the intervenors with respect to

9  defendants' and plaintiffs' witnesses.

10        So it would be two hours of cross-examination after

11  plaintiffs or defendants put on their witness -- their expert

12  witness, and then one hour of redirect after the other side is

13  done with cross.  And then, with respect to non experts, our

14  thinking was, again, because it's twice as much as an hour for

15  cross-examination of percipient non expert witnesses, and then

16  a half an hour for redirect afterwards.

17        Just in light of how many witnesses have been

18  identified at trial, that was the proposal that defendants

19  thought made sense.

20        And I don't know what plaintiffs' position is, but I

21  think that intervenors can speak to it as well, if any of the

22  intervenors --

23        Thank you.

24        **JUDGE REINHARDT:**  I got slightly confused by what you

25  said.  I assume that when you say there's -- you say the

1  plaintiffs put their witness on; that the cross-examination

2  would be an hour?

3          **JUDGE HENDERSON:**  Two hours.

4          **JUDGE REINHARDT:**  Two hours; that that would be

5  divided between the defendants and the intervenors.

6          **MR. MELLO:**  That's not what defendants were

7  proposing.  That's not what defendants were proposing.

8          Defendants -- for example, plaintiffs are going

9  first.  They put on one of their experts.

10         **JUDGE REINHARDT:**  Yes.

11         **MR. MELLO:**  They have 30 minutes of direct.  Then

12  defense counsel would have two hours of cross.  The intervenors

13  could speak to how long they wanted.  And then after the

14  intervenors were done, plaintiffs would have an hour to do

15  redirect with their witnesses, as opposed to leaving it

16  unknown.  And that was for expert witnesses.

17         Now let's go to non expert witnesses, like a state

18  employee.  We put them on for 15 minutes in our case in chief.

19  Plaintiffs would have an hour to cross-examine those witnesses.

20  And then we would have a half an hour for redirect.  That was

21  the proposal that we were --

22         **JUDGE REINHARDT:**  And where do the intervenors fit

23  into that?

24         **MR. MELLO:**  I'll let them speak.  I think they

25  thought they should have a fraction of the time that the main

1  parties had.

2         **JUDGE HENDERSON:**  Who can give me an estimate of how

3  many experts we have in the trial?

4         **MR. SPECTER:**  I was just going to say that we have 36

5  experts --

6         **JUDGE HENDERSON:**  Thirty-six.

7         **MR. SPECTER:**  -- and 24 percipient witnesses.  That

8  would bring us to a lot of hours.

9         **MR. MELLO:**  And that's the reason why why we were --

10        **JUDGE HENDERSON:**  We're talking about next February

11 if we stick to that, Counsel.  And we clearly aren't going to

12 do that.  I mean, just to do what you just said with the

13 experts is, at a minimum, without knowing what the intervenors

14 will take, 144 hours of seven-hour days.

15        **MR. MELLO:**  Understood.  And that's why -- I mean,

16 that's why I guess we broached the subject; because, as of

17 right now, there are no time limits.  And I think we could get

18 in trouble quickly.

19        **JUDGE HENDERSON:**  Okay.

20        **MR. MELLO:**  Thank you.

21        **JUDGE HENDERSON:**  Okay.  Thank you, counsel.

22        **JUDGE KARLTON:**  We don't have any plaintiffs

23 proposing.  How many experts are the defendants proposing?

24        **MR. SPECTER:**  No, no.  Thirty-six experts total in

25 the case, your Honor.

1              **MR. MITCHELL:**  William Mitchell, for the District

2      Attorney Intervenors.  The intervenors would propose to

3      cross-examine the expert witnesses approximately one half hour

4      each.  One or more may go a little bit longer than that; up to

5      an hour.

6              And then the non expert witnesses, percipient

7      witnesses -- 15 minutes to 30 minutes on each of those.

8              **JUDGE HENDERSON:**  Okay.  Thank you.

9              **JUDGE REINHARDT:**  Are you talking about cross

10     cross-examining both the plaintiffs' and the defendants' expert

11     witnesses?

12             **MR. MITCHELL:**  Most the plaintiffs', your Honor; not

13     so much the defendants'.  We may forgo cross-examination on

14     most of the defense witnesses, depending on whether or not the

15     information you want to elicit would come out.

16             **JUDGE KARLTON:**  You intervened on behalf of the

17     defendants, so you wouldn't have an opportunity to

18     cross-examine in any event.

19             And as to direct, I assume the defendants will fully

20     explore their own witnesses.  It's not clear to me why;

21     precisely what it is that you're going to add to the

22     proceedings.  Can you give me some picture of what's going on?

23             **MR. MITCHELL:**  Regarding the defendants' witnesses,

24     the only time that the intervenors would seek to elicit

25     information would be some information that would tend to

1   establish some of the points that the defendant intervenors are

2   attempting to bring out, either through the CDCR programs

3   and/or some of the other impacts that might result from a

4   prisoner release order if they're not fully elucidated in the

5   direct- and the cross-examination.

6          **JUDGE KARLTON:**  You would expect -- I'm asking, not

7   telling you.  You would expect that that would be fairly

8   limited in scope?

9          **MR. MITCHELL:**  Very limited and succinct.

10          **JUDGE KARLTON:**  All right.

11          **JUDGE HENDERSON:**  Counsel.

12          **MR. ADAM:**  Gregg Adam, for the intervenor on the

13   plaintiffs' side.  We have six witnesses we anticipate putting

14   on.  And it's possible that some of the defendants' experts may

15   discuss matters that are covered by the testimony of our

16   witnesses.  So where that actually occurs, we'd like to have

17   the opportunity of 15 minutes of cross-examination of the

18   defendants' experts.  And I would hope to make that as minimal

19   as possible.

20          **JUDGE HENDERSON:**  Okay.  Okay.  I think, Counsel -- I

21   think Mr. Mello's point is well taken.  I'm going to suggest --

22          And we didn't discuss this, Judge Karlton.  And you

23   can please give me your thoughts on it?

24          I'm going to suggest that in your meet and confer,

25   it's the Court's expectation -- and I see no reason why, with

1  abundant due process afforded everyone, we cannot finish before

2  the Christmas recess.  And if we have to set time limits to do

3  that, we will; but I'm going to ask that you meet and confer

4  and propose limitations that will accomplish that end,

5  including the dark days I've specified, but that we'll end this

6  trial by the Christmas holidays, the third week of December.

7          **MR. SPECTER:**  Judge, could you give us -- do you mind

8  giving us an exact day, so we can --

9          **JUDGE HENDERSON:**  The 19th?  Is that the day we're

10  dealing with?  Yeah.  Here's the date that I have (indicating).

11  Okay.  The 19th, Counsel.

12          Is that okay, Judge Karlton?

13          **JUDGE KARLTON:**  Well, it's better than nothing.

14          **JUDGE HENDERSON:**  We've just conferred up here

15  without you, so let us know how you -- would another day be

16  better, or would you suggest --

17          **JUDGE KARLTON:**  No, no.  You know, whatever it takes

18  to, on the one hand, get the testimony before the Court in a

19  fair and full way, and on the other hand, frees us to do, in my

20  case, the 900 other cases that I have, is all I can say.  I

21  mean, I don't know how to put a -- the 19th is a good date to,

22  I suppose -- as good as any to shoot for.  I mean, I'd like to

23  see three weeks in trial, but I don't suspect that's going to

24  happen now.

25          **MS. BARLOW:**  May I be heard, your Honor?  Kimberly

1  Hall Barlow, on behalf of Law Enforcement Intervenors.

2          I've given the Courts prior indications of

3  unavailable dates and partial days.  That's 13 and a half trial

4  days.  I just wanted the Court to be aware of that.  I'm not

5  sure, given the number of witnesses, that we can all do that.

6  I think we're all wanting to try.  I certainly would like to be

7  done by then, but I just do want to advise the Court that's

8  only 13 and a half trial days.

9          **JUDGE HENDERSON:**  Well, we can all count later.  I

10  count 16 days, but okay.

11          Okay.  So are we clear on the meet and confer on

12  that?

13          **MR. SPECTER:**  Yes, your Honor.  We'll meet and

14  confer, but I'm not -- I'm not extremely optimistic we'll be

15  able to come to a resolution, but we'll do our best.

16          **JUDGE HENDERSON:**  You'll have to give us some

17  guidance.

18          **MR. SPECTER:**  You know, the other thought I had is

19  there's a fine line between cumulative testimony and testimony

20  which illustrates other points which are similar, but yet

21  different.  And in this case, there is some of that on all

22  sides, I think.  I'm not saying anybody's cumulative --

23          **JUDGE HENDERSON:**  Mm-hm.

24          **MR. SPECTER:**  -- but the other thought I had is if we

25  could somehow structure the witnesses so that the witnesses who

1  were brought to testify would be representative in some

2  fashion -- and I use that word loosely and undefinedly -- so

3  that you would get the basic issues that are being -- or you

4  would get the general sense of issues that the -- well, let me

5  put it this way.  The -- most of the witnesses are from the Law

6  Enforcement Intervenors' side and the County side.  The

7  defendants and the plaintiffs are roughly equal.

8              Then there are --

9              I left my list here.  It's not my list, it's --

10             The intervenors, all together, have 30 witnesses.

11 The plaintiffs have 11 experts.  The defendants have 13

12 witnesses.

13             **JUDGE HENDERSON:**  Mm-hm.

14             **MR. SPECTER:**  So the plaintiffs and the defendants

15 are roughly equal.  And then all the intervenors together --

16 and there are 140 of them -- have 30 witnesses.  Many of them

17 are from different counties, which -- but the basic thrust of

18 their testimony, while different in the particular, is the same

19 in terms of the impact of a prisoner re-sorter would have on

20 the local communities.

21             So one thought I had which I would just propose is to

22 have people choose their best witnesses; you know, a limit on

23 their best witnesses.  And then, you know, that -- they've

24 already put the direct in, so you know what the thrust of the

25 testimony is.

1       And then the rest of -- then we could cross them.

2 And you could assess their credibility, but you wouldn't have

3 to go through 30 of them.  And that could be for categories.

4       For example, there are a lot of sheriffs who

5 testified.  There are three district attorneys who are

6 testifying.  There's a mental health -- a number of mental

7 health people who are testifying, and the like.

8       I just throw that out there as an idea, because it

9 seems like I'm not sure getting through five witnesses a day.

10 And some of these are, you know, some of these people have --

11 including us, have submitted very lengthy reports.

12      **JUDGE HENDERSON:**  Mm-hm.

13      **JUDGE REINHARDT:**  Well, it might be that you won't

14 find it necessary to do more than admit some of the

15 intervenors' experts' reports.  And they won't require any

16 cross-examination if they're simply cumulative.  One sheriff

17 may be as good as three.

18      **MR. SPECTER:**  Well, without a stipulation to that

19 effect, it would be hard to do.

20      **JUDGE REINHARDT:**  Stipulation not to cross-examine

21 them if they don't really have anything?

22      **MR. SPECTER:**  They have their own particular thing.

23 That's what I'm saying.  The line between cumulative and

24 different is hard to draw.  I mean, if they're going to put in

25 direct testimony,.

1      **JUDGE REINHARDT:**  Well, the Court can still assess

2  the importance or the weight to be given to that testimony,

3  even without your cross-examination.

4      **MR. SPECTER:**  That's true.  True.  We'll consider

5  that.

6      **JUDGE REINHARDT:**  Why not try to take all of the

7  witnesses and all sides, and see what -- how they could be

8  reasonably handled, and come back and see what you think about,

9  you know, the 19th?  If you need a few more days, propose that

10  instead.  You know, it's -- nothing's beyond your proposal --

11      **MR. SPECTER:**  Okay.

12      **JUDGE REINHARDT:**  -- but I think you've got to figure

13  the trial will end before Christmas.

14      **MR. SPECTER:**  We'd like that.  Well, anyway --

15      **JUDGE REINHARDT:**  Just think of the best way to get

16  there for all parties.

17      **MR. SPECTER:**  Okay.  We'll do that, your Honor.

18      **MS. BARLOW:**  Kimberly Hall Barlow.  Jones & Mayer, on

19  behalf of the Law Enforcement Intervenors.

20      And I think I speak for all of the intervenor

21  defendants on this issue.  We really have tried hard to limit

22  those who were designated.  As the Court knows, I represent 67

23  law enforcement -- and I very carefully narrowed that list down

24  to represent north/south, large/small, sheriff/probation/police

25  chief, so that we would have representative examples before the

1   Court.  We certainly didn't want to make this that difficult.

2   We have proposed a stipulation to plaintiffs that they waive

3   cross-examination on at least some of those witnesses to

4   expedite the proceedings.  And we will work very hard with them

5   to do that, your Honors.

6           **JUDGE HENDERSON:**  Thank you, counsel.

7           **MR. MELLO:**  Your Honors.

8           **JUDGE HENDERSON:**  Yes.

9           **MR. MELLO:**  Plata and Coleman defendants have another

10  idea or a thought or a proposal with respect to speeding up the

11  process.  We would be willing to do closing argument -- I think

12  it would be appropriate -- by way of brief, as opposed to oral

13  argument.  That might also save some time as well.  And

14  defendants --

15          **JUDGE REINHARDT:**  Not a lot.

16          **MR. MELLO:**  Not a lot.

17          **MR. MELLO:**  Defendants are in favor of that.

18          **JUDGE KARLTON:**  I'm sorry.  I didn't understand what

19  you're saying.

20          **MR. MELLO:**  Yes.  We would propose to do closing

21  argument by way of a brief --

22          **JUDGE KARLTON:**  Oh, okay.

23          **MR. MELLO:**  -- as opposed to oral argument.  Thank

24  you.

25          **JUDGE HENDERSON:**  It will save court time, but we'll

1  be reading those briefs.  I don't think it will save us.  That

2  just allows Judge Reinhardt to go home and read them in

3  Pasadena rather than hear them up here, but -- okay.

4           **JUDGE KARLTON:**  Part of that problem as well Thelton

5  is realistically if at the end of the case there are questions

6  that we want to address specifically to counsel we can't do

7  that if they're writing in a vacuum.

8           **JUDGE HENDERSON:**  Yeah.

9           **JUDGE KARLTON:**  I don't know how we're going to deal

10 with that.  Maybe we'll have a brief period in which the judges

11 can direct questions which are troubling them, and then let the

12 bodies go back and brief whatever they feel is necessary.

13          **JUDGE REINHARDT:**  I may have different perspective,

14 but I believe in oral argument and in briefs, but if you want

15 to save time, cut down some of the witnesses.

16          **JUDGE HENDERSON:**  I would second that.  And in my

17 experience, what prolongs trial -- and this doesn't dispute

18 Mr. Specter's point that there are fine lines between

19 cumulative evidence, but the thing that I think prolongs

20 trials -- and this is a one-judge trial, and we have three

21 judges listening now -- is a very basic litigation assumption

22 that judges don't listen carefully.

23          And so we need to say three different ways, "It will

24 really hurt our county if you release people," and what you do

25 think it will do to your county.  "Oh, it will really hurt."

 1  Say it five different times in five different ways, is the

 2  thing that slows --

 3          And I'm not just talking about the intervenors.

 4  Plaintiffs do it, too.  And they make their point.

 5          And it's our plan to say, "Asked and answered.  We've

 6  heard it."  And we will be pushing that.  And I think that will

 7  move the trial along, so be ready for that.

 8          Make your point.  Assume that all three of us heard

 9  it.  And, if not, one of us heard it.  And if not, our law

10  clerk will hear it and tell us about it.  So I think that will

11  move things along faster.

12          I'm going to go over one more point.  And then I will

13  go to plaintiffs' table to see if there are any other

14  housekeeping matters or other matters we need to discuss, and

15  then do the same thing with defendants and intervenors.

16          The other thing -- let me -- we will now hear

17  evidence on whether defendants are in Constitutional

18  compliance.  There was a request for a ruling on that.  Any

19  such arguments are simply not for this Court to consider, and

20  would instead be properly presented to the individual Plata and

21  Coleman courts.

22          The role of this Court is to determine first whether

23  overcrowding is a primary cause of the Constitutional

24  violations at issue in both Plata and Coleman; and secondly, if

25  so, whether a prisoner release order is appropriate.  So we

1  will not be hearing any evidence on whether defendants are in

2  Constitutional compliance.

3          And, with that, let me ask if there are any

4  additional matters we need to discuss or cover today.  First,

5  plaintiffs.

6          **MR. BIEN:**  We've tried to work through most of our

7  procedural things.

8          One issue that we wanted -- I think everyone wanted

9  to raise with the Court is dealing with deposition excerpts,

10 and how -- what process should be undertaken.

11         We had thought we had an agreement on it between us,

12 and apparently we do not; but we have submitted deposition

13 excerpts.  And is there a schedule for objections to those?

14 And how would the -- does the -- how does the Court want them

15 addressed in terms of physically providing the pages to the

16 Court, or a list of the pages?  Just the procedure of it.

17         **MS. JOHNSON:**  Well, good afternoon, your Honor.  Anne

18 Johnson, on behalf of the defendants.

19         **JUDGE HENDERSON:**  Mm-hm.

20         **MS. JOHNSON:**  We designated three depositions.  They

21 have designated 44.  So we would ask --

22         **JUDGE KARLTON:**  I'm sorry.  I can't hear you, ma'am.

23         **MS. JOHNSON:**  The defendants designated three

24 depositions, and plaintiffs have designated 44.  So the

25 defendants would ask for some time to work through objections

1   and counterdesignations to the numerous deposition excerpts

2   that plaintiffs have.  Those are -- the witnesses for which

3   they have designated deposition excerpts is 44.

4          **JUDGE HENDERSON:**  What time would you suggest and --

5   which would give the Court time to consider the objections?

6   What kind of schedule would you suggest, in light of the 44

7   depositions that you have to address?

8          **MS. JOHNSON:**  I think it would be okay, frankly, your

9   Honors, if all of that was sorted out sometime before the close

10  of the case itself.  Maybe we could do it --

11         **JUDGE HENDERSON:**  Well, but it has to be before they

12  read it, so that we can rule on what they read.

13         **MS. JOHNSON:**  That raises another question,

14  your Honor; is whether or not we were proposing that all of

15  these deposition excerpts are going to be read into the

16  evidence, or are simply going to be submitted.

17         **JUDGE KARLTON:**  I don't understand.  The plaintiffs

18  propose to introduce 44 other excerpts by way of deposition?

19         **MS. JOHNSON:**  The testimony of 44 witnesses by

20  deposition, including some of witnesses named by defendants;

21  but they're proposing to just put the deposition excerpts into

22  evidence, but it was for 44 witnesses, I believe; all of them

23  non expert.

24         **JUDGE HENDERSON:**  Yeah, okay.  I think you're right,

25  Counsel.  I think --

1       **JUDGE KARLTON:**  May I ask Mr. Bien:  is that because

2 these people are not available that you propose this?

3       **MR. BIEN:**  Well, there -- they're party admissions.

4 Their people we took depositions of who are parties or agents

5 of a party, and to -- I -- our -- we offer them as evidence

6 because they're sworn testimony of a party, and it's an

7 admission.  And to hasten to save the Court time in a trial.

8 These witnesses need not testify live.

9       **JUDGE HENDERSON:**  Yeah.  I think I may have caused

10 some confusion here, because I think I mistakenly assumed that

11 you would be reading them.  You're offering them?

12       **MR. BIEN:**  Right.

13       **JUDGE HENDERSON:**  And okay.  So I think you're right,

14 Counsel.

15       **MS. JOHNSON:**  We would be willing to entertain

16 reading.  For example, we have designated three.  We would be

17 willing to entertain reading those three, or if they wanted to

18 pick an equivalent amount, obviously, it's going to be

19 impossible to read in 44 or 47 witnesses, total.

20       **JUDGE KARLTON:**  It's impossible.

21       **MR. SPECTER:**  Well, your Honor, since --

22       **JUDGE HENDERSON:**  Let's agree on a time that you can

23 get in your objection.  We're mostly concerned about the 44

24 depositions.  And then give plaintiffs a chance to respond to

25 that.  And it will be submitted, but it all should be done

1  before the trial is over.  So --

2         MS. JOHNSON:  Your Honor, sorry to interrupt.

3  December 8th would be a possible deadline for us to have our

4  objections and counterdesignations in.  And then if we're

5  thinking that would -- the trial's going to be, hopefully,

6  closing on the 19th.  That would give the plaintiffs 11 days to

7  respond.

8         JUDGE HENDERSON:  And then give us the holidays to

9  decide it.  Is that the idea?  That will -- is there something

10 that can be divided?  Is this something that you will do by

11 yourself, or can we divide something into 44, and get this

12 earlier?

13        MS. JOHNSON:  We obviously will comply or attempt to

14 comply with whatever deadline the Court comes up with.  It is a

15 lot of work, however.

16        JUDGE REINHARDT:  When did you get these depositions?

17        MR. BIEN:  Your Honor, this is not a surprise to

18 defendants.  We took their -- they were there at the

19 depositions.  They knew we were doing this.  We provided the

20 excerpts.

21        JUDGE KARLTON:  Certainly it's a surprise to the

22 Court.

23        MR. BIEN:  On, October 30th, I think, your Honor.

24 And the -- I assume it's not going to be line-by-line

25 objections.  It's -- I assume they're going to cross-designate

1   parts of the testimony for completeness, but --

2           **MS. JOHNSON:**  We have no other way to address

3   line-by-line designations, other than through line-by-line

4   objections.  Obviously, there will be line-by-line objections.

5           **JUDGE REINHARDT:**  You've had them since October 30th?

6           **MS. JOHNSON:**  October 30th.  Yes, your Honor.

7           **JUDGE REINHARDT:**  Have you started looking at them?

8           **MS. JOHNSON:**  We have started identifying the ones

9   that are of priority for us, which I think add up to around 26

10  that are of the most significant priority.

11          **JUDGE REINHARDT:**  And on those that you have gone

12  through -- the 26 -- are you prepared now to state -- have you

13  now decided what you're going to object to in those 26?

14          **MS. JOHNSON:**  No, your Honor.  What I'm saying is

15  that we've identified 26 that are of the most priority that we

16  are now going to obviously -- to do the objections and the

17  counterdesignations based on the time frame that the Court sets

18  out.

19          **JUDGE REINHARDT:**  And how many have you gone through

20  and decided what you're objecting to?

21          **MS. JOHNSON:**  At this time, none, your Honor.  We've

22  been -- we've been --

23          **JUDGE REINHARDT:**  You've had them for 18 days, and

24  you haven't been able to do any?

25          **MS. JOHNSON:**  We have been focusing on the exhibits,

1   the 1,200 that the plaintiffs identified on their list.  It's

2   not that we haven't been doing anything.  We've just had a huge

3   amount of issues to deal with.

4         JUDGE REINHARDT:  At that rate, it seems to me you

5   won't have them done for about a year.

6         If the objections to the depositions were sustained,

7   what's your plan?  Would you plan to call all the witnesses?

8         JUDGE HENDERSON:  No.  They'll just -- we'll read

9   them and take more time.

10         JUDGE REINHARDT:  Right, yeah.  Sustain them, or

11   that's it?

12         JUDGE HENDERSON:  Yeah.

13         MS. JOHNSON:  There were a category of witnesses

14   that -- we objected to them as being hearsay because they are

15   not authorized agents of the parties.  We -- I think we

16   exchanged those objections with plaintiffs' counsel last week.

17   I can't remember the date, frankly, but they were -- and I

18   think there were about six of those, but the rest of them are

19   going to be line-by-line objections.

20         JUDGE HENDERSON:  Give us some idea.  You've looked

21   at some of them.  What are the nature?  What will they look

22   like?  What will some of the objections be, just to get a sense

23   of it?

24         MS. JOHNSON:  Well, obviously, we have the objections

25   that were raised at the time of the deposition to the form of

1   the question or otherwise.  We are looking at objections such

2   as relevance, hearsay, lack of foundation, the usual sorts.

3        **JUDGE REINHARDT:**  So can we find out what all these

4   objections are by reading the depositions?

5        **MS. JOHNSON:**  No, your Honor.  The objections to the

6   form -- other than to the form of the question would not have

7   generally been raised during the deposition.

8        Generally, the rule is you have to preserve the form

9   of the question at the deposition; but we didn't raise them at

10  the other -- relevance, foundation, hearsay objections would

11  not have been raised at the time of the deposition.

12       **JUDGE REINHARDT:**  Yes.

13       **MR. BIEN:**  If I may, your Honor, we had an agreement

14  with all parties that the deposition excerpts would be

15  responded to by November 6th.  That's what we understood.

16       And also, defendants have filed an objection to the

17  depositions which I think they did on -- on November 6th,

18  right?  And they objected to six of the depositions, on the

19  grounds that the -- that the parties deposed were not

20  prinicpals, so they were not party admissions.

21       And the -- I think that issue can be, you know,

22  briefed separately.  And again, these are broad categories of

23  objections.  I don't think it's -- it needs to be line by line.

24  If someone's a party or principal and they're making a

25  statement, it's not hearsay; it's a party admission.

 1        **MS. JOHNSON:**  Your Honor, we made the agreement about

 2   objections to the depo transcripts long before we knew that

 3   they were going to identify 44 different witnesses.  So what we

 4   did was exchange objections with them -- general, categorical

 5   objections -- on November 6th, which primarily were what I

 6   stated to you.

 7        There were six individuals who we do not believe are

 8   our authorized agents.  And therefore, their depositions cannot

 9   be used, except for impeachment purposes but those witnesses

10   haven't been listed as trial witnesses, so there wouldn't be

11   any reason for using their depos at all.  Otherwise, the

12   witnesses will have to go line by line.  Just because the

13   deponent is a party witness, it doesn't -- hearsay -- perhaps

14   if they're reciting an out-of-court statement by someone else,

15   that would be hearsay.  So hearsay doesn't cover the double

16   hearsay or triple hearsay or quadruple hearsay that could be

17   contained within a persons deposition testimony.

18        **JUDGE KARLTON:**  I must -- I must inquire of

19   plaintiffs.  I am told now that you are tendering 44

20   depositions -- additional witnesses by deposition; that there

21   are 1,200 exhibits.  Who do you think is going to read all of

22   these, and when?

23        **MR. BIEN:**  Your Honor, the deposition excerpts are

24   excerpts which are limited parts of the testimony of these

25   witnesses that we are presenting in order to attempt to shorten

1  the trial.  And they deal with -- with important issues that

2  were admitted by these witnesses.  It includes, by the way, not

3  only representatives of the defendants, but also

4  representatives of the intervenors.

5          And in terms of the exhibits, we will -- this is our

6  list of exhibits.  We will make every effort and we continue to

7  make make every effort to attempt to limit them.  There has not

8  been any limitation by the defendants' intervenors as to the

9  issues in the trial.  And though we've tried to obtain

10 stipulations on issues, so far, we have not.  And so we will

11 make every effort to limit them, and focus on important issues.

12 We understand the Court's concerns.

13          **JUDGE HENDERSON:**  Well, I don't know.  I'm going to

14 suggest to my colleagues that we give -- understanding that

15 defendants have other trial preparation things to do, that we

16 give you until December 1st -- this is not a ruling, because

17 I'm consulting with my colleagues now -- to get in your

18 objections.

19          And that we give defendants until December 12th to

20 respond --

21          **MR. BIEN:**  Plaintiffs.

22          **THE COURT:**  I don't know any other way.  Do you have

23 a -- how does that sound to you, Larry?

24          **JUDGE KARLTON:**  I'm so amazed, that I am speechless.

25 Judge Henderson, I just don't even know which way to turn.

```
1              JUDGE HENDERSON:  Yeah.  I don't, either, because --

2              JUDGE KARLTON:  It's just -- it is just --

3              JUDGE HENDERSON:  It contemplates our reading for the

4    next two years; just reading things.

5              JUDGE REINHARDT:  Two years.

6              JUDGE HENDERSON:  Yeah, just reading things.

7              JUDGE KARLTON:  I just don't know what to say.  I

8    haven't -- I'm just stunned.  I propose that we discuss this

9    matter on the phone after counsel have left.  And I don't know

10   what we'll say at the end of that, but --

11             JUDGE HENDERSON:  Okay.  Let's do that.

12             MS. JOHNSON:  Just one point of clarification,

13   your Honor.  It would be an opportunity for us to provide

14   objections and counterdesignations.

15             JUDGE HENDERSON:  Yeah.

16             JUDGE KARLTON:  I'm sorry.  I didn't hear that.

17             JUDGE HENDERSON:  She wanted to add "and

18   counterdesignations," in addition to objections.

19             JUDGE KARLTON:  Oh, yeah.  Yeah.

20             MR. BIEN:  Your Honor, that was specifically agreed

21   to be done by November 6th by the parties.  And that puts us in

22   a position of re-looking at all of these designations, but

23   anyway --

24             JUDGE HENDERSON:  Okay.

25             JUDGE REINHARDT:  -- do you have similar objections
```

1  to defense witnesses' depositions?

2      **MR. BIEN:**  We already have filed -- we have already

3  completed that process, but again, that's correct.  They only

4  designated three because they only took a few depositions.

5      **JUDGE HENDERSON:**  Okay.  We'll get back to you on

6  this specific issue, Counsel, after we've had a chance to talk

7  about it.

8      Any other matters that plaintiffs' table wishes to

9  raise?

10      **MR. BIEN:**  No.  No, your Honor.  Thank you.

11      **JUDGE HENDERSON:**  Okay.  Defendants and intervenors?

12      **MS. TILLMAN:**  Your Honor, just a small housekeeping

13  matter in regards to the exhibits.  Do you want them hard copy,

14  or on disk?

15      **JUDGE HENDERSON:**  By the end of trial we want the

16  hard copy, yeah, so that each Judge can look at them in their

17  chambers afterwards.

18      **MR. MELLO:**  Paper?

19      **JUDGE HENDERSON:**  Yeah, paper.

20      **MS. BARLOW:**  Again, this is Kimberly Hall Barlow,

21  Jones & Mayer, on behalf of Law Enforcement Intervenors.

22      We had a question about exhibit numbering, to make it

23  easier for the Court, whether the Clerk wanted to assign a

24  certain range of of numbers so you could identify whose it was.

25  It's a little complicated, given the number of parties here, to

1  make sure that the exhibits are clearly reflective of who's

2  submitting them.

3          **MR. SPECTER:**  We would have P.  They would have D.

4          **MS. BARLOW:**  Okay.  Is there a particular manner of

5  marking that we can work out with the Clerk, your Honor, for

6  those, or do you just want them Bates numbered as we present

7  them with our exhibit number?

8          **JUDGE HENDERSON:**  Well, are you prepared to talk to

9  them about that, Rowena?

10          **THE CLERK:**  I will discuss it with them after.

11          **JUDGE HENDERSON:**  Okay.

12          **MS. BARLOW:**  Perfect.  Thank you, your Honor.

13          **MR. BIEN:**  There's one other issue that we have

14  discussed with defendants concerning confidential references to

15  inmates and -- and other information that's covered by

16  protective orders.  The parties propose and are in agreement

17  that we can submit redacted copies of such exhibits that would

18  eliminate the confidential information, if that's okay with the

19  Court.

20          **JUDGE KARLTON:**  The more you strike out, the better

21  off we all are.  I think you think I'm kidding.  That would be

22  a veritable mistake.

23          **MR. BIEN:**  Okay.  I understand, your Honor.

24          **MS. TILLMAN:**  Just on that note, your Honors, we do

25  have a concern about some items that are under a protective

1  order, such as certain receiver documents, like the facility

2  master plan.  We cannot redact, of course, that entire

3  document.  We do anticipate marking that as an exhibit.  And so

4  we anticipate that this Court would desire a hard copy of that

5  in a separate, sealed envelope, filed as any document under

6  seal would be filed, separate and apart from the other non

7  confidential exhibits, correct?

8          **JUDGE HENDERSON:**  I have no problem with that.  Is

9  that okay with you, Larry?  Is that okay?

10          **JUDGE KARLTON:**  Yeah, that's fine.

11          **JUDGE HENDERSON:**  Yeah, that's fine.

12          **MS. TILLMAN:**  And we would do the same with

13  Mr. Coleman's deposition as well.  I think we've already

14  accomplished that.

15          **MR. BIEN:**  Yeah.

16          **MS. TILLMAN:**  Thank you.

17          **JUDGE HENDERSON:**  Okay.  Anything further?

18          Okay.  The conference is over.

19          **JUDGE KARLTON:**  Thelton, I'll talk to you in about

20  five minutes.  Okay?

21          (At 2:35 p.m. the proceedings were adjourned.)

22                          -   -   -   -

23

24

25

## CERTIFICATE OF REPORTER

I, LYDIA ZINN, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings in C. 01-1351-TEH, and CIV S90-0520-LKK, Plata v. Schwarzenegger, and Coleman v. Schwarzenegger, were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.

The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

_____

/s/ Lydia Zinn, CSR 9223, RPR

Wednesday, November  12, 2008