1  PRISON LAW OFFICE                    BINGHAM McCUTCHEN
   DONALD SPECTER #83925                WARREN E. GEORGE #53588
2  STEVEN FAMA #99641                   Three Embarcadero Center
   ALISON HARDY #135966                 San Francisco, CA 94111
3  REBEKAH EVENSON #207825              Telephone: (415) 393-2000
   1917 Fifth Street                    Facsimile: (415) 393-2286
4  Berkeley, CA  94710
   Telephone: (510) 280-2621
5  Facsimile: (510) 280-2704

6

7

8

9                      UNITED STATES DISTRICT COURT

10                    NORTHERN DISTRICT OF CALIFORNIA

11

12

13

14  MARCIANO PLATA, et al.,              No. C01-1351 T.E.H.

15         Plaintiffs                    **PLAINTIFFS' OPPOSITION TO
                                         DEFENDANTS' MOTION TO
16  v.                                   REPLACE THE RECEIVER
                                         WITH A SPECIAL MASTER AND
17  ARNOLD SCHWARZENEGGER, et al.,       TO TERMINATE THE
                                         RECEIVER'S CONSTRUCTION
18         Defendants.                   PLAN**

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES............................................................... ii

INTRODUCTION............................................................... 1

PROCEDURAL HISTORY............................................................... 2

FACTUAL BACKGROUND............................................................... 8

LEGAL STANDARD............................................................... 12

ARGUMENT............................................................... 13

    I.    The Court Should Not Replace the Receiver With a
        Special Master............................................................... 13

        A.    The Court has authority to appoint a receiver. ................. 13

        B.    The Court made all required findings........................ 15

        C.    No evidentiary hearing is required........................... 17

    II.    Alleged flaws in the Receiver's construction plan do not
        provide grounds for terminating the Receeivership or the
        Receiver's plan. ............................................................... 18

        A.    This Court does not have jurisdiction to resolve this
            matter because the issue is before the Ninth Circuit. ........... 18

        B.    Arguments about excesses in the Receiver's plan
            are premature because there is no final plan.................... 21

        C.    If defendants believe the Receiver's plan is excessive,
            their remedy is to file objections to the plan.................... 22

        D.    Disputes about the Receiver's plans and actions should be
            resolved by the Court..................................... 24

CONCLUSION............................................................... 24

Pltffs' Opp. To Defs' Mot. To Replace Receiver with Spec. Master & Terminate Receiver's
Construction Plan, *Plata v. Schwarzenegger*, 01-1351 T.E.H.

i

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

*Califano v. Yamasaki,*
    442 U.S. 682 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

4

*Gilmore v. California,*
    220 F.3d 987 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

5

6

*Hamilton v. State Farm Fire & Casualty Co.,*
    270 F.3d 778 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

7

8

*Judge Rotenberg Education Center, Inc. v. Commissioner of the
Department of Mental Retardation,*
    677 N.E.2d 127 (Mass. 1997).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

9

10

*Masalosalo v. Stonewall Insurance Co.,*
    718 F.2d 955 (9th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

11

*McClatchy Newspapers v. Central Valley Typographical Union No. 46,*
    686 F.2d 731 (9th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20, 21

12

13

*Natural Resources Defense Council, Inc. v Southwest Marine Inc.,*
    242 F.3d 1163 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

14

*Newman v. Alabama,*
    466 F. Supp. 628 (M.D. Ala. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

15

16

*Newton v. Consolidated Gas Co.,*
    258 U.S. 165 (1922).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

17

*Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.,*
    204 F.3d 867 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20

18

19

*Rufo v. Inmates of Suffolk County Jail,*
    502 U.S. 367 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

20

*Russel v. Rolfs,*
    893 F.2d 1033, 1037 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

21

22

*Shaw v. Allen,*
    771 F. Supp. 760 (S.D.W.Va. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

23

*Thomas v. Bible,*
    983 F.2d 152 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

24

25

*United States v. Alexander,*
    106 F.3d 874 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

26

*United States v. El-O-Pathic Pharmacy,*
    192 F.2d 62 (9th Cir. 1951). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

27

28

Pltffs' Opp. To Defs' Mot. To Replace Receiver with Spec. Master & Terminate Receiver's
Construction Plan, *Plata v. Schwarzenegger*, 01-1351 T.E.H.

*Wayne County Jail Inmates v. Wayne County Chief Executive Officer*,
   444 N.W.2d 549 (Mich. App. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

*Weinberger v. Romero-Barcelo*,
   456 U.S. 305 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

## STATUTES

18 U.S.C. § 3626. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## RULES

Federal Rules of Civil Procedure

   Rule 60(b)(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12, 17
   Rule 62(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20, 21
   Rule 66. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

## OTHER AUTHORITIES

7 J. Moore, Moore's Federal Practice ¶ 62.05 (2d ed. 1979)

**INTRODUCTION**

Defendants' Motion to Replace the Receiver with a Special Master and to Terminate the Receiver's Construction Plan should be denied.

Defendants first contend that this Court had no legal authority to appoint a Receiver in the first instance.  But this is a matter that was correctly decided by this Court in its October 3, 2005 Findings of Fact and Conclusions of Law re Appointment of Receiver and was not appealed.  The PLRA does not prohibit appointment of a receiver, and the Court made all findings required by the PLRA.  Defendants do not argue that this Court's findings were incorrect or that judicial oversight is no longer necessary, and they make no showing that would warrant reconsideration of this Court's findings and conclusion.

Defendants next contend that the Receiver has exceeded his legal authority under the PLRA in developing a plan to build medical facilities, that the plans themselves are excessive, and that these are grounds for terminating both the Receivership and the Receiver's plans.  At this time the Court does not have jurisdiction to consider whether the Receiver's construction plan violates the PLRA, because that matter is currently pending before the Ninth Circuit.  Moreover, the claims about the excesses in the Receiver's plans are premature because the Receiver's construction plans have not been finalized, and the Receiver continues to request input from the parties as to the scope and content of the construction plans.  Accordingly, the motion to terminate the Receivership and the Receiver's plans should be rejected.

Nonetheless, although this is not grounds for terminating the Receivership, plaintiffs agree in principle with defendants' contention that the Receiver should be transparent about his construction plans, that the parties should have input into the plans, and that the Court should resolve any objections to the Receiver's plans.  Once the Ninth Circuit has resolved the pending appeal, plaintiffs propose that the Court set a hearing to consider 1) whether the Receiver has authority to continue with construction plans (unless

Pltffs' Opp. To Defs' Mot. To Replace Receiver with Spec. Master & Terminate Receiver's Construction Plan, *Plata v. Schwarzenegger*, 01-1351 T.E.H.

1   that issue is resolved by the Ninth Circuit), and 2) if so, the appropriate scope of such

2   plans.

3                                    **PROCEDURAL HISTORY**

4          Plaintiffs filed their complaint in this action on April 5, 2001, alleging that

5   defendants failed to provide constitutionally adequate medical care in all of California's

6   prisons.  Following the filing, the State admitted that the medical care being provided was

7   so inadequate that it violated the Eighth Amendment protection against cruel and unusual

8   punishment.  6/13/02 Stipulation for Injunctive Relief at 2-3 (Docket No. 68).  In June

9   2002, the parties entered a stipulated injunction to improve the medical care system in the

10  California Department of Corrections and Rehabilitation (CDCR).  *Id.*  The stipulated

11  injunction provides in part: "The Court shall have the power to enforce the Stipulation

12  through specific performance and all other remedies permitted by law."  It also provides

13  that it "shall be binding upon, and faithfully kept, observed, performed and be enforceable

14  by and against the parties."  *Id.* at 14, 16.

15         Despite this stipulated injunction, the medical care system has remained in a state

16  of crisis.  Over the years, the Court has issued more narrowly tailored directives, which

17  covered areas such as physician evaluations, nursing supervision, and central quality

18  control.  *See* 9/17/04 Stipulated Order Re Quality of Patient Care and Staffing (Docket

19  No. 229).  In addition, the Court met monthly with the parties for over a year to try to

20  expedite the improvement of the medical care system.  10/3/05 Findings of Fact and

21  Conclusions of Law Re Appointment of Receiver ("Findings of Fact") at 38-39 (Docket

22  No. 371).  During these meetings, the Court encouraged defendants to propose actions

23  that would allow them to solve the problems with medical care, including suggesting

24  specific Court orders.  *Id.*  Defendants never suggested appointment of special master.

25         Neither the Court's orders nor monthly meetings proved adequate to improve the

26  medical care system.  On May 10, 2005, the Court issued an Order to Show Cause as to

27  why civil contempt should not issue and there should not be an appointment of a

28
Pltffs' Opp. To Defs' Mot. To Replace Receiver with Spec. Master & Terminate Receiver's
Construction Plan, *Plata v. Schwarzenegger*, 01-1351 T.E.H.

1 temporary receiver.  5/10/05 Order to Show Cause Re Civil Contempt and Appointment

2 of Interim Receiver (Docket No. 294).  The Order stated that the "prison medical delivery

3 system is in [] a blatant state of crisis" and that "defendants have publicly conceded their

4 inability to find and implement their own solutions that will meet constitutional standards.

5 The State's failure has created a vacuum of leadership and utter disaray in management,

6 supervision, and delivery of care in the Department of Corrections medical system." *Id.*

7 at 1.

8 Defendants' response to the Order to Show Cause states "Defendants do not

9 dispute that this Court has the power to appoint a Receiver . . ." Def's Response to OSC,

10 June 20, 2005 at 2 (Docket No. 328); *see also id.* at 25 (same).  Defendants further

11 conceded that "to date they have failed to obtain compliance with all aspects of the Court

12 Orders" and that "despite their best efforts to effect improvements in health care and the

13 systems for delivering it to California's prison population, their efforts have been

14 hampered by the complex statutory and regulatory legal requirements and operational

15 systems governing the prison system." *Id.* at 5.  Defendants' main contention was that a

16 receivership was not the least intrusive means to resolve the constitutional violations. *Id.*

17 at 2.

18 Commencing on May 31, 2005, the Court held a six-day evidentiary hearing

19 regarding the status of medical care in CDCR.  On October 3, 2005, the Court issued

20 detailed findings of fact and conclusions of law supporting the establishment of the

21 Receivership.  10/3/05 Findings of Fact (Docket No. 371).

22 In the ensuing years, the Receiver has issued numerous reports, and, according to

23 defendants, has made significant improvements in some areas of the delivery of medical

24 care. Defs' Trial Br. at 29-30, Nov. 3, 2008 (Docket No. 2065).

25 However, the Receiver has not remedied the constitutional violations at issue in

26 this case, in large part because the prisons are so crowded.  Accordingly, plaintiffs moved

27 to convene a three judge court to consider a prisoner release order, and on July 23, 2007,

28

Pltffs' Opp. To Defs' Mot. To Replace Receiver with Spec. Master & Terminate Receiver's
Construction Plan, *Plata v. Schwarzenegger*, 01-1351 T.E.H.

3

1  the Court issued an order granting the motion to convene a three judge court.  Docket No.

2  780.

3      While the three judge court proceedings were underway, the Receiver continued

4  his efforts to address the unconstitutional healthcare.  One of the central parts of the

5  Receiver's plan was the construction of medical facilities for seriously ill inmates.  The

6  Receiver has filed reports explaining his remedial plans and numerous updates of his Plan

7  of Action, which have discussed his construction plans.   And until very recently, the

8  State fully supported the Receiver's building plans.

9      The Receiver's February 6, 2009 "Report on Options for Long-Term Care Bed

10  Construction" details his efforts in this respect.  Docket No. 2065.  Over a two-year

11  period, the Receiver met regularly with the Governor's office, state legislators,  CDCR

12  officials and Department of Finance officials to discuss the building plans.  *Id.* at 5-8.

13  While these meetings were ongoing, the Receiver also made public his plans, and filed

14  various public documents with the Court.

15      On April 17, 2007, the Receiver filed a Master Application for an order waiving

16  certain state laws and approving a substituted process for notice, bidding and contract

17  award procedures for (among other things) the construction of medical facilities.  Docket

18  No. 639, at 16-18.  The State filed a statement of non-opposition.  Docket No. 659.  On

19  June 4, 2007, the Court approved the Master Application.  Docket No. 700.

20      The Receiver's plans initially included medical facilities for *Plata* class members

21  only.  However, at the request of defendants, the Receiver expanded his plans to include

22  facilities for mentally ill prisoners (members of the plaintiff class in *Coleman v.*

23  *Schwarzenegger,* E.D. Cal. Case No. CIV S90-0520 LKK-JFM).  Receiver's Report on

24  Options of Long-Term Care Bed Construction at 10 (Docket No. 2065).  Also at the

25  State's request, the plans for the *Coleman* class members included such elements as

26  electronic bingo boards, basketball courts, and landscaping – the very projects that

27  defendants are now contending are excessive.  *Id.*  It was the addition of the facilities for

28

Pltffs' Opp. To Defs' Mot. To Replace Receiver with Spec. Master & Terminate Receiver's
Construction Plan, *Plata v. Schwarzenegger*, 01-1351 T.E.H.

4

1   *Coleman* class members that increased the building plan to a 10,000 bed facility.

2        The Receiver's construction plans were also expanded to include members of the

3   plaintiff classes in *Armstrong v. Schwarzenegger*, N.D. Cal. Case No. C 94-2307 CW

4   (prisoners with certain disabilities) and *Perez v. Tilton*, N.D. Cal. Case No. C 05-05241

5   JSW (dental health care).  The expansion of the plans was with the express consent of

6   defendants.  Defendants stated that they "do not object to the agreement which provides

7   that the *Plata* Receiver 'will assume leadership responsibility' for three construction

8   projects, [including] construction of approximately 5,000 medical and approximately

9   5,000 mental health beds."  Def's Resp. To Nov. 13, 2007 OSC, Nov. 26, 2007 at 2

10  (Docket No. 977).  Defendants urged only that the Receiver "make every attempt to seek

11  Legislative action or use existing bond financing to fund *these important construction*

12  *projects*."  *Id.* (emphasis added).

13       On June 6, 2008, after consultation with the parties, the Receiver filed with the

14  Court his Turnaround Plan of Action ("Turnaround Plan"), which included his plan to

15  improve health care facilities at existing prisons and also included the 10,000 bed

16  expansion.  Docket No. 1229.  The Turnaround Plan outlines six goals, and specifically

17  states that in order to meet these goals "the receiver will supervise construction of

18  facilities at existing institutions to serve 10,000 inmates with medical and/or mental

19  health needs."  *Id.* at 27.  Appendix A to the Turnaround Plan provides details about

20  costs, metrics and a timeline for implementing the 10,000 bed plan.  *Id.* at Appendix A.

21       As with the Receiver's earlier plans, defendants did not file any objections to the

22  Turnaround Plan.  The Court approved the Turnaround Plan on June 16, 2008.  Docket

23  No. 1245.  Defendants did not file any appeal from this order.

24       Also on June 16, 2008, the Receiver filed a supplemental application for waiver of

25  state law necessary for the design and construction of the 10,000 beds.  Docket No. 1243.

26  Defendants again filed no objections.  On July 2, 2008, the Court issued an order waiving

27  state laws necessary for the design and construction of the Receiver's 10,000 bed project.

28

Pltffs' Opp. To Defs' Mot. To Replace Receiver with Spec. Master & Terminate Receiver's
Construction Plan, *Plata v. Schwarzenegger*, 01-1351 T.E.H.

1   Docket No. 1293.  Defendants did not appeal that order.

2          After entry of the July 2, 2008 order, the Receiver requested that the State provide

3   the funds necessary to continue implementing the Turnaround Plan and to move forward

4   on the building project.  It was only then that the State raised an objection to the plans,

5   and refused to provide the required funds.  On August 13, 2008, the Receiver filed a

6   motion for an order holding defendants in contempt for failure to fund his plan.  Docket

7   No. 1379.  After two hearings and several rounds of briefing, the Court issued an order

8   directing the State "to transfer $250 million to the Receiver no later than November 5,

9   2008," or to show cause starting on November 12, 2008, "why they should not be held in

10  contempt for failing to comply with this Order to continue funding implementation of the

11  Receiver's previously approved plans."  Docket No. 1610.

12         The State appealed.  In the course of its appeal, the State argued that the PLRA

13  precludes the Receiver from constructing prisons, and precludes this Court from ordering

14  the State to comply with the Receiver's plans (the same issues the State is raising in the

15  instant motion).  Brief for Appellants, December 8, 2008 (Ninth Circuit Case 08-17412,

16  Docket No. 6732126) at 21-33, *see also* Reply Brief for Appellants, January 21, 2009

17  (Ninth Circuit Case 08-17412, Docket No. 6777812) at 19-28 (raising exact same

18  arguments).  However, counsel for defendants also conceded during oral argument that

19  defendants agreed to the Receiver's construction plans, with the sole proviso that the

20  construction be funded by lease-revenue bonds.[1]

21         Despite these ongoing disputes, and at the same time that the State was raising

22

23         1.   When asked during oral argument about the State's acquiescence in the
24  Receiver's building plans, counsel for the State conceded that the "State [] agreed to this
    insofar as the Receiver agreed to seek lease revenue funding."   The full recording of the
25  oral argument before the Ninth Circuit can be found at
26  http://www.ca9.uscourts.gov/media/view_subpage.
    php?pk_id=0000002849, and the relevant portions of the argument can be found at
27  minutes 10:00-10:12.

28  Pltffs' Opp. To Defs' Mot. To Replace Receiver with Spec. Master & Terminate Receiver's
    Construction Plan, *Plata v. Schwarzenegger*, 01-1351 T.E.H.

objections to some of the Receiver's plans, defendants specifically admitted that the

Receiver's efforts are the *least intrusive* means to resolve the unconstitutional healthcare:

> It is the continued efforts of the Plata Receiver to improve the delivery of medical care and of the CDCR to improve the delivery of mental health care, under the direction of the Coleman Special Master, that will remedy the alleged problems with medical and mental health care. *And these existing remedies which are in place are the least intrusive means to continue to improve medical and mental health care.*

Def's Trial Brief at 27, Nov. 3, 2008 (Docket No. 1759) (emphasis added).  Defendants

lauded the progress made by the Receiver thus far:

> It is indisputable the Receiver has made improvements in the delivery of medical care, including responsiveness to inmate appeals, timeliness of appointments, improved pharmacy and drug formulary, and increased staffing with board certified and board eligible physicians.

Def's Trial Brief at 25, Nov. 3, 2008 (Docket No. 1759).  Defendants urged the Court to

"allow the Plata Receiver and the CDCR to continue to make the clinical and other

improvements necessary to adequately meet the constitutionally minimum needs of the

Plata and Coleman class members."  *Id.* at 29-30.

   The Receiver has continued to refine his building plans while the three judge court

proceedings have progressed, and has sought further assistance from the parties in this

respect.  On February 6, 2009, the Receiver filed the "Receiver's Report on Options For

Long-Term Care Bed Construction," in which he outlines three possible modifications to

the building project: 1) building only 5,000 beds, which the Receiver finds to be

necessary for *Plata* class members; 2) building 7,500 beds for 5,000 *Plata* class members

plus 2,500 *Coleman* class members; 3) building 10,000 beds for both *Plata* and *Coleman*

class members.  Docket No. 1445 at 12-13.  The Receiver specifically recommended "that

the parties be provided an opportunity to respond to the options contained in the report

and that State defendants inform the courts concerning other construction options which

they believe may be appropriate."  *Id.* at 15.

Pltffs' Opp. To Defs' Mot. To Replace Receiver with Spec. Master & Terminate Receiver's Construction Plan, *Plata v. Schwarzenegger*, 01-1351 T.E.H.

7

**FACTUAL BACKGROUND**

In the instant motion, defendants do not contend that there is any material change in the facts that this Court found to be true in its October 3, 2005 Findings.  They do not seek an evidentiary hearing to resolve any disputed facts.

Plaintiffs note, however, that in the intervening years the Receiver has issued several reports detailing the state of the medical system.  The factual record in this case was developed further in the course of the four-week trial held in the three judge court proceedings just two months ago, during which the parties introduced significant evidence concerning the state of medical care in the prisons.  That evidence clearly and convincingly shows that medical care in California's prisons is not minimally adequate.

First, inadequate medical care in California prisons results in prisoner deaths.  Specifically, of the 110 prisoner deaths in calendar year 2007 that were considered natural and unexpected, 44 were preventable or possibly so.  Pls.' Trial Exh. P-413, Receiver's Analysis of 2007 Calendar Year Deaths, at 8 (Table 1); Three Court Judge Proceedings RT (hereafter "RT") 428:23 - 429:7 (Dr. Shansky).[2]  This is an extremely high percentage.  RT 428:23 - 429:7 (Dr. Shansky).  Among all 395 deaths reviewed (including both expected and unexpected deaths), 17 percent (68) were identified as preventable or possibly so, a rate which itself is quite high.  RT 429:12-19 (Dr. Shansky); Pls.' Trial Exh. P-413, Receiver's Analysis of 2007 Calendar Year Deaths, at 8 (Table 1).

In addition to the high percentage of preventable or possibly preventable deaths, reviews of California prisoner deaths also identify a shockingly high rate of extreme departures or lapses from the community standard of care.  Dr. Shansky testified that as Medical Director of the Illinois prison system, an extreme departure from the standard of care would be identified in five to ten percent of inmate deaths.  RT 428:9-17.  In California, of 395 prisoner deaths reviewed in calendar year 2007, there were a total of

---

2.    Plaintiffs request that the Court take judicial notice of record in the three judge court proceeding, to the extent that the matters are not already before this Court.

Pltffs' Opp. To Defs' Mot. To Replace Receiver with Spec. Master & Terminate Receiver's Construction Plan, *Plata v. Schwarzenegger*, 01-1351 T.E.H.

292 extreme-departure lapses from the standard of care in 234, or almost 60 percent, of the deaths.  Pls.' Trial Exh. P-413 at 8-9 (extreme-departure lapses identified in reviews of 166 deaths classified as non-preventable), 10 (extreme-departure lapses identified in 65 deaths classified as possibly preventable) and 11 (extreme-departure lapses identified in reviews of three deaths classified as preventable).  Although the Receiver's report identifies extreme-departure lapses that occurred in prisoner deaths, such extreme departures are widespread in prisoner-patient care in California prisons, and contribute to delays in diagnosis and treatment, avoidable medical emergencies, and avoidable hospitalizations.  RT 430:9-23 (Shansky).

The extreme departures identified in the 2007 reviews of prisoner deaths include, in order of frequency, 1) the failure to recognize, identify or adequately evaluate important symptoms or signs; 2) delays in access to care resulting in harm to patients; 3) failure to follow established guidelines; 4) medication prescribing or delivery problems; 5) failure of communication and fragmented care delivery; 6) failure to adequately follow-up on abnormal test results; and 7) delays in or poorly provided emergency response, among others.  Pls' Trial Exh. P-413 at 19, table 12.  Many of these extreme departures and lapses are systemic.  *See* RT 427:17-428:4, 430:24-431:3 (Dr. Shansky).

In addition, the evidence in the three judge proceeding showed serious inadequacies with medical care in reception centers.  The reception center health care screening process breaks down in that backlogs of patient appointments cannot be reduced because there is no place for additional appointments to occur, medical confidentiality requirements cannot be met, adequate physical exams are not performed, and clinicians' ability to provide adequate care, including obtaining necessary information such as reliable patient histories for treating patients, are substantially impeded, critically impaired, or impossible. Shansky First Report at  ¶¶ 11-12, 20, 24-25; Shansky Second Supp. Report at ¶¶ 21-29, 38-39; Pls.' Trial Exh. P-413, Receiver's Analysis of 2007 Calendar Year Deaths, at 25 ("crowded patient care areas promote errors and prohibit

confidentiality" and adequate care for chronic care patients is "physically impossible" in a majority of CDCR prisons because of space limitations); RT 236:20-22  (Beard: screening process in overcrowded reception centers can miss conditions); RT 270:25-271:11 (Lehman: cannot treat prisoners in space designed for half the number that need care).

Systemic delays in access to care in non-reception center prisons also result in inadequate care.  Shansky First Report at ¶¶ 46-50; Shansky Second Supp. Report at ¶¶ 67-77.  In addition, the lack of sufficient medical staff results in the prisons being unable to implement or fully implement essential medical programs and policies, including regarding chronic care, initial physical exams, follow-up appointments after off site specialty consults, follow-up appointments ordered by a PCP appointments while waiting to see a specialist, and logging of urgent and emergency cases.  Shansky First Report at ¶¶ 51-55; Shansky Second Supp. Report at ¶¶ 58-87.

Prisoners needing specialty care, including in particular those ordered to receive such services on a high-priority basis, do not receive such care in a timely manner, resulting in inadequate care.  Shansky First Report at ¶ 56; Shansky Second Supp. Report at ¶ 88 ("demand for [specialty] care, particularly for high priority cases, continues to overwhelm the resources available to defendants"); Pls.' Trial Exh. P-413, Receiver's Analysis of 2007 Calendar Year Deaths, at 25 ("Even when California's largely rural prisons can recruit adequate numbers of physicians and nurses, specialists and ancillary services staff are often unavailable").  The Receiver has identified "[s]ystemic and pervasive prolonged delays in specialty referrals" as one of the "[s]ystemic lapses" found when reviewing prisoner deaths (Pls.' Exh. P-34, Receiver's Analysis of CDCR Death Reviews 2006, at 8), and reports that "an increasing number of prisoners in the more remote prisons has placed a heavy burden on a very limited number of hospitals and specialty providers . . . ."  Receiver's Overcrowding Report at 28:8-10).   Serious delays in receiving specialty care were identified at specific prisons. Shansky First Report at ¶¶

Pltffs' Opp. To Defs' Mot. To Replace Receiver with Spec. Master & Terminate Receiver's Construction Plan, *Plata v. Schwarzenegger*, 01-1351 T.E.H.

59-77 (identifying and describing specialty care delays at 11 prisons); Shansky Second

Supp. Report at ¶¶ 89-92 (identifying and describing specialty care delays at 4 prisons).

The prison specialty care system is overwhelmed by the sheer number of prisoner-

patients.  Shansky First Report at ¶ 78.  The demand for care, particularly for high priority

cases – when the prisoner-patient has an urgent medical need that a prison doctor has

determined requires a specialty services consult within 14 days – overwhelms the

resources available.  Shansky Second Supp. Report at ¶ 88.

Because of the lack of or delayed access to specialty services, prisoners suffer

serious harm, and some have died.  Shansky First Report at  ¶ 57-58; Pls.' Exh. P-34,

Receiver's Analysis Of CDCR 2006 Death Reviews, August 20, 2007, at 6-8 (Receiver's

review of calendar year 2006 deaths identifies a preventable death in which there was a

five-week delay in availability of an appointment for a specialist and, in 11 cases among

the possible preventable deaths, there were delayed referrals, and identifies delays as a

systemic problem); Pls.' Trial Exh. P-413, Receiver's Analysis of 2007 Calendar Year

Deaths, at 21 (delays in access to speciality care, along with other areas of care).

The evidence also establishes that California's prisons have dangerously

incomplete and poorly maintained medical records which result in inadequate care.

Shansky First Report at ¶¶ 101-109 (describing inadequate records at CIM, ASP, HDSP,

and other prisons); Shansky Second Supp. Report at ¶¶ 99-101 (stating that at each of the

prisons inspected, the medical records were "unwieldy, rarely organized chronologically

and, in general, poorly maintained," including delay of "several months" in transcribing

physicians' notes at HDSP); RT 424:5-8 (medical records disorganized).  These medical

records failures significantly impede the delivery of care, create dangerous risks for

patients, and can have fatal results.  Shansky First Report at ¶ 99; Shansky Second Supp.

Report at ¶101; Pls.' Exh. P-34, Receiver's Analysis of CDCR Death Reviews 2006, at 7-

9 ("incomplete medical records" identified as one of the significant systemic lapses of

care; "lost medical information" identified as one of the kinds of poor provider

communication in seven possibly preventable deaths).

Moreover, because of inadequate scheduling and tracking systems, patients, including those with chronic diseases, are lost, there is an inability to identify patients with chronic conditions or communicable conditions, and prisoners face a risk of harm. Shansky First Report at ¶ 112; Shansky Second Supp. Report at ¶ 104; Pltffs' Exhibit 29, Receiver's Second Bi-Monthly Report, at 36:11-15 ("primitive computerized patient tracking system . . . continues to 'lose' patients with chronic diseases"); Pltffs' Exhibit 67, Receiver's Seventh Quarterly Report, Exhibit 1 (Patient Identification Assessment) at 5-6).

## LEGAL STANDARD

Defendants do not identify the legal standard governing their motion, but presumably they seek relief pursuant to Federal Rule of Civil Procedure 60(b)(5), which provides that a court may relieve a party of its obligations arising from an order if the court's order "has been satisfied, released or discharged" or "applying it prospectively is no longer equitable."  Rule 60(b)(5) codifies the court's power to modify an injunction to achieve equity.  Relief from a court order should not be granted simply because a party finds "it is no longer convenient to live with the terms" of the order.  *Rufo v. Inmates of Suffolk County Jail*, 502 US 367, 383 (1992).  Instead, the party seeking relief from a court order must show changed circumstances that would warrant termination of the relief.  *Id.*  A receivership is terminable where the moving party shows that "the objectives of the receivership have been obtained or the need for the receiver has abated." Fed. R. Civ. Proc. 66 (author's commentary).

The PLRA provides that prospective relief is terminable immediately if the court failed to make the required findings (18 U.S.C. §3626(b)(2)), unless "the court makes written findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn

Pltffs' Opp. To Defs' Mot. To Replace Receiver with Spec. Master & Terminate Receiver's Construction Plan, *Plata v. Schwarzenegger*, 01-1351 T.E.H.

and the least intrusive means to correct the violation" (18 U.S.C. §3626(b)(3)). Conversely, under the PLRA, "any relief that was narrowly tailored in the first instance, and extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right, is not terminable." *Gilmore v. California*, 220 F.3d 987, 1000 (9th Cir. 2000). Instead, a "district court is bound to maintain or modify any form of relief necessary to correct a current and ongoing violation of a federal right, so long as that relief is limited to enforcing the constitutional minimum." *Id.* The PLRA does not provide standards governing termination of prospective relief when the motion to terminate is based on legal, rather than factual, contentions.

Although plaintiffs initially bore the burden of demonstrating that the relief meets the requirement for prospective relief under the PLRA, 18 U.S.C. 3626(a), on a motion to modify or terminate prospective relief the burden of proof rests on the party seeking modification or termination. *Gilmore,* 220 F.3d at 1007 (termination); *Rufo,* 502 US at 383 (modification).

## ARGUMENT

### I.   The Court Should Not Replace the Receiver With a Special Master

Defendants list what they perceive as the elements of the PLRA, and then assert in a conclusory fashion that the Court failed to observe these limits, specifically by 1) appointing a receiver rather than a special master; and 2) failing to make findings required by the PLRA, and that the Receivership should therefore be terminated and replaced with a Special Master. Def. Mot. at 9-11. These arguments lack merit.

### A.   The Court has authority to appoint a receiver

The Court has the power to appoint a receiver. Defendants previously conceded that this Court has the power to appoint a receiver (Def's Response to OSC, June 20, 2005 at 2 (Docket No. 328), and this Court correctly concluded the same. 10/3/05 Findings at 32-50. As the Court found, the establishment of the Receivership in this case

Pltffs' Opp. To Defs' Mot. To Replace Receiver with Spec. Master & Terminate Receiver's Construction Plan, *Plata v. Schwarzenegger*, 01-1351 T.E.H.

13

followed "a long historical line of precedent where nothing short of receivership could protect the plaintiffs' interests and remedy the violation of their constitutional rights." 10/3/05 Findings at 34.

Receiverships are often necessary in institutional litigation, particularly where other approaches have failed to bring compliance with a court's order. *Shaw v. Allen*, 771 F. Supp. 760, 762 (S.D.W.Va. 1990) ("Where more traditional remedies, such as contempt proceedings or injunctions, are inadequate under the circumstances a court acting with its equitable powers is justified, particularly in aid of an outstanding injunction, in implementing less common remedies, such as a receivership, so as to achieve compliance with a constitutional mandate."); *Newman v. Alabama*, 466 F. Supp. 628, 635 (M.D. Ala. 1979) (appointing receiver for Alabama state prisons, stating: "When the usual remedies are inadequate, a court is justified in resorting to a receivership, particularly when it acts in aid of an outstanding injunction."); *Judge Rotenberg Educ. Center, Inc. v. Comm'r of the Dep't of Mental Retardation,* 677 N.E. 2d 127 (Mass. 1997) (appointing receiver); *Wayne County Jail Inmates v. Wayne County Chief Executive Officer,* 444 N.W. 2d 549 (Mich. App. 1989) (appointing receiver).

Defendants do not address this authority. Instead they argue that because the PLRA provides procedures for appointing a special master, and is silent on the Court's authority to appoint a receiver, the PLRA prohibits appointment of a receiver. Def. Mot. at 10-11. Statutory silence cannot be read as a prohibition on the Court's exercise of its well-established equitable power to appoint a receiver. It is black letter law that "a statute should not be construed to displace courts' traditional equitable powers '[a]bsent the clearest command to the contrary.'" *Gilmore*, 220 F.3d at 997 n. 12 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 705 (1979)); *see also Weinberger v. Romero-Barcelo,* 456 U.S. 305, 313 (1982) (same). Under the PLRA, "all of the court's traditional equitable powers not expressly revoked are retained." *Gilmore*, 220 F.3d at 1000. There is no statutory command in the PLRA – clear or otherwise – displacing the Court's equitable power to

Pltffs' Opp. To Defs' Mot. To Replace Receiver with Spec. Master & Terminate Receiver's Construction Plan, *Plata v. Schwarzenegger*, 01-1351 T.E.H.

14

1   appoint a receiver.  Accordingly, the Court retains such authority and defendants'

2   arguments to the contrary should be rejected.

3       Defendants' argument that this court lacks authority to appoint a receiver should

4   also be rejected for two additional reasons.  First, this Court's October 3, 2005 Findings,

5   from which defendants did not appeal, are law of the case.  "Under the 'law of the case'

6   doctrine, 'a court is generally precluded from reconsidering an issue that has already been

7   decided by the same court, or a higher court in the identical case.'"  *United States v.*

8   *Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (quoting *Thomas v. Bible,* 983 F.2d 152,

9   154 (9th Cir. 1993)).  Defendants do not provide any grounds for departing from the law

10  of the case in this instance, where there has been no change in the law or the facts, and the

11  Court's Findings and Conclusions are not clearly erroneous.

12      Second, because defendants expressly argued to this Court that the Court has the

13  authority to appoint a receiver (Def's Response to OSC, June 20, 2005 at 2 (Docket No.

14  328)), and the Court implicitly accepted and relied upon that concession in finding that it

15  had authority to appoint a receiver, defendants are judicially estopped from arguing to the

16  contrary now.  *Hamilton v. State Farm Fire & Casualty Co.*, 270 F.3d 778, 782-83 (9th

17  Cir. 2001).  Application of the doctrine of judicial estoppel is necessary here to "'protect

18  against a litigant playing fast and loose with the courts'" and to preserve "the orderly

19  administration of justice and regard for the dignity of judicial proceedings'" *Id.* at 782

20  (quoting *Russel v. Rolfs,* 893 F.2d 1033, 1037 (9th Cir. 1990)).

21      **B.  The Court made all required findings**

22      Defendants also argue that in establishing the Receivership the Court "ignored" the

23  "PLRA's limits on the court's remedial authority," specifically the requirement to make

24  particularized findings before ordering prospective relief.  Def. Mot. at 9-10.  Defendants

25  are simply wrong.  This Court's October 3, 2005 Findings of Fact and Conclusions of

26  Law Re Appointment of Receiver ("Findings") made all appropriate and required

27  findings to support the establishment of the Receivership.

28

Pltffs' Opp. To Defs' Mot. To Replace Receiver with Spec. Master & Terminate Receiver's
Construction Plan, *Plata v. Schwarzenegger*, 01-1351 T.E.H.

The PLRA requires:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. §3626(a)(1)(A).

After detailed analysis of the facts and applicable law, this Court found and concluded "that the establishment of a Receivership, along with those actions necessary to effectuate its establishment, are narrowly drawn to remedy the constitutional violations at issue, extend no further than necessary to correct a current and ongoing violation of a federal right, and are the least intrusive means necessary to correct these violations." 10/3/05 Findings at 49. The Court further concluded that the relief would not have an adverse impact on public safety or the operation of the criminal justice system. 10/3/05 Findings at 49-50.

The Findings fully support these conclusions. The Court found that prison conditions pose a grave and immediate threat of harm to inmates (10/3/05 Findings at 35-36), that a receivership is the least intrusive means for remedying the constitutional violations (*Id.* at 36-37), that the Court's efforts to use less intrusive means had failed, and despite multiple efforts by the Court to obtain compliance, "defendants have been unwilling or incapable of breaking out of a deeply entrenched bureaucratic mind-set, and have refused or been unable to take the steps necessary to prevent further needless loss of life and suffering among its wards." (*Id.* at 37-39). The findings described in detail the State's utter inability to remedy the constitutional violations, even in the face of court orders to do so. The Court considered alternative remedies, including contempt, appointment of a special master, sequestration, and closing institutions, but found that those remedies would either be ineffective or more intrusive than appointment of a

Pltffs' Opp. To Defs' Mot. To Replace Receiver with Spec. Master & Terminate Receiver's Construction Plan, *Plata v. Schwarzenegger*, 01-1351 T.E.H.

1   receiver.  *Id.* at 40-42.  The Court specifically found that "given defendants' professed

2   inability to take adequate measures to cure the constitutional violations even with the

3   extraordinary guidance of the Court Experts and the mandates of the Court's orders,

4   [appointing a special master] would be an exercise in futility."  *Id.* at 41.  It further found

5   that "continued insistence on defendants' compliance with Court orders would lead to

6   nothing but further delay, as well as further needless death and morbidity" (*id.* at 43) and

7   that defendants' "historical lack of leadership, planning, and vision" is to blame for the

8   crisis (*id.*).  The Court noted defendants' lack of will to correct the problems, and that

9   defendants' failures had caused a "huge waste of the taxpayer's resources."  *Id.* at 45-46.

10  The Court further found that, while there would be no "quick" fix, progress would be

11  made under a receiver that could not be made without it.  *Id.* at 47.

12        Defendants do not challenge the accuracy of any of the Court's findings.  To the

13  contrary, defendants have explicitly conceded that the Receivership is the *"least intrusive*

14  *means to continue to improve medical . . .care."*  Def's Trial Brief at 27, Nov. 3, 2008

15  (Docket No. 1759) (emphasis added).

16        In light of the Court's thorough and complete Findings, and defendants'

17  concession that the Receivership is the least intrusive remedy, defendants' vague

18  contention that the Court ignored the PLRA or failed to make the required findings

19  should be rejected.

20        In short, defendants have failed to meet their initial burden pursuant to Rule

21  60(b)(5) of demonstrating that the court's order appointing the receiver "has been

22  satisfied, released or discharged" or that "applying it prospectively is no longer

23  equitable."  *Gilmore,* 220 F.3d at 1007.  The motion should be denied.

24        **C.    No evidentiary hearing is required**

25        Defendants do not contest the current and ongoing constitutional violations, nor do

26  they argue that any of the facts found to be true at the time of the imposition of the

27

28
    Pltffs' Opp. To Defs' Mot. To Replace Receiver with Spec. Master & Terminate Receiver's
    Construction Plan, *Plata v. Schwarzenegger,* 01-1351 T.E.H.

Receivership have changed.[3]  Accordingly, defendants do not seek an evidentiary hearing, and none is necessary.

## II.   Alleged flaws in the Receiver's construction plan do not provide grounds for terminating the Receivership or the Receiver's plan.

Defendants' next argument is that the Receivership and the Receiver's plans should be terminated because the building plans are excessive and beyond the powers of the Receiver or the Court under the PLRA.  These arguments should be rejected for three reasons: first, this Court does not have jurisdiction to consider the legal issues underlying this contention because defendants' appeal raising these same matters is now pending in the Ninth Circuit; second, the contentions about excesses in the construction plan are premature, because the Receiver's plans have not been finalized, and the Receiver is currently revising the plans and seeking input from the State and others to define the appropriate scope of construction; and third, even if the Receiver's plans are excessive, such excess is not grounds for terminating the Receivership.

### A.   This Court does not have jurisdiction to resolve this matter because the issue is before the Ninth Circuit

The Court cannot resolve defendants' contention that the Receiver had no authority to engage in construction, because defendants have filed an appeal, now pending in the Ninth Circuit, that raises identical issues to those presented in this motion.

"When a judgment is appealed, jurisdiction over the case passes to the appellate court.  The filing of a notice of appeal divests the district court of jurisdiction over the matters appealed." *McClatchy Newspapers v. Central Valley Typographical Union No. 46*, 686 F.2d 731, 734 (9th Cir. 1982); *see also, e.g.*, *Prudential Real Estate Affiliates,*

---

3.   Defendants introduced no evidence bearing on any of the matters relevant to the establishment of a receivership.  (The factual evidence they do submit relates to the Receiver's building plans, and alleged lack of transparency, which we address below).  Moreover, the factual record showing current and ongoing unconstitutional conditions in the prisons was developed in the Receiver's reports, and during the course of a four-week bench trial conducted in the three judge court proceedings just two months ago.

Pltffs' Opp. To Defs' Mot. To Replace Receiver with Spec. Master & Terminate Receiver's Construction Plan, *Plata v. Schwarzenegger*, 01-1351 T.E.H.

*Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 870 (9th Cir. 2000) (district court "lack[s] jurisdiction to dissolve [an] injunction while an appeal of the order granting the injunction [i]s pending.")  This rule is judge-made; its purpose is to promote judicial economy and avoid the confusion that would ensue from having the same issues before two courts simultaneously. *Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 956 (9th Cir. 1983). Defendants' Motion to Replace the Receiver with a Special Master and Terminate the Receiver's Construction Plan does just that.

Defendants contend in the instant motion that the Receiver has exercised his authority "in direct conflict with the PLRA's limitations" by developing construction plans (Def. Mot. at 11, 14-17), that "The PLRA prohibits courts from ordering construction of prisons" and the Receiver exceeded his authority in requesting the Court to order construction (*Id.* at 14), and that "the Court has not make the findings required to support ordering the Receiver's construction plan." (*Id.* at 17).

These are the same arguments defendants raise in their appeal now pending in the Ninth Circuit.  Defendants appealed the Court's "Second Order for Further Proceedings re: Receiver's Motion for Contempt . . . and all other orders the gave rise to that order." 10/31/08 Defs' Notice of Appeal at 1 (Docket No. 1744).  The principal issues identified in defendants' Notice of Appeal included "[w]hether the Prison Litigation Reform Act (PLRA) allows a court-appointed Receiver to construct prisons absent state consent" and "[w]hether the Court validly ordered that California pay the court-appointed Receiver $250 million dollars absent findings that his construction plan met the PLRA's requirements."  *Id.* at Civil Docket Statement.

Consistent with their Notice of Appeal, defendants in their Ninth Circuit briefs explicitly argue that the Receiver's construction plans violate the PLRA, both because in their view federal courts cannot order prison construction and because, even if construction could be ordered, the Court did not make findings required by the PLRA. Brief for Appellants, December 8, 2008 (Ninth Circuit Case 08-17412, Docket No.

Pltffs' Opp. To Defs' Mot. To Replace Receiver with Spec. Master & Terminate Receiver's Construction Plan, *Plata v. Schwarzenegger*, 01-1351 T.E.H.

19

6732126) at 21-33, see also Reply Brief for Appellants, January 21, 2009  (Ninth Circuit Case 08-17412, Docket No. 6777812) at 19-28 (raising exact same arguments).[4]

Defendants' present motion presents the precise issues regarding those plans that defendants make in their appeal.  See Def. Mot. at 14-19.  Given the exact congruency of issues, defendants' filing of their notice of appeal has divested the district court of its jurisdiction to consider those matters.  Such a divestment plainly precludes the district court from hearing defendants' Motion.[5]

---

4.    Plaintiffs recognize that the Receiver has argued that the Ninth Circuit has no jurisdiction over defendants' appeal, and that if the Ninth Circuit agrees with the Receiver and dismisses the appeal then this Court would have jurisdiction over defendants' present motion.  However, defendants argue that the Ninth Circuit does have jurisdiction over their appeal, and the Ninth Circuit has issued a stay of this Court's "Second Order for Further Proceeding" and held oral argument on the merits of the case on February 12, 2009.  Thus, this does not appear to be a case in which this Court clearly retains jurisdiction despite the filing of a notice of appeal.

5.    Federal Rule of Civil Procedure 62(c) does not require a different result.  Rule 62(c) provides: "While an appeal is pending from an interlocutory or final judgment that grants, dissolves, or denyies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."

"Rule 62(c) 'is merely expressive of a power inherent in the court *to preserve the status quo* where, in its sound discretion, the court deems the circumstances so justify.'" *McClatchy Newspapers*, 686 F.2d at 734 (quoting 7 J. Moore, Moore's Federal Practice ¶ 62.05, at 62-19 to 20 (2d ed. 1979)) (emphasis added).  That is, "Rule 62(c) codifies the 'long established' and *narrowly limited* right of a trial court 'to make orders appropriate to preserve the status quo while the case is pending in (an) appellate court.'" *Id.* (quoting *United States v. El-O-Pathic Pharmacy*, 192 F.2d 62, 79 (9th Cir. 1951)) (emphasis added).  *See also Natural Resources Defense Council, Inc. v Southwest Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001) (Rule 62(c) "grants the district court *no broader power* than it has always inherently possessed to preserve the status quo during the pendency of an appeal[.]") (emphasis added); *Prudential Real Estate*, 204 F.3d at 880 ("A district court lacks jurisdiction to modify an injunction once it has been appealed except to maintain the status quo among the parties.").

Through their Motion to Replace the Receiver with a Special Master and Terminate the Receiver's Construction Plan, defendants do not seek to "preserve the

Pltffs' Opp. To Defs' Mot. To Replace Receiver with Spec. Master & Terminate Receiver's Construction Plan, *Plata v. Schwarzenegger*, 01-1351 T.E.H.

Even if this Court did retain jurisdiction to decide the issues, prudential concerns counsel against doing so at this juncture.  The Ninth Circuit may well decide some or all of the issues defendants raise, or may remand to this Court with specific instructions or questions to resolve.  In light of this uncertainty, the Court should refrain from resolving the matter now.

Accordingly, this Court should reject defendants' argument that the Receivership and the Receiver's plans should be terminated because they exceed the authority of the PLRA.  If necessary, the Court can resolve this matter once the Ninth Circuit rules on the pending appeal.

### B.    Arguments about excesses in the Receiver's plan are premature because there is no final plan

Defendants also make factual contentions about the Receiver's construction plan. They contend that the Receiver has been insufficiently transparent in developing the plan (Def. Mot. at 11), and that the plan itself  calls for a "state-of-the-art" prison health care system that is not a minimally-intrusive remedy (Def. Mot. at 11-13, 18-19).[6]

status quo," but instead radically change it.  The status quo is defined by the Receivership and the TurnAround Plan of Action, including that part involving construction plans. Defendants' present motion seeks to drastically change the status quo by completely eliminating all construction plans.  To do so, the Court would have to consider and rule on defendants' arguments that the plan violates the PLRA.  Such an inquiry is precisely what the Ninth Circuit proscribed the Court from doing when it held that Rule 62(c) "does not restore jurisdiction to the district court to adjudicate anew the merits of the case after either party has invoked its right of appeal and jurisdiction has passed to an appellate court. . . .[The district court] 'may not finally adjudicate substantial rights directly involved in the appeal.'" *McClatchy Newspapers*, 686 F.2d at 734-35 (quoting *Newton v. Consolidated Gas Co.*, 258 U.S. 165, 177 (1922)).

6.    We note that this argument directly contradicts defendants' stated positions in this case.  Until very recently defendants understood and approved the very plans they now attack, and never previously objected when the Receiver sough earlier approvals necessary to move forward with the building plans.  The very items the defendants allege as examples of the Receiver's excesses (bingo boards, therapeutic spaces), are sections of the plan proposed by defendants, not the Receiver.

Pltffs' Opp. To Defs' Mot. To Replace Receiver with Spec. Master & Terminate Receiver's Construction Plan, *Plata v. Schwarzenegger*, 01-1351 T.E.H.

21

These contentions are premature for two reasons. First, as discussed above, the question whether the Receiver has the authority to engage in construction at all is currently pending before the Ninth Circuit. The resolution of that matter may well dispose of the underlying disputes about transparency and the scope of the plan. Accordingly, the Court should deny the motion without prejudice to re-filing after the Ninth Circuit has ruled.

Second, the arguments about transparency and the scope of the construction plan are premature because in fact the Receiver's construction plan has not been finalized, and the Receiver is currently requesting input from the parties as to the scope and content of the construction plan.

On February 6, 2009, the Receiver filed the "Receiver's Report on Options For Long-Term Care Bed Construction," in which he outlines three possible modifications to the building project: 1) building only 5,000 beds, which the Receiver finds to be necessary for *Plata* class members; 2) building 7,500 beds for 5,000 *Plata* class members, plus 2,500 *Coleman* class members; 3) building 10,000 beds for both the *Plata* and *Coleman* class members. Docket No. 2065 at 12-13. The Receiver specifically recommended "that the parties be provided an opportunity to respond to the options report and that State defendants inform the court concerning other construction options which they believe may be appropriate." *Id.* at 15.

Since the parties will have an opportunity to review plans, give further input, and seek judicial resolution before any plans are finalized, this Court should reject defendants' argument that the Receiver should be replaced with a Special Master and the Receiver's plan terminated due to transparency concerns or the scope of the construction plan.

**C.** **If defendants believe the Receiver's plan is excessive, their remedy is to file objections to the plan**

Finally, even if the Receiver's plans are excessive or the Receiver has been

Pltffs' Opp. To Defs' Mot. To Replace Receiver with Spec. Master & Terminate Receiver's Construction Plan, *Plata v. Schwarzenegger*, 01-1351 T.E.H.

22

insufficiently transparent, this does not provide grounds for terminating the Receivership, but only for modifying the plans or requiring more transparency. Plaintiffs demonstrated in the first instance "that the establishment of a Receivership, along with those actions necessary to effectuate its establishment, are narrowly drawn to remedy the constitutional violations at issue, extend no further than necessary to correct a current and ongoing violation of a federal right, and are the least intrusive means necessary to correct these violations." 10/3/05 Findings at 49. Defendants did not then and do not now contest this finding. Under the PLRA, "any relief that was narrowly tailored in the first instance, and extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right, is not terminable." *Gilmore,* 220 F.3d at 1000. Instead, a "district court is bound to maintain or modify any form of relief necessary to correct a current and ongoing violation of a federal right, so long as that relief is limited to enforcing the constitutional minimum." *Id.*

Defendants do not contend that the alleged problems with transparency or the excesses in the Receiver's building plans are problems inherent to the Receivership itself, but only with the current Receiver's actions and plans. They simply seek greater transparency, and to reduce the scope of the Receiver's plans.[7] That type of dispute does not warrant terminating the Receivership, although it might warrant terminating or modifying the Receiver's plans, or appointment of a different receiver.

Once the Ninth Circuit has resolved the appeal concerning the Receiver's authority to build and the Court's authority to order construction, this Court should hold a full hearing to adjudicate the appropriate scope of the construction plans and defendants'

---

[7] We note, however, that the Receiver has long had a process of informal consultation with the parties regarding his plans. *See, e.g.,* Receiver's Report on Options for Long-Term Care Bed Construction at 5-8 (Docket No. 2065). Moreover, the parties have always had the opportunity to file objections to the Receiver's plans with the Court. Yet another opportunity for comment has been provided by the Receiver's Report on Options, in which he filed a proposal with several variations of a building plan, and specifically sought a forum for the parties to comment on those plans and to participate in the development of an appropriate plan. *Id.*

Pltffs' Opp. To Defs' Mot. To Replace Receiver with Spec. Master & Terminate Receiver's Construction Plan, *Plata v. Schwarzenegger*, 01-1351 T.E.H.

23

ancillary concerns.  Such hearing is not necessary to resolve the instant motion (because the Court lacks jurisdiction, and the matter is premature), but will be appropriate at a later date given the Receiver's request for input from the parties and defendants' stated objections to the existing construction plans.

**D.    Disputes about the Receiver's plans and actions should be resolved by the Court**

Because there are no grounds to terminate the Receivership, defendants' proposed transition-period "structured review-and-approval process" (see Exhibit A to Defendants' Motion) is premature.  Nevertheless, plaintiffs agree that all parties, including defendants, should have an opportunity to object to the Receiver's actions, and if the objection is not resolved informally, the party should file the objection with the Court and the Court should resolve the matter.

Plaintiffs agree with defendants' contention that the Receiver should provide the parties with information sufficient to evaluate his proposals.  Disputes regarding access to information should be resolved in the same manner as substantive disputes, by first attempting informal resolution with the Receiver, and then, if necessary, filing objection with the Court.

**CONCLUSION**

For the foregoing reasons, defendants' Motion to Replace the Receiver with a Special Master and Terminate the Receiver's Construction Plan should be denied.

Dated: February 23, 2009

Respectfully submitted ,

PRISON LAW OFFICE

/s/ *Rebekah Evenson*
Rebekah Evenson
Attorney for Plaintiffs

Pltffs' Opp. To Defs' Mot. To Replace Receiver with Spec. Master & Terminate Receiver's Construction Plan, *Plata v. Schwarzenegger*, 01-1351 T.E.H.