1  PRISON LAW OFFICE
   DONALD SPECTER #83925
2  STEVEN FAMA #99641
   ALISON HARDY #135966
3  REBEKAH EVENSON #207825
   KELLY KNAPP #252013
4  1917 Fifth Street
   Berkeley, CA 94710
5  Telephone: (510) 280-2621
   Facsimile: (510) 280-2704

   BINGHAM McCUTCHEN
   WARREN E. GEORGE #53588
   Three Embarcadero Center
   San Francisco, CA 94111
   Telephone: (415) 393-2000
   Facsimile: (415) 393-2286

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARCIANO PLATA, et al.,

Plaintiffs

v.

ARNOLD SCHWARZENEGGER, et al.,

Defendants.

Case Nos. C01-1351 T.E.H., S 90-0520 LKK-JFM

**PLAINTIFFS' BRIEF IN RESPONSE TO MOTION FOR LEAVE TO FILE COMPLAINT AGAINST RECEIVERS FOR DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED PURSUANT TO 42 U.S.C. § 1983**

Date: August 17th, 2009
Time: 10:00 a.m.
Judge: Hon. Thelton E. Henderson

**INTRODUCTION**

Plaintiffs submit this separate memorandum for two reasons: first, to point out the legal principle, not directly discussed in the briefs of the parties, that the *Plata* Receiver is not absolutely immune from tort suits arising out of improper medical care; and second, to establish that any claim for class-wide injunctive relief must be brought pursuant to the *Plata* Stipulation for Injunctive Relief. Plaintiffs do not comment on the relative merits of Ms. Van Horn's claims.

It is a basic legal principle, enshrined in the caselaw, that receivers do not have blanket immunity from suit for negligence or intentional torts. *See infra* at Argument I. Accordingly, a properly-pled case against this Court's Receiver should not be barred on immunity grounds merely because it alleges a tort. As we explain below, a claim for deliberate indifference to a serious medical need falls squarely between a claim of negligence and a claim of an intentional tort, and is therefore not a claim for which receivers are absolutely immune.

Granting the Receiver sweeping judicial immunity against any tort suit arising from improper medical care in the prisons would run counter to the caselaw, to the public policy encouraging government accountability, and to the very purpose of the underlying *Plata* litigation. Plaintiffs sought appointment of a receiver in the *Plata* case because the medical care in California prisons was in a state of crisis, causing prisoners to suffer and die from inadequate care, and the CDCR was unable to take the necessary actions to address the crisis. The Order Appointing Receiver suspended the CDCR Secretary's power to run medical care in the prisons and vested this power in the Receiver. As a result, many plaintiffs with money damages claims that would ordinarily be brought against the Secretary (for example, a claim of failure to adequately train or supervise medical staff) may not be able to sue the Secretary. If the Receiver, too, can escape all liability for such claims, these prisoners could effectively be left without a remedy for such a claim. The appointment of a Receiver in *Plata* to *improve* medical care should not

1

Pltffs' Brief in Response to Motion for Leave to File Complaint Against Receivers, *Plata v. Schwarzenegger*, C01-1351 T.E.H., S-90-0520 LKK-JFM

be used as a means for foreclosing relief that would otherwise be available to individual class members who have suffered from violations of their constitutional rights. Nothing in this Court's orders in *Plata* require that result, and it would be inequitable to do so.

On the other hand, the Court's orders in the *Plata* case do govern systemwide injunctive relief. The Stipulation for Injunctive Relief created a dispute resolution process to address concerns about the adoption and implementation of medical policies and procedures in the CDCR. Although class members may bring separate actions for money damages or for injunctive relief applying only to them, class members seeking system-wide injunctive relief must use the dispute resolution procedures in the *Plata* Stipulation for Injunctive relief, and seek relief from this Court if the process fails.

**ARGUMENT**

**I.    A RECEIVER DOES NOT ENJOY ABSOLUTE IMMUNITY SIMPLY BECAUSE HE IS APPOINTED BY A FEDERAL JUDGE, AND HE CAN BE HELD LIABLE FOR VIOLATIONS OF THE LAW**

Receivers are not immune from claims of negligence or intentional torts.[1] Judicial immunity is extended to officials other than judges only when "their judgments are 'functional[ly] comparab[le]' to those of judges-that is, because they, too, exercise a discretionary judgment as part of their function." *Antoine v. Byers and Anderson, Inc.*, 508 U.S. 429, 436 (1993), *citing Imbler v. Pachtman,* 424 U.S. 409, 423, n. 20 (1976). The doctrine of judicial immunity exists to create a safe haven for judges and their officers to exercise their authority and act upon their convictions without fear of liability

---

[1] In *Plata v. Schwarzenegger*, 2008 WL 2558000, *4 ( (N.D. Cal 2008), this Court ruled that the Receiver had quasi-judicial immunity in a contract dispute between Medical Development International ("MDI") and the Receiver. That case is currently on appeal. Even if this court's decision in MDI is affirmed, this case presents markedly different issues regarding immunity. As explained in this brief, Ms. Van Horn's case raises questions related to deliberate or negligent wrong-doing, not a contract dispute as was at issue in the MDI case. Thus, although the current rule in the *Plata* case is that the Receiver has quasi-judicial immunity for his decision whether to terminate a contract for medical services, the Court has the discretion to reach a different outcome in determining whether the Receiver should be immune from liability in the death of Ms. Van Horn's newborn son or for other claims arising from medical malpractice.

for erroneous decisions. *Stump v. Sparkman*, 435 U.S. 349, 355 (1978). The rationale behind the doctrine is that the threat of liability would be counterproductive to an effective judiciary system if it inhibited judicial officers from making "impartial or imaginative" decisions that "often have adverse effects on other persons." *Forrester v. White,* 484 U.S. 219, 223 (1988). Thus, in order to competently complete their duties, judicial officers must be protected from suffering personal consequences when performing judicial functions. *Forrester*, 484 U.S. at 226-227.

However, courts have recognized exceptions to the doctrine of judicial immunity, and judicial officers are not free to act with impunity. Thus, for example, a judicial officer will be subject to liability when he or she has acted in the "clear absence of all jurisdiction." *Stump*, 435 U.S. at 356-357. A receiver will also be personally liable if he or she intentionally breaches a duty or conducts his or her duties in a negligent manner. *See, e.g., New Alaska Dev. Corp. v. Guetschow,* 869 F.2d 1298, 1305 (9th Cir. 1989)(receiver was not absolutely immune from allegations of theft or slander); *In re Sundance Corp. Inc.,* 149 B.R. 641, 654 (E.D.Wash. 1993)(receiver can be held liable for careless or negligent conduct or for acts based upon bad faith or fraud); *See also In re Cochise College Park Inc.,* 703 F.2d 1339, 1357 (9th Cir. 1983)(bankruptcy trustee may be liable for allegedly fraudulent and negligent misrepresentations); *Bennett v. Williams*, 892 F.2d 822, 823 (9th Cir. 1989)(broad immunity afforded to trustees does not preclude actions for intentional or negligent conduct).

Since receivers are not immune from tort claims, they should not be immune from a properly pleaded claim of deliberate indifference. To maintain a claim of deliberate indifference, a plaintiff must show that there has been a purposeful act or failure to respond to pain or a medical need, and that the indifference caused the harm. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Thus, deliberate indifference falls squarely between an intentional tort (in which a plaintiff must show the actor caused a harm and intended to cause that harm; *See AMJUR TORTS* § 15 (2009)) and negligence (in which a claim may be predicated on the "failure to observe a standard of law prescribed by law,

3

without a conscious design to do wrong;" *See AMJUR TORTS* § 16 (2009)). Since there is no immunity from a claim for an intentional tort or negligence, it would make little sense to grant immunity in a properly pled claim alleging deliberate indifference.

A sweeping grant of immunity from deliberate indifference claims would also run contrary to established public policy. A receiver's liability for intentional and negligent torts is "premised on the receiver's personal wrongdoing." *In re Sundance*, 149 B.R. at 651. The same is true for a receiver's liability for deliberate indifference. Generally, exposure to liability for government officials "encourages these officials to carry out their duties in a lawful and appropriate manner, and to pay their victims when they do not." *Forrester,* 484 U.S. at 223. Removing any possibility of liability through a grant of absolute immunity would eliminate an important means of accountability and more generally would permit receivers to act with impunity.

Granting sweeping judicial immunity might also leave *Plata* class members with an injury without a remedy. The Receiver's decisions about medical care affect the well-being of thousands of prisoners. We do not suggest that the Receiver is causing harm. But should it come to pass that the Receiver's actions, or deliberate failure to act, causes injury, the injured plaintiff should not be deprived of a remedy by virtue of this court-imposed receivership.

The Receiver warns of a "tsunami of litigation" if this case is allowed to proceed. Receivers' Opposition, July 27, 2009 at 2 (Docket No. 2184). He also argues he will be unable to perform his duties if he has "to worry that every action or decision on behalf of the court could lead to litigation." *Id.* at 12. But this is mere hyperbole. The Receivership has been in place for four years, and this is the first time this question has even been raised.

Plaintiffs are acutely aware that reforming the CDCR medical system is a huge undertaking that requires bold and creative ideas, many of which must be tested through a process of trial and error. The immunity doctrine protects the Receiver from liability for effectuating these ideas, so long as he does not negligently or intentionally harm

4

Pltffs' Brief in Response to Motion for Leave to File Complaint Against Receivers, *Plata v. Schwarzenegger*, C01-1351 T.E.H., S-90-0520 LKK-JFM

1  prisoners. While Plaintiffs agree that the Receiver should not be inhibited by the fear of
2  making mistakes, he should also not be entirely unaccountable. The law of immunity
3  balances these competing concerns by making him immune for his diligent and good faith
4  decisions, while imposing liability for intentional torts and negligence.

## II. THE PLATA STIPULATED AGREEMENT PRECLUDES AN INJUNCTION FOR SYSTEMIC RELIEF IN THIS ACTION

The *Plata* Stipulation for Injunctive Relief ("Stipulation") protects the right of individual prisoners to seek damages and injunctive relief solely on their own behalf. Stipulation, June 13, 2002, ¶ 29 (Docket No. 68). *See also Tillis v. LaMarque*, 2006 WL 644876, *9 (N.D. Cal. 2006) (prisoner's request for an injunction to transfer him to another prison was not barred by the *Plata* stipulation); *Meyer v. Schwarzenegger,* 2008 WL 2223253, *14 (E.D. Cal. 2008) (*Plata* stipulation does not preclude money damages suit against defendants sued individually). However, class members are barred by the terms of the Stipulation from filing a separate action seeking systemic injunctive relief regarding the adoption and implementation of medical policies and procedures. *Meyer,* 2008 WL 2223253 at *14.

The *Plata* lawsuit was brought on behalf of "California state prisoners who have serious medical needs." Stipulation at ¶ 1. Plaintiffs alleged that class members were not receiving constitutionally adequate medical care as required by the Eighth Amendment of the U.S. Constitution. Under the terms of the Stipulation, the CDCR must implement policies and procedures designed to meet or exceed the minimum level of medical care necessary to fulfill defendants' constitutional obligation to the class. Stipulation at ¶¶ 4-6.

The Stipulation requires class members to utilize a dispute resolution process outlined in the agreement when they contend the policies and procedures do not provide a sufficient level of medical care to meet the minimum constitutional requirements. *Id* at ¶¶ 26-28. If class members are not able to resolve the issue through the dispute resolution process in the Stipulation, the parties may seek relief from this Court and this Court may

5

1  grant injunctive relief. *Id.* at ¶ 28.  In addition, the Stipulation states that the CDCR may
2  use the language in the Stipulation "to assert issue preclusion and res judicata in other
3  litigation seeking class or systemic relief." *Id* at  ¶ 29.  The Stipulation was modified on
4  September 6, 2007, but the dispute resolution process and the bar on systemic relief
5  sought through individual actions remains intact and continues to apply.  Order,
6  September 6, 2007 (Docket No. 826).  Thus, class members are bound by the terms of the
7  Stipulation and any requests for systemic injunctive relief brought by class members
8  independently of the Stipulation must be denied.

## CONCLUSION

10      The appointment of a receiver should not deny individual prisoners the ability to
11  seek redress for egregious conduct they suffered while under the medical care of the
12  CDCR.  Plaintiffs respectfully request this Court to consider the implications of granting
13  broad sweeping immunity to the Receiver when ruling in this case.

15      Dated: July 31, 2009

16                                    Respectfully submitted,

17                                    PRISON LAW OFFICE

18                                  /s/ *Kelly Knapp*
                                   Kelly Knapp
19                                  Attorney for Plaintiffs

Pltffs' Brief in Response to Motion for Leave to File Complaint Against Receivers, *Plata v. Schwarzenegger*, C01-1351 T.E.H., S-90-0520 LKK-JFM