Mark Bowersock   K28189
CSP LAC Al-242
P.O. BOX 8457
Lancaster, CA. 93539-8457

In Propria Persona



## IN THE UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MARCIANO PLATA, et al,** | ) CASE NO. C-01-1351 TEH |
| | ) |
| Plaintiffs | ) MOTION REQUESTING RELEASE OF |
| | ) PETITIONER BECAUSE OF CRITICAL |
| **v.** | ) MEDICAL CARE DENIAL WHICH HAS |
| | ) ENDANGERED PETITIONERS LIFE |
| ARNOLD SCHWARZENEGGER  et al, | ) DUE TO OVERCROWDING GOOD CAUSE |
| | ) SHOWING |
| Defendants | ) |
| | ) |
| | ) |

TO THE HONORABLE THELTON E. HENDERSON, UNITED STATES DISTRICT
COURT JUDGE, NORTHERN DISTRICT OF CALIFORNIA:



GOOD CAUSE SHOWING:

COME NOW, Mark M. Bowersock, (hereinafter Petitioner) who seeks

his release due to the overcrowding which has caused the ongoing

Medical Neglect which has caused Petitioner irreperable harm, pain

and suffering with no end in sight.

On February 5, 2004, Petitioner was injured by CSP-LAC Custody

Staff when custody refused to honor Petitioners Medical Chrono that

handcuffs Petitioner in front of him, instead of behind his back

(see Exhibit A).  Petitioner was deliberately handcuffed behind his

back and Petitioner suffered the following injuries.

1. Torn Rotator cuff of Petitioners Left Shoulder (See Exhibit B).

1.

2. Dislocation of Petitioners Sterno-clavicular joint (Left Side-See Exhibit B). CSP LAC Dr. Bzoskie made it clear to the Petitioner that their was something wrong with the sternoclavicular joint, but the outside specialist Doctor stated that the surgery was "TOO DANGEROUS" and he did not want to do it. This injury has not been fixed, nor are their any plans to fix this injury.

3. Multiple Neck Injuries which has caused Petitioner both severe pain and disabled him in such a way which endangers Petitioners safety in Prison. (See Exhibit C).

It is now over 5½ years later and Petitioner is in severe �ˑ daily pain and Petitioner has made every effort to obtain a reasonable "COMMUNITY BASED STANDARD" of Healthcare while in Prison. Due to Petitioners severe neck injuries, Petitioner has been put in an unreasonable condition which could result in Petitioners death and/or could cause Petitioner to be paralyzed if Petitioner was involved in a situation where Petitioner had to defend himself.

False Medical reports have been generated to make it look like Petitioner is no longer injured. The primary reason for these false reports is to cover-up Civil Case CV 05-08197R (CW) where both Custody and Medical Staff are defendants. (See Exhibit C).

Petitioner spent 2 nights on a 6" Foam mattress in the Central Infirmary, which made a significant improvement in Petitioners well-being, which resulted in Doctors and Nurse Practitioners writing Accomodation Chronos for Petitioner, only to have them all denied by Chief Medical Officer (CMO) Dr. Paulette Finander and the Chrono

2.

Committee. The 6" Foam mattress was an non-intrusive remedy for a critical Mobility Condition which is a safety/security concern as well, not to mention the 6" Foam mattress was free/in stock here at CSP LAC, and approved for this Institution. Instead, Petitioner was offered potentially deadly, debilitating remedies including Steroid Injections, Elavil (Psych Meds), Naxopren, and Motrin (Ibuprofen) which may cause possible cardiovascular and gastrointestinal risks including; **Strokes, Heart Attacks, and Bleeding of the digestive tract.** See Exhibit D).

Petitioner was scheduled for a Pre-Surgery consultation with the Neuro-Specialist Doctor for Petitioners Neck Surgery, and again, CMO Dr. Paulette Finander CANCELLED PETITIONERS APPOINTMENT stating "NO FURTHER TELEMED NEUROSURGERY APPOINTMENT NEEDED AT THIS TIME!" That was on April 6, 2009, and Petitioner has not been seen, or been allowed to see any Neurospecialist since then (See Exhibit E).

This has caused Petitioner to suffer greatly, and Petitioner is without remedy to receive Healthcare.

Petitioner suffers from the early stages of Alzheimers, with Petitioners short term memory failing miserably. Petitioner has sought treatment, only to be denied and told that Petitioner would have to pay for his own Medical Care if Petitioner wanted a Second Opinion. Petitioner never received available testing for a first opinion/diagnosis. Their is gene testing that accurately diagnoses Alzheimers, then their is medication available that slows the condition dramatically. Petitioner would be actively seeking this Medical Care when released, as Petitioners Grandfather died from Alzheimers, and Petitioners Mother is in a Senior Home

3.

because of a substantial Alzheimers/Dementia condition. Petitioner is being denied Medical care for this condition. (See Exhibit J).

In regards to Petitioners major injuries discussed earlier, Petitioner only received Rotator cuff surgery, and Petitioners shoulder/arm works nothing like it used to before the injury occured.

Petitioner received chest surgery for "Cancer concerns", and Petitioner became immediately concerned with INFECTION as the surgery area became red, warm to the touch and it was obviously infected. Petitioner was called for a Doctors Appointment and discussed the Infection with doctor Olukanmi. Doctor Olukanmi responded with "Its not infected, it looks great and I won't clean it!" **THE VERY NEXT DAY, THE WOUND BURST OPEN FROM INFECTION, AND PETITIONER WAS IN THE EMERGENCY ROOM BECAUSE OF DR. OLUKANMI'S NEGLIGENCE.** When I filed a Medical Appeal 602 as a Staff Complaint, CMO Finander allowed Dr. Olukanmi to hear his own Staff Complaint that was asking for him to be fired (See Exhibit F).

Never has the Medical Care been worse at California State Prison-Los angeles County, or in the CDCR, and it is the over-crowding that is causing Medical Administrators to operate in a reckless manner to save money, at the cost of Inmates lives, and Petitioner has become the target for moneysaving Medical cuts, as Petitioners needed surgeries are expensive. Medical Staff Complaints are being covered up by inter-departmental paperwork telling Staff to respond with particular answers/language to make it so Staff Complaints can NOT be processed (See Exhibit G). This is unlawful and against all CDCR Policy, yet it is allowed to go on daily with Appeals coordinator J. Curiel, CCII Thomas, and Medical Appeals Analyst Galbraithe overseeing the Appeals process.

Petitioner was only able to get this paperwork (Exhibit G) when a responding Staff forgot to remove it from the Appeal when the Appeal was rerouted to them. The responding Staff answered the Appeal then sent it to Petitioner with Exhibit G attached, as well as the reroute slip.

For all of the above reasons, Petitioner prays that this Honorable Court will release him because of the Medical neglect which has been going on for years because of the Overcrowding which has forced Medical Neglect to save money.

When released, Petitioner will reside at;

                    Mark Bowersock
                    2378 Gordon Road
                    Alpena, Michigan 49707

Petitioner has a job, place to live, transportation, and the full support of citizens in the Community of Alpena. The Petitioner will have active contact with Local Law Enforcement, and retired Law Enforcement in Alpena, Michigan and around the State. Petitioner was certified to be a Police Officer in the State of California (See Exhibit H) Petitioners father, the Late Homer Bowersock was a career Law Enforcement Detective/Sgt. for the Michigan State Police in Alpena, Michigan.

Petitioner has a 0% chance of committing any deliberate criminal act. Petitioners current first termer conviction is the subject of an independent UNITED STATES DEPARTMENT OF JUSTICE Investigation, after Los Angeles County District Attorneys Office were granted Court Ordered DNA Testing (crime scene blood), then they hid the results so they could knowingly and deliberately present a false case to the jury, covering up the Petitioners innocence (Exhibit I). Petitioner agrees to provide the Court with monthly update letters.

5.

PETITIONER HEREBY PRAYS FOR RELIEF:

    PETITIONER TO BE RELEASED FROM CUSTODY SO HE CAN GO

    OUT AND GET THE APPROPRIATE MEDICAL CARE SO PETITIONERS

    PAIN AND SUFFERING WILL END.


I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND

CORRECT TO THE BEST OF MMY KNOWLEDGE AND BELIEF UNDER THE LAWS OF

THE STATE OF CALIFORNIA AND THE CONSTITUTION OF THE UNITED STATES

OF AMERICA EXECUTED THIS 18th DAY OF AUGUST, 2009, IN THE CITY OF

LANCASTER, STATE OF CALIFORNIA.

DATE August 18, 2009    SIGNATURE Mark Bowersock

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

IAME and NUMBER

**BOWERSOCK, MARK** K28189 C2-239

CDC.

Due to a medical condition, inmate BOWERSOCK K28189, must be cuffed with his hand in an anterior position while at CSP-LAC.

M. ATTYGALLA, M.D
Staff Physician

R/M JOHNSON, M.D.
Chief Medical Officer

Orig C-file
cc: Health Record
CCI
Housing Officer
Inmate Assignment
Inmate

DATE 10/31/00 CSP-LAC (EM) MEDICAL—PSYCHIATRIC—DENT.

---

NAME and NUMBER

C

**BOWERSOCK, MARK M.** K28189 D2 227

This inmate meets the criteria for Disability Placement Program (DPP). (The patient/inmate is permanently lower extremity mobility impaired. He can walk 100 yards or up a flight of stairs without pause **without aids** A CDC 1845 has been completed and forwarded to the appropriate parties.

A. PATTANACHINDA, M.D.,
Staff Physician

J. FITTER, M.D.,
Chief of Staff

Orig. C-File
cc: Health Record
CCI
Housing Officer
Inmate Assignment
Inmate

DATE 8/28/01 CSP-LAC (es) MEDICAL—PSYCHIATRIC—DENT

---

CDC-128-C

AME and NUMBER

**BOWERSOCK, MARK** K28189 A1-242L

For medical purposes, this inmate shall be allowed to wear a waist chain in place of handcuffs. This chrono is valid while the inmate is at CSP-LAC.

H. CASSIM, M.D.
Staff Physician

Orig. C-file
cc: Health Record
Inmate Assignment
Inmate

02/18/05 CSP-LAC (tk)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT B

COUNTY OF LOS ANGELES **HIGH DESERT HEALTH SYSTEM** DEPARTMENT OF HEALTH SERVICES

44900 NO. 60th STREET WEST
LANCASTER, CALIFORNIA 93536

## RADIOGRAPHIC CONSULTATION

```
PATIENT NAME:        BOWERSOCK, MARK                 MR NO: 105-31-64
REQUESTING PHYSICIAN: DR. CASSIM            DATE ORDERED:    / /
ROOM:  CSP                                  DATE COMPLETED: 03/24/05
RATE CENTER:                                DOB:
TYPE OF EXAM REQUESTED:
```

Patient said to have a palpable mass in the area of the left sternoclavicular joint.  No chest films or reports of same are made available.

CHEST, PA AND LATERAL:

Initial two views, the right peripheral lung base excluded on the PA view, show no detectable bony or soft tissue abnormalities.

CT OF THE STERNOCLAVICULAR JOINTS:

Unenhanced adjacent 1.5 millimeter interval images are obtained through the sternoclavicular joint with the patient supine and then images repeated in the right decubitus position.  In the supine images, there is air in each sternoclavicular joint and what appears to be an air/fluid level on the left, but there is no widening of the joint and no erosion of either the sternum or the clavicle or the adjacent ribs.  The rib articulation is highlighted because of positional factors.  Some degenerative changes are present posteriorly in the joint complex.  Because of the questionable air/fluid level on the supine images, the patient was turned into the right decubitus position an the sequence repeated to assess possible change if a fluid level.

No air is seen in either sternoclavicular joint on these views, suggesting that the presence of same in the supine images were secondary to bilateral shoulder abduction and vacuum phenomenon.  Again, no erosion is identified.

IMPRESSION:  No reproducible abnormality of either sternoclavicular joint, except for degenerative change.

```
SAK:TL867 1755066
D: 03/24/05 11:48:00    STEPHEN A. KANTER, MD
T: 03/24/05 12:48:14    Radiology
```

RECEIVED
MAR 2 9 2005
RADIOGRAPHIC CONSULTATION

PHYSICIAN COPY

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT C

11-26-'08 08:21 FROM-Dr. Rahimifar          661-872-1915          T-618  P012/016 F-241

*P. ALEXANDER, M.D.*
*Chief Medical Officer*

# Bakersfield Neuroscience & Spine Institute

*Neurosurgery and Neurology of Brain, Spine and Nerves*

25 November 2008

## TELE MEDICINE NEUROSURGICAL CONSULTATION

M. Rahimifar, MD
M.Sc., FRCSC, FACS
*Neurological Surgeon,
Adult & Pediatrics*

O. Lerama, MD
FRCSC, FACS, FICS
*Neurological Surgeon,
Adult and Pediatrics*

M. Rashidi, MD
FRCSC
*Neurological Surgeon,
Adult & Pediatrics*

A. Abazari, MD
*Neurological Surgeon,
Adult & Pediatrics*

R. Alexan-Shirabad, MD
FRCPC
*Neurologist, Adult
Neuromuscular/
Electrodiagnostic Specialist*

Hamid R. Salehi, MD
*Neurologist
Neuromuscular/
Electrodiagnostic Specialist*

David R. Field, MD, MPH
*Occupational Medicine*

Jan R. Mensink. MD

Lisa Mendez, PA-C

Beverly Perry, PA-C

PATIENT:          BOWERSOCK, Mark
DOB:              04/19/1956
CDC NO:           K 281269

Thank you very much for referring Mr. Bowersock to my Tele Medicine Neurosurgery Conference. The patient was seen on 25 November 2008. The patient was interviewed and examined by nurse Vontoure.

**CHIEF COMPLAINT:** Neck pain.

**HISTORY OF PRESENT ILLNESS**: This is a fifty-two year old male, complaining of neck pain for the last five years. Patient mentioned he had an injury in 2004, and since then has pain at the sternoclavicular joint and also significant neck pain. Surgery has been recommended in the past.

**PAST MEDICAL HISTORY**:
**Medical:** Hypertension, sleep apnea.
**Surgical**: Rotator cuff repair in 2007.

**SOCIAL HISTORY:** Inmate.

**ALLERGIES**: ALADAT, NIACIN.

**MEDICATIONS**: Based on the list this includes: Aspirin, Simvastatin, Ibuprofen, Metoprolol.

**REVIEW OF SYSTEMS:** Complains of neck pian. No headache, no nausea, no vomiting, no fever, no chills, no blurred vision.

**GENERAL PHYSICAL EXAMINATION:** Patient is afebrile. Vital signs are stable. He has decreased range of neck motin.

**NEUROLOGICAL EXAMINATION:**
Mental Status:           Normal.
Cranial Nerves:          Normal.

11-26-'08 08:21  FROM-Dr. Rahimifar          661-872-1915          T-618  P013/016  F-241

*P. FINANDER, M.D.*
*Chief Medical Officer*

RE: BOWERSOCK, Mark
25 November 2008
Pg. 2

Motor:                      On examination, patient has normal power
                            in upper and lower extremities bilaterally.
Sensory:                    Intact sensory examination.
Deep Tendon Reflexes:       Symmetrical.

**REVIEW OF STUDIES**: MRI of the cervical spine from 26 September
2007. This study shows multi-level disk degenerative changes, especially
at C5-C6 and C6-C7. There is disk herniation and spinal stenosis at C5-
C6 and also at a lesser degree at other levels.

**CLINICAL IMPRESSION:**
1. This is a fifty-two year old male with neck pain.
2. Multi-level disk degenerative changes.
3. Disk herniation and spinal stenosis at C5-C6, lesser degree at C3-
   C4 and C4-C5. Disk degenerative changes also at C6-C7

**RECOMMENDATIONS/TREATMENT PLAN:**
1. Repeat MRI of the cervical spine, since the last MRI was more
   than one year ago.
2. EMG/nerve conduction study of bilateral upper extremities.
3. Flexion/extension views of the cervical spine.
4. Kindly arrange for the above studies to be done as soon as
   possible.
5. Clinic follow-up as soon as the studies are completed.

The patient is severely claustrophobic, please arrange cervical
spine MRI at Open MRI.

Sincerely,

M. Rashidi, M.D., FRCSC
MR/m
DT: 11/26/08



03/31/2009  13:10    661640.4331                    BNSI                        PAGE  10/17

NANDER, M.D.
Chief . Medical Officer



# Bakersfield Neuroscience & Spine Institute

*Neurosurgery and Neurology of Brain, Spine and Nerves*

M. Rahimifar, MD
M.Sc. FRCSC, FACS
*Neurological Surgeon,
Adult & Pediatrics*

O. Leramo, MD
FRCSC, FACS, FICS
*Neurological Surgeon,
Adult and Pediatrics*

M. Rashidi, MD
FRCSC
*Neurological Surgeon,
Adult & Pediatrics*

A. Abazari, MD
*Neurological Surgeon,
Adult & Pediatrics*

R. Alexan-Shirabad, MD
FRCPC
*Neurologist, Adult
Neuromuscular/
Electrodiagnostic Specialist*

Hamid R. Salehi, MD
*Neurologist
Neuromuscular/
Electrodiagnostic Specialist*

David R. Field, MD, MPH
*Occupational Medicine*

Jan R. Mensink, MD

Lisa Mendez, PA-C

Beverly Perry, PA-C

24 March 2009

## NEUROSURGICAL TELEMEDICINE CONSULTATION

PATIENT:        BOWERSOCK, MARK, CDC# K28189, Lancaster
DOB:              04/19/1956

**PRESENT ILLNESS**: Mack Bowersock was seen today at the Telemedicine clinic. He is a prison inmate from Lancaster State Prison. He was last seen by this clinic by Dr. Rashidi on November 25, 2008. He returns today for follow up. The patient is still experiencing neck pain with craniocervical junction headaches. Overall he has had neck pain now for five years.

## NEUROLOGICAL EXAMINATION:

Clinical examination shows the patient has normal motor power, normal reflexes and normal sensory examination. The patient was examined with the aid of R.N. Vontoure.

**MEDICATIONS**: He is currently on Ibuprofen.

**REVIEW OF STUDIES**: Cervical spine MRI performed on March 11, 2009 reportedly shows evidence of C5-C6 disc bulge with stenosis. Unfortunately, the MRI films were not available for my review during this clinic.

EMG and Nerve Conduction Studies of the upper extremities recommended by Dr. Rashidi, during his last evaluation, has not as yet been performed. The patient also had cervical spine x-rays taken February 19, 2009. Again the films were not available for my review. The x-rays show evidence of clinical arthritis involving the dorsal spine without any evidence of lumbar misalignment on flexion/extension views. I discussed the results of both studies with the patient.

## CLINICAL IMPRESSION:

1. Chronic neck pain.
2. C5-C6 stenosis.
3.

03/31/2009  13:10   6618464331                    BNSI                              PAGE  11/17

V/4/6

D. FINANDER, M.D.
hief Medical Officer

RE: Bowerstock, Mark
24 March 2009

Page 2

This is
False!

**RECOMMENDATIONS/TREATMENT PLAN**: Continue conservative treatment
management for now. The patient is to return to see me in four weeks with all
his cervical spine MRI films.  Treatment options were discussed with the patient
in detail. The patient does not want any surgical procedures.  He will prefer to
continue conservative treatment.  I would therefore recommend the patient
continue on naproxen.  Use proper body mechanics in all activities.  Avoid any
falls.  Avoid contact sports. Follow up in four weeks.

Sincerely,

O Leramo, MD
OL/sk
DD: 03/30/2009
DT: 03/31/2009
Job#: 47387578

**KERN RADIOLOGY MEDICAL GROUP, INC.**
2301 Bahamas Drive
Bakersfield, CA 93309
(661) 326-9600

**LANCASTER PRISON**
FAX # 661 723-8346

PATIENT: BOWERSOCK, MARK      DOB: 04/19/1956      CDC # K28189

EXAM: MRI CERVICAL SPINE 06/26/2007

A variety of imaging planes and parameters were utilized for visualization of suspected pathology. No contrast.

Vertebral bodies show normal signal. No signal alteration to suggest bony abnormality is identified. Vertebral bodies are preserved in stature. Alignment is normal. There is mild hypertrophic lipping posteriorly at C5-6. Minimal annular bulges are seen at C3-4, C4-5, and C5-6. There is slight impingement on the anterior subarachnoid space but without significant impingement on the cord. Axial images show a small central to the left side disc protrusion at C5-6. No other significant disc protrusions are identified. No significant foraminal encroachment is identified.

IMPRESSION:
1. Small central to the left side disc protrusion at C5-6.
2. Minimal annular bulge at C3-4, C4-5, and C5-6.
3. Minimal hypertrophic lipping at C5-6.

Howard E. Leventhal, M.D.                    D: 10/05/2007 T: 10/08/2007/dec

Referring Physician: Alleyne

RCVD OCT 16 '07

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT D

STATE OF CALIFORNIA                                                                                    DEPARTMENT OF CORRECTIONS

## COMPREHENSIVE ACCOMMODATION CHRONO

**INSTRUCTIONS**: A physician shall complete this form if an inmate requires an accommodation due to a medical condition. Circle P if the accommodation is to be permanent, or T if the accommodation is to be temporary. If the accommodation is temporary, write the date the accommodation expires on the line. A new form shall be generated when a change to an accommodation is required or upon renewal of a temporary accommodation. Any new form generated shall include previous accommodations, if they still apply. Chronos indicating permanent accommodations shall be reviewed annually. This form shall be honored as a permanent chrono at all institutions.

### A. HOUSING

| | | |
|---|---|---|
| (None) | 4. Bottom Bunk | P / T _____ |
| 1. Barrier Free/Wheelchair Access  P / T _____ | 5. Single Cell (See 128-C date: _____ ) | P / T _____ |
| 2. Ground Floor Cell  P / T _____ | 6. Permanent OHU / CTC (circle one) | P / T _____ |
| 3. Continuous Powered Generator  P / T _____ | 7. Other _____ | P / T _____ |

### B. MEDICAL EQUIPMENT/SUPPLIES

| | | |
|---|---|---|
| None | 16. Wheelchair: (type) _____ | P / T _____ |
| 8. Limb Prosthesis  P / T _____ | 17. Contact Lens(es) & Supplies | P / T _____ |
| 9. Brace  P / T _____ | 18. Hearing Aid | P / T _____ |
| 10. Crutches  P / T _____ | 19. Special Garment: | |
| 11. Cane: (type) _____  P / T _____ | (specify) _____ | P / T _____ |
| 12. Walker  P / T _____ | 20. Rx. Glasses: _____ | P / T _____ |
| 13. Dressing/Catheter/Colostomy Supplies  P / T _____ | 21. Cotton Bedding | P / T _____ |
| 14. Shoe: (specify) _____  P / T _____ | 22. Extra Mattress | P / T _____ |
| 15. Dialysis Peritoneal  P / T _____ | (23.) Other  6 Inch Foam mattress  (P)/ T _____ |  |

### C. OTHER

| | | |
|---|---|---|
| (None) | 26. Therapeutic Diet: (specify) | P / T _____ |
| 24. Attendant to assist with meal access  P / T _____ and other movement inside the institution. | _____ | |
| | 27. Communication Assistance | P / T _____ |
| Attendant will not feed or lift the inmate/patient or perform elements of personal hygiene. | 28. Transport Vehicle with Lift | P / T _____ |
| | 29. Short Beard | P / T _____ |
| 25. Wheelchair Accessible Table  P / T _____ | 30. Other _____ | P / T _____ |

### D. PHYSICAL LIMITATIONS TO JOB ASSIGNMENTS

Based on the above, are there any physical limitations to job assignments?     ☐ Yes    ☒ No

If yes, specify: _____

| INSTITUTION  CSP -LAC, | COMPLETED BY (PRINT NAME)  Gocte | TITLE  NP |
|---|---|---|
| SIGNATURE  N.Godu | DATE  3/25/09 | CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH  K 28189  Bowersock, mark  4/19/56. |
| HCM/CMO SIGNATURE  P. Finander MD | DATE  3/27/09 | |
| APPROVED (list the number of items approved) | | |
| (DENIED (list the number of items denied)  twenty-three | | |
| COMPREHENSIVE ACCOMMODATION CHRONO | | Al - 242L |

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS

## COMPREHENSIVE ACCOMMODATION CHRONO

**INSTRUCTIONS**: A physician shall complete this form if an inmate requires an accommodation due to a medical condition. Circle P if the accommodation is to be permanent, or T if the accommodation is to be temporary. If the accommodation is temporary, write the date the accommodation expires on the line. A new form shall be generated when a change to an accommodation is required or upon renewal of a temporary accommodation. Any new form generated shall include previous accommodations, if they still apply. Chronos indicating permanent accommodations shall be reviewed annually. This form shall be honored as a permanent chrono at all institutions.

### A. HOUSING

(None)

| | | | | |
|---|---|---|---|---|
| 1. Barrier Free/Wheelchair Access | P/T _____ | 4. Bottom Bunk | P/T _____ |
| 2. Ground Floor Cell | P/T _____ | 5. Single Cell (See 128-C date: _____ ) | P/T _____ |
| 3. Continuous Powered Generator | P/T _____ | 6. Permanent OHU / CTC (circle one) | P/T _____ |
| | | 7. Other _____ | P/T _____ |

### B. MEDICAL EQUIPMENT/SUPPLIES

None

| | | | | |
|---|---|---|---|---|
| 8. Limb Prosthesis | P/T _____ | 16. Wheelchair: (type) _____ | P/T _____ |
| 9. Brace | P/T _____ | 17. Contact Lens(es) & Supplies | P/T _____ |
| 10. Crutches | P/T _____ | 18. Hearing Aid | P/T _____ |
| 11. Cane: (type) _____ | P/T _____ | 19. Special Garment: | |
| 12. Walker | P/T _____ | (specify) _____ | P/T _____ |
| 13. Dressing/Catheter/Colostomy Supplies | P/T _____ | 20. Rx. Glasses: _____ | P/T _____ |
| 14. Shoe: (specify) _____ | P/T _____ | 21. Cotton Bedding | P/T _____ |
| 15. Dialysis Peritoneal | P/T _____ | 22. Extra Mattress | (P) T _____ |
| | | 23. Other _____ | P/T _____ |

### C. OTHER

None

| | | | | |
|---|---|---|---|---|
| 24. Attendant to assist with meal access and other movement inside the institution. | P/T _____ | 26. Therapeutic Diet: (specify) _____ | P/T _____ |
| Attendant will not feed or lift the inmate/patient or perform elements of personal hygiene. | | 27. Communication Assistance | P/T _____ |
| | | 28. Transport Vehicle with Lift | P/T _____ |
| | | 29. Short Beard | P/T _____ |
| 25. Wheelchair Accessible Table | P/T _____ | 30. Other _____ | P/T _____ |

### D. PHYSICAL LIMITATIONS TO JOB ASSIGNMENTS

Based on the above, are there any physical limitations to job assignments?  ☐ Yes  ☒ No

If yes, specify: _____

| INSTITUTION CSP-LAC | COMPLETED BY (PRINT NAME) Kampth Manson MO | TITLE MO |
|---|---|---|
| SIGNATURE | DATE 1/17/08 | CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH |
| HCM/CMO SIGNATURE Paulette Finandn MD | DATE 1/22/08 | K 28 189 |
| APPROVED (list the number of items approved) | | Bowersok, Mark |
| DENIED (list the number of items denied) 22 | | 4, 19, 56. |

COMPREHENSIVE ACCOMMODATION
CHRONO

A1-342L

CDC 7410 (08/04)

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

## COMPREHENSIVE ACCOMMODATION CHRONO

**INSTRUCTIONS:** A physician shall complete this form if an inmate requires an accommodation due to a medical condition. Circle P if the accommodation is to be permanent, or T if the accommodation is to be temporary. If the accommodation is temporary, write the date the accommodation expires on the line. A new form shall be generated when a change to an accommodation is required or upon renewal of a temporary accommodation. Any new form generated shall include previous accommodations, if they still apply. Chronos indicating permanent accommodations shall be reviewed annually. This form shall be honored as a permanent chrono at all institutions.

### A. HOUSING

| | | | |
|---|---|---|---|
| None | | **4. Bottom Bunk** | P / T _____ |
| 1. Barrier Free/Wheelchair Access | P / T _____ | **5. Single Cell (See 128-C date: _____ )** | P / T _____ |
| 2. Ground Floor Cell | P / T _____ | **6. Permanent OHU / CTC (circle one)** | P / T _____ |
| 3. Continuous Powered Generator | P / T _____ | **7. Other** _____ | P / T _____ |

### B. MEDICAL EQUIPMENT/SUPPLIES

| | | | |
|---|---|---|---|
| None | | **16. Wheelchair: (type)** _____ | P / T _____ |
| 8. Limb Prosthesis | P / T _____ | **17. Contact Lens(es) & Supplies** | P / T _____ |
| 9. Brace | P / T _____ | **18. Hearing Aid** | P / T _____ |
| 10. Crutches | P / T _____ | **19. Special Garment:** | |
| 11. Cane: (type) _____ | P / T _____ | (specify) _____ | P / T _____ |
| 12. Walker | P / T _____ | **20. Rx. Glasses:** _____ | P / T _____ |
| 13. Dressing/Catheter/Colostomy Supplies | P / T _____ | **21. Cotton Bedding** | P / T _____ |
| 14. Shoe: (specify) _____ | P / T _____ | **22. Extra Mattress** | P / T _____ |
| 15. Dialysis Peritoneal | P / T _____ | **23. Other** _____ Pillow | P / T _____ |

### C. OTHER

| | | | |
|---|---|---|---|
| None | | **26. Therapeutic Diet: (specify)** | P / T _____ |
| 24. Attendant to assist with meal access and other movement inside the institution. | P / T _____ | _____ | |
| Attendant will not feed or lift the inmate/patient or perform elements of personal hygiene. | | **27. Communication Assistance** | P / T _____ |
| | | **28. Transport Vehicle with Lift** | P / T _____ |
| | | **29. Short Beard** | P / T _____ |
| 25. Wheelchair Accessible Table | P / T _____ | **30. Other** _____ | P / T _____ |

### D. PHYSICAL LIMITATIONS TO JOB ASSIGNMENTS

Based on the above, are there any physical limitations to job assignments?   ☐ Yes   ☑ No

If yes, specify: _____

| | | |
|---|---|---|
| INSTITUTION CSP-LAC | COMPLETED BY (PRINT NAME) Alleyne | TITLE MD |
| SIGNATURE | DATE 6/21/07 | CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH |
| HCM/CMO SIGNATURE | DATE 6/26/07 | Bowersock, Mark |
| APPROVED (list the number of items approved) | | 04/19/56 |
| DENIED (list the number of items denied) | | K 27189 |

COMPREHENSIVE ACCOMMODATION
CHRONO

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date:    OCT 0 2 2007

In re:    Mark Bowersock, K28189
California State Prison, Los Angeles County
44750 - 60th Street West
Lancaster, CA 93536-7620

IAB Case No.: 0704659          Local Log No.: LAC-07-01349

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner B. Sullivan, Staff Services Manager I. All submitted documentation and supporting arguments of the parties have been considered.

I    APPELLANT'S ARGUMENT: It is the appellant's position that because of prior injuries, he is unable to walk in the morning without aids and he is not sleeping properly. He says the mattresses provided at the California State Prison, Los Angeles County (LAC) make him feel 80 to 90 years old when he wakes up. He asks for a CDC Form 7410, Comprehensive Accommodation Chrono that approves him for a six-inch eggcrate mattress because he slept on one in the infirmary and he felt like new when he woke up.

II    SECOND LEVEL'S DECISION: The reviewer found that while the appellant does have significant degenerative arthritis as noted in an examination and from x-rays, the chrono committee did not find it medically necessary for him to have an extra mattress. The appellant's request for a six-inch mattress is denied.

III    DIRECTOR'S LEVEL DECISION: Appeal is denied.

A. FINDINGS: At the Director's Level of Review, the appellant says he is not asking for two mattresses, just a six-inch foam mattress. However, the appellant has been medically evaluated at LAC and a six-inch eggcrate mattress has not been deemed medically necessary. While the appellant might disagree with the medical opinions of the doctors at LAC who have examined him and reviewed his Unit Health Record, he must realize that medical diagnosis and treatment recommendations can vary between facilities, specialists, and physicians throughout the CDCR. The institution shall only provide medical services for inmates which are based on medical necessity and supported by outcome data as effective medical care. The appellant is advised that each practitioner determines, at the time of treatment, the extent of treatment for the health care problem. The appellant has not provided a compelling argument to warrant modification of the decision reached by the institution.

B. BASIS FOR THE DECISION:
Armstrong Remedial Plan: ARPI, ARPII.A, ARPII.F
California Code of Regulations, Title 15, Section: 3350, 3354

C. ORDER: No changes or modifications are required by the Institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, LAC
Health Care Manager, LAC
Appeals Coordinator, LAC
Medical Appeals Analyst, LAC

## CALIFORNIA STATE PRISON, LOS ANGELES COUNTY

### INMATE APPEAL RESPONSE

**RE: Appeal Log #**          LAC-D-07-01349
                              First Level Response

                              **BOWERSOCK     K28189**

**APPEAL DECISION:**          DENIED

**APPEAL ISSUE:**             **ADA**

In your appeal you state that you are unable to walk in the morning without Aids. You claim you need to use shelves and you bunk as crutches until you can get your legs to work. You state that you have broken your back twice; you are DPP for your Morning Mobility problems. You state you have Rotator Cuff Surgery on 3/5/07 and you received no physical therapy. You state that pain pills have been the only remedy offered you. You claim to be completely fatigued because of your mattress.

### Action Requested:
1. A 6" foam mattresses like the one you slept on in the infirmary because you felt like new when you slept on one and you woke up with no mobility problems at all.

### Appeal Response:
On June 21, 2007, R. Alleyne, M.D., interviewed you in person to allow you the opportunity to fully explain your appeal and for you to provide any supporting documentation. You did not provide any additional information.

An inquiry into your appeal and review of your Unit Health Record (UHR) finds that you do have significant degenerative arthritis as noted on exam and from cervical spine x-rays. However the chrono committee did not find it medically necessary for you to have an extra mattress.

### Appeal Decision:
Based on the facts reviewed and the action requested, this appeal is DENIED in that an extra mattress is not found medically necessary at this time.

R. ALLEYNE, M.D.
Staff Physician

T. BZOSKIE, M.D.
Chief Medical Officer

6/28/07
Date

6/27/07
Date

RA/pg

# WARNING:

The use of NSAIDS (Non-Steroidal Anti-Inflammatory Drugs) such as, but not limited to Ibuprofen (Motrin®), Naproxen (Naprosyn®), Indomethacin (Indocin®), Celecoxib (Celebrex®) may cause possible cardiovascular and gastrointestinal risks including:

- Strokes
- Heart Attacks
- Bleeding of the digestive tract

If any questions or concerns shall arise, please feel free to ask your physician for further details.

# EXHIBIT E

NOTE: SEND COPY OF PHYSICIAN'S ORDER FOR MEDICATION
TO PHARMACY AFTER EACH ORDER IS SIGNED.

| Order Date | Time | Problem # | Physician's Order and Medication (Orders must be dated, timed, and signed.) |
|---|---|---|---|
| 4/6/09 | 2030 | (1) | MD further Telemed Neurosurgery appt needed at this time    P. Finander MD |
| | | | P. FINANDER, M.D. Chief Medical Officer |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

ALLERGIES:   Niacin, Adalat

INSTITUTION:

ROOM/WING:

CDC NUMBER, NAME (LAST, FIRST, MI)

Confidential
client information
See W & I Code, Sections 4514 and
5328

Bowersock, Mark
K28189

PHYSICIAN'S ORDERS

# EXHIBIT F

STATE C. CALIFORNIA
**INMATE/PAROLEE HEALTH CARE APPEAL FORM**
CDCR 602-HC (08/08)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
CALIFORNIA PRISON HEALTH CARE SERVICES

**Side I**

Location: Institution/Parole Region: APC-25-09-    Log #: 1. 11 3789    Category: X MD

2. _____    2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. This form shall be used when the policy, action or decision being appealed involves health care services (medical, dental, or mental health). You must first informally seek relief through discussion with the appropriate staff member or by utilizing the health care service processes at your institution. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Health Care Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| Bowersock | K28189 | Hobby Clerk | A1-242 |

**A. Describe Problem:** This is a Staff Complaint and a Showing of Deliberate Indifference to my Serious Medical Needs. This is a Staff Complaint against CMO FINANDER, DR. Petrics DR. Olu kanmi. On APRIL 27, 2009 I was informed I did NOT have CANCER in my Chest (prior Biopsy results), but my eye had pre-CANCER concerns. Three Days later, I was called for surgery, thinking it was my eye area. While laying in the Surgery area they told me it was for my Chest. I told them they said No CANCER in my Chest, but they went ahead anyway, for some reason. Surgery Performed By DR. PETRIC, I Had my stitches removed on April 9th. My Chest did not feel right-stitches were terrible and that was commented on By DR. Walling & NURSES. The Area became warm and on May 11, 2009. I

_If you need more space, attach one additional sheet._

**B. Action Requested:** Perform Plastic Surgery to fix the Scar Area. 2. DR. PETRIC To Pay Damages for his botched Surgery which will leave me scarred for Life. 3. CMO FINANDER & DR. Olukanmi to be fired and pay Damages for their Medical Neglect with my obvious infection which they refused to treat before it burst open. 4. Release me so I can get Medical Care that is Reasonable & Appropriate.

Inmate/Parolee Signature: Mark Bowersock    Date Submitted: May 24, 2009

**C. INFORMAL LEVEL (Date Received _____ ):**
Staff Response: _____

_____

_____

Staff Signature: _____    Date Returned to Inmate: _____

**D. FORMAL LEVEL:**

If you are dissatisfied, explain below, attach supporting documents (Health Care Service Request Form, CDC 7362, Comprehensive Accommodation Chrono, CDC 7410, Trust Account Statement, etc.) and submit for processing to the Health Care Appeals Coordinator at your location within 15 days of receipt of response.

_____

_____

_____

Inmate/Parolee Signature: _____    Date Submitted: _____

**CDCR Appeal Number**

RECEIVED
7/13 JUN 2009

had a Dr.'s Appointment with Dr. Olukanmi. I told him my surgery area was infected and it needed cleaning out. Dr. Olukanmi told me No, it looked fine and he wouldn't clean the area. Knowing it was infected, I asked the Dr. for the material to clean it myself. Dr. Olukanmi said No! Because of the CSP LAC Dr.'s medical neglect, my wound burst open approx. 24 Hours ater, leaving a huge hole in my Chest. An open wound, that the RN Doctor said was infected when I went to Emergency. I was given strong anti-biotics for the Next 10 Days. Dr. Olukanmi should Know the sight of infection. I knew, I'm not a Dr.. Dr. Olukanmi's conduct was rude and combative as he was made aware of my Need for a cane because I'm unable to walk in the Morning without aides. I'm ADA because of this Mobility Problem, and CMO Finander refuses to give me a 6" Foam Mattress which would alleviate the Problem. Dr. Olukanmi refused to write me an Accomodation Chrono for a Cane Too. CMO Finander and Dr. Olukanmi's actions are against all CDCR Policy and this was a deliberate Direct Retaliation against me for Federal Civil Case CV 05-08197 R (cw). These actions are proven when CMO Finander & Dr. Leramo falsified my Medical Record by saying I did NOT want neck Surgery. I can NOT get Medical Care here because of CMO Finanders arrogant, Rude, Combative behavior which has caused me to suffer greatly.

Signature: Mark Bowersock                    DATE May 24, 2009


ACTION REQUESTED... continued...

5. Dr. Petric to have consultation with Me regarding this botched Surgery. 6. CMO Finander & CSP LAC Medical Staff to stop the Retaliations & Vindictive Misconduct against me. 7. Provide me with the 6" Foam Mattress which will alleviate much of my Pain. 8. Neck Surgery Consultation to be done within 30 Days. 9. If no mattress is given, provide me with a cane until Mattress litigation is over.

# CALIFORNIA STATE PRISON, LOS ANGELES COUNTY

## INMATE APPEAL RESPONSE

**RE: Appeal Log #**          LAC-25-09-11589
                              First Level Response          **INMATE COPY**

                              **BOWERSOCK   K28189**

**APPEAL DECISION:**          DENIED

**APPEAL ISSUE:**             MEDICAL

In your appeal you state that you wish to file a staff complaint for deliberate indifference against Dr. Finander, Chief Medical Officer; Dr. Petric; and Dr. Olukanmi. You state that on April 27, 2009 you were informed that you did not have cancer in your chest (prior biopsy results), but that your eye had pre-cancer concerns. You state that three days later, you were called for surgery, which you state you thought was for your eye, but while lying in surgery, you were told that it was for your chest. You state that Dr. Petric did the surgery even after you told him you were told there was no cancer. In this appeal you write that your stitches were removed on April 9, 2009, which would have been prior to the surgery. At the time the stitches were removed you state that you thought it did not feel right. You allege that Dr. Walling and nurses said the stitches were terrible.

You state that the stitches felt warm on May 11, 2009 and during your appointment that day, you state that you told Dr. Olukanmi that the surgery area was infected and needed cleaning. You allege that Dr. Olukanmi said it was not infected, refused to clean it and refused to allow you to have something to clean it yourself. You allege that the wound burst open 24 hours later and you were sent to the emergency room because it was infected. You state you were given antibiotics for ten days. In your appeal, you question if Dr. Olukanmi failed to recognize the infection that it cast doubt on his previous refusal to allow you to have a cane. You allege that you are mobility impaired and need a cane as well as a six inch foam mattress, which you allege Dr. Finander denied to you. You also allege that Dr. Finander and Dr. Leramo falsified your medical records by documenting that you had refused neck surgery.

### Action Requested:
1. Perform plastic surgery to scar on chest.
2. Dr. Petric to pay damages for his botched surgery.
3. Dr. Finander and Dr. Olukanmi to be fired and pay damages for neglect.
4. Release you from prison to obtain your own medical care.

### Appeal Response:
Your issues regarding a cane and a six inch foam mattress will not be addressed in this appeal in that these issues have been addressed in appeals, LAC-25-09-00536, and neck surgery was addressed in appeal, LAC-25-09-11072.

On June 30, 2009, Physician Assistant Olukanmi interviewed you in person to allow you the opportunity to fully explain your appeal and for you to provide any supporting documentation. You did not provide any additional information.

An inquiry into your appeal and review of your Unit Health Record (UHR) finds that you had been referred to general surgery for removal of a suspicious growth on your chest. The growth was removed by Dr. Petric on April 30, 2009. You were seen on the RN line on May 8, 2009 at which time suture was removed by PA Olukanmi at which time the wound was closed without any sign or symptoms of infection. On May 11, 2009, you were seen on the

Case3:01-cv-01351-TEH   Document2211   Filed08/24/09   Page30 of 43

doctor's line at which time the wound was still intact without any signs of symptoms of infection. You went to the Triage Treatment Area (TTA) on May 12, 2009 complaining of the wound opening. The TTA nurse evaluated the wound and spoke to the on-call provider who ordered antibiotic for possible infection coverage. You were seen in the clinic for wound care on May 14 and 15, 2009 and it was noted that there was no drainage, redness or inflammation. You seen again on May 18, 2009 by Dr. Hernandez who documented no pus in the wound and noted it is healing well.

During today's interview and examination, your wound is healed. There is no justification for a referral to plastic surgery. This review finds that you had appropriate follow up. You were informed that infection is one of the possible complications of surgery.

In regards to eye growth, you had liquid nitrogen applied on April 28, 2009 and you have not had any new growth.

**Appeal Decision:**
Based on the facts reviewed and the action requested, this appeal is DENIED in that your wound was treated appropriately. Patient care was not neglected and you had several encounters with providers and your wound has completely healed. There is no medical justification to refer you for plastic surgery. Monetary compensation is not within the scope of the appeals process. Inmates may not demand specific supervisory or administrative actions against staff. The hiring authority has reviewed your appeal and determined that it did not meet the criteria as a staff complaint. Release from prison is not within the scope of the appeals process.

W. OLUKANMI
Physician Assistant

$8 - 6 - 09$
Date

A. SWABY, D.O.
Chief Physician & Surgeon (A)

Date

WO/bd

# EXHIBIT G

# <u>FOR STAFF PURPOSES ONLY</u>

PLACE THIS STATEMENT IN THE
APPEAL:

"THIS APPEAL HAS BEEN REVIEWED
BY THE HIRING AUTHORITY AND IT
HAS BEEN DETERMINED THAT THE
APPEAL DOES NOT MEET THE
REQUIREMENT FOR ASSIGNMENT AS
A STAFF COMPLAINT."

ANSWER THE APPEAL MINUS ANY
STAFF COMPLAINT LANGUAGE.

**\*NOT TO BE SEEN BY THE INMATE\***

EXHIBIT "B"

# EXHIBIT H

# Riverside City College

Riverside, California

AWARDS THIS

# Certificate of Achievement

to

*Mark M. Bowersock*

on _August 10_ 19 _84_

for successfully completing

_600_ hours of instruction in

## Southern California Peace Officers'
## Basic Training School

This school meets the **Basic Course requirements established by the California Commission of Peace Officer Standards and Training**

_Theresa Nelson_
President
Board of Trustees

President
Riverside City College

RIVERSIDE CITY COLLEGE
ADMINISTRATION OF JUSTICE

## REPORT OF PERFORMANCE EVALUATION

CLASS    95TH                                    FROM    4-26-84    TO    8-10-84
                                                         (Date)

NAME                    BOWERSOCK, MARK M.

DEPARTMENT              RIVERSIDE CITY COLLEGE

---

RATE      VERY STRONG————
EACH      COMPETENT————
FACTOR    IMPROVEMENT NEEDED——
          UNSATISFACTORY——

+ Strong    ✓ Standard    — Weak

1. QUANTITY                                    ☐ ☐ ☒ ☐

   ✓ Amount of work performed
   ✓ Use of working time

2. QUALITY                                     ☐ ☐ ☒ ☐

   ✓ Accuracy
   ✓ Neatness of work product
   ✓ Thoroughness
   ✓ Written expression

3. WORK HABITS                                 ☐ ☐ ☒ ☐

   ✓ Tardiness
   ✓ Attendance
   ✓ Observation of rules and regulations
   ✓ Performance with minimum instructions
   ✓ Compliance with work instructions
   ✓ Housekeeping
   ✓ Application to duties

4. ADAPTABILITY                               ☐ ☐ ☒ ☐

   ✓ Performance in new situations
   + Performance in stress situations
   ✓ Learning rate and retention
   ✓ Ability to grasp new ideas

5. PERSONAL RELATIONS                          ☐ ☐ ☒ ☐

   ✓ Getting along with fellow employees
   N.O. Meeting and handling the public
   ✓ Personal appearance
   ✓ Self expression
   + Maturity
   + Attitude

### OVERALL SUMMARY:

Mr. Bowersock, throughout the academy put forth a good effort towards his duties. He also displayed a consistently positive attitude. He was marked strong in the area of attitude.

Mr. Bowersock has a pleasant personality and was well liked and respected by classmates, as well as staff. He approached his work in a diligent manner and showed good judgment and common sense during field exercises. He kept himself neat and well groomed at all times.

Mr. Bowersock was rated strong in the area of performance in stress situations. His actions were normally logical and well thought out. He also accepted constructive criticism well and strove not to repeat mistakes.

Mr. Bowersock is an intelligent, mature individual who has the desire and capability to become an above average peace officer. He should be an asset to his agency.

EVALUATOR: _____

# EXHIBIT I

0200

1  GIL GARCETTI
   District Attorney, Los Angeles County      **FILED**
2  By:   SUSAN D. CHASWORTH                     MUNICIPAL COURT
   SAN FERNANDO BRANCH
3  Deputy District Attorney                     APR ⁹  1995
   6230 Sylmar Ave., 5th Floor
4  Van Nuys, California 91401
                                                Earl S. Bradley
5  (818) 374-2419                               Court Administrator
   Attorney for Plaintiff                       LOS ANGELES SUPERIOR COURT
6
7                                               JUN 2 3 1995
          MUNICIPAL COURT OF THE STATE OF CALIFORNIA A. CLARKE,
8                                               BY G. GILBERTSON, CLERK
              FOR THE COUNTY OF LOS ANGELES                      DEPUTY
9
10              NEWHALL JUDICIAL DISTRICT

11
   PEOPLE OF THE STATE OF CALIFORNIA,)       NO. PA019046
12                                   )
                        Plaintiff,)          NOTICE OF MOTION; MOTION
13                                   )       FOR ORDER DIRECTING
               v.                    )       DEFENDANT TO SUPPLY
14                                   )       PLAINTIFF WITH BLOOD
   MARK MEARL BOWERSOCK,             )       AND HAIR SAMPLES;
15                                   )       POINTS & AUTHORITIES AND
                        Defendant.)          SUPPORTING DECLARATION
16

17
          TO DEFENDANT AND HIS ATTORNEY OF RECORD:
18                                                          1:30 pm
          PLEASE TAKE NOTICE that on April 10, 1995, at 8:30 a.m.,
19
   or as soon thereafter as this matter can be heard in Division 3 of
20
   the above entitled Court, the People will move this honorable court
21
   to order the defendant to provide a sample of blood and to permit
22
   the removal of a sample of his hair.
23
   //
24
   //
25

26

27
28

0266

1    This motion will be based upon the attached points and
2    authorities, supporting declaration, the pleading, records, files,
3    documents, and evidence, whether oral or written, presented at the
4    hearing on this motion.
5    DATED:  April 4, 1995
6                              Respectfully submitted,
7                              GIL GARCETTI
                              District Attorney
8
                              By
9
                              SUSAN D. CHASWORTH
10                             Deputy District Attorney
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1        DECLARATION

2

3        I, Susan D. Chasworth, declare that:

4        I am an attorney licensed to practice law in the State of
5   California;

6        I am a Deputy District Attorney employed by the County of Los
7   Angeles;

8        I am assigned to assist in the prosecution of this case;

9        I am informed and believe and therefore allege that blood and
10   hair were found at various locations at the crime scene.

11        By comparing the blood typing of the blood found at the crime
12   scene with the blood typing of the defendant and by comparing the
13   hair found with the defendant's hair, there will be material
14   evidence for the prosecution of this case.

15        WHEREFORE, the plaintiff requests the court to order the
16   defendant give a blood and hair sample.

17        I DECLARE UNDER PENALTY OF PERJURY under the laws of the State
18   of California that the above statement is true and correct.

19   DATED:  April 4, 1995, at Van Nuys, California.

20

21                                    SUSAN D. CHASWORTH
                                      DECLARANT
22

23

24

25

26

27
28

0210



1   GIL GARCETTI
    District Attorney, Los Angeles County
2   By:  SUSAN D. CHASWORTH
    Deputy District Attorney
3   6230 Sylmar Ave., 5th Floor
    Van Nuys, California 91401
4   (818) 374-2419
    Attorney for Plaintiff
5

6                MUNICIPAL COURT OF THE STATE OF CALIFORNIA
7
                    FOR THE COUNTY OF LOS ANGELES
8
                       NEWHALL JUDICIAL DISTRICT
9

10
    PEOPLE OF THE STATE OF CALIFORNIA,)     NO. PA019046
11                                   )
                        Plaintiff,)          ORDER DIRECTING
12                                   )       DEFENDANT TO SUPPLY
            v.                       )       PLAINTIFF WITH BLOOD
13                                   )       AND HAIR SAMPLES
    MARK MEARL BOWERSOCK,            )
14                                   )
    _____Defendant.)
15

16
            TO THE DEFENDANT AND HIS ATTORNEY OF RECORD, SHERIFF,
17
    POLICE DEPARTMENT, AND MEDICAL PERSONNEL:
18
            GOOD CAUSE APPEARING THEREFORE, IT IS HEREBY ORDERED,
19
    that the defendant submit to the taking of a blood sample and
20
    medical personnel to take a blood from the said defendant in a
21
    medically approved manner.  It is further ordered that defendant
22
    permit the removal of a sample of his hair.
23

24                              
    DATED: April 2, 1995
25

26                              _____
27                              JUDGE OF ABOVE ENTITLED COURT
28

# EXHIBIT J

STATE OF CALIFORNIA
**INMATE/PAROLEE HEALTH CARE**
**APPEAL FORM**
CDCR 602-HC (08/08)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
CALIFORNIA PRISON HEALTH CARE SERVICES

**Side 1**

Location: Institution/Parole Region:   Log #:                 Category:

1. _____    1. _____    _____

2. _____    2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. This form shall be used when the policy, action or decision being appealed involves health care services (medical, dental, or mental health). You must first informally seek relief through discussion with the appropriate staff member or by utilizing the health care service processes at your institution. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Health Care Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|-----------|------------------|
| Bowersock | K28189 | Hobby Clerk | A1-242 |

A. Describe Problem:
My short term memory is getting worse all the time. I am in the stages of Alzheimers. I brought it to the Dr.'s attention and they responded their is nothing they can do. My Grandfather died of Alzheimers and my Mom is in a SR. Homes with Alzheimers/dementia. Their are tests available to identity a person with Alzheimers, then medication can be prescribed to slow the Alzheimers process. I need to receive a Community based Standard of Healthcare, and I am not receiving that Level of Care, creating Deliberate Indifference.

If you need more space, attach one additional sheet.

B. Action Requested: Be given the Tests (medical Lab-Genetic Tests) to determine if I have the Alzheimer Gene so I can be treated appropriately. Mark Bowersock to receive a Community based Standard of Healthcare. Release me if your unable to provide the Care.

Inmate/Parolee Signature: Mark Bowersock   Date Submitted: June 29, 2009

C. INFORMAL LEVEL (Date Received 7/1/09    ):

Staff Response:
*If you would like a second opinion, please note that you may request the services of an outside consultant by following the directions in CCR Title 15, Section 3354(c); however, be advised that all costs associated with the outside consultation, including guarding, cost of the evaluation, tests/appliances, transportation etc., is the responsibility of the person requesting the outside consultation.*

Staff Signature: O. Sal   Date Returned to Inmate: 8/12/09

D. FORMAL LEVEL:
If you are dissatisfied, explain below, attach supporting documents (Health Care Service Request Form, CDC 7362, Comprehensive Accommodation Chrono, CDC 7410, Trust Account Statement, etc.) and submit for processing to the Health Care Appeals Coordinator at your location within 15 days of receipt of response.
I am dissatisfied. I am indigent so now your refusing me Healthcare because I'm unable to pay for it myself. You are suppose to provide me with a Community Based Standard of Healthcare. If released I would have Health Insurance. Without catching this Disease in it's early stages. I will cause me to not function normally. Release Me so I can fix it.
Inmate/Parolee Signature: Mark Bowersock   Date Submitted: August 14, 2009



RECEIVED JUL 1 2009

**CDCR Appeal Number**

1                  **PROOF OF SERVICE BY MAIL**

2               **(CCP §§1013(a), 2015.5; 28 U.S.C. §1746)**

3

4      I, Mark Bowersock hereby declare that I am over the age of 18, I am the

5 petitioner in the above-entitled cause of action, and my legal mailing address CSP/LAC – A l -

6 242, P.O. BOX 8457, Lancaster, CA 93539-8457.

7      On August 18, 2009, I delegated to prison officials the task of mailing, via

8 the institution's internal mail system (*Houston v. Lack*, 487 US 266 [101 L.Ed.2d 245; 108

9 S.Ct. 2379] (1988)), the below entitled legal document(s):

10                Court Motion

11

12

13

14

15 by placing said documents in a properly addressed and sealed envelope, with postage fully pre-

16 paid, in the United States Mail, deposited in the manner provided by CSP/LAC, and addressed

17 as follows: UNITED STATES DISTRICT COURT

18             NORTHERN DISTRICT OF CALIFORNIA

19                OFFICE OF THE CLERK

20           HONORABLE Thelton E. HENDERSON
               450 Golden GATE AVENUE

21            SAN FRANCISCO, CA. 94102

22      I further declare under penalty of perjury that the foregoing is true and correct to the

23 best of my knowledge. Executed this 18th day of August 2009 at California

24 State Prison – Los Angeles County.

25

26                      Mark Bowersock

27