EDMUND G. BROWN JR.
Attorney General of the State of California
DAVID S. CHANEY
Chief Assistant Attorney General
JONATHAN L. WOLFF
Senior Assistant Attorney General
WILLIAM C. KWONG – State Bar No. 168010
Deputy Attorney General
KYLE A. LEWIS – State Bar No. 201041
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 703-5724
Facsimile:  (415) 703-5843
william.kwong@doj.ca.gov
kyle.lewis@doj.ca.gov

HANSON BRIDGETT LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO – 179755
S. ANNE JOHNSON – 197415
SAMANTHA D. TAMA – 240280
RENJU P. JACOB - 242388
425 Market Street, 26th Floor
San Francisco, CA  94105
Telephone: (415) 777-3200
Facsimile:  (415) 541-9366
jschaefer@hansonbridgett.com
pmello@hansonbridgett.com
ajohnson@hansonbridgett.com
stama@hansonbridgett.com
rjacob@hansonbridgett.com

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

## AND THE NORTHERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

## PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>                    Plaintiffs,<br><br>        v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>                    Defendants. | No. 2:90-cv-00520 LKK JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>                    Plaintiffs,<br><br>        v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>                    Defendants. | No. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>**DEFENDANTS' MOTION TO STAY THREE-JUDGE COURT'S AUGUST 4, 2009 OPINION AND ORDER PENDING APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**To:  Three-Judge Court** |

DEFENDANTS' MOTION TO STAY THREE-JUDGE COURT'S AUGUST 4, 2009 OPINION AND ORDER PENDING APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES

2021999.1

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................. 1

II. PROCEDURAL BACKGROUND ........................................... 1

III. ARGUMENT ......................................................................... 2

  A. Defendants Are Entitled To A Stay Pending The Appeal Under Federal Rule of Civil Procedure 62 ............................................................. 2

    1. Defendants Have Made A Strong Showing Of Likelihood Of Success On The Merits Of Their Appeal ........................................ 3

      a. The Plata Court's Determination To Convene This Three-Judge Court Was Erroneous Because The Receivership Had Only Just Commenced, And The Plata Court Has Not Found That The Receivership Has Failed............................................................................ 4

      b. This Court Improperly Construed The Requirement That Crowding Be "The Primary Cause" Of The Claimed Violation Of A Federal Right When It Determined That Overcrowding Was "The Primary Cause" Despite Its Finding That The Prisoner Release Order Would Not Remedy The Claimed Violations............... 7

      c. This Court Erred In Ordering A Prisoner Release Of Up To 46,000 Inmates Where, By This Court's Own Findings, No Nexus Exists Between The Proposed Population Reduction And The Delivery Of Constitutionally Adequate Medical Care To The Plata Class Or Mental Health Care To The Coleman Class ......... 8

    2. The Public Interest And Balance Of Hardships Weigh Strongly In The State's Favor ....................................................... 12

IV. CONCLUSION ................................................................... 15

1

# TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4

*Armstrong v. Davis,*
 275 F.3d 849, 870-73 (9th Cir. 2001) ................................................... 9, 11

5

6

*Britton v. Co-op Banking Group,*
 916 F.2d 1405, 1412 (9th Cir. 1990) ........................................................ 4

7

*Coleman* v. *Schwarzenegger, Plata* v. *Schwarzenegger,*
 2008 WL 4813371 (E.D. Cal./N.D. Cal. Nov. 3, 2008) ...................... passim

8

*Estelle v. Gamble,*
 429 U.S. 97, 104 (1976) ......................................................................... 11

9

10

*Golden Gate Rest. Ass'n v. City and County of San Francisco,*
 512 F.3d 1112, 1115-16 (9th Cir. 2008) ................................................... 3

11

*Hilton v. Braunskill,*
 481 U.S. 770, 776 (1987) ......................................................................... 2

12

*Hoptowit v. Ray,*
 682 F.2d 1237, 1249 (9th Cir. 1982) ........................................................ 9

13

*In re Wirecomm Wireless, Inc.,*
 2008 WL 3056491, at *3 (E.D. Cal. Aug. 1, 2008) .................................... 4

14

15

*Lopez v. Heckler,*
 713 F.2d 1432, 1435 (9th Cir. 1983) ........................................................ 3

16

*Natural Res. Def. Council, Inc. v. Winter,*
 502 F.3d 859, 863 (9th Cir. 2007) ............................................................ 3

17

**Statutes**

18

18 U.S.C. § 3626(a)(1)(A) ................................................................................. 9

19

18 U.S.C. § 3626(a)(3)(A) ................................................................................. 4

20

18 U.S.C. § 3626(a)(3)(E)(i) and (ii) .................................................................. 7

18 U.S.C. § 3626(a)(4)(A)(ii) ............................................................................. 6

21

28 U.S.C. § 1253 ......................................................................................... 1, 2

22

Fed. R. Civ. P. 62(c) ......................................................................................... 2

Violent Criminal Incarceration Act of 1995 ....................................................... 4

23

24

25

26

27

28

DEFENDANTS' MOTION TO STAY THREE-JUDGE COURT'S AUGUST 4, 2009 OPINION
AND ORDER PENDING APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES

2021999.1

# I.   INTRODUCTION

Defendants respectfully request a stay of this Three-Judge Court's August 4, 2009 Opinion and Order (August 4, 2009 Order or Order) pending appeal of this Order to the United States Supreme Court.  In its August 4, 2009 Order, this Three-Judge Court ordered Defendants to provide the Court within 45 days a plan to reduce the California Department of Corrections and Rehabilitation's (CDCR) adult institutions population by up to 46,000 inmates, or over 25 percent of CDCR's adult institutions population, within a two-year period.  (Aug. 4, 2009 Order at 183:2-4.)  The Supreme Court has jurisdiction over Defendants' direct appeal of this Court's August 4, 2009 Order under 28 U.S.C. § 1253.

The August 4, 2009 Order should be stayed pending appeal because Defendants have a strong likelihood of success on the merits, will be irreparably harmed absent a stay, the balance of hardships tips sharply in their favor, and the public interest weighs heavily in favor of granting the stay.  Defendants have satisfied the standards of Federal Rule of Civil Procedure 62 and are therefore entitled to a stay of the Order pending resolution of their appeal.

# II.   PROCEDURAL BACKGROUND

Plaintiffs filed separate motions to convene a three-judge court on November 13, 2006, with both the *Plata* and *Coleman* Courts simultaneously.  (*Plata* Docket No. 561.)  Over Defendants' objections, the *Plata* and *Coleman* Courts held a joint hearing on June 27, 2007, to determine whether to refer each case to a three-judge court.  On July 23, 2007, both the *Plata* and *Coleman* Courts granted Plaintiffs' motions to convene a three-judge court to determine whether a prisoner release order should issue.  (*Plata* Docket No. 780.)

Immediately following the *Plata* and *Coleman* Courts' orders convening this Three-Judge Court, Defendants filed a notice of appeal.  (*See Plata* Docket No. 799.)  The Ninth Circuit, however, dismissed Defendants' appeal for lack of jurisdiction, stating that "[t]he district court orders from which appellants seek to appeal can be effectively

DEFENDANTS' MOTION TO STAY THREE-JUDGE COURT'S AUGUST 4, 2009 OPINION
AND ORDER PENDING APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES

2021999.1

1   reviewed following the entry of a final order by the three-judge district court." (Sept. 11,

2   2007 Order; *Plata* Docket No. 885.)

3          On November 3, 2008, the Three-Judge Court denied the State's motion for

4   dismissal or, alternatively, summary judgment.  *See Coleman* v. *Schwarzenegger*, *Plata*

5   v. *Schwarzenegger*, 2008 WL 4813371 (E.D. Cal./N.D. Cal. Nov. 3, 2008).  The Three-

6   Judge Court commenced trial proceedings on November 18, 2008.  (*See* Minute Entry,

7   *Plata* Docket No. 1826.)  The Three-Judge Court subsequently entered its Opinion and

8   Order on August 4, 2009, granting Plaintiffs' request for a prisoner release order and

9   requiring Defendants to provide the Court with a plan to reduce CDCR's adult institutions

10  population by up to 46,000 inmates, as articulated by the Court, or over 25 percent of the

11  adult prison population, within two years' time.  (Aug. 4, 2009 Order at 183:2-4; *Plata*

12  Docket No. 2197.)

13         Defendants will be filing a Notice of Appeal of the August 4, 2009 Order.  The

14  Supreme Court has jurisdiction under 28 U.S.C. § 1253.  In order to give this Court a fair

15  opportunity to consider Defendants' stay request, Defendants will wait to request a stay

16  from the Supreme Court until Friday, September 4, 2009, at 12:00 p.m. if this Court

17  denies this request or fails to act by that time.

18                            **III.    ARGUMENT**

19  **A.    Defendants Are Entitled To A Stay Pending The Appeal Under Federal Rule
          of Civil Procedure 62.**

20

21         This Court is empowered, under Rule 62 of the Federal Rules of Civil Procedure,

22  to stay its August 4, 2009 Order to ensure that Defendants' rights are secured pending

23  appeal.  Fed. R. Civ. P. 62(c).  The Supreme Court has identified the following factors for

24  courts to consider in ruling on a motion for a stay of an order pending appeal: (1)

25  whether the applicant for a stay has made a strong showing of likelihood of success on

26  the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether

27  issuance of a stay will substantially injure the other parties in the proceeding; and (4)

28  where the public interest lies.  *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).  The Ninth

- 2 -

1   Circuit has held that consideration of those factors constitute "two interrelated legal tests"

2   where the moving party must show "that serious legal questions are raised and that the

3   balance of hardships tips sharply in its favor."  *Lopez v. Heckler*, 713 F.2d 1432, 1435

4   (9th Cir. 1983); *Golden Gate Rest. Ass'n v. City and County of San Francisco*, 512 F.3d

5   1112, 1115-16 (9th Cir. 2008).  These two tests are not mutually exclusive, but rather

6   represent two points on a sliding scale.  *Golden Gate Rest. Ass'n*, 512 F.3d at 1116.

7   Where, as here, the government and third parties are affected, the court must also

8   consider whether the public interest lies separately from and in addition to whether the

9   applicant will be irreparably injured absent a stay.  *Natural Res. Def. Council, Inc. v.*

10  *Winter*, 502 F.3d 859, 863 (9th Cir. 2007), *stay vacated on other grounds, remanded,*

11  508 F.3d 885 (9th Cir. 2007).

12        As explained below, a stay of this Three-Judge Court's August 4, 2009 Order

13  should be granted because not only do Defendants have a strong likelihood of success

14  on appeal, but the balance of equities weighs in Defendants' favor.

15        1.    Defendants Have Made A Strong Showing Of Likelihood Of Success On
16              The Merits Of Their Appeal.

17        There is a likelihood that the Supreme Court will conclude that this Three-Judge

18  Court's disposition of Defendants' motion for dismissal or, alternatively, for summary

19  judgment and the Court's post-trial Order were made in error.  The grounds on which

20  there is a likelihood of success on the merits are multiple.  For instance, as an initial

21  matter, the *Plata* Court improperly moved to convene this Three-Judge Court because,

22  as the *Plata* Court itself acknowledged, the Order Appointing Receiver has not failed.

23  Further, this Three-Judge Court improperly construed the requirement that crowding be

24  the "primary cause" of the claimed violation of a Federal right under the Prison Litigation

25  Reform Act (PLRA) when it determined that overcrowding was the "primary cause"

26  despite, *inter alia*, its finding that the prisoner release order would not remedy the

27  claimed violations.  Furthermore, the Order, in requiring the Defendants to reduce the

28  prison population by up to 46,000 inmates, as estimated by this Court, or over 25

- 3 -

1  percent of CDCR's adult institutions population, extends far further than necessary

2  because, by the Court's own findings, no nexus exists between the proposed population

3  reduction and the delivery of constitutionally adequate health care to the *Plata* or

4  *Coleman* classes.

5      Additionally, because this Court's August 4, 2009 Order is the first such prisoner

6  release order to be issued under the PLRA, Defendants' appeal presents a case of first

7  impression, which likewise weighs in favor of a stay pending appeal.  *In re Wirecomm*

8  *Wireless, Inc.*, 2008 WL 3056491, at *3 (E.D. Cal. Aug. 1, 2008) (noting that whether the

9  appeal presented an issue of first impression informed the Court's decision to grant a

10  stay pending appeal) (citing *Britton v. Co-op Banking Group*, 916 F.2d 1405, 1412 (9th

11  Cir. 1990)).

12          a.   The *Plata* Court's Determination To Convene This Three-Judge
               Court Was Erroneous Because The Receivership Had Only Just
13               Commenced, And The *Plata* Court Has Not Found That The
               Receivership Has Failed.
14

15      Under the PLRA, a prisoner release order is the "remedy of last resort" for

16  unconstitutional prison conditions.  (Aug. 4, 2009 Order at 8:18-19; H.R. Rep. No. 104-

17  21, at 25 (1995) (report of the House Committee on the Judiciary on the Violent Criminal

18  Incarceration Act of 1995)).  A three-judge court should not be convened to determine

19  whether a prisoner release order should issue unless: (i) a court has previously entered

20  an order for less intrusive relief that has failed to remedy the deprivation of the Federal

21  right sought to be remedied through the prisoner release order; and (ii) the defendant

22  *has had a reasonable amount of time to comply with the previous court orders*.  18

23  U.S.C. § 3626(a)(3)(A).

24      The PLRA's exacting standards were not met in the *Plata* case and this Three-

25  Judge Court should not have been convened.  The *Plata* Plaintiffs moved to convene a

26  three-judge court to obtain a prisoner release order just months after the *Plata* Court

27  appointed a receiver to take control of the delivery of medical care to California's

28  inmates, and still months before the Receiver's initial Plan of Action (Plan) was even

- 4 -

1  completed.  On February 14, 2006, the *Plata* Court appointed the Receiver effective April

2  17, 2006.  (Feb. 14, 2006 Order, *Plata* Docket No. 473.)  The Order Appointing Receiver

3  contemplated that, within 180-210 days after April 17, 2006, the Receiver would submit a

4  "detailed Plan of Action" that would include a "proposed time line for all actions and a set

5  of metrics by which to evaluate the Receiver's progress and success."  (*Id.* at 2:20-22,

6  2:27-3:1.)

7       On November 13, 2006, the Receiver moved for an extension of time to file his

8  Plan on the basis that it was premature at that stage of the Receivership to develop a

9  final corrective action plan.  (Nov. 13, 2006 Mot. for Extension of Time, *Plata* Docket No.

10  559.)  The Receiver proposed to file a revised Plan six months after the initial Plan on

11  May 15, 2007.  (*Id.* at 21:2-9.)  In granting the Receiver's requested extension, the *Plata*

12  Court found that the initial seven-month deadline for creating a Plan was not realistic

13  given the need to create the Receivership from the ground up and the complexity of the

14  remedial tasks.  (Dec. 19, 2006 Order, *Plata* Docket No. 590.)  On the same day that the

15  Receiver requested an extension of time to file his Plan, Plaintiffs filed a motion to

16  convene a three-judge court to obtain a prisoner release order.  (*See Plata* Docket No.

17  561.)

18       The Receiver filed his initial Plan on May 10, 2007.  One stated purpose of the

19  Plan was to "provide a comprehensive report to the Court, State officials, and the public

20  concerning the Receiver's long term plans as well as his specific plans for the next two

21  years."  (May 10, 2007 Report re Plan, 2:8-11, *Plata* Docket No. 657.)  Included in the

22  Plan was a list of projects that the Receiver intended to focus upon in the following 18 to

23  24 months, as well as an explanation that the Receiver anticipated "future iterations of

24  the Plan as various elements of the Plan are effectuated."  (*Id.* at 3.)  The Plan

25  characterized the short term as the following 18 to 24 months, and thus clearly

26  contemplated more than two years' time to remedy the claimed deficiencies in the

27  delivery of medical care to California's inmates with serious medical needs.

28       On July 23, 2007, a little over two months after the Receiver filed his initial Plan

DEFENDANTS' MOTION TO STAY THREE-JUDGE COURT'S AUGUST 4, 2009 OPINION
AND ORDER PENDING APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES

2021999.1

1   and four months before the revised Plan was due in November 2007, the *Plata* Court

2   granted Plaintiffs' motion to convene a three-judge court to consider a prisoner release

3   order.  By statute, however, the *Plata* Court could not refer Plaintiffs' request for a

4   prisoner release order to a three-judge court unless a sufficient period of time had

5   passed for satisfying all previous orders aimed at bringing the delivery of medical care

6   up to constitutional standards and the prior less intrusive relief had failed.  *See* 18 U.S.C.

7   § 3626(a)(4)(A)(ii).  But when the *Plata* Court ordered a three-judge court convened, a

8   sufficient amount of time had not passed to satisfy its most recent remedial order

9   appointing a Receiver, and the Receivership had not had sufficient time to complete its

10  Plan, much less to fail at implementing it.

11          The *Plata* Court stated that it was not required to "wait more time, potentially

12  years, to see whether the Receiver's plans will succeed or fail."  (July 23, 2007 Order at

13  6:25-26.)  The *Plata* Court held that it was not necessary for the court to wait and "see if

14  the Receiver's Plan of Action is able to remedy the constitutional deficiencies in this

15  case."  (*Id.* at 6:7-8.)  In doing so, however, the *Plata* Court acknowledged that the

16  Receiver had reported to the court that his "'Plan of Action' will work,'" and that "'those . .

17  . who think that population controls will solve California's prison health care problems . . .

18  are simply wrong.'"  (*Id.* at 7:14-16.)  Although the Receiver noted that population limits

19  "*may* help effectuate a more timely and cost effective remedial process," the Receiver

20  did not imply, nor did the district court find, that the Receiver had failed.  (*Id.* at 7:17-18

21  (emphasis added).)  To the contrary, the district court acknowledged that "the Receiver

22  has made much progress since his appointment."  (*Id.* at 6:10.)

23          On September 6, 2007 -- over one month *after* the *Plata* Court granted Plaintiffs'

24  motion to convene a three-judge court to consider a prisoner release order -- the district

25  court issued an order directing the Receiver to include in his next iteration of the Plan

26  "those objectives, and/or specific portions thereof, that the Receiver plans to achieve

27  within six months, 12 months and 36 months from the date of the November 15, 2007

28  Plan of Action."  (Sept. 6, 2007 Order at 4:11-14.)  It is evident from the September 6,

- 6 -

1  2007 order that the *Plata* Court did not expect the Receiver to resolve the claimed

2  deficiencies in California's prison medical care delivery system for a minimum of at least

3  three years after November 2007.  And yet, one month before, the court had already

4  determined that a three-judge court should be convened to entertain Plaintiffs' request

5  for a prisoner release order.

6      Because the *Plata* Court's referral, at the inception of the Receivership it had

7  ordered, of Plaintiffs' motion for a prisoner release order to a three-judge court was

8  premature and contravened the plain language of the PLRA, there is a substantial

9  likelihood that the Supreme Court will reverse the prisoner release order.

10          b.      This Court Improperly Construed The Requirement That Crowding
               Be "The Primary Cause" Of The Claimed Violation Of A Federal
11             Right When It Determined That Overcrowding Was "The Primary
               Cause" Despite Its Finding That The Prisoner Release Order Would
12             Not Remedy The Claimed Violations.

13      To obtain a prisoner release order, Plaintiffs were required to prove by clear and

14  convincing evidence that "crowding is the primary cause of the violation of a Federal

15  right" and that "no other relief will remedy the violation of the Federal right."  18 U.S.C.

16  § 3626(a)(3)(E)(i) and (ii).  The term "primary cause" must be read in conjunction with

17  the second, related requirement that "no other relief will remedy the violation of the

18  Federal right."  In other words, crowding must be so central to the condition complained

19  of that a prisoner release is the only remedy -- indeed, the "remedy of last resort" -- for

20  the claimed violation.

21      But as this court acknowledges, "the population reduction order sought by

22  plaintiffs is not by itself a panacea, and . . .  defendants' efforts to provide constitutionally

23  adequate mental health care must go beyond reducing prison overcrowding."  (Aug. 4,

24  2009 Order at 111:22-24.)  This court further recognizes that "additional steps will be

25  required after the prison population is reduced."  (*Id.* at 112:5-6; *see also id.* at 94:9-10:

26  "Other steps will be necessary to fully remedy the deficiencies in the CDCR's medical

27  and mental health care services.".)

28      Indeed, Plaintiffs' expert, Dr. Shansky, testified at trial that CDCR could release

- 7 -

DEFENDANTS' MOTION TO STAY THREE-JUDGE COURT'S AUGUST 4, 2009 OPINION
AND ORDER PENDING APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES

2021999.1

1   40,000 inmates and it would not solve deficiencies in medical care because the State

2   would still need to address the other interrelated components involved in the delivery of

3   quality medical care, including staffing, medical escorts, medical records, and medication

4   management.  (Rep. Tr. at 483:7-8.)  Similarly, the *Coleman* Special Master concluded

5   that a reduction in the number of *Coleman* class members will not appreciably impact

6   those class members with more intensive care needs, leaving a "largely unmitigated

7   need to provide intensive mental health services to program populations."  (Aug. 4, 2009

8   Order at 111:16-20.)  Though this Court concluded that the Special Master's statement

9   about a reduction by 100,000 inmates is "somewhat hyperbolic," the Special Master's

10  estimates are consistent with those estimates of Plaintiffs' expert, Dr. Stewart, which

11  were cited in the August 4, 2009 Order.[1]  In this context, it is likely that the Supreme

12  Court will find that the Three-Judge Court erred in concluding that it should impose upon

13  CDCR the "remedy of last resort" of a court-ordered reduction of over 25 percent of its

14  adult inmate population, despite its findings that this remedy will not resolve the claimed

15  violations.

16          The Three-Judge Court noted that the *Plata* Receivership and the *Coleman*

17  Special Master will continue to work to improve the alleged health care violations in

18  concert with the ordered reduction of the prisoner population.  But overcrowding cannot

19  be the "primary cause" of the claimed health care violations if further intrusive judicial

20  intervention, including the *Plata* Receivership and the *Coleman* Special Master, remains

21  necessary even after a 25 percent reduction in CDCR's adult inmate population.

22                    c.      This Court Erred In Ordering A Prisoner Release Of Up To 46,000
                              Inmates Where, By This Court's Own Findings, No Nexus Exists
23                            Between The Proposed Population Reduction And The Delivery Of
                              Constitutionally Adequate Medical Care To The *Plata* Class Or
24                            Mental Health Care To The *Coleman* Class.

25          The PLRA requires that all prospective relief, including a prisoner release order,

26  _____

27  [1] Dr. Stewart estimated that a reduction by 50,000 inmates would result in 8,500 fewer
    CCCMS inmates; the Special Master estimated that a reduction by 100,000 inmates
28  would result in 19,000 fewer CCCMS inmates which equates to slightly more than twice
    Dr. Stewart's estimate of 8,500.  (*See* Aug. 4, 2009 Order at 170:21-25.)

1    be "narrowly drawn, extend[] no further than necessary to correct the violation of the

2    Federal right, and [be] the least intrusive means necessary to correct the violation of the

3    Federal right."  18 U.S.C. § 3626(a)(1)(A).  The PLRA further requires the remedy to be

4    "tailored to the actual injuries suffered by class members."  (Aug. 4, 2009 Order at 53:13-

5    14, citing *Armstrong v. Davis*, 275 F.3d 849, 870-73 (9th Cir. 2001).)  The August 4,

6    2009 Order fails to meet the governing standards.

7         Significantly, "[o]vercrowding itself is not a violation of the Eighth Amendment."

8    *See Hoptowit v. Ray*, 682 F.2d 1237, 1249 (9th Cir. 1982).  The claimed injuries suffered

9    by the Plaintiff classes are the deprivation of minimally adequate medical and mental

10   health care to inmates with correspondingly serious needs.  The August 4, 2009 Order is

11   not directed at these injuries or these class members, but toward overcrowding and the

12   prison population generally.  The Three-Judge Court states that "[t]o be certain, the relief

13   sought by plaintiffs extends further than the identified constitutional violations in one

14   regard: Any population reduction plan developed by the state is likely to affect inmates

15   without medical conditions or serious mental illness."  (Aug. 4, 2009 Order at 121:24-26.)

16        According to this Court's estimate, the ordered reduction of over 25 percent of

17   CDCR's adult inmate population to 137.5% of design capacity will result in a reduction by

18   "approximately 46,000" inmates.  (Aug. 4, 2009 Order at 37:14-15; 130-27-131:1; 168:3-

19   4.)  This Court's findings, however, do not establish a relationship between the figure of

20   137.5% of design capacity and minimally adequate medical and mental health care, or a

21   nexus between the proposed reduction in the overall population by up to 46,000 inmates

22   and the members of the Plaintiff classes.  To the contrary, the Court's factual findings

23   refute a connection between the ordered population reduction and the delivery of

24   adequate medical and mental health care and the *Plata* and *Coleman* class members.

25        This court did not select 137.5% "design capacity" as the population cap for

26   California's 33 prisons based on a study that 137.5% design capacity was the maximum

27   population at which either minimally adequate medical or mental health care could be

28   provided to the *Plata* and *Coleman* classes.  Rather, the Three-Judge Court expressly

- 9 -

1  stated that it picked 137.5% design capacity because it is "halfway between the cap

2  requested by plaintiffs and the wardens' estimate of the California prison system's

3  maximum operable capacity *absent consideration of the need for medical and mental*

4  *health care.*"  (Aug. 4, 2009 Order at 130:23-27 (emphasis added).)  The population level

5  at which California's prisons can deliver the minimal level of medical and mental health

6  care required by the Constitution has never at any time been investigated, much less

7  established at trial.

8         Even though no study has ever been conducted to determine the population at

9  which California's prisons can provide constitutionally adequate medical and mental

10 health care, this Court concluded that "California's prisoner population *must* be reduced

11 to some level between 130% and 145% design capacity if the CDCR's medical and

12 mental health services are ever to attain constitutional compliance."  (Aug. 4, 2009 Order

13 at 130:9-11.)  In support of the 130% design capacity figure, the Three-Judge Court

14 relies on both "national standards and the Governor's own strike team, which adopted

15 those standards."  (*Id.* at 130:11-14.)  But the Three-Judge Court concedes, "we cannot

16 determine from the evidence whether the national standard selected by the Governor's

17 strike team represents a judgment regarding the mandates of the Constitution or whether

18 it merely reflects a policy that ensures desirable prison conditions."  (*Id.* at 130:14-17)

19 This Court also acknowledges that the purpose of the Governor's strike team was "[t]o

20 implement the prison building and prison reform projects authorized by AB 900."  (*Id.* at

21 127:11-13.)  The purpose of the Governor's strike team was not to determine the

22 maximum prison population for which constitutionally adequate medical and mental

23 health care could be provided to the *Plata* and *Coleman* classes.  Accordingly, the 130%

24 design capacity figure is not linked to provision of the minimally adequate medical or

25 mental health care the Constitution requires.

26        The Three-Judge Court recognizes that there are currently over 34,000 inmates

27 identified as *Coleman* class members.  (Aug. 4, 2009 Order at 22:13-14.)  The Court

28 also notes that as of December 2006, the *Coleman* Special Master had determined that

DEFENDANTS' MOTION TO STAY THREE-JUDGE COURT'S AUGUST 4, 2009 OPINION
AND ORDER PENDING APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES

2021999.1

1   "defendants still lacked clinical resources to meet the needs of some 25 to 30 percent of

2   inmates identified as seriously mentally disordered."  (*Id.* at 36:14-15.)  Thus, to remedy

3   deficiencies in care provided to 8,500-10,200 (25-30% of 34,000) seriously mentally ill

4   inmates, this Court ordered a reduction of up to 46,000 inmates from the overall prison

5   population.  This is not relief "tailored to the actual injuries suffered by class members."

6   *See Armstrong*, 275 F.3d at 870-73.

7          Further, as discussed above, according to this Court, Plaintiffs' expert, Dr.

8   Stewart, estimated that a 50,000-inmate reduction in the prison population would result

9   in around an additional 10,000 *Coleman* class members in the community, with about

10  8,500 of those at the lowest level of need.  (Aug. 4, 2009 Order at 170:20-25.)  While the

11  *Coleman* court's remedial efforts have focused on the higher levels of care, the August

12  4, 2009 Order would most significantly impact inmates with the lowest level of mental

13  health care need.

14         The Three-Judge Court does not even attempt to address the nexus between the

15  proposed population reduction and the members of the *Plata* class.  Again, in explaining

16  that the ordered relief "extends further than the identified constitutional violations in one

17  regard: Any population reduction plan developed by the state is likely to affect inmates

18  without medical conditions or serious mental illness," this Court overlooks the definition

19  of the *Plata* class itself.  (Aug. 4, 2009 Order at 121:24-26.)  The *Plata* class does not

20  consist of inmates with "medical needs" but inmates with "serious" medical needs.

21  Significantly, the meaning of "serious medical need" is established by law and is a

22  necessary prerequisite to the finding of an Eighth Amendment violation in the first

23  instance.  If an inmate does not have a "serious" medical need to which the State has

24  been deliberately indifferent, he cannot have suffered a constitutional injury.  *Estelle v.*

25  *Gamble*, 429 U.S. 97, 104 (1976).

26         Further, unlike the *Coleman* class, there is a complete dearth of evidence in the

27  record with respect to the number of *Plata* class members.  The August 4, 2009 Order

28  does not include an estimate of the number of inmates who have serious medical needs;

- 11 -

DEFENDANTS' MOTION TO STAY THREE-JUDGE COURT'S AUGUST 4, 2009 OPINION
AND ORDER PENDING APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES

2021999.1

1   the number of such inmates who require care at what level; the number of such inmates

2   who are not receiving constitutionally adequate care at the level they require; or how

3   many of the inmates with serious medical needs who are not receiving a constitutionally

4   adequate level of care would be among those inmates subject to the population

5   reduction.

6          The lack of factual support for the population cap selected by this Court and the

7   tenuous nexus between the size of the cap and the federal violations sustained by the

8   *Plata* and *Coleman* Plaintiffs create the likelihood of reversal on appeal.

9          2.    The Public Interest And Balance Of Hardships Weigh Strongly In The
              State's Favor.
10

11         In addition to having a strong likelihood of success on the merits, the balance of

12   hardships and public interest lie in Defendants' favor.  The public has a strong interest in

13   ensuring that the State does not take steps to cause an increase in crime.  As this

14   Three-Judge Court acknowledged in its August 4, 2009 Order, the facts at trial

15   established that such a dramatic reduction in California's prison population is likely to

16   result in increased crime.  According to this Court, "California's incarceration rate for

17   prisoners sentenced to more than one year in state or federal prisons is about 475 per

18   100,000." (Aug. 4, 2009 Order at 133:26-28.)[2]  "California does not incarcerate felons at

19   an unusually high rate . . . and the average prison sentence imposed and served in

20   California is lower than the national average." (*Id.* at 133:28-134:2.)  Further, this Court

21   acknowledges, "there is likely some correlation between incarceration rates and crime

22   rates.  Indeed, according to Plaintiffs' experts, some studies have concluded that every

23   ten percent increase in the incarceration rate results in a two to four percent decrease in

24   the crime rate . . . and the massive incarceration rates have contributed to a 25%

25   reduction in violent crime across the United States." (*Id.* at 173:1-6.)  This Court also

26   notes, "At its present incarceration rate of 470 per 100,000, California is close to the

27   

28   [2] As noted below, this court later identifies the incarceration rate as 470 per 100,000
    residents, which was correct at the time of trial.

- 12 -

1   inflection point at which *further incarceration* would not be productive." (*Id.* at 173, n.88

2   (emphasis added).)

3          But the Order does not cap California's prison population at its current, relatively

4   average incarceration rate.  Quite the contrary, it requires California to substantially roll

5   back its incarceration rate by over 25 percent.  Moreover, studies have not only shown

6   that "every ten percent increase in the incarceration rate results in a two to four percent

7   decrease in the crime rate" (as this Court notes), but an October 2006 study which

8   Plaintiffs' expert cited, and to which this Court refers, found that a 10 percent decrease in

9   the incarceration rate leads to a statistically significant 3.3 percent increase in crime

10  rates, unless evidence-based programming is expanded.  (*See* Aug. 4, 2009 Order at

11  173:10-16; *see also* Rep. Tr. at 2029:15-2032:19; Ex. 1331 at 10, 15.)  Applying those

12  findings here, unless evidence-based programming were expanded by some unstated

13  amount at some unstated additional cost, one would expect the ordered prison

14  population to result in a statistically significant increase of over 6.6 percent in California's

15  crime rate.

16         Additionally, as this Three-Judge Court acknowledged, already-strained county

17  resources will be negatively impacted by the reduction in the inmate population

18  proposed by this Court.  In particular, to the extent that inmates released into the

19  communities as a result of the ordered population reduction receive county services,

20  they will displace other people who are currently receiving services.  (Aug. 4, 2009 Order

21  at 165:4-7.)  County services should not be further strained and members of the

22  community should not be displaced from needed services, unless and until the ordered

23  population reduction is fully and finally determined to be consistent with the law.

24         Additionally, absent a stay from this Court, California will be required to fund

25  CDCR's efforts to create a plan to reduce the State's adult inmate population by 25

26  percent over the next 2 years.  This task will require the State to expend its limited

27  resources on a task that was erroneously ordered by the Three-Judge Court.  CDCR is

28  facing a $1.2 billion reduction in its budget and needs to focus its limited resources on

- 13 -

1    safely implementing that budget reduction.

2           If the Supreme Court concludes that the August 4, 2009 Order was issued

3    erroneously, the State's scarce funds expended in developing a plan will be wasted.

4    Given the State's severe financial crisis, that money represents funds that would be

5    taken away from essential corrections functions or other essential programs.  As this

6    Three-Judge Court acknowledged in its August 4, 2009 Order, "California has reduced

7    spending on education, health care, the social safety net, and services for the needy, the

8    blind, and children to the breaking point.  Under these circumstances, we would be

9    reluctant to direct the state to allocate additional funds to its prisons or rehabilitative

10   services at the expense of others to whom it has a legal and moral obligation."  (Aug. 4,

11   2009 Order, fn. 4.)

12          The hardship that would befall the State in terms of requiring it to expend its

13   scarce resources on a potentially unnecessary plan outweighs any potential harm that

14   may befall the Plaintiff classes in the interim.  This Court already indicated its willingness

15   to entertain a stay of implementation of a prisoner reduction plan pending appeal to the

16   Supreme Court, and there is no reason to believe that the Plaintiff classes will be any

17   more injured if a stay is granted now, than if a stay is granted after the State creates a

18   plan.  (*See* Aug. 4, 2009 Order at 183:23-26.)  Nonetheless, remedial measures are

19   currently ongoing in both *Plata* and *Coleman*.  The State, however, unquestionably will

20   be irreparably harmed by expending limited and valuable resources on the creation of a

21   prisoner reduction plan that may not be necessary in the Supreme Court's determination.

22          Moreover, because the ordered overall population reduction has no nexus to the

23   affected classes and would provide them with no immediate relief, the balance lies in

24   favor of mitigating public safety in California and preserving the management of the

25   State's prison system to the Legislative and Executive branches of the State itself, until

26   the case is determined on the merits.

27           Accordingly, the public interest and the balance of hardships both weigh in favor

28   of allowing the Supreme Court to rule on Defendants' appeal before requiring the State

- 14 -

1  to create a plan to reduce its adult inmate population by 25 percent or more within two

2  years.

3  ## IV.   CONCLUSION

4       For the reasons articulated above, Defendants respectfully request that the

5  Three-Judge Court stay any and all further proceedings before it, including any and all

6  proceedings related to its August 4, 2009 Order, pending the resolution of the

7  Defendants' appeal to the United States Supreme Court.

8  DATED:  September 1, 2009            HANSON BRIDGETT LLP

9

10                             By: /s/ Paul B. Mello

11                                PAUL B. MELLO
        Attorneys for Defendants

12      Arnold Schwarzenegger, et al.

13  DATED:  September 1, 2009            EDMUND G. BROWN JR.
        Attorney General of the State of California

14

15

16                             By: /s/ Kyle Lewis

17                                KYLE LEWIS
        Deputy Attorney General

18      Attorneys for Defendants
        Arnold Schwarzenegger, et al.

19

20

21

22

23

24

25

26

27

28

- 15 -