1   JOAN A. MARKOFF
    Chief Counsel, Bar No. 121787
2   LINDA A. MAYHEW
    Assistant Chief Counsel, Bar No. 155049
3   CHRISTOPHER E. THOMAS
    Labor Relations Counsel, Bar No. 186075
4   Department of Personnel Administration
    State of California
5   1515 S Street, North Building, Suite 400
    Sacramento, CA  95811-7258
6   Telephone:  (916) 324-0512
    Facsimile:  (916) 323-4723
7   E-mail:  christhomas@dpa.ca.gov

8   Attorneys for Edmund G. Brown Jr., Governor of the State of California

9

10                  UNITED STATES DISTRICT COURT

11                NORTHERN DISTRICT OF CALIFORNIA

12  MARCIANO PLATA, et al.,          )  Case No. C01-1351-T.E.H.
                                     )
13          Plaintiff,               )  CLASS ACTION
                                     )
14      v.                           )  **MOTION TO CLARIFY COURT ORDER**
                                     )  **OF OCTOBER 17, 2006; NOTICE OF**
15  EDMUND G. BROWN JR., et al.,     )  **MOTION; MEMORANDUM OF POINTS**
                                     )  **AND AUTHORITIES IN SUPPORT OF**
16          Defendant.               )  **MOTION**
                                     )
17                                   )  Date:  July 18, 2011
                                     )  Time: 10:00 a.m.
18                                   )

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ...................................................................1

POINTS AND AUTHORITIES IN SUPPORT OF MOTION.....................................1

I.      INTRODUCTION ............................................................................1

II.     PROCEDURAL AND FACTUAL BACKGROUND............................3

     A.     The Court-Ordered Salary Increases..........................................3

     B.     The Labor Market Adjustments Demanded By SEIU ..................4

     C.     The Impact Of Court-Ordered Salaries On Nursing Vacancy Rates..........................................................................................6

III.    STATEMENT OF THE ISSUES TO BE DECIDED............................8

IV.   ARGUMENT ....................................................................................8

     A.     This Court Has Authority To Clarify Its Own Order....................8

     B.     Why Are We Here Now?  -- This Motion Is Not Premature .......9

          1.     This Court Should Clarify Its Prior Order In The Interest Of Comity ...........................................................9

     C.     This Court Should Clarify Its Order To Confirm That Its Order Superseded The Salary Ranges Already Set Through Collective Bargaining .................................................................10

     D.     This Court Should Clarify Its Order To Ensure The Waiver Of State Law Is Done In The Least Intrusive Manner Possible.....................12

     E.     This Court Should Clarify Its Order Because Its Order Has Been Misinterpreted By An Arbitrator, And By A California Trial Court..................................................................................14

V.      CONCLUSION..................................................................................14

1

2

## TABLE OF AUTHORITIES

3

**Page**

**FEDERAL CASES:**

4

5

*Martinez v. Schwarzenegger*
    2009 Westlaw 2079718 (N.D. Cal. 2009)..............................................................8

6

*U.S. v. Spallone*
    399 F.3d 415 (2d Cir. 2005)...................................................................................8

7

8

**FEDERAL STATUTE:**

9

18 United States Code section 3626(a)(1) ......................................................................12

10

11

**CALIFORNIA STATUTES:**

12

Government Code section 3516.5......................................................................................3
Government Code section 3517..........................................................................................3

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES TO THE CASE AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on July 18, 2011, at 10:00 a.m., or as soon thereafter as counsel may be heard, in the Courtroom of Honorable Judge Thelton E. Henderson, located at San Francisco Courthouse, Courtroom 12, 19th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Governor Edmund G. Brown Jr. will, and hereby does, move the Court to clarify its prior Court Order of October 17, 2006.  This motion is based upon this Notice of Motion and Motion; the accompanying Points and Authorities in support thereof; the Declaration of Julie Chapman in support thereof; the Request for Judicial Notice filed herewith; the pleadings, declarations and other papers on file in this action; such matters of which the Court may take judicial notice; and such further argument and evidence which may be presented at or before the hearing.

In particular, Governor Brown respectfully requests this Court clarify its prior Order to confirm that it intended the Order to replace, not augment, the salary ranges previously established through collective bargaining.  In the process, the Governor asks the Court to specify that the nurses in state bargaining units 17 and 20 who received court-ordered pay increases in October 2006 should continue to receive those pay increases, but not the labor market adjustments bargained by the Service Employees International Union (SEIU), Local 1000, and the California Department of Personnel Administration (DPA) prior to the issuance of the Court Order.

**POINTS AND AUTHORITIES IN SUPPORT OF MOTION**

**I.     INTRODUCTION**

The relief requested by Governor Brown in this motion will not take away one penny from the salary ranges presently earned by state clinical employees working at the direction of the Receiver.  In October 2006, this Court ordered large increases (i.e. the *Plata* increases) to the salary ranges of personnel responsible for delivering health care services to California's prisoners as part of the efforts by the Court to ensure the State of California will deliver health care to inmates in a manner that meets minimal constitutional requirements.  In many cases, the impacted nurse classifications received court-ordered salary range increases in the range of 30% to 60%.  Governor Brown supports the pay increases and does not wish to disturb them.  Instead, Governor Brown

1    brings this motion in order to prevent certain nursing classifications in state bargaining units 17 and

2    20 from receiving an additional and unnecessary salary windfall on top of the *Plata* increases,

3    pursuant to the decision of a labor arbitrator who has misconstrued this Court's prior Order.

4    Governor Brown believes that the Court intended in its Order to establish new salary levels

5    for clinical personnel that would replace, not augment, the prior salary levels set through negotiation

6    between the state employer and state employee organizations.  Nonetheless, SEIU has taken the

7    position that many of its members in bargaining units 17 and 20 are entitled to receive not only the

8    *Plata* increases, but additional labor market adjustments (LMAs) (7.5% for various unit 17 nurse

9    classifications, 5% for various unit 20 nurse classifications) established through collective

10   bargaining which predated the Court's October 2006 Order.  Unfortunately, the SEIU position was

11   incorrectly adopted by an arbitrator and by a state trial court despite the fact that this Court never

12   required payment of the additional labor market adjustments on top of the *Plata* increases, and

13   notwithstanding the fact that the LMAs are unnecessary to deliver acceptable nurse staffing levels.

14   Governor Brown brings the current motion to prevent the unjust enrichment and unintended

15   consequences that would occur should the nurses represented by SEIU receive both the *Plata*

16   increases and the labor market adjustments.  The Office of State Controller has informed DPA that,

17   if the State of California is forced to pay the labor market adjustments to the bargaining unit 17 and

18   20 personnel that already received the *Plata* increases, it will cost the State at least $10.7 million

19   dollars to compensate the impacted individuals for time already worked.  Notably, this figure does

20   not include the State's potential liability for future LMA payments, which is considerable.  Governor

21   Brown therefore respectfully requests this Court clarify its prior Order to confirm that it intended the

22   Order to replace, not augment, the salary ranges previously established through collective

23   bargaining.  In the process, the Governor asks the Court to specify that the nurses in state bargaining

24   units 17 and 20 that received court ordered pay increases in October 2006 should continue to receive

25   those pay increases, but not the cumulative benefit of the LMAs in addition to the court-ordered

26   increases.

27   / / /

28   / / /

Motion To Clarify Court Order Of October 17, 2006                                    Case No. C01-1351-T.E.H.

1  **II.     PROCEDURAL AND FACTUAL BACKGROUND**

2          **A.     The Court-Ordered Salary Increases**

3          In February 2006, this Court appointed a Receiver to take control of the delivery of medical

4  services for prisoners confined in California state prisons.  *Request for Judicial Notice*, Ex. 4.  In that

5  Order, the Court described the process by which the Receiver could seek a waiver of governing state

6  laws, regulations, and contracts.  *Id.* at 5.  The Court's Order contemplated that the Receiver should

7  request a waiver of state authorities if "the Receiver finds that a state law, regulation, contract, or

8  other state action or inaction is clearly preventing the Receiver from developing or implementing a

9  constitutionally adequate medical health care system, or otherwise preventing the Receiver from

10  carrying out his duties as set forth in [the] Order, and that other alternatives are inadequate."  *Id.*

11  The Court Order also specified that such a waiver of state law would be needed only as a last resort.

12  According to the Order, the Receiver "shall make all reasonable efforts to exercise his powers…in a

13  manner consistent with California state laws…"  *Id.*

14          The Receiver filed a motion for waiver of state law on September 12, 2006.  *Request for*

15  *Judicial Notice*, Ex. 5.  The Receiver argued in the motion that he needed this Court to waive various

16  state laws and regulations in order to address staffing shortages within California's prison medical

17  system, both inside the prisons and within the Department of Corrections and Rehabilitation (CDCR)

18  Central Office in Sacramento.  *Id.*  In the motion, the Receiver proposed new salary ranges for

19  clinical personnel employed by CDCR which would dramatically raise the salaries of designated

20  state civil service classifications.  *Id.*  The Receiver requested a waiver of various state laws,

21  including state collective bargaining statutes (see, e.g., Gov. Code sections 3516.5 and 3517) in

22  order to obtain immediate salary increases for certain clinical personnel, including various nursing

23  classifications within state bargaining units 17 and 20.  *Id.*  Defendants supported the specific salary

24  increases requested in the Receiver's motion.  *Request for Judicial Notice*, Ex. 6.

25          On October 17, 2006, this Court granted the Receiver's motion for a waiver of state law, and

26  ordered the specific pay increases (i.e. the *Plata* increases) sought by the Receiver.  *Request for*

27  *Judicial Notice*, Ex. 7.  The Court indicated that its remedy "extends no further than necessary to

28  correct an ongoing violation of a federal right, and is the least intrusive means necessary to correct

-3-

1  these violations." *Request for Judicial Notice*, Ex. 7 at 11.  The Court further explained in its Order

2  that "this relief will impose no unnecessary burden on defendants." *Id*. at 12.  Although the Court

3  emphasized in the Order that it did not intend to relieve the State of California from its ongoing

4  obligation to collectively bargain salaries, the Order nonetheless mandated the payment of new

5  salary ranges for clinical personnel that replaced the salaries that the state employer and state

6  employee organizations had previously agreed to in collective bargaining.  *Id*. at 11.  After the Court

7  ordered the increased compensation for designated clinical personnel, the State of California

8  increased salaries, effective September 2006, in compliance with the Court's Order.  *Chapman Decl*.

9  ¶ 10.  As a result of the court-ordered pay adjustments, the impacted nurse classifications received

10  very large salary range increases, many of them in the range of 30% to 60%.  *Chapman Decl.* ¶ 9.

11         **B.      The Labor Market Adjustments Demanded By SEIU**

12         In June 2006, SEIU, the state employee organization representing state bargaining units 17

13  and 20, reached a collectively bargained agreement with DPA.  *Chapman Decl*. ¶ 3.  The

14  Memorandum of Understanding (MOU) reached by the parties contained labor market adjustments

15  of 7.5% for certain bargaining unit 17 nurse classes and 5% for certain bargaining unit 20 nurse

16  classes, effective January 1, 2007.  *Id*.  In the MOU, the parties agreed that the LMAs would

17  increase the maximum salary range of the affected employees.  *Id*.  DPA agreed to pay these LMAs

18  in recognition that the previously existing salary ranges of the designated unit 17 and 20

19  classifications were lagging behind fair market value for the jobs performed.  *Id*.  The California

20  Legislature and the Governor approved the MOUs, which became effective on September 6, 2006,

21  before this Court ordered the *Plata* increases.  *Chapman Decl*. ¶¶ 4-5.

22         However, the State of California did not in fact issue the labor market adjustments to the

23  nurse classifications in bargaining units 17 and 20 who had already received the *Plata* increases.[1]

24  *Chapman Decl.* ¶ 10.  The State declined to issue the adjustments, as it believed such pay raises were

25  _____

26         [1]  The unit 17 and 20 nurse classes that received the *Plata* increases are Nurse Consultants,
    Nurse Anesthetists (CF), Public Health Nurse (CF), Registered Nurse (CF), Surgical Nurse (CF),
27  Nurse Practitioner (CF), Nurse Instructor (CF), and Licensed Vocational Nurse (CDCR).  See
    Chapman Decl. ¶¶ 6-7.
28

-4-

1   subsequently subsumed by the larger *Plata* increases awarded by this Court.  *Id.*  Thereafter, in April

2   2007, SEIU filed a contractual grievance claiming that its affected members should receive the

3   LMAs in addition to the *Plata* increases.  *Chapman Decl.* ¶ 14.  On July 2, 2008, an arbitrator ruled

4   against the State in this dispute, and awarded the labor market adjustments to SEIU.  *Request for*

5   *Judicial Notice*, Ex. 1.  The arbitrator based his reasoning in part on the fact that the Receiver's

6   motion for a waiver of state law did not address the just negotiated MOU that was in effect at the

7   time of the motion.  *Id.* at 6.  The arbitrator concluded that because the Receiver's motion did not

8   address the MOU, the motion and subsequent order of this Court did not preclude the impacted

9   employees from receiving both the LMAs and the *Plata* increases.  *Id.*

10          The State of California filed a petition to vacate the arbitration decision in state superior

11   court, however the state trial court refused to vacate the decision.  *Request for Judicial Notice,* Ex. 2,

12   *State of California et al v. Service Employees International Union, Local 1000*, Sacramento County

13   No. 34-2008-50000018.  The trial court interpreted this Court's Order as allowing both the labor

14   market adjustments and the *Plata* increases since the Order expressly indicated it was not intended to

15   abrogate the State's collective bargaining obligations.  *Id.* at 7.  The trial court also suggested that, if

16   the State of California believed that applying the labor market adjustments in addition to the *Plata*

17   increases resulted in the State paying an above-market windfall to bargaining unit 17 and 20

18   employees, that the State could present their argument directly to the Receiver.  *Id.* at 11, fn.11.

19   Neither the arbitrator nor the trial court recognized that this Court's October 2006 Order subsumed

20   previously negotiated collective bargaining salary terms, including the LMAs at issue.

21          The State appealed this decision to the California Third District Court of Appeal, and the

22   matter remains pending on appeal.  *Request for Judicial Notice,* Ex. 3, *State of California et al. v.*

23   *Service Employees International Union, Local 1000*, Third District Court of Appeal No. C066531.

24   During the pendency of this litigation, DPA has not paid the LMAs to the bargaining unit 17 and 20

25   personnel that already received the *Plata* increases.  *Chapman Decl.* ¶ 10.  The Office of State

26   Controller has informed DPA that, if the State of California is forced to pay the labor market

27   adjustments to the bargaining unit 17 and 20 personnel that already received the *Plata* increases, it

28   / / /

-5-

Motion To Clarify Court Order Of October 17, 2006                                    Case No. C01-1351-T.E.H.

will cost the State at least $10.7 million dollars to compensate the impacted individuals. *Chapman Decl.* ¶ 21. This figure does not even include the State's considerable, additional liability for future LMA payments. *Id.*

### C. The Impact Of Court-Ordered Salaries On Nursing Vacancy Rates

Since the onset of the *Plata* increases, the vacancy rates for the impacted nurse classes have improved significantly. Prior to the *Plata* increases, in November 2005, a report by the Correctional Expert found the vacancy rate for registered nurses was 39%. *Request for Judicial Notice,* Ex. 5 at 4. However, in the Receiver's eleventh tri-annual report filed with the Court, the Receiver announced that its goal of filling 90% or more of nursing positions "was accomplished as of November 2008." *Request for Judicial Notice,* Ex. 9. More recent reports by the Receiver confirm this. The following data is derived from the Receiver's tri-annual reports filed with this Court, with a particular emphasis on the Registered Nurse (RN) and Licensed Vocational Nurse (LVN) classifications because these two classifications comprise over 95% of the total established nursing positions in bargaining units 17 and 20 that received the *Plata* increases. *Request for Judicial Notice,* Exs. 10 to 13; *Chapman Decl.* ¶ 18.

| Receiver's Recruitment and Retention Reports – Percentage Of Positions Filled | | | | |
|---|---|---|---|---|
| **Classification** | **Receiver's 12th Tri-Annual Report, App. (June 2009)** | **Receiver's 14th Tri-Annual Report, App. 5 (Jan. 2010)** | **Receiver's 15th Tri-Annual Report, App. 4 (May 2010)** | **Receiver's 17th Tri-Annual Report, App. 4 (March. 2011)** |
| Registered Nurses | 93% | 92% | 96% | 95% |
| Licensed Vocational Nurses | 88% | 91% | 96% | 93% |
| Total Nurses[2] | 90.71% | 90.47% | 93.50% | 93.79% |

_____

[2] The Receiver's reports combine six classifications under "nursing positions." The RN and LVN positions are the only listed positions represented by SEIU in state bargaining units 17 or 20.

_____

-6-

The Receiver's data demonstrates that CDCR no longer has a recruitment and retention problem with respect to its nursing positions.

The data derived from the Office of the State Controller by DPA tells a similar story. A summary of the vacancy rate data obtained from the Controller regarding these two classifications reveals the following vacancy rates during the pertinent time periods:

| Vacancy Rates For RN And LVN Classifications | | | | | |
|---|---|---|---|---|---|
| Classification | December 30, 2005 Before *Plata* increases | June 30, 2007 Shortly After *Plata* increases | June 30, 2009 Just Before Third Day Furloughs | December 30, 2010 Before Latest Position Increases | March 30, 2011 Most Current Data |
| Registered Nurse Corr. Facility | 33.80% | 14.69% | 10.20% | 9.40% | 11.59% |
| Licensed Vocational Nurse, CDCR | Class not yet created | 45.18% | 11.36% | 9.85% | 11.31% |
| Total Combined Vacancy Rates For All Nursing Classes | 32.93% | 25.42% | 10.80% | 9.78% | 11.63% |

The statistics further illustrate that the *Plata* increases have resolved the nursing shortage problems that previously existed. In fact, even the onset of three-day per month furloughs in July 2009 did not significantly impact vacancy rates for the affected classes. See *Chapman Decl*. ¶ 19. The individuals in the impacted nursing classifications were all subject to three days of unpaid furloughs per month from July 2009 to October 2010, a drop in cash compensation of roughly 15%.

1    *Id.* But notwithstanding the furloughs, the salaries for nurses have remained sufficiently high to

2    keep nursing positions filled. Moreover, the current vacancy rates, as of March 30, 2011, for the RN

3    and LVN classifications are even better than they initially appear because the total number of

4    established positions in these two classifications has recently increased significantly. *Chapman*

5    *Decl.* ¶ 20. From December 30, 2010 to March 30, 2011, the total number of established RN

6    positions has risen from 1,711 to 1,804. *Id.* During the same time period, the total number of

7    established LVN positions has increased from 1,138 to 1,305. *Id.* The RN and LVN vacancy rates

8    are likely to fall even further in the future as more of the newly established positions are filled. *Id.*

9    In any event, the data collected by DPA confirms that the staff shortage problems in the nursing

10   classifications have been resolved. Finally, it is critical to note this staffing shortage was resolved in

11   the <u>absence</u> of payment of the LMAs to bargaining unit 17 and 20 personnel.

12   **III.    STATEMENT OF THE ISSUES TO BE DECIDED**

13       The issue to be decided in this motion is whether this Court should clarify its prior Order of

14   October 17, 2006 to confirm that it intended the Order to replace, not augment, the salary ranges

15   previously established through collective bargaining.

16   **IV.    ARGUMENT**

17       **A.    This Court Has Authority To Clarify Its Own Order**

18       As a preliminary matter, this Court has inherent authority to clarify its own Order. For

19   example, in *U.S. v. Spallone* 399 F.3d 415 (2d Cir. 2005), a defendant challenged the decision of a

20   district court to interpret its own court order regarding the terms of a criminal conviction. *Id.* at 421.

21   On appeal, defendant contended that the federal district court lacked the power to modify or correct

22   his criminal sentence. *Id.* The Second Circuit disagreed and expressly concluded "where an order or

23   judgment is unclear, a court retains inherent authority to interpret ambiguities." *Id.* at 421.

24   Similarly, in *Martinez v. Schwarzenegger* 2009 Westlaw 2079718 (N.D. Cal. 2009) [attached hereto

25   as Exhibit 1 for the Court's convenience], the court issued an injunction against the California

26   Department of Social Services restraining the department from implementing a new law which

27   would have reduced the State's maximum contribution to wages and benefits for In-Home Support

28   Services. *Id.* After the department failed to implement the injunction in a manner acceptable to

-8-

plaintiffs, the plaintiffs requested a more specific injunction from the court. *Id.* The court clarified its injunction by further specifying the particular means by which the department should comply with the injunction. *Id.*

Likewise, this Court should clarify its Order in this case. The Court should clarify its Order to resolve the ongoing dispute as to the meaning of the Court Order, and to specify that the Court intended the *Plata* increases to replace the salary ranges previously set through collective bargaining by the parties prior to the issuance of the Order.

**B.     Why Are We Here Now?  -- This Motion Is Not Premature**

Although Governor Brown could theoretically wait until the conclusion of the appeal in the state court litigation to make this motion, such a course of action is not prudent because at that point the State would be required to either issue the large labor market adjustment pay increases or seek immediate relief from this Court, probably on an *ex parte* basis, so as not to risk contempt charges in the state court proceedings. Governor Brown instead seeks to be proactive in bringing this motion, so that if the State does not prevail in the state court proceedings there will already be a mechanism in place to alleviate the State from the burden of making unnecessary and costly salary payments in excess of what the federal court actually intended to require. Therefore, the Governor is requesting this Court clarify its prior Order now in order to avoid a flurry of rushed litigation in this Court later on, once the state court proceedings finally conclude.

**1.     This Court Should Clarify Its Prior Order In The Interest Of Comity**

The interest of comity calls for a decision now from this Court as to the meaning of its prior Order. If Governor Brown instead waited to bring this motion until the state court rendered a final decision in *State of California et al. v. Service Employees International Union, Local 1000*, Third District Court of Appeal No. C066531, the Governor would essentially be requesting this Court overrule a state court judgment. However, in this motion, Governor Brown is not asking for this Court to overturn the final decision of a state court, but merely requesting that this Court clarify its own prior Order pursuant to its inherent authority to do so. By granting this motion now, the Court would be offering appropriate guidance to the parties as to the meaning of its prior Order without intruding upon a final state court judgment.

-9-

**C.**   **This Court Should Clarify Its Order To Confirm That Its Order Superseded The Salary Ranges Already Set Through Collective Bargaining**

Governor Brown respectfully requests the Court clarify its Order to confirm that it intended its Order to replace, not augment, the salary ranges already set through collective bargaining.  Such a clarification would be consistent with the Receiver's original motion.  When the Receiver initially brought his motion, the Receiver sought new, higher salaries for designated health care personnel to replace collectively bargained salaries that the Receiver deemed inadequate.  *Request for Judicial Notice*, Ex. 5.  In arguing for the salary increases, the Receiver indicated generally that the salary increases previously bargained by DPA did not contain sufficient increases in pay.  *Id.* at 6-7.  The Receiver therefore proposed a new salary structure in his motion, containing minimum and maximum salary ranges for designated health care personnel.  *Id.*  The Receiver based his proposed salary ranges on prevailing market rates offered by the State through the University of California health care system.  *Id.* at 7.  Nothing in the Receiver's motion suggests that the Receiver contemplated that the labor market adjustments already bargained by DPA and SEIU should be tacked on to the new, proposed salary structure.  To the contrary, the Receiver requested only a "narrowly drawn waiver of California law."  *Id.* at 14.   The Receiver's motion therefore contemplated new salary ranges that would replace, not augment, the salary ranges previously established through collective bargaining.

The clarification requested by Governor Brown is also consistent with the apparent intent underlying this Court's original Order.  In its Order, the Court adopted the Receiver's new, proposed salary ranges for clinical personnel.  *Request for Judicial Notice,* Ex. 7 at 11.  In its rationale, the Court explained it lacked confidence that the State would succeed in adequately raising salaries through the normal collective bargaining process.  *Id.* at 9.  Thus, it appears the Court intended the *Plata* increases to replace the salary ranges established through collective bargaining because it deemed the collectively bargained salary ranges inadequate.  Again, nothing in the Court's Order suggests that the state law waiver was designed to compel the State to pay both the *Plata* increases and the labor market adjustments at issue here.  While the Order indicated that it did not relieve the State of its usual collective bargaining obligations, this reference in the Order presumably applied

-10-

1   only to future collective bargaining efforts. *Id*. at 11. The State believes that prior collective

2   bargaining efforts, including the LMAs at issue here, were necessarily subsumed by the new salary

3   ranges in the Court's Order.

4       Additionally, the clarification requested by Governor Brown is consistent with the

5   subsequent actions of the parties after the Court Order. For example, in April 2007 at the direction

6   of the Receiver, the State phased out the LVN (Safety) classification and established in its place a

7   new LVN-CDCR classification. *Chapman Decl*. ¶ 11. In conjunction with the creation of the new

8   classification, individuals in the LVN (Safety) classification were reallocated to the LVN-CDCR

9   classification, effective April 1, 2007. *Id.* Even though the creation of the new classification

10  occurred after the date the LMAs had originally been scheduled to commence, the Receiver sought

11  salary ranges for the new LVN-CDCR classification which matched the salary ranges previously

12  ordered by the Court in October 2006 for the LVN (Safety) classification, but did not include the

13  LMAs bargained in June 2006. *Chapman Decl*. ¶ 12. If the Receiver had intended in his original

14  motion to seek the labor market adjustments for the nurses on top of the *Plata* increases, the

15  Receiver presumably would have required the State to include these LMAs in the salary ranges for

16  the new LVN classification in April 2007. Further, after SEIU learned of the proposed new LVN-

17  CDCR classification, SEIU declined to negotiate over the proposed salary ranges suggested by the

18  Receiver. *Chapman Decl*. ¶ 13. SEIU instead sent a letter to DPA on this issue in which it

19  emphasized that "the Union is not invoking our right to negotiate over the classification

20  specifications and the compensation in this particular instance." *Chapman Decl*. ¶ 13, Ex. 1.

21      Similarly, the Receiver entered into a stipulation with DPA in January 2008 which allowed

22  LVNs to receive a 3.4% general salary increase, effective July 1, 2007. *Request for Judicial Notice*,

23  Ex. 8. In the stipulation, DPA and the Receiver agreed that LVNs could receive the general salary

24  increase of 3.4% in addition to the *Plata* increases already ordered by the Court. *Id.* This sort of

25  stipulation is notably absent with respect to the labor market adjustments at issue here. If the

26  Receiver had intended in his original motion that the State should automatically pay previously

27  bargained salary increases on top of the *Plata* increases, the Receiver would have had no need to

28  enter into a specific stipulation with DPA regarding the 3.4% general salary increase.

-11-

1    In short, Governor Brown believes the clarification it seeks regarding the October 2006

2    Order is consistent with the original intent of the Receiver in bringing his motion for a waiver of

3    state law, and also consistent with the subsequent actions of the parties.  The Governor respectfully

4    requests this Court grant the instant motion to clarify the Court Order.  This clarification is necessary

5    to prevent the impacted nursing classifications in state bargaining units 17 and 20 from receiving an

6    unintended, multi-million dollar salary windfall during a time of fiscal crisis.

7         **D.    This Court Should Clarify Its Order To Ensure The Waiver Of State Law Is
               Done In The Least Intrusive Manner Possible**

8

9    The Governor also seeks a clarification of this Court's Order to ensure the waiver of state law

10   granted by the Court is accomplished in the least intrusive manner possible.  The Prison Litigation

11   Reform Act requires that any waiver of state law be "narrowly drawn, extend[] no further than

12   necessary to correct the violation of the Federal right, and is the least intrusive means necessary to

13   correct the violation of the Federal right."  See 18 U.S.C. § 3626(a)(1).  The Court appropriately

14   recognized this authority in issuing its Order.  *Request for Judicial Notice*, Ex. 7 at 11.  But if this

15   Court does not clarify its prior Order, the State may be forced to pay the labor market adjustments to

16   the nurses on top of the *Plata* increases.  These enhanced salary payments by the State would

17   contravene federal law which requires any waiver of state law be accomplished in the least intrusive

18   manner possible.  The evidence demonstrates that the present salaries paid to the nurses, that include

19   the *Plata* increases but not the labor market adjustments, are sufficient to address nursing vacancy

20   issues.

21   Since the onset of the *Plata* increases, the vacancy rates for the impacted classes have

22   improved significantly.  As indicated previously, in the Receiver's eleventh tri-annual report, the

23   Receiver announced that his goal of filling 90% or more of nursing positions had been accomplished

24   as early as November 2008. *Request for Judicial Notice*, Ex. 9.  More recently, the Receiver has

25   filed other reports that consistently show the State has resolved the recruitment and retention

26   problems that formerly existed regarding nurse staffing levels.  For example, regarding registered

27   nurse positions in CDCR, the State filled 93% of its positions as of June 2009, 92% of its positions

28   as of January 2010, 96% of its positions as of May 2010, and 95% of its positions as of March 2011.

-12-

Motion To Clarify Court Order Of October 17, 2006                    Case No. C01-1351-T.E.H.

*Request for Judicial Notice*, Exs. 10 to 13.  Regarding licensed vocational nurse positions in CDCR, the State filled 88% of its positions as of June 2009, 91% of its positions as of January 2010, 96% of its positions as of May 2010, and 93% of its positions as of March 2011.  *Id*.  As calculated by the Receiver, the State has also consistently filled more than 90% of its total nursing positions during these periods of time.  *Id*.

Even the onset of the three-day per month furloughs, which have now ended, did not significantly impact vacancy rates for the affected classes.  The three-day per month furlough program began in July 2009 and did not end until October 2010.  *Chapman Decl*. ¶ 19.  At the onset of the three-day per month furloughs, which equated to a roughly 15% drop in cash compensation, the vacancy rate for registered nurses was 10.20% and the vacancy rate for licensed vocational nurses was 11.36%.  *Chapman Decl*. ¶¶ 18-19.  In December 2010, shortly after sixteen months of furloughs had concluded, the vacancy rates for registered nurses and licensed vocational nurses were even lower.  *Chapman Decl*. ¶ 18.  As of December 2010, the vacancy rate for registered nurses had dropped to 9.40% and the vacancy rate for licensed vocational nurses had fallen to 9.85%.  *Id*.  Similarly, the combined vacancy rates for all nursing classes in units 17 and 20 that received the *Plata* increases have remained consistently low for a long time.  At the onset of the three-day per month furloughs in July 2009 the total nursing vacancy rate was 10.80% and, by December 2010, the total nursing vacancy rate had dropped even lower to 9.78%.  *Id*.

In short, the evidence demonstrates that the State can maintain acceptable nurse staffing levels without paying the nurses additional labor market adjustments on top of the *Plata* increases.  Governor Brown therefore respectfully requests this Court clarify its Order to ensure the prior waiver of state law is accomplished in the least intrusive manner possible, as required by the Prison Litigation Reform Act.  The State should not be required to pay the LMAs to nurses that already received the *Plata* increases because the State can maintain adequate nursing staffing levels without paying the LMAs.

/ / /

/ / /

/ / /

Motion To Clarify Court Order Of October 17, 2006                                    Case No. C01-1351-T.E.H.

1

### E.      This Court Should Clarify Its Order Because Its Order Has Been Misinterpreted By An Arbitrator, And By A California Trial Court

2

3          This Court should also clarify its Order because the Order has been misinterpreted by an

4   arbitrator, and by a California trial court.  In the arbitration proceeding, the arbitrator reasoned that,

5   since the Receiver's motion did not address the negotiated MOU that was in effect at the time of the

6   motion, the Court Order could not have the effect of invalidating the labor market adjustments.

7   *Request for Judicial Notice*, Ex. 1 at 6-7.  The arbitrator's reasoning is flawed.  On its face, the Court

8   Order imposed new salary ranges which necessarily superseded previously negotiated pay increases.

9   The fact that the Receiver's motion did not specifically address the LMAs is not grounds for

10   concluding otherwise.  If the Receiver had wanted the Court to award the LMAs on top of the *Plata*

11   increases, the Receiver presumably could and would have so requested.

12          The state trial court similarly misinterpreted the Court Order.  The trial court reasoned in its

13   decision that the State could pay both the *Plata* increases and the LMAs because nothing in the

14   Court Order prohibits the State from voluntarily agreeing to pay more than this Court required.

15   *Request for Judicial Notice,* Ex. 2 at 6-7.  However, in this case, there is no dispute that DPA and

16   SEIU bargained the LMAs before the Court issued its Order.  It is therefore impossible to conclude

17   that the State voluntarily agreed to pay the LMAs on top of the *Plata* increases when, at the time the

18   parties bargained the LMAs, the *Plata* increases did not even exist yet.  Accordingly, in order to

19   avoid the subsequent misinterpretations of the Order by other parties, this Court should clarify its

20   Order to confirm that the new salary ranges replaced the salary ranges previously set through

21   collective bargaining, including the LMAs.

22   ### V.      CONCLUSION

23          As set forth herein, Governor Brown respectfully requests that this Court grant this motion to

24   clarify its prior Order.  The Governor requests this Court clarify its prior Order to confirm that it

25   intended the Order to replace, not augment, the salary ranges previously established through

26   collective bargaining.  Governor Brown asks the Court to specify that the affected civil service

27   / / /

28   / / /

classifications should continue to receive the pay increases originally granted by this Court in October 2006, but not the labor market adjustments bargained by SEIU and DPA prior to the issuance of the Court Order.

Dated:  May 20, 2011

Respectfully submitted,

JOAN A. MARKOFF
Chief Counsel

By:     _/s/ Christopher E. Thomas_____
CHRISTOPHER E. THOMAS
Labor Relations Counsel
Attorneys for Governor Edmund G. Brown Jr.

Motion To Clarify Court Order Of October 17, 2006                                    Case No. C01-1351-T.E.H.

# EXHIBIT 1

Westlaw.

Slip Copy, 2009 WL 2079718 (N.D.Cal.)
(Cite as: 2009 WL 2079718 (N.D.Cal.))

Page 1

**H**
Only the Westlaw citation is currently available.

United States District Court,
N.D. California.
Mikesha MARTINEZ, et al., Plaintiffs,
v.
Arnold SCHWARZENEGGER, et al., Defendants.

No. C 09-02306 CW.
July 13, 2009.

Anne Nelson Arkush, Peder J. Thoreen, Scott Alan Kronland, Stephen P. Berzon, Altshuler Berzon LLP, San Francisco, CA, for Plaintiffs.

Michael Gary Woods, Timothy John Buchanan, McCormick, Barstow, Sheppard, Wayte & Carruth, Fresno, CA, for Defendants.

ORDER CLARIFYING INJUNCTION AND
DENYING PLAINTIFFS' MOTION FOR CIVIL
CONTEMPT SANCTIONS
CLAUDIA WILKEN, District Judge.
   **\*1** On June 26, 2009, the Court enjoined and restrained Defendants from implementing California Welfare and Institutions Code § 12306.1(d)(6) without first conducting the analysis required by 42 U.S.C. § 1396a(a)(30)(A), as described in *Orthopaedic Hospital v. Belshe,* 103 F.3d 1941, 1943 (9th Cir.1997). Plaintiffs have now filed a motion for civil contempt sanctions, or in the alternative, for a more specific injunction. In this motion, Plaintiffs assert that State Defendants [FN1] refuse to permit counties that want to maintain their pre- § 12306.1(d)(6) wage rates for In-Home Support Services (IHSS) to do so. Defendants argue that the injunction does not require the State immediately to reinstate the pre- § 12306.1(d) (6) wage rate. Defendants assert that any county that wishes to set its rate to the pre- § 12306.1(d)(6) level must submit a Rate Change Request, which can take up to approximately sixty days to implement. After having considered the papers filed by the parties, the Court

clarifies its injunction and denies Plaintiffs' motion for contempt sanctions.

   FN1. State Defendants include Governor Arnold Schwarzenegger, Director of the California Department of Social Services John A. Wagner and Director of the California Department of Health Care Services David Maxwell-Jolly.

BACKGROUND
   On February 20, 2009, the Governor signed into law California Welfare and Institutions Code § 12306.1(d)(6). Under this law, the State's maximum contribution to wages and benefits would have been reduced from sixty-five percent of the non-federal share of an hourly rate of $12.10 to sixty-five percent of the non-federal share of an hourly rate of $10.10. The latter rate represents $9.50 for wages and $0.60 for benefits.

   On April 2 and May 1, 2009, the California Department of Social Services (CDSS), the agency that administers the IHSS program, issued notices to counties regarding § 12306.1(d)(6). These notices "inform[ed] counties how this change will be implemented." Leyton Supp. Decl., Ex. A. The April notice stated, "Counties must submit a PA Rate Change Request to reduce the wages and health benefits to the $10.10 state participation level no later than May 1, 2009 to be within the 60-day approval process timeline." *Id.* The May notice similarly stated, "Counties currently providing wages and individual health benefits above $10.10 must submit a PA Rate Change Request to reflect the change in the maximum amount in which the state will participate." *Id.,* Ex. B. The May notice also extended the May 1, 2009 deadline to June 1, 2009. Through these notices, State Defendants told counties that, as of July 1, § 12306.1(d)(6) required counties to submit new Rate Change Requests because CDSS's prior approvals of rates above $10.10 would no longer be valid for reimbursement by the State. If a county did not reduce wages and benefits

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2079718 (N.D.Cal.)
**(Cite as: 2009 WL 2079718 (N.D.Cal.))**

to $10.10 or below, it would have to make up the difference between the State's current contribution and the county's rate.

Upon receipt of these notices, at least thirteen counties submitted Rate Change Requests seeking to reduce IHSS provider wages. Although CDSS claims that the process to approve a Rate Change Request could take up to sixty days, CDSS approved these requests expeditiously. In at least two instances, CDSS approved Rate Change Requests in one week.

**\*2** The Court issued its injunction in this case on June 26. On June 30, 2009, State Defendants sent an All-County Notice. The notice stated,

This All County Information Notice notifies counties of the recent court order in the case of *Martinez v. Schwarzenegger.*

On February 20, 2009, Senate Bill X3 6 (Chapter 13, Statutes of 2009) was enacted, which amended Welfare and Institutions Code section 123-6.1 to reduce the maximum state participation in negotiated In-Home Supportive Services individual provider wages and benefits from $12.10 per hour to $10.10 per hour. This reduction was to take effect on July 1, 2009. On June 26, 2009, the federal district court for the Northern District of California issued an injunction prohibiting the department and other state agency defendants from implementing the above reduction in maximum state participation. The maximum state participation in wages and benefits will remain at $12.10 per hour as long as the injunction remains in effect.

Leyton Supp. Decl., Ex. G. The notice provides no information regarding how counties that had submitted rate change requests in response to § 12306.1(d)(6) could ensure that the pre-July 1, 2009 rates would remain in effect in light of the Court's injunction.

On July 3, 2009, CDSS issued an errata to all

counties "to provide additional clarification regarding" the effect of the Court's injunction on the rate change process. The notice stated,

The Rate Change Requests that were submitted by Public Authorities and approved by the California Department of Social Services (CDSS) and the Department of Health Care Services (DHCS) remain in effect until sixty counties submit new Rate Change Requests through the process outlined in Welfare and Institutions Code Section 12306.1 and CDSS and DHCS approve those requests.

*Id.,* Ex. T.

Since the Court's injunction, nine of the thirteen counties that reduced their wages and benefits after § 12306.1(d)(6) was enacted have submitted Rate Change Requests to return to the pre- § 12306.1(d)(6) level.[FN2]

FN2. Those nine counties are Alameda, Contra Costa, Mendocino, Napa, Placer, San Mateo, Santa Barbara, Solano and Yolo.

In response to the requests, State Defendants have informed the counties that the requests can take up to sixty days to process. Carrol Decl. at ¶ 7; *see also,* Mancini Decl. at ¶ 8; McDevitt Supp. Decl., Ex. I; Malberg Supp. Decl. at ¶ 4; Leyton Supp. Decl., Ex. L. In some communications, State Defendants have asserted that they will work as "expeditiously" as possible on processing the requests, Carrol Decl. At ¶ 7, and in other communications they have stated that they will process them according to "normal" procedures. Leyton Decl. ¶ 13. State Defendants dispute Plaintiffs' assertion that the injunction requires them to ensure that the pre- § 12306.1(d)(6) rates remain in effect for the duration of the preliminary injunction.

### DISCUSSION

The Court may issue a contempt order if Defendants "(1) [ ] violated the court order, (2) beyond substantial compliance, (3) not based on a good

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2079718 (N.D.Cal.)
**(Cite as: 2009 WL 2079718 (N.D.Cal.))**

faith and reasonable interpretation of the order, and (4) by clear and convincing evidence." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.,* 10 F.3d 693, 695 (9th Cir.1993). The moving party must demonstrate by clear and convincing evidence that the alleged "contemnors violated a specific and definite order of the court." *Stone v. City and County of San Francisco,* 968 F.2d 850, 856 (9th Cir.1992). The contempt "need not be willful, and there is no good faith exception to the requirement of obedience to a court order." *In re Dual Deck,* 10 F.3d at 695.

**\*3** While the Court does not find State Defendants in contempt of the Court's preliminary injunction order, their manner of compliance has not carried out the intent of the order. Apparently, the Court's order was not sufficiently specific. The Court scheduled the hearing on the preliminary injunction for June 25 so that before July 1 all those concerned-the State, the counties, the providers and the elderly and disabled consumers-would know what rate would be applied to hours worked on or after July 1. At the hearing, the Court issued its order from the bench, with a written order following on June 26, so that all those concerned would know that, as of July 1, the rate could not be reduced based on § 12306.1(d) (6). The Court declined to be more specific in ordering the State exactly how to achieve this result, not because the Court did not intend that the result obtain, but only in deference to the State's presumed ability to determine how best to accomplish the result without unintended consequences. The Court's approach was apparently ineffective. Accordingly, the Court now clarifies that the State Defendants shall, by the close of business on July 14, 2009,[FN3] rescind the State's approval of all county rate reduction requests which were submitted after February 20, 2009, to be effective July 1, 2009, and reinstate the State's approval of the pre-July 1 rates. The State shall notify each affected county of these action, using a method designed to ensure that the notification is received on July 14. At the same time, the State will notify these counties that it will pay sixty-five percent of

the non-federal share of the pre-July 1, 2009 rate up to $12.10 for hours worked on July 1 and thereafter, until such time as the Court's preliminary injunction is rescinded. The State shall include a copy of the Court's amended injunction in its communication to the counties. The State may notify the counties that they may submit new Rate Change Requests if they wish to pursue a rate change for reasons other than the passage of § 12306.1(d)(6) .[FN4]

> FN3. Immediate action is required because the pay period ends on July 15.

> FN4. It is not clear from the papers submitted by the parties whether Fresno County submitted one Rate Change Request with a second reason for the request other than the passage of § 12306.1(d) (6) or if it submitted two requests. If it submitted only one request, it must submit a separate request based on a reason other than § 12306.1(d)(6) if it wishes to pursue a rate reduction.

IT IS SO ORDERED.

N.D.Cal.,2009.
Martinez v. Schwarzenegger
Slip Copy, 2009 WL 2079718 (N.D.Cal.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.