United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARCIANO PLATA, et al.,
         Plaintiffs,
         v.
EDMUND G. BROWN JR., et al.,
         Defendants.

NO. C01-1351 TEH

ORDER TO MEET AND CONFER RE: POST-RECEIVERSHIP PLANNING

As reflected in the Receiver's most recent tri-annual report, significant progress has been made on the Turnaround Plan of Action approved by the Court on June 16, 2008. While some critical work remains outstanding – most notably on construction issues – it is clear that many of the goals of the Receivership have been accomplished. In addition, we are approaching the end of the second cycle of medical inspections by the Office of the Inspector General ("OIG"), and, with one exception to date, scores on these inspections reflect improved conditions.[1] For the 25 out of 33 prisons that have completed the second inspection cycle, the average increase in scores from the first cycle was approximately 7.5%. The average score from the second cycle to date is 78.9%, with a high of 89.5% and a low of 73.0%. Although the parties have yet to agree on the significance of these scores and whether any particular score indicates constitutional compliance, the instrument developed by the OIG – in conjunction with the Receiver and the parties – was designed to measure compliance with the policies and procedures that formed the basis of the original stipulation

---

[1] The score at Central California Women's Facility decreased slightly, from 77.9% in cycle one to 77.5% in cycle two.

for injunctive relief in this case.² Consequently, the OIG scores unquestionably provide some guidance as to whether the care being provided at an individual institution is constitutionally adequate.

The Order Appointing Receiver provides that the Receivership "shall cease as soon as the Court is satisfied, and so finds in consultation with the Receiver, that Defendants have the will, capacity, and leadership to maintain a system of providing constitutionally adequate medical health care services to class members." Feb. 14, 2006 Order at 7. Given the Receivership's progress to date, the end of the Receivership appears to be in sight, and the Court seeks to get the parties' and the Receiver's views on when the Receivership should be terminated and how this case should progress after the Receivership has ended. The Court encourages the parties to attempt to reach agreement on the post-Receivership phase of this case, which the Court currently contemplates will consist of a period of oversight to ensure that Defendants can, in the absence of a receivership, sustain the progress that has been and will be achieved.

With good cause appearing, IT IS HEREBY ORDERED that the parties and the Receiver shall meet and confer on post-Receivership planning as soon as possible. They shall file a joint report on their meet-and-confer efforts on or before **April 30, 2012.** Their discussion shall include the following:

- How substantial compliance should be measured, including how the OIG scores should be used and whether the court experts should be involved;
- Criteria for determining when it is appropriate to move from the Receivership to a less intrusive system of oversight, including factors the Court should consider when evaluating Defendants' will, capacity, and leadership to maintain a system of providing constitutionally adequate medical health care services to class members;

---

[2] The parties agreed that an audit score of 85% was one of several factors necessary to demonstrate substantial compliance, but they allowed a score of 75% to qualify at the discretion of the court experts. June 13, 2002 Stip. & Order at 10. However, the relevant paragraph was discontinued by the Court following the Receiver's appointment and prior to the development of the OIG inspection instrument. Sept. 6, 2007 Order at 10.

2

- Whether the parties agree that the current Receiver can act as a monitor or special master once the Receivership ends and, if not, how the parties propose selecting a monitor or special master;
- Criteria for ending court oversight and concluding this case, including initial length of the post-Receivership monitoring period and whether the OIG inspection program or other independent process for inspections must be institutionalized before the Court ends its supervision;
- The parties' views on what the Receiver should include in the Plan for Post-Receivership Governance he must submit to the Court, *see* Feb. 14, 2006 Order at 8 ("Prior to the cessation of the Receivership, the Receiver shall develop a Plan for Post-Receivership Governance of the system, which shall include consideration of its structure, funding, and governmental responsibility for its long-term operation. The Receiver shall present this plan to the Court for approval and adoption as an order.");
- How, if at all, the Court should consider the status of Defendants' progress in satisfying the orders of the related three-judge court when determining when to end the Receivership and this case; and
- Any other issues the parties or the Receiver deem relevant.

The parties and the Receiver must invoke the services of Mr. Starr Babcock, the Court-appointed Special Assistant, if they believe they have reached an impasse on any of the above. They are also free to call on the Special Assistant at any time in the meet-and-confer process when they believe his assistance would be helpful.

**IT IS SO ORDERED.**

Dated: 01/17/12

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

3