IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARCIANO PLATA, et al.,

                Plaintiffs,

v.

EDMUND G. BROWN JR., et al.,

                Defendants.

NO. C01-1351 TEH

ORDER PROPOSING RECEIVERSHIP TRANSITION PLAN

On May 7, 2012, the parties and the Receiver filed their Court-ordered report regarding post-Receivership planning. The report indicates agreement that the Receivership has made significant progress in improving the delivery of medical care in California's prisons, as well as agreement that several critical tasks remain outstanding. However, the parties vigorously dispute both when the Receivership should end and how to evaluate whether the level of care being provided at any particular institution is constitutional. Upon careful consideration of the parties' and the Receiver's proposals, and in consultation with the Advisory Board and the Receiver, the Court proposes the following plan:

    1. The Court previously approved the Receiver's Turnaround Plan of Action ("Plan") without objection from the parties. No party has argued that any element of the Plan is no longer necessary or appropriate, and, indeed, Defendants have pledged their support to complete all outstanding items in the Plan. The Court may transition from the Receivership to a special master or monitor prior to the Plan's full completion if Defendants are able to demonstrate both (1) the ability to maintain a system that provides care as good as or better than that being provided under the Receivership and (2) that any outstanding Plan items, including construction of the California Health Care Facility, renovations of the DeWitt Correctional Facility, and completion of the Health Care Facility Improvement Program, will not be jeopardized if the Receivership were to end. Although Defendants assert in the

May 7, 2012 filing that they will be ready to take over control of the system within the next thirty days and are capable of fully implementing all remaining items in the Plan without the Receivership, the record does not contain sufficient evidence to support that assertion.

2. To help create the necessary record, and as the Court originally contemplated, "the ultimate transfer of power back to the State [from the Receivership] will be transitional," and the Receiver must "attempt to engage Defendants in assuming responsibility over portions of the system that are within Defendants' demonstrated ability to perform." Feb. 14, 2006 Order Appointing Receiver at 7-8. The Court understands that the Receiver has informally begun this process, and the Court now formally orders the Receiver to work with the California Department of Corrections and Rehabilitation ("CDCR") Secretary and the CDCR Undersecretary of Administration & Offender Services to determine when Defendants shall assume responsibility for particular tasks. The Receiver has already entered into one revocable delegation of authority, and this appears to be an appropriate mechanism for accomplishing the gradual return of inmate medical care to Defendants while also ensuring appropriate Court oversight. If Defendants and the Receiver cannot agree on the timing of a particular delegation of authority, then they shall work with the Court-appointed Special Assistant to attempt to reach agreement. The Special Assistant will notify the Court if he is unable to mediate any particular dispute.

3. The Receiver and Defendants shall continue to identify and secure appropriate revisions or additions to state law and regulations, as well as to CDCR's Department Operations Manual, that institutionalize changes made during the Receivership and eliminate the need for any waivers of state law following the termination of the Receivership.

4. The parties have agreed that the Office of Inspector General's ("OIG's") medical inspection instrument is an appropriate measure of compliance with policies and procedures adopted pursuant to this case. However, they have not agreed on whether any particular OIG score establishes that an institution is providing constitutionally adequate care, nor is there any basis in the record for the Court to decide that question. Accordingly, the Court believes that expert evaluation is required and proposes the following process:

2

a. The Receiver shall work with the Court experts to establish a schedule for evaluating the adequacy of care at each institution. An institution shall not be evaluated until after it has received a final third round OIG score. The experts shall complete a written evaluation of any institution that receives an overall OIG score of 85% or higher as soon as feasible, and no later than six months after the publication of the OIG report awarding that score. Evaluations may, at the Receiver's and Court experts' discretion, also be scheduled at institutions that receive overall OIG scores of between 75% and 85%.

b. The purpose of the expert evaluations shall be to determine whether the care being provided at any particular institution is adequate. Among other factors, the experts must consider whether any pattern or practice exists at that institution, or systemwide, that presents a serious risk of harm to inmates that is not being adequately addressed.

c. The Court experts and the Receiver, in consultation with the parties, shall consider whether appointment of additional experts or hiring of other clinical personnel is necessary or desirable.

d. If the Court experts determine that care is adequate at any particular institution, then Plaintiffs' monitoring visits at that institution shall cease immediately, but Plaintiffs shall maintain the same level of access to documentary evidence as long as the case remains pending. In addition, the experts shall not re-evaluate any institution at which they have determined care is adequate unless that institution's overall OIG score decreases.

e. The Court contemplates that the Court experts will evaluate each institution at least once. However, the Court will reconsider this provision if, at any time, the Court experts report that they have developed confidence that a particular OIG score or set of scores is sufficient to establish the adequacy of care without a subjective evaluation, or if the parties agree on a purely objective measure of adequate care that the Court finds acceptable.

f. As was the case before the Receivership, the experts shall be paid by Defendants through the Court's registry, and Defendants shall promptly deposit additional funds with the Court when ordered to do so. The procedure for payment and objections as set forth in the September 16, 2002 stipulation and order shall remain in effect, except that

1 the new hourly rates will be as follows: $275.00 for Dr. Joe Goldenson and Dr. Michael
2 Puisis, and $200.00 for Madeleine LaMarre, with compensation for travel time paid at half of
3 these hourly rates.

4     5.     The transition from the Receivership to a special master or monitor shall not be
5 tied to any particular set of OIG scores or findings by the Court experts on the adequacy of
6 care, and the Court may transition away from the Receivership even if it has not been
7 established that care throughout the system is constitutionally adequate.

8     6.     Pursuant to the parties' and the Receiver's agreement, the Court modifies the
9 February 14, 2006 Order Appointing Receiver to require Defendants, rather than the
10 Receiver, to submit a plan for post-Receivership governance. The Court construes Exhibit 4
11 to the Declaration of Martin Hoshino filed on May 7, 2012, as Defendants' proposed plan but
12 finds consideration of that plan to be premature. The Court reserves for subsequent
13 proceedings questions related to post-Receivership governance and Court supervision.

15 The parties shall consider the above proposal and file opposition briefs of no more
16 than 25 pages, or statements of non-opposition, on or before **June 29, 2012.** The parties
17 shall file reply briefs of no more than 15 pages on or before **July 20, 2012.** The matter will
18 then be deemed to be under submission unless the Court schedules oral argument.

20 **IT IS SO ORDERED.**

22 Dated: 05/30/12

    THELTON E. HENDERSON, JUDGE
23     UNITED STATES DISTRICT COURT

4