IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>EDMUND G. BROWN JR., et al.,<br><br>　　　　Defendants. | NO. CIV S-90-0520 LKK JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>EDMUND G. BROWN JR., et al.,<br><br>　　　　Defendants. | NO. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>SECOND ORDER REQUIRING FURTHER BRIEFING |

　　On May 9, 2012, plaintiffs renewed their motion for an order requiring defendants to demonstrate how they will achieve the required population reduction by June 2013.[1] Defendants filed an opposition to the motion on May 23, 2012, in which they confirm their intention to seek a modification of the Court's order from 137.5% of design capacity to 145% of design capacity.[2] Specifically, defendants state that they "will seek a modification

---

[1] The Court denied plaintiffs' first motion without prejudice on March 22, 2012.

[2] Defendants released "The Future of California Corrections," which purports to be a "blueprint" for the California Department of Corrections and Rehabilitation, on April 23, 2012. In that report, which is available at http://www.cdcr.ca.gov/2012plan/index.html, defendants project that, absent additional measures to comply with this Court's order, "the prison population is expected to drop to about 141 percent of design capacity" by June 2013, Report at 50, and thereafter rise to 144 percent by 2016, *id.* at App. G. The report also signals defendants' intention to seek a modification of the Court's order. *Id.* at 50.

from the Court to increase the final benchmark to 145% of design capacity by demonstrating that they can provide a constitutional level of care at a higher population density." Opp'n at 2.

On June 7, 2012, the Court directed the parties to file further briefs addressing plaintiffs' contention that proceedings on any motion to modify "'will require significant factual investigation, including expert evaluations and reports, and expert discovery.'" June 7, 2012 Order at 2 (quoting Reply at 5). The parties have now filed further briefing and proposed schedules for proceedings on a motion to modify the population reduction order. The proposed schedules differ significantly.

The Court will require the parties to address the following threshold legal questions raised by defendants' description of their proposed motion:

<u>First</u>, what is the legal basis for the motion to modify, i.e., will the motion be predicated on 18 U.S.C. § 3626(b)(4) and Federal Rule of Civil Procedure 60(b)(5), or will it be predicated on some other provision of law and, if so, what provision? Relatedly, what legal standards will govern the Court's resolution of such a motion?

<u>Second</u>, is the proposed motion predicated on changed circumstances that were not anticipated at the time the order was entered, *see, e.g., Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383-85 (1992), and, if so, what are those unanticipated changed circumstances? Or, instead, will the motion involve, as defendants' represent in their June 22, 2012 Response, litigating "whether a population density of 145% prohibits Defendants from providing constitutionally adequate care"? Defs.' Response at 2. If the latter, how does that question differ from questions already litigated and decided by this Court in its August 4, 2009 opinion and order and how, if at all, do principles of res judicata affect the Court's consideration of such a motion?

//
//
//

<u>Third</u>, in their opposition, defendants cite language from the decision of the United States Supreme Court in *Brown v. Plata*, 131 S. Ct. 1910 (2012). Opp'n at 3. The full passage, partially quoted by defendants, provides:

> The State has already made significant progress toward reducing its prison population, including reforms that will result in shifting "thousands" of prisoners to county jails. See Supp. Brief for Appellants at 1. As the State makes further progress, the three-judge court should evaluate whether its order remains appropriate. If significant progress is made toward remedying the underlying constitutional violations, that progress may demonstrate that further population reductions are not necessary or are less urgent than previously believed. Were the State to make this showing, the three-judge court in the exercise of its discretion could consider whether it is appropriate to extend or modify this timeline.

*Plata*, 131 S. Ct. at 1947. How, if at all, does this language support consideration of a modification from 137.5% to 145%, rather than solely consideration of whether to extend or modify the timeline for compliance with the existing population reduction order?

The Court will also require the parties to address the following factual questions raised by the parties' briefing:

<u>First</u>, how would the Court's determination of the threshold legal questions above affect the parties' assessments of when discovery should begin and how much time should be required for factual and expert discovery, depositions, and briefing? For example, if the proposed motion is predicated on changed circumstances that were not anticipated at the time the order was entered, must, as the defendants suggest, the prison population reach 145% in order for defendants to make the necessary showing in support of their motion to modify?

<u>Second</u>, do defendants still expect the prison population to reach 145% by December 2012, even though the current prison population, as of the July Status Report, is 2.4% greater than was predicted by the Spring Population Projections on which the 145% expectation was based? If not, what is their revised prediction for when the prisoner population will reach 145%?

//

3

1     <u>Third</u>, if the Court ordered defendants "to begin without delay to develop a system to
2 identify prisoners who are unlikely to reoffend or who might otherwise be candidates for
3 early release," *Plata*, 131 S. Ct. at 1947, by what date would they be able to do so and, if
4 implemented, how long would it take before the prison population could be reduced to
5 137.5%? By what other means could the prison population be reduced to 137.5% by
6 June 27, 2013? Alternatively, what is the earliest time after that date that defendants contend
7 they could comply with that deadline?

9     The parties shall file briefs in accordance with this order within fourteen days.

11     Pending further order of the Court, defendants shall take all steps necessary to comply
12 with the Court's June 30, 2011 order, including the requirement that the prison population be
13 reduced to 137.5% by June 27, 2013.

15 **IT IS SO ORDERED.**

17 Dated: 08/03/12

STEPHEN REINHARDT
UNITED STATES CIRCUIT JUDGE
NINTH CIRCUIT COURT OF APPEALS

21 Dated: 08/03/12

LAWRENCE K. KARLTON
SENIOR UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF CALIFORNIA

25 Dated: 08/03/12

THELTON E. HENDERSON
SENIOR UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF CALIFORNIA

4