IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>   Plaintiffs,<br><br>  v.<br><br>EDMUND G. BROWN, JR., et al.,<br><br>   Defendants. | NO. 2:90-cv-0520 LKK JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>   Plaintiffs,<br><br>  v.<br><br>EDMUND G. BROWN, JR., et al.,<br><br>   Defendants. | NO. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MAY 9 AND AUGUST 22, 2012 MOTIONS |

  On May 9, 2012, plaintiffs renewed their motion for an order requiring defendants to demonstrate how they will reduce the California prison population to no more than 137.5% design capacity by June 2013, as required by this Court's June 30, 2011 order. Plaintiffs based their motion on defendants' stated intent to file a motion to modify this Court's order to require that the population be reduced only to 145% design capacity. On August 22, 2012, plaintiffs filed an application for limited discovery and an order to show cause regarding contempt.

After reviewing the parties' briefs, including those filed in response to the Court's June 7 and August 3, 2012 orders, the Court is not inclined to entertain a motion to modify the 137.5% population cap based on the factual circumstances identified by defendants. In 2009, when the population level in California prisons was at 190% design capacity, this Court made a predictive judgment based on expert testimony that Eighth Amendment compliance could be achieved with a prison population of 137.5% design capacity. The Supreme Court affirmed this determination in 2011, concluding that this Court's

> weighing of the evidence was not clearly erroneous. The adversary system afforded the court an opportunity to weigh and evaluate evidence presented by the parties. The plaintiffs' evidentiary showing was intended to justify a limit of 130%, and *the State made no attempt to show that any other number would allow for a remedy*. There are also no scientific tools available to determine the precise population reduction necessary to remedy a constitutional violation of this sort. *The three-judge court made the most precise determination it could in light of the record before it.*

*Brown v. Plata*, 131 S. Ct. 1910, 1945 (2011) (emphasis added). Our injunction requiring defendants to achieve a prison population of 137.5% design capacity within two years acknowledged and expected that reducing the prison population in the interim would improve medical and mental health care, Aug. 4, 2009 Opinion & Order at 109-10, and further reflected our determination that achieving the 137.5% level was necessary to permit an "efficacious remedy for the unconstitutional care of the sick and mentally ill in California's prisons," *Plata*, 131 S. Ct. at 1939. Defendants' initial briefing suggested that the only question that they would seek to litigate on a motion to modify is whether Eighth Amendment compliance could be achieved with a prison population higher than 137.5% design capacity.[1] That question has already been litigated and decided by this Court and

---

[1] In their response to plaintiffs' application for limited discovery and order to show cause regarding contempt, defendants appear to recognize that a showing of constitutional compliance, while not required to extend the deadline for compliance with this Court's order, is a prerequisite to modification of the population cap. *See* Defs.' Sept. 5, 2012 Resp. at 3 ("Defendants may also move to modify the order before the population density reaches 137.5% if there is no longer a constitutional violation in the delivery of medical or mental health care.").

2

affirmed by the Supreme Court, and this Court is not inclined to permit relitigation of the proper population cap at this time.[2]

The Court will, however, entertain a motion to extend the deadline for compliance with the June 30, 2011 order. Any such motion must be filed within ten days of the filing of any monthly or six-month report indicating that defendants do not expect to achieve the 137.5% benchmark by the June 27, 2013 deadline, and must be accompanied by a plan demonstrating how the state will comply with the population cap within the requested extension. The Court is not inclined to grant any extension beyond December 31, 2013, as defendants have indicated at least one method for achieving 137.5% design capacity by that date. *See* Aug. 17, 2012 Meier Decl. ¶ 6.

Finally, the Court notes that defendants failed to respond to the following set of questions from its August 3, 2012 order:

> [I]f the Court ordered defendants "to begin without delay to develop a system to identify prisoners who are unlikely to reoffend or who might otherwise be candidates for early release," *Plata*, 131 S. Ct. at 1947, by what date would they be able to do so and, if implemented, how long would it take before the prison population could be reduced to 137.5%? By what other means could the prison population be reduced to 137.5% by June 27, 2013? Alternatively, what is the earliest time after that date that defendants contend they could comply with that deadline?

Aug. 3, 2012 Order at 4. Defendants may not ignore an order from this Court, and they shall file a brief answering these questions on or before **September 17, 2012**. The Court makes clear that, at this time, it is ordering defendants neither to implement any particular plan nor to begin developing "a system to identify prisoners who are unlikely to reoffend or who might otherwise be candidates for early release," *Plata,* 131 S. Ct. at 1947. In answering these questions, defendants shall consider the evidence presented at trial, which this Court found "overwhelmingly showed" that "the state has available methods by which it could readily reduce the prison population to 137.5% design capacity or less without an adverse

---

[2] Moreover, given the length of time that remediation efforts have been ongoing in both of the underlying individual cases, as well as the progress suggested by defendants' briefs, it appears to this Court that available time and resources would be better spent completing correction of the underlying Eighth Amendment violations than in further contested litigation before this Court.

3

impact on public safety or the operation of the criminal justice system." Aug. 4, 2009 Opinion & Order at 178, 181, *aff'd*, *Plata*, 131 S. Ct. at 1941-44.  Defendants' response shall also advise the Court which of the available methods identified in the opinion, including the expansion of the good time credits system, as well as any other methods that may be identified by the State, the Governor has the authority to implement under the existing emergency proclamation concerning prison overcrowding.  Defendants shall provide a full legal explanation to support any contention that the Governor lacks authority to implement any particular method identified in the August 2009 opinion and order.

Plaintiffs' May 9 and August 22, 2012 motions are GRANTED IN PART and DENIED IN PART consistent with this order.  All issues not specifically addressed above are denied without prejudice.

**IT IS SO ORDERED.**

Dated:   09/07/12

STEPHEN REINHARDT
UNITED STATES CIRCUIT JUDGE
NINTH CIRCUIT COURT OF APPEALS

Dated:   09/07/12

LAWRENCE K. KARLTON
SENIOR UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF CALIFORNIA

Dated:   09/07/12

THELTON E. HENDERSON
SENIOR UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF CALIFORNIA