PRISON LAW OFFICE
DONALD SPECTER (83925)
WARREN GEORGE (53588)
STEVEN FAMA (99641)
ALISON HARDY (135966)
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Fax: (510) 280-2704
dspecter@prisonlaw.com

GEOFFREY T. HOLTZ -- 191370
BINGHAM McCUTCHEN LLP
Three Embarcadero Center
San Francisco, California 94111-4067
Telephone:     (415) 393-2000

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| MARCIANO PLATA, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>EDMUND G. BROWN, JR., et al.,<br><br>*Defendants*. | Case No. C01-1351 TEH<br><br>**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO REQUIRE DEFENDANTS TO COMPLY WITH THE RECEIVER'S COCCI POLICY**<br><br>Judge: Hon. Thelton E. Henderson<br>Date:   June 17, 2013<br>Time:  10:00 a.m.<br>Crtrm.: 12, 19th Floor |

## INTRODUCTION

The undisputed evidence proves to a virtual certainty that many more prisoners at Pleasant Valley State Prison (PVSP) and Avenal State Prison (ASP) will die and become hospitalized from Valley Fever unless significant immediate action is taken to reduce this serious risk of harm.  Defs. Opp. at 8 ("Defendants are aware that Valley Fever presents a serious risk to inmate health"), 14 ("Valley Fever, particularly in its disseminated form, can undeniably have serious implications.").  Defendants do not dispute that prisoners are

1

dying and getting seriously ill from coccidioidomycosis, that certain prisoners are at a substantially higher risk of harm, that they have had knowledge of this issue since at least 2006 and that all previous mitigation measures have been ineffective.  The Receiver twice issued reasonable recommendations to reduce the deadly risk.  When Defendants refused to implement these or any other reasonable mitigation measures, the Receiver issued his carefully tailored policy excluding the highest risk prisoners from these two prisons.  The Receiver's policy is well-supported by data, and it is consistent with the recommendations of Dr. John Galgiani, one of the foremost experts in coccidioidomycosis, as well as Dr. Gil Chavez, California's State Epidemiologist.

Now that the Receiver has issued his directive to CDCR, Plaintiffs at this time no longer seek to suspend the transfer of all prisoners to PVSP and ASP.  Instead, since Defendants have refused to implement the Receiver's Valley Fever policy, Plaintiffs seek an order compelling defendants to immediately implement that policy.

Defendants' arguments that they should not have to follow the Receiver's directive are without merit.  First, there is no need for Plaintiffs' to prove that Defendants are deliberately indifferent since this is an order by the Receiver in the remedial phase of the case.  Second, Plaintiffs are not requesting a prisoner release order, so referral to a three judge panel is not required.  Finally, it is far too late in the day and there have been too many wasted lives to postpone action so that Defendants can quibble about details, refer the issue for further study or only proceed with measures that have little or no chance of being effective.  Plaintiffs' motion must be granted.

## RECENT EVENTS

In its Order dated March 21, 2013, this Court ordered the parties to meet and confer with the Receiver and the court experts to attempt to resolve the issues raised by Plaintiffs' motion.  The parties did meet and confer with the Receiver and the Court Experts on April 15, 2013, but were unable to reach agreement.  In its March 21st order,

the Court also invited the Receiver to file a response to plaintiffs' motion. Pursuant to the court's invitation, on May 1, 2013, the Receiver filed his "Report and Response of Receiver Regarding Plaintiffs' Motion re Valley Fever." ("Receiver's Report"). The Receiver's Report chronicled the sorry history of the State's "anemic" efforts to respond to the Valley Fever crisis. Receiver's Report, Dkt. 2601, at 4.

The Receiver indicated that on April 29, 2013, he promulgated a "Cocci Exclusion Policy" which was amended on May 1, 2013. *Id.* at 1. The effect of the exclusion policy will require the transfer of certain prisoners who are at high risk of either contracting Valley Fever or having Valley Fever advance to the dangerous disseminated form of the disease from PVSP and ASP to other prisons outside the hyperendemic zone.

Defendants have responded to the cocci exclusion policy as expected. Benjamin Rice, General Counsel of CDCR, stated in an email dated May 8, 2013 that the Receiver's cocci policy amounted to a prisoner release order under the Prison Litigation Reform Act (PLRA), that the cocci exclusion policy is ambiguous, and that its implementation "would be premature." This email is attached to the Declaration of Warren George dated May 13, 2013 ("George Decl.") as Exhibit A. Diana Toche, a CDCR Undersecretary, set forth the departments "formal" objections to the receiver's cocci exclusion policy in a letter dated May 8, 2013. This letter is attached to the George Decl. as Exhibit B. These objections focused on "operational concerns" or as Mr. Rice put it in another email "how to operationalize" the new policy. George Decl., Exhibit B, at 3.

On May 7, 2013, the Receiver's counsel sent an email to defendants stating, in relevant part,

> We intend to move forward with implementing the Receiver's cocci policy and we hope to have the cooperation of the [CDCR] Secretary's staff. The policy is appropriate at its level of generality and can be applied immediately.

3

This email is attached to the George Decl. as Exhibit C.

The most significant recent development is the letter of Gil F. Chavez, M. D., the California State Epidemiologist.  See letter dated April 4, 2013, to Martin Hoshino attached as Exhibit B to the May 6, 2013 declaration of Diana Toche in Support of Defendants' Opposition.  Dr. Chavez acknowledges that a factor that contributed to the high cocci rates at PVSP and ASP "is housing populations of inmates at risk for severe cocci disease, such as African-Americans and persons with diabetes or other chronic diseases."  *Id.* at 1.  Dr. Chavez also admits that it is difficult to address environmental and climate factors because they are not controllable. He adds that "some environmental abatement can be attempted . . . but assessment of [its] efficacy will be difficult to evaluate." *Id*.

There is a solution, and Dr. Chavez identifies it: "the populations/groups [at risk] for severe cocci factor can be addressed by reducing the number of inmates belonging to these groups in these prisons."  Dr. Chavez concludes:

> In summary, to reduce the number of cases of cocci among state inmates, CDCR should focus on an updated screening policy to reduce the number of inmates at higher risk for severe disease from entering or staying at PVSP and ASP. The populations at risk are well known and listed by the American Thoracic Society, but choosing only some categories to include in the updated policy will be difficult. . . . Further analyses of current data are probably of little additional value toward updating the screening policy and will take months to carry out. Environmental issues are difficult to address and will require additional studies and months to years before additional data are available, and the efficacy of any environmental abatement/control effort implemented will be difficult to assess.  *Id*. at 2.

Plaintiffs agree with Dr. Chavez.[1]  See also the Reply Declaration of John N. Galgiani, M.D. in Support of Plaintiffs' Valley Fever Motion at ¶ 4 ("In my opinion, the chance that such [environmental] measures would reduce cocci risk is marginal at best, and in any event it would take many years to determine whether such measures have any

---

[1] Dr. Chavez is a representative of the state and his statements are a binding party admission under Federal Rule of Evidence, Rule 802(d)(2)(A).

value.").

## ARGUMENT

### I. THE COURT DOES NOT HAVE TO DETERMINE WHETHER DEFENDANTS ARE DELIBERATELY INDIFFERENT

Plaintiffs initially sought an order from the Court directing Defendants to implement the Receiver's Valley Fever recommendations, arguing that Defendants were deliberately indifferent for failing to do so.  Now that the Receiver has issued a policy on Valley Fever and directed Defendants to implement that policy there is no need for the Court to determine whether Defendants' actions constitute deliberate indifference.  See *Coleman v. Brown*, ___ F. Supp.2d ___, 2013, WL 1397335 at *22-23 (ED Cal. 2013) (rejecting the argument that the court must find defendants deliberately indifferent in remedial phase).  The Receiver's actions fit squarely within his authority to manage and operate the California prison medical care system.  Order Appointing Receiver, filed February 14, 2006, at 4.  Defendants do not contend otherwise.

### II. A "PRISONER RELEASE ORDER" IS NOT REQUIRED BEFORE THE RECEIVER'S POLICY CAN BE IMPLEMENTED

Defendants mistakenly claim that Plaintiffs have requested that the Court refer this matter to a three-judge court pursuant to 18 U.S.C. § 3626(a)(3).  Def's. Opp. at 11.  As is clear from their moving papers, Plaintiffs made this request only in connection with a possible order suspending the transfer of all prisoners from PVSP and ASP.  Pltfs. Memo in Support of Motion at 10.   In light of the Receiver's recent actions, Plaintiffs no longer seek this relief and therefore the referral to a three judge court is not necessary.

Defendants cite no authority showing that this provision of the PLRA applies to actions by the Receiver.  The Receiver is exercising "powers by law in the Secretary of the CDCR", Order Appointing Receiver at 4.  The PLRA, by contrast, applies only to "any order" issued by a court.  18 U.S.C. § 3626(g)(4).  Therefore, this provision of the PLRA does not apply.

5

Moreover, the plain language of section 3626(g)(4) does not apply to a medical decision limiting certain prisoners from being housed at specific prisons or an order requiring prison officials to comply with that decision. This section states that the term "prisoner release order" includes "any order . . . that has the purpose or effect of reducing or limiting the prison population, or that directs the release from or nonadmission of prisoners to a prison." The Receiver's cocci policy does not have the effect of limiting or reducing the prison population since Defendants can still transfer prisoners who are not at high risk for developing severe cocci to those institutions. *Bowers v. City of Philadelphia*, No. 06-CV-3229, 2007 WL 21965 at *34 (E.D. PA Jan. 25, 2007) (holding that an order that does "not necessarily reduce the population of a given prison" is not a "prisoner release order").[2] If Defendants' interpretation of the PRLA were correct, the Receiver or the court could never require the transfer of a prisoner who needs more care than his current prison can provide until and unless he obtained an order from a three judge court. Similarly, if a court concluded that a prisoner's safety required that he be transferred to another prison, under Defendants' absurd interpretation an order from a three judge court would be required.

This provision of the PLRA was not intended to interfere with prison transfers, but to limit the scope and frequency of court ordered population caps. See *Brown v. Plata*, 563 U.S. ___, 131 S.Ct. 1910, 1937 (2011) ("Congress limited the availability of limits on prison populations"). The House Report accompanying the PLRA explained that this

---

[2] In dicta, the Three Judge Court characterized an Eighth Circuit case as holding that an order requiring prisoners to be transferred from one institution to another to is a prisoner release order. *Coleman v. Schwarzenegger and Plata v. Schwarzenegger*, Nos. CIV S–90–0520 LKK JFM P. and C01–1351 TEH, 2009 WL 2430820 at n.58 (Aug. 4, 2009) (citing *Tyler v. Murphy*, 135 F.3d 594, 595-98 (8th Cir. 1998). That reliance was unfounded, however. The Eighth Circuit in *Tyler* made no findings with regard to the existence of a prisoner release order – in fact, it explicitly "defer[red] final judgment" on the issue. *Tyler*, 135 F.3d at 597. Instead, the court dissolved the relief in question because it was entered without any of the needs-narrowness-intrusiveness findings required by the PLRA, *id.* at 595-96, and noted that if plaintiffs subsequently moved for new or extended prospective relief, the district court should at

provision was intended to govern court imposed "prison caps".  H.R. Rep. No. 104-21, p. 25 (1995); see also, *Plata*, at 1942 n. 10 (Alito, J. dissenting) (collecting references in legislative history to population caps and release of prisoners).  There is nothing in the legislative history or the language of the PLRA suggesting that it was intended to govern prison-to-prison transfers ordered by a receiver.

### III.  THE RECEIVER'S POLICY IS NEITHER AMBIGUOUS NOR PREMATURE

A.  <u>There is Nothing Ambiguous about the Receiver's Policy</u>

The Receiver's cocci exclusion policy lists specific criteria for exclusion from these two prisons.  None of them is ambiguous.  However, to the extent that Defendants are uncertain about the meaning and operational details of implementation, the Receiver has provided an appropriate mechanism for resolving any ambiguities.  His counsel recently informed CDCR as follows: "Naturally, any new policy may raise questions of interpretation, and those will be resolved in light of the policy and its purposes.  Dr. Steve Ritter and his team will be reaching out to Mike Stainer [Deputy Director-Facility Operations for CDCR] and his team shortly, if he hasn't already, to answer implementation issues that may arise."  Email from Jared Goldman to Benjamin Rice, dated May 7, 2013, attached to George Decl. as Exhibit C.

B.  <u>The Receiver's Policy is Not Premature</u>

Defendants' response to the Valley Fever crisis at PVSP and ASP is a case study in trained incapacity.  At least by 2004, almost a decade ago, CDCR recognized "the potential lethality of the disseminated form of coccidioidomycosis" and that the "risk and incidence of disseminated disease are highest in American Indians, Asians, Blacks, and immunocompromised individuals."  "Valley Fever" Memorandum dated November 5, 2004 from Renee Kanan, M.D., Deputy Director of the Health Care Services Division of

---

that point consider whether that relief constituted a prisoner release order.  *Id.* at 598.

CDCR to Health Care Managers at 3, attached to the George Declaration as Exhibit D. CDCR was aware in 2004 that "in patients who have developed pneumonia, dissemination occurs in one of every 300 patients with pneumonia. In Hispanics and Blacks, it is one in 40, and in Filipinos it is one in 10." Id. From 2005 to the present day, as set forth in Plaintiff's Memorandum in support of Valley Fever Motion at pages 2-4, CDCR has been aware that Valley Fever is potentially lethal to African-Americans, Filipinos, Inuits, and prisoners with immunocompromised conditions. CDCR itself recognized in 2007 that if its efforts to reduce exposure to Valley Fever at PVSP failed, the Department should "consider relocating <u>all</u> inmates from [PVSP] to institutions with rates of coccidioidomycosis equal to or better than their local community rates." *Id.* at 2.

The Receiver's 2012 Report on Coccidioidomycosis in California's Adult Prisons detailed defendants' failed efforts to reduce cocci by, among other things, "educating inmates about cocci symptoms." 2012 Report at 2. (This Report was attached as Exhibit B to the March 18, 2013 Declaration of John N. Galgiani, M.D.) Despite this, and other woefully inadequate efforts, "[d]uring 2006-2010, cocci rates in the hyperendemic area failed to decline." 2012 Receiver's Report at 2. In short, "education" about cocci doesn't work. Nor could it. The disease relentlessly targets African-Americans, prisoners over age 55, and those with a number of immunocompromising conditions. "Education" doesn't deal with the fact that at risk prisoners at PVSP and ASP have to breathe tainted air, and breathing in this lethal environment can lead to disseminated disease and death.

What do defendants offer to justify their continuing inaction? More of the same: laminated charts, pamphlets, checklists, education materials and signs in Spanish and English, information in operation manuals and one ASP memo. See, e.g., Exhibits C through E to the Declaration of Michael Stainer in Support of Defendants' Opposition dated May 6, 2013. But they haven't done what is required, and what the Receiver has now ordered: exclude all at risk inmates from PVSP and ASP.

Defendants attempt to blame their unconscionable delay in contacting CDC and NIOSH on the bureaucratic dance steps required to get something done.  This is nonsense.  Defendants had no problem contacting NIOSH and CDC directly in 2008 about evaluating the impact of cocci on its employees (but not prisoners) at PVSP and ASP. However, CDCR canceled its request for assistance in May, 2009.  In writing to acknowledge this cancellation, NIOSH and CDC referred to the "lack of support from CDCR management." Letter of Marie A. de Perio, M.D., CDC Epidemic Intelligence Service Officer, dated December 4, 2009 to Nikki Baumrind, Chief, Occupational and Public Health Section, CDCR at 4, attached to the George Declaration as Exhibit E. Defendants fail to mention this aborted effort in their opposition.  Nor did they mention it was the Receiver's office who initiated the recent efforts to have California's Department of Public Health contact the Centers for Disease Control and Prevention for "epidemiologic assistance . . . to investigate the problem of high rates of coccidioidomycosis in Pleasant Valley State prison (PVSP) and Avenal State prison (ASP)."  Receiver's Report, Dkt. 2601 at 4.

Defendants are seeking more time to attempt environmental abatement remedies that will not work and have not made any difference. See, e. g., Hysen Declaration dated in Support of Defendants' Opposition dated May 6, 2013, at paragraphs 3(soil stabilization that "unfortunately . . . did not take hold"), 4 ( air filters that have not been proven to work), and 11(failed attempts to get information on "threshold wind speeds"). While Defendants beg for more time to study the problem and ponder why its failed environmental abatement measures have not worked, more prisoners will die from Valley Fever.

CDCR reacts to public health emergencies either not at all, or only after pushed to do so by Plaintiffs' counsel and the Receiver. That Defendants are only now, in May, 2013, "currently in the process of identifying and working with nationally-recognized

experts on Valley Fever" is further proof of their intent to do as little as possible for as long as possible.  Toche Declaration in Support of Defendants' Opposition at ¶ 14.  Left to their own devices, Defendants will do nothing to save the lives of those it is charged by the Constitution with protecting.

## CONCLUSION

Defendant's opposition to Plaintiffs' Valley Fever motion is nothing more than a request to the court for permission to delay further coming to grips with the Valley Fever crisis at PVSP and ASP.  That request should be rejected, and plaintiffs' motion should be granted.

Dated: May 13, 2013

Respectfully submitted,

_____/s/_____
DONALD SPECTER
WARREN E. GEORGE

Attorneys for Plaintiffs