PRISON LAW OFFICE
DONALD SPECTR (83925)
STEVEN FAMA (99641)
ALISON HARDY (135966)
SARA NORMAN (189536)
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Fax: (510) 280-2704
dspecter@prisonlaw.com
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO

| | |
|---|---|
| MARCIANO PLATA, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>EDMUND G. BROWN, JR., et al.,<br><br>*Defendants*. | Case No. C01-1351 TEH NMC<br><br>**PLAINTIFFS' RESPONSE TO ORDER REQUESTING DOCUMENTS, JULY 18, 2013** |

In response to the Order Requesting Documents and Taking Letter Brief Under Submission, July 18, 2013, Plaintiffs hereby submit the attached documents: Plaintiffs' Requests for Admission (Set 1), April 16, 2013; and Defendant Edmund G. Brown Jr.'s Response to First Set of Requests for Admission Propounded by Plaintiffs, May 20, 2013.

Dated: July 18, 2013

                 Respectfully submitted,

                 /s/
                 Sara Norman
                 Attorney for Plaintiffs

PRISON LAW OFFICE
DONALD SPECTER (83925)
WARREN GEORGE (53588)
STEVEN FAMA (99641)
ALISON HARDY (135966)
REBEKAH EVENSON (207825)
KELLY KNAPP (252013)
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Fax: (510) 280-2704
kknapp@prisonlaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| MARCIANO PLATA, et al., <br><br> *Plaintiffs,* <br><br> v. <br><br> EDMUND G. BROWN, JR., et al., <br><br> *Defendants.* | Case No. C01-1351 TEH <br><br> **PLAINTIFFS' REQUESTS FOR ADMISSION (SET 1)** |

PROPOUNDING PARTY: Plaintiffs

RESPONDING PARTY: Defendant Brown

SET NO.: One

Pursuant to Federal Rule of Civil Procedure 36, Plaintiffs request that Defendant Brown answer the following Requests for Admission:

## INSTRUCTIONS

1. If You object to or claim a privilege with respect to any Request in whole or in part: (a) set forth all reasons and the underlying factual basis for Your objection or claim of privilege in sufficient detail to permit the court to determine the validity of Your objection or claim of privilege; and (b) provide all information responsive to the Request to the extent not privileged, and set forth all reasons and the underlying factual basis for Your objection or claim of privilege in sufficient detail to permit the court to determine the validity of Your objection or claim of privilege as to the remainder of the Request.

2. These Requests are to be considered continuing in nature, and You must promptly furnish supplemental responses if any additional responsive information is discovered or created after Your responses are tendered, or if any of Your responses are subsequently determined to be incorrect, incomplete, or misleading in any respect.

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

Admit that the document attached as Exhibit 1 accurately reflects statements Edmund G. Brown Jr. made on or before March, 31, 2013.

**REQUEST FOR ADMISSION NO. 2:**

Admit that the document attached as Exhibit 2 accurately reflects statements Edmund G. Brown Jr. made on or before April 12, 2013.

///
///
///
///

Dated: April 16, 2013

PRISON LAW OFFICE

By: /s/ *Kelly Knapp*

Attorneys for Plaintiffs

# EXHIBIT 1

**THE SACRAMENTO BEE** sacbee.com

# Dan Morain: Mental health care issues in California prisons are rooted in the past

dmorain@sacbee.com

**Published Sunday, Mar. 31, 2013**

At last count, the California state prison system housed 33,777 inmates diagnosed with significant mental illness, including 6,051 with severe conditions such as schizophrenia.

Despite Gov. Jerry Brown's exhortations, one very feisty federal judge, Lawrence Karlton, doesn't seem prepared to give up control over their care any time soon.

Karlton has presided over a suit to improve conditions for mentally ill prisoners since George Deukmejian was governor in 1990. He showed no sympathy last week when Brown's lawyers argued that after spending billions, California exceeds the constitutional standards for the inmates' care.

"During the life of these lawsuits, the prison health care budget has gone from $700 million to $2 billion," Brown told The Bee's Denny Walsh and Sam Stanton earlier this month. "That money is coming out of the university, it's coming out of child care. It's a situation you wouldn't dream anyone would want."

There is history to this story, one Brown knows well. Like Ronald Reagan before him and governors who came after him, Brown made spending and policy decisions during his first two terms in office that turned mentally ill people out of state hospitals, onto the streets and into prisons.

In his third term, Brown has reduced prison population dramatically from a high of more than 170,000 when Arnold Schwarzenegger was in office. But as the prison population has fallen to 119,500, the number of mentally ill inmates has been constant.

For years when the population was growing, the mentally ill accounted for 20 percent of inmates. Now that the overall number is shrinking, the 33,777 mentally ill prisoners make up nearly 30 percent of the prison population.

"As a society," Jeffrey Beard, Brown's corrections chief, told The Bee's editorial board last week, "we just have not done a very good job of dealing with the mentally ill."

Beard, a doctor of psychology, doubts the number will fall any time soon. "It is not necessarily the way I think it should go long term," he said. "But it's a reality, and you have to deal with the reality."

A little history is relevant to that reality. Former state Sen. Nick Petris, who died the other day, provided context in an oral history for the California State Archives.

A Stanford-educated attorney, Petris was one of the most liberal and thoughtful legislators of his time, which spanned nearly 40 years from 1958 until 1996.

The East Bay Democrat also was one of the authors of the Lanterman-Petris-Short Act. Signed in 1967 by Reagan, the act sped the emptying of state hospitals of mentally ill people who had committed no crimes. The act also created the current mental health care system.

In the 1960s, Petris recalled, patients were railroaded into hospitals, given gunny sacks for clothing, had few rights and often died shortly after their arrival.

Petris sought to protect them by requiring that before they could be held involuntarily, psychiatrists would need to determine that they were a danger to themselves or others, or so gravely disabled that they could not tend to their most basic needs.

Soon after the law took effect, Petris noticed the rise in homelessness, and ultimately, incarceration of a different type. He blamed Reagan for cutting spending to care for people who no longer were held in the hospitals, though governors and legislators who came later share in that responsibility.

Petris' goal was to end the "tyrannical and oppressive system ... of incarcerating people so easily." But the new system "went overboard the other way," he said.

"I was tormented personally," Petris said. "I just didn't know what the right thing to do was. I didn't know whether these horror stories which we started to get were just a drop in the bucket and were inevitable ... (or) whether a change in the other direction would get us back to where we were before. Nobody wanted to do that."

In a real sense, the state did go back to where it had been. At one point in 1960, there were 36,853 people in state hospitals, nearly equal to the 33,777 mentally ill people in state prison today.

In a 1994 report to Karlton, a court-appointed inspector described the bedlam at the California Medical Facility, the prison in Vacaville: "Severely mentally ill prisoners were in perpetual isolation in locked cells." Mentally ill prisoners were locked in a segregation unit "without blankets, mattress or clothing." Some "covered themselves with feces."

Later in 1994, as the state fought the prisoner-rights attorneys' effort to have Karlton impose the receivership, Kyle McKinsey, then in charge of health care at the Department of Corrections, predicted that costs would skyrocket to $300 million if federal courts seized control of mental health care in prisons.

Karlton took direct oversight of prison mental health care in 1995. McKinsey turned out to be wrong. California spends $400 million a year on mental health care in prisons.

In 1994, Donald Specter, head of the Prison Law Office, explained the point of the lawsuit by saying the state is "under a constitutional obligation to provide mental health care" to inmates who need it.

"However ironic it may seem," Specter told me at the time, "state government isn't similarly required to provide mental health care to you and me."

Specter was back in federal court last week, opposing Brown's effort to get out from under the court order. Karlton is expected to rule on the governor's request within a week from today.

To be sure, there have been changes in the prisons and on the streets. Care for mentally ill inmates has improved. And in 2004, voters approved Proposition 63, which generates $1 billion a year for mental health care for noncriminals.

All too often, however, severely mentally ill people must commit a crime to get care. Witness the 33,777 mentally ill men and women in California prisons today.

Many others get dumped, as happened last month when Sacramento County jailers gave a mentally ill

man named Matthew Herrera a paper jumpsuit and flip-flops and released him, only to have him be rearrested 31 hours later for stealing his mother's car. Or when Nevada officials bought a $60 Greyhound bus ticket for James Flavy Coy Brown, and sent him to Sacramento, where he knew no one.

It all comes at a cost. At some point, the bill comes due.

*Follow Dan Morain on Twitter @danielmorain.*

© Copyright The Sacramento Bee. All rights reserved.

• Read more articles by Dan Morain, Senior editor

Order Reprint

Share   Facebook   Twitter   Share   StumbleUpon   Email

# EXHIBIT 2



The latest on California politics and government

April 12, 2013

## Jerry Brown defiant of contempt of court threat in prison case



SHANGHAI - Gov. **Jerry Brown** said Friday his administration will not comply with a federal court order rejecting his effort to avoid reducing California's prison population, pledging to litigate "until the Supreme Court tells us that we're not on the right track."

The Democratic governor, in China for a week-long trade mission, said he was unaware that a three-judge federal court on Thursday had threatened to hold him and top prison officials in contempt of court, though he appeared unfazed by the prospect.

"I'm sure the people in L.A. would like to see more prisoners out on the streets," Brown said. "See, we have two problems here: Some are saying there are too many people being let loose, and then we have the judges saying, not enough, we need another 10,000 out there. So somewhere we're going to find the golden mean, and I will do my best to make it work."

The dispute follows a U.S. District Judge **Lawrence K. Karlton** decision in April denying Brown's bid to get prison health care out from under federal control.

A special panel consisting of Karlton and two other judges ordered the state in 2009 to reduce its prison population to improve health care in the prison system.

Brown has refused to decrease the prison population by the required 9,000 inmates to reach the court-ordered level.

"Look, California prisons are run by honorable men and women," Brown said. "They're doing the best job possible. We have, I believe from what I'm being advised, among the best healthcare in America and probably in the world. Now the judge sees it differently, and all I can say is I respect his differences, but we will take our case to the higher courts."

Brown said he plans to personally inspect the prisons at issue.

"I'm personally going to be taking my own personal inspection tour of those prisons which the judge feels are not up to snuff, and I will certainly listen and read what the critics say," Brown said. "But I have to tell you the constitutional

standard is deliberate indifference, and as far as I know there is no one deliberately indifferent to the health needs of California prisoners, and if I find such a person, he will be fired on the spot."

**PHOTO CREDIT**: *Gov. Jerry Brown speaks at the opening of a foreign trade office in Shanghai on Friday, April 12, 2013. David Siders / Sacramento Bee*

**Categories:** Gov. Jerry Brown

Share    Facebook    Share    StumbleUpon    Twitter    Email



Posted by **David Siders**
7:07 AM | 49 Comments

© Copyright The Sacramento Bee. All rights reserved.
blog comments powered by DISQUS

Sponsored Result

**Tax Tiger™- Tax Attorneys**
Owe At Least $10K? BBB A+ Rated. Free Consultation!
Tax-Tiger.com/TaxAttorney

**Travis Watkins™ Tax Atty**
Licensed, Local Tax Lawyer For Oklahomans with IRS and OTC
www.taxhelpok.com

**Tax Attorney**
Find Tax Attorney Local Attorneys - Start in Seconds!
RequestLegalHelp.com/Tax-Attorneys

**DECLARATION OF SERVICE BY MAIL**

Case Name:  Plata et al., Plaintiffs v. Brown et al., Defendants.
            United States District Court
            Northern District of California          No. C-01-1351 T.E.H.

I am employed in the County of Alameda, California. I am over the age of 18 years and not a party to the within entitled cause: my business address is Prison Law Office, 1917 Fifth Street, Berkeley, CA 94710

On April 16, 2013, I served the attached:

**PLAINTIFFS' REQUESTS FOR ADMISSION (SET 1)**

in said cause, placing, or causing to be placed, a true copy thereof, enclosed in a sealed envelope with postage thereon fully prepaid in the United States Mail at Berkeley, California, addressed as follows:

PAUL MELLO
Hanson Bridgett Marcus Vlahos & Rudy, LLP
425 Market Street, 26th Floor
San Francisco, CA 94105

DEBBIE VOROUS
Deputy Attorney General
Office of the Attorney General
PO Box 944255
Sacramento, CA 94244-2550

JAY RUSSELL
Deputy Attorney General
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed at Berkeley, California on April 16, 2013.

*Brandy Iglesias*
Brandy Iglesias

1  KAMALA D. HARRIS
   Attorney General of California
2  JONATHAN L. WOLFF
   Senior Assistant Attorney General
3  JAY C. RUSSELL
   Supervising Deputy Attorney General
4  PATRICK R. McKINNEY - 215228
   Deputy Attorneys General
5  455 Golden Gate Avenue, Suite 11000
   San Francisco, CA 94102-7004
6  Telephone: (415) 703-5500
   Facsimile: (415) 703-3035
7  Patrick.McKinney@doj.ca.gov

   HANSON BRIDGETT LLP
   JERROLD C. SCHAEFER - 39374
   PAUL B. MELLO - 179755
   WALTER R. SCHNEIDER - 173113
   SAMANTHA D. WOLFF - 240280
   MEGAN OLIVER THOMPSON - 256654
   PAUL B. GRUWELL - 252474
   425 Market Street, 26th Floor
   San Francisco, California 94105
   Telephone: (415) 777-3200
   Facsimile: (415) 541-9366
   pmello@hansonbridgett.com

8  Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| MARCIANO PLATA, et al., | CASE NO. 01-1351 TEH |
|---|---|
| Plaintiffs, | **DEFENDANT EDMUND G. BROWN, JR.'S RESPONSE TO FIRST SET OF REQUESTS FOR ADMISSION PROPOUNDED BY PLAINTIFFS** |
| v. | |
| EDMUND G. BROWN JR., et al., | |
| Defendants. | |

RESPONDING PARTY:    Defendant EDMUND G. BROWN, JR.

SET NO.:    One

Under Rule 36 of the Federal Rules of Civil Procedure, Defendant EDMUND G. BROWN, JR. ("Responding Party" or "Defendant") submits these objections and responses to the First Set of Requests for Admission propounded by Plaintiffs ("Propounding Parties").

## GENERAL OBJECTIONS

1. All of the following responses are based solely upon information and documents which are presently available to, and specifically known by Defendant and

-1-

disclose only those contentions which presently occur to Defendant. Additional investigation, legal research and analysis may supply additional facts and lead to additions, changes, and variations from these responses.

2. Defendant objects generally to the Requests for Admission to the extent that Plaintiffs seek to elicit information that is neither relevant to the subject matter of this action, nor reasonably calculated to lead to the discovery of admissible evidence.

3. Defendant objects to the requests to the extent they seek information equally available to Plaintiffs through public sources or records, and on the grounds that they subject Defendant to unreasonable and undue annoyance, oppression, burden, and expense.

4. Defendant objects to the Requests for Admission to the extent Plaintiffs purport to seek information or documents protected from discovery by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.

5. These responses are made solely for the purpose of this action. Each answer is subject to all objections to competence, relevance, materiality, propriety, admissibility, privacy, privilege, and any and all other objections that would require exclusion of any statement contained herein if any such requests were asked of, or any statement contained herein were made by, a witness present and testifying in court, all of which objections and grounds are reserved and may be interposed at the time of trial.

Without waiver of the foregoing, Defendant further responds as follows:

## RESPONSES TO REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

Admit that the document attached as Exhibit 1 accurately reflects statements Edmund G. Brown Jr. made on or before March, 31, 2013.

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

Defendant incorporates by reference the above General Objections as though fully stated in this response. Defendant further objects to this request on the grounds that the

document referenced in Request for Admission No. 1 (a newspaper article) is self-authenticating under Federal Rule of Evidence 902(6) and "require[s] no extrinsic evidence of authenticity in order to be admitted." Fed. R. Evid. 902. Thus, this request is unnecessary and harassing. Indeed, Defendant is quoted frequently in the media on the topic of state prisons, and Plaintiffs should not be allowed to ask him to admit that he was accurately quoted every time a newspaper reports on something he said. Such discovery is harassing and creates an undue burden and intrusion on the Governor's obligations, considering the insignificant value of the discovery sought weighed against the Governor's myriad responsibilities in conducting the affairs of the State. This Court should not condone these unnecessary discovery requests.

Moreover, Defendant objects to this request on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence. Indeed, this request is not designed to elicit essential information that could be obtained only from the Governor on issues of prison health care or population-reduction measures. And this request is not needed to discern Defendants' compliance with court orders because Defendants have already made clear that they are complying in good faith with the three-judge panel's recent orders. Defendants have timely submitted the court-ordered list and plan of measures, and have stated that they will take the unusual step of drafting legislative language for the measures in the plan and submit it to the Legislature for its consideration. (Court Ordered Plan on May 2, 2013, at p. 5:4-7, Docket No. 2609.)

**REQUEST FOR ADMISSION NO. 2:**

Admit that the document attached as Exhibit 2 accurately reflects statements Edmund G. Brown Jr. made on or before April 12, 2013.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

Defendant incorporates by reference the above General Objections as though fully stated in this response. Defendant further objects to this request on the grounds that the document referenced in Request for Admission No. 2 (a newspaper article) is self-authenticating under Federal Rule of Evidence 902(6) and "require[s] no extrinsic

evidence of authenticity in order to be admitted." Fed. R. Evid. 902. Thus, this request is unnecessary and harassing. Indeed, Defendant is quoted frequently in the media on the topic of state prisons, and Plaintiffs should not be allowed to ask him to admit that he was accurately quoted every time a newspaper reports on something he said. Such discovery is harassing and creates an undue burden and intrusion on the Governor's obligations, considering the insignificant value of the discovery sought weighed against the Governor's myriad responsibilities in conducting the affairs of the State. This Court should not condone these unnecessary discovery requests.

Moreover, Defendant objects to this request on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence. Indeed, this request is not designed to elicit essential information that could be obtained only from the Governor on issues of prison health care or population-reduction measures. And this request is not needed to discern Defendants' compliance with court orders because Defendants have already made clear that they are complying in good faith with the three-judge panel's recent orders. Defendants have timely submitted the court-ordered list and plan of measures, and have stated that they will take the unusual step of drafting legislative language for the measures in the plan and submit it to the Legislature for its consideration. (Court Ordered Plan on May 2, 2013, at p. 5:4-7, Docket No. 2609.)

DATED: May 20, 2013                     HANSON BRIDGETT LLP

                                        By: _____
                                        PAUL B. GRUWELL
                                        Attorneys for Defendant
                                        Edmund G. Brown, Jr.

-4-
DEFENDANT EDMUND G. BROWN, JR.'S RESPONSE TO FIRST SET OF REQUESTS FOR ADMISSION PROPOUNDED BY PLAINTIFFS

5093285.1

# PROOF OF SERVICE

## *Plata v. Brown, et al.*

### USDC, Northern District of California, Case No. 01-1351 TEH

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of San Francisco, State of California. My business address is 425 Market Street, 26th Floor, San Francisco, CA 94105.

On May 20, 2013, I served true copies of the following document(s) described as

**DEFENDANT EDMUND G. BROWN, JR.'S RESPONSE TO FIRST SET OF REQUESTS FOR ADMISSION PROPOUNDED BY PLAINTIFFS**

on the interested parties in this action as follows:

Donald Specter, Esq.
Kelly Knapp, Esq.
Prison Law Office
1917 Fifth Street
Berkeley, CA 94710-1916
Telephone: (510) 280-2621
Email: dspecter@prisonlaw.com

**BY MAIL:** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Hanson Bridgett LLP's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on May 20, 2013, at San Francisco, California.

Paul B. Gruwell

5146541.1