IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>EDMUND G. BROWN JR., et al.,<br><br>    Defendants. | NO. 2:90-cv-0520 LKK DAD (PC)<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>EDMUND G. BROWN JR., et al.,<br><br>    Defendants. | NO. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>ORDER DENYING PLAINTIFFS' MOTION RE: DESIGN CAPACITY |

    This matter comes before the Court on plaintiffs' motion regarding how design capacity at the California Health Care Facility ("CHCF") in Stockton should be considered when determining whether defendants have complied with our ordered reductions in California's prison population. Plaintiffs ask the Court to hold that our population reduction order applies only to the thirty-three adult institutions in existence at the time of trial, such that defendants cannot count CHCF's design capacity when calculating crowding percentages. For the reasons discussed below, plaintiffs' motion is DENIED. However, the Court will not allow defendants to count capacity that cannot actually be used. Accordingly, until the *Plata* Receiver re-opens medical admissions at CHCF, defendants may only count capacity based on the number of inmates housed at CHCF when admissions were closed.

**DISCUSSION**

At the time of trial, the system of in-state adult institutions operated by the California Department of Corrections and Rehabilitation ("CDCR") included thirty-three prisons. This Court's original population reduction order applied only to those thirty-three prisons, and not to "camps, community correction centers, or Department of Mental Health state hospitals, all of which also house CDCR inmates." *Coleman v. Schwarzenegger*, 922 F. Supp. 2d 882, 908 n.35 (E.D. Cal./N.D. Cal. Aug. 4, 2009) (ECF No. 2197/3641).[1] Following defendants' unsuccessful appeal to the United States Supreme Court, we ordered defendants to "reduce the population of California's thirty-three adult prisons" to 137.5% design capacity by June 27, 2013.[2] June 30, 2011 Order at 1-2 (ECF No. 2374/4032) (citing Jan. 12, 2010 Order at 4). We subsequently granted two extensions of that deadline, first to December 31, 2013, and finally to February 28, 2016. Jan. 29, 2013 Order at 2-3 (ECF No. 2527/4317); Feb. 10, 2014 Order at 2 (ECF No. 2766/5060).

These extensions of time raised a question that would not have arisen had defendants complied with this Court's original order to reduce the prison population: how to count design capacity at CHCF, which first became active in July 2013, after the original June 27, 2013 compliance deadline. Now that CHCF also includes the DeWitt Nelson Correctional Annex, its reported design capacity is 2,951 inmates. *E.g.*, Defs.' May 15, 2014 Status Report Ex. A (ECF No. 2789/5153). Plaintiffs assert that, because CHCF was designed to house inmates with serious medical and mental health needs, it will never be filled beyond 100% capacity, which means that "a maximum of 2,951 prisoners can actually be housed at the Stockton facility." Mot. at 3 (ECF No. 2784/5141). Defendants' opposition does not dispute this assertion.

---

[1] All filings in this Court are included in the individual docket sheets of both *Plata v. Brown*, No. C01-1351 TEH (N.D. Cal.), and *Coleman v. Brown*, No. 90-cv-520-LKK (E.D. Cal.). Our citations include the docket number in *Plata* first, then *Coleman*. When we cite to filings in the individual cases, we include the docket number and specify whether the filing is from *Plata* or *Coleman*.

[2] We also ordered defendants to achieve interim benchmarks every six months.

2

1    Plaintiffs correctly observe that our original opinion stated only that "an adjustment to
2 the specific terms of the population reduction order, although not to the percentage cap itself,
3 might be conceivably appropriate" if design capacity changed, and that we did not indicate
4 that such an adjustment would be automatic. *Coleman v. Schwarzenegger*, 922 F. Supp. 2d
5 at 955. Similarly, while we have explained that design capacity "may not remain static," and
6 that a change in design capacity would increase or decrease the number of inmates by which
7 the prison population must be reduced, *Coleman v. Schwarzengger*, 2010 WL 99000, at *3
8 (E.D. Cal./N.D. Cal. Jan. 12, 2010) (ECF No. 2287/3767), we have never stated that new
9 design capacity would automatically be incorporated into calculations of crowding
10 percentages to measure compliance with our orders.

11    Nonetheless, we have implicitly allowed defendants to add such capacity on one prior
12 occasion, and our orders since June 2013 have made clear that defendants could include
13 CHCF capacity in their calculations. First, in July 2012, defendants reported that:

> the design capacity of the State's 33 institutions has increased
> from 79,650 to 79,756 to reflect the completion of construction at
> CMF [the California Medical Facility] and CIW [the California
> Institution for Women]. This construction added 109 beds to
> serve the needs of mental health inmate-patients, and resulted in a
> net design capacity increase of 106 beds because Defendants
> repurposed 23 female cells to 20 Psychiatric Services Unit cells
> at CIW reducing the design capacity at CIW by 3 beds.

19 July 11, 2012 Meier Decl. ¶ 4 (ECF No. 2454/4211). No one disputes that, like the
20 additional design capacity at CHCF, these 106 mental health beds will never be crowded
21 beyond 100% capacity. Yet plaintiffs have never objected – including in their current motion
22 concerning CHCF capacity – that these 106 beds should not be added to design capacity for
23 purposes of measuring compliance with our orders, and defendants have always included
24 them in their capacity calculations, with neither contrary direction nor explicit approval from
25 this Court.

26    More significantly, in our June 2013 opinion and order, we credited defendants "fully
27 with design capacity resulting from construction to be completed between now and
28 December 2013," which was then the deadline for compliance with our population reduction

3

order. *Coleman v. Brown*, 952 F. Supp. 2d 901, 920 n.19 (E.D. Cal./N.D. Cal. June 20, 2013) (ECF No. 2659/4662). We therefore "credited defendants with the 1,722 beds that they expect to add and thus to increase design capacity" in 2013, *id.* at 934, and our calculations of the number of inmates by which defendants had to reduce the population were based on including these 1,722 beds as part of the system's design capacity, *e.g., id.* at 921-22.[3] In addition, our June 20, 2013 opinion and order, like our April 11, 2013 order, referred to our June 30, 2011 population reduction order as requiring "defendants to reduce the overall prison population to 137.5% design capacity," without reference to limiting the order only to the original thirty-three institutions. *Id.* at 903; *see also id.* at 919 n.18; Apr. 11, 2013 Order at 1 (ECF No. 2591/4542). Admittedly, our orders could have been more explicit in explaining that the population reduction order applied to the system of institutions including CHCF rather than only to the thirty-three institutions in existence at the time of trial, but our language and our calculations, particularly those contained in our June 20, 2013 opinion and order, made that clear.

Our acceptance of defendants' approach to including CHCF design capacity in the crowding calculations is also demonstrated by our acceptance of defendants' calculations in their biweekly and monthly reports. Beginning with the August 15, 2013 report, defendants have reported population and capacity levels at the "State's 34 adult institutions," including CHCF, and calculated an overall crowding percentage based on these thirty-four institutions. Defs.' Aug. 15, 2013 Status Report at 2 & Ex. A (ECF No. 2694/4754); Aug. 29, 2013 Status Report at 3 & Ex. A (ECF No. 2705/4777); Sept. 16, 2013 Status Report at 9 & Ex. A (ECF No. 2713/4803); Feb. 18, 2014 Status Report at 2 & Ex. A (ECF No. 2768/5068); Mar. 17, 2014 Status Report at 2 & Ex. A (ECF No. 2775/5114); Apr. 15, 2014 Status Report at 2 & Ex. A (ECF No. 2780/5136). We reviewed those reports and never ordered defendants to

---

[3]The reported design capacity of CHCF is now 2,951, an increase due in part to the completion of the DeWitt Nelson Correctional Annex, a conversion of a former juvenile justice facility that has been incorporated into CHCF. Plaintiffs do not dispute this figure. While none of our orders has credited defendants with the additional capacity beyond the original 1,722 noted in our June 20, 2013 order, we see no reason to treat CHCF's entire design capacity any differently from the 1,722 beds that we have previously credited.

4

1  modify their reporting such that only the original thirty-three institutions were considered,
2  nor did plaintiffs, prior to filing their motion on April 25, 2014, ever challenge defendants'
3  reporting or the way in which defendants calculated the percentage of crowding compared to
4  design capacity.

5        Our February 10, 2014 order further confirms our acceptance of including CHCF in
6  design capacity calculations. After settlement discussions failed to produce an agreement
7  between the parties on defendants' request for an extension of time, we ordered the parties to
8  file separately proposed orders and responses thereto. Jan. 13, 2014 Order at 1-2 (ECF No.
9  2752/4978). Defendants' proposal referred to their request "to extend the deadline to reduce
10 the population in the State's 34 adult institutions to 137.5% of design bed capacity," Defs.'
11 Jan. 23, 2014 Am. Application for Extension at 2 (ECF No. 2755/5023), and their proposed
12 order included the following language:

> . . . the Court GRANTS Defendants' request for an extension of time to comply with this Court's June 30, 2011 Order to reduce California's prison population to 137.5% of design capacity. IT IS HEREBY ORDERED that:
>
>    1. The deadline to achieve the ordered reduction in the in-state adult institution population to 137.5% of design bed capacity is extended to February 28, 2016.

18 Defs.' Jan. 23, 2014 Proposed Order at 1 (ECF No. 2755/5023). As demonstrated by their
19 objections, plaintiffs understood defendants' proposal to include CHCF design capacity in
20 the calculation of the crowding percentage. Specifically, plaintiffs objected that "CHCF
21 should not be counted in the overall capacity of the prisons that can be crowded at 137.5% of
22 capacity," and that "prisoners transferred to CHCF, like those transferred to camps, contract
23 beds, or out-of-state prisons, should simply be subtracted from the population of the 33
24 prisons." Pls.' Jan. 28, 2014 Objections to Defs.' Jan. 23, 2014 Proposed Order at 1-2 n.2
25 (ECF No. 2757/5026). Our order borrowed verbatim the relevant language from defendants'
26 proposed order:
27 //
28 //

5

> IT IS HEREBY ORDERED that:
>
> 1. The Court GRANTS defendants' request for an extension of time, but only to February 28, 2016, to comply with this Court's June 30, 2011 Order to reduce California's prison population to 137.5% design capacity.
>
> 2. The deadline to achieve the ordered reduction in the in-state adult institution population to 137.5% design capacity is extended to **February 28, 2016.**

Feb. 10, 2014 Order at 2. Thus, while we did not explicitly address plaintiffs' objection, our order implicitly rejected it by adopting defendants' proposed language. The order was intended to continue our prior interpretation of the population reduction order as applicable to the system of in-state adult CDCR institutions including CHCF, and not only to the original thirty-three institutions.

Plaintiffs now request the same relief raised by the objection that we already rejected: "[P]risoners transferred from the thirty-three original prisons to the Stockton facility – like those transferred to camps, contract beds, or out-of-state prisons – should simply be subtracted from the population of the thirty-three prisons. The beds those prisoners fill should not be counted as part of the 'design capacity' that can be crowded at 137.5%." Mot. at 3. However, plaintiffs have not established a sufficient basis for reconsidering the manner in which we have viewed this case over the past year, and we therefore decline to do so.

Moreover, contrary to plaintiffs' assertion, they have not "long made clear that the CHCF capacity should . . . not [be] included in the overall design capacity." Mot. at 2. In response to our October 11, 2012 order requiring the parties to propose plans for compliance with our population reduction order, plaintiffs' expert, Dr. James Austin, counted the 1,722 beds to have been completed at CHCF by December 2013 in his calculations of "Institutions at 137.5% of Design." Jan. 7, 2013 Austin Decl. ¶ 9 (ECF No. 2509-1/4283-1) ("Table 2 are my estimates of how much the prison population must be reduced by June 27, 2013 and December 27, 2013."); *id.* at Table 2 (calculating 137.5% design capacity as 109,665 for December 2012 and June 2013, but as 112,032 for December 2013, a difference explained by adding 1,722 beds to design capacity). Thus, on at least one occasion, plaintiffs counted

6

CHCF capacity in the same way as defendants, instead of requesting that CHCF capacity be excluded from design capacity calculations.

We acknowledge that allowing defendants to count design capacity will, as plaintiffs observe, crowd the original thirty-three institutions beyond the population benchmarks ordered by this Court. However, we have already considered that some institutions in the system might be more or less crowded than our ordered benchmarks for the system as a whole, and we have concluded that a systemwide population cap, rather than institution-by-institution caps, is the most appropriate remedy. *E.g., Coleman v. Schwarzenegger*, 922 F. Supp. 2d at 963-64 (explaining that "an institution-by-institution approach to population reduction would interfere with the state's management of its prisons more than a systemwide cap"); *id.* at 970 n.64 ("We recognize that certain institutions and programs in the system require a population far below 137.5% design capacity. We trust that any population reduction plan developed by the state in response to our opinion and order will properly account for the particular limitations and needs of individual institutions and programs."); *see also Brown v. Plata*, 131 S. Ct. 1910, 1940-41 (2011) (recognizing the flexibility of a systemwide order).

Additionally, the remedy we have ordered in this case has necessarily been based on predictive judgments, *e.g.*, *Coleman v. Brown*, 922 F. Supp. 2d 1004, 1031-32 (E.D. Cal./N.D. Cal. Apr. 11, 2013) (ECF No. 2590/4541), and our decision to include CHCF design capacity does not foreclose a subsequent modification if crowding continues to be the primary cause of unconstitutional medical or mental health care even after CHCF is fully occupied and the systemwide population at the thirty-four institutions is at or below 137.5% design capacity. Unless and until plaintiffs make such a showing, it is this Court's opinion that the most appropriate remedy – the least intrusive remedy required under the Prison Litigation Reform Act, 18 U.S.C. § 3626(a)(1)(A) – is to order defendants to comply with the population reduction benchmarks based on design capacity of all thirty-four in-state adult institutions, including CHCF.

1    Defendants should not, however, benefit from counting as design capacity any
2 capacity that cannot actually be used.  On January 27, 2014, the *Plata* Receiver closed CHCF
3 to new medical admissions to allow time to correct identified deficiencies in the provision of
4 medical care.  Receiver's Twenty-Fifth Tri-Annual Report at 31 (*Plata* ECF No. 2761).
5 CHCF remains closed to new medical admissions, but the Receiver anticipates being able to
6 re-open admissions in the next several months.  Receiver's Twenty-Sixth Tri-Annual report
7 at 47-48 (*Plata* ECF No. 2792).  Until admissions are re-opened and CHCF capacity can be
8 fully utilized, defendants may not count as design capacity that portion of CHCF that is not
9 able to hold the medically ill inmates it was intended to house.  Instead, defendants may only
10 count in its calculations of design capacity and crowding percentages the portion of CHCF
11 that was actually occupied as of January 27, 2014.  Defendants' monthly reports shall be
12 modified to include the appropriate figures.
13    Finally, to avoid future confusion, we clarify that our order regarding CHCF capacity
14 does not mean that any future additions to design capacity will automatically be included in
15 crowding calculations for purposes of determining compliance with our population reduction
16 order.  While defendants may, consistent with this and prior orders, include CHCF design
17 capacity in their calculations, the Court might reach a different conclusion regarding any
18 future additional design capacity.  For example, as we noted in our original opinion and
19 order, all construction is not created equal, and the addition of in-fill beds without
20 corresponding support facilities might exacerbate rather than alleviate the problems caused
21 by crowding.  *Coleman v. Schwarzenegger*, 922 F. Supp. 2d at 954-55.  In such
22 circumstances, it would not be appropriate to give full credit to defendants for such capacity.
23 Similarly, if the ratio between the total number of beds and the number of beds with full
24 administrative and healthcare support were to change significantly, reconsideration of the
25 percentage cap might be appropriate.  Accordingly, if defendants intend to add any future
26 new design capacity, they shall meet and confer with plaintiffs to see if they can reach
27 agreement on how such capacity should be counted and, if so, file a stipulation and proposed
28

8

order. If the parties are unable to reach agreement, defendants shall file a motion requesting a determination from this Court.

**CONCLUSION**

For all of the above reasons, plaintiffs' motion regarding design capacity at CHCF is DENIED. Defendants may count the design capacity at CHCF when calculating crowding percentages for purposes of measuring compliance with our population reduction order, but they may only count the full design capacity once the *Plata* Receiver has reopened medical admissions at CHCF. In the interim, defendants shall modify their monthly and benchmark reports accordingly.

The Court recognizes that the June 30, 2014 benchmark to achieve 143% design capacity is now one week away. It appears from defendants' most recent monthly report that they may be able to achieve this benchmark without counting CHCF's full design capacity.[4] However, because defendants may have reasonably relied on our prior orders indicating that CHCF design capacity could be included, and because we have only now, for the first time, ordered that it may not be counted in full, we will, if requested, grant defendants an extension

//
//
//
//
//
//
//
//

---

[4] Defendants report their intent to increase the inmate population of California City, an in-state private prison, by 478 inmates by June 30, 2014. Defs.' June 16, 2014 Status Report at Ex. B at 1 (ECF No. 2795/5170). Based on the Court's rough calculations, the reported inmate population of 116,485 at the State's thirty-four adult institutions as of June 11, 2014, *id.* at 1, is less than 478 inmates short of the 143% benchmark. However, compliance with the benchmark is not clear because there might be a net increase in the number of CDCR inmates systemwide.

9

of no more than two months to achieve the 143% benchmark if they are unable to do so, despite their best efforts, by June 30, 2014.

**IT IS SO ORDERED.**

Dated:   06/23/14

STEPHEN REINHARDT
UNITED STATES CIRCUIT JUDGE
NINTH CIRCUIT COURT OF APPEALS

Dated:   06/23/14

LAWRENCE K. KARLTON
SENIOR UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF CALIFORNIA

Dated:   06/23/14

THELTON E. HENDERSON
SENIOR UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF CALIFORNIA