IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>EDMUND G. BROWN JR., et al.,<br><br>  Defendants. | NO. 2:90-cv-0520 KJM DAD (PC)<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>EDMUND G. BROWN JR., et al.,<br><br>  Defendants. | NO. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br><u>ORDER DIRECTING COMPLIANCE OFFICER TO CONFER WITH PARTIES</u> |

On February 10, 2014, this Court extended the deadline for defendants to reduce the in-state adult institution prison population to no more than 137.5% design capacity and set two intermediate population benchmarks. Feb. 10, 2014 Order at 2 (ECF No. 2766/5060).[1] In addition, the Court ordered defendants to "immediately implement" several specific population reduction measures, which were taken almost verbatim from defendants' own proposed order. The Court expressly imposed immediate implementation as the standard, declining to adopt defendants' more lenient proposal that the measures be implemented

---

[1] All filings in this Three-Judge Court are included in the individual docket sheets of both *Plata v. Brown*, No. C01-1351 TEH (N.D. Cal.), and *Coleman v. Brown*, No. 2:90-cv-0520-KJM DAD (PC) (E.D. Cal.). This Court includes the docket number of *Plata* first, then *Coleman*.

"promptly." *Compare id.* at 3 *with* Defs.' Jan. 23, 2014 Proposed Order at 2 (ECF No. 2755/5023). These measures included the following:

> (a) Increase credits prospectively for non-violent second-strike offenders and minimum custody inmates. Non-violent second-strikers will be eligible to earn good time credits at 33.3% and will be eligible to earn milestone credits for completing rehabilitative programs. Minimum custody inmates will be eligible to earn 2-for-1 good time credits to the extent such credits do not deplete participation in fire camps where inmates also earn 2-for-1 good time credits;
>
> (b) Create and implement a new parole determination process through which non-violent second-strikers will be eligible for parole consideration by the Board of Parole Hearings once they have served 50% of their sentence; [and]
>
> . . .
>
> (e) Finalize and implement a new parole process whereby inmates who are 60 years of age or older and have served a minimum of twenty-five years of their sentence will be referred to the Board of Parole Hearings to determine suitability for parole[.]

Feb. 10, 2014 Order at 3.

Plaintiffs contend that defendants have failed to fully implement these measures and now seek an order for further enforcement. In particular, plaintiffs ask that defendants be ordered to: (1) implement 2-for-1 credits for minimum custody inmates who are ineligible for fire camps; (2) grant 33.3% credits to all non-violent second strikers, including those with a prior sex offense; and (3) implement new parole procedures for non-violent second-strikers by January 1, 2015.[2]

In opposition, defendants assert that: (1) granting 2-for-1 good time credits to minimum custody inmates who are ineligible for fire camps would deplete participation in

---

[2] Plaintiffs also initially challenged defendants' compliance with paragraph 4(e) of the February 10, 2014 order concerning elderly parole. However, they did not reiterate that argument in their reply. Reply at 4 (ECF No. 2816/5227) (mentioning only non-violent second-striker but not elderly parole). In addition, Defendants have submitted evidence that they have implemented the new parole process required by paragraph 4(e). Sept. 30, 2014 Shaffer Decl. ¶¶ 5-7 (ECF No. 2813-1/5223-1) (discussing progress and noting that "[u]se of the revised risk assessments will begin on October 1, 2014, for hearings of elder inmates"); *see also* Ex. B to Oct. 15, 2014 Status Report at 4 (ECF No. 2818-2/5231-2) (confirming that the "revised risk assessments were prepared for elderly parole hearings held on or after October 1, 2014").

2

1  fire camps by causing higher turnover at minimum support facilities ("MSFs"), where such
2  inmates perform jobs that are "critical to the daily functioning of each institution, including
3  garage, recycle and refuse collections, and various Plant Operations positions in support of
4  institutional tradespersons," Sept. 30, 2014 Singh Decl. ¶ 5 (ECF No. 2813-4/5223-4),
5  thereby "forc[ing] [CDCR] to draw down its fire camp population to fill these vital MSF
6  positions," *id.* ¶ 7; (2) they "have always indicated" that sex offenders would be excluded
7  from the population of non-violent second-strikers eligible for increased good time credits,
8  and they should be permitted to do so "to minimize the risks of public safety," particularly
9  when they are currently in compliance with the Court's population benchmarks, Opp'n at 5
10 (ECF No. 2813/5223); and (3) they "have made substantial progress" on implementing a new
11 parole process for non-violent second-strikers, *id.* at 3, but that doing so is a "time-
12 consuming process," Sept. 30, 2014 Meier Decl. ¶ 3 (ECF No. 2813-3/5223-3), which they
13 anticipate completing "prior to July 1, 2015" and "primarily" impacting the final benchmark,
14 *id.* ¶ 5.

15      Upon consideration of the parties' written submissions, the Court has determined that
16 further factual development would assist the Court in resolving plaintiffs' motion. For
17 example, as to fire camps, it is not clear whether there are any minimum custody inmates
18 who are ineligible for both MSF placement and fire camps, in which case defendants'
19 argument would not apply. It is also not clear whether granting 2-for-1 credits as plaintiffs
20 request would have the impact on fire camp participation that defendants "believe" is
21 "likely." Singh Decl. ¶¶ 6-7. As to increasing credits for non-violent second-strikers,
22 although defendants excluded "sex registrants" from prior estimates on the population impact
23 of increasing good time credits, May 2, 2013 Atkinson Decl. ¶¶ 5, 12 (ECF No. 2608/4571),
24 and the Court previously relied on those estimates, June 20, 2013 Op. & Order at 37 (ECF
25 No. 2659/4662), defendants did not exclude sex offenders in their January 23, 2014 proposed
26 order that became the basis of this Court's February 10, 2014 order.[3] It is unclear whether

---

[3] Defendants appear to use the terms "sex registrants" and "sex offenders" interchangeably. *Compare, e.g.,* May 2, 2013 Atkinson Decl. ¶¶ 5, 12 (ECF No. 2608/4571) *with* May 3, 2013 Am. Defs.' Resp. at 11:14-16 (ECF No. 2612/4576 ).

3

this omission was intentional. The Court also lacks any current information on the number of non-violent second strikers excluded by defendants, what types of crimes form the basis for the exclusion, or the impact that including sex offenders in this measure would have on reducing the overall population. Finally, as to the parole process, the Court is skeptical that a 17-month delay between the Court's order and final implementation is reasonable and additional information would be helpful to assess defendants' diligence.

Accordingly, IT IS HEREBY ORDERED that the Compliance Officer shall promptly confer with the parties and gather facts relevant to resolving plaintiffs' motion.[4] The parties shall fully cooperate with the Compliance Officer. The Compliance Officer shall report confidentially to this Court on the issues raised above, as well as on any other issues he deems relevant to these matters. Plaintiffs' motion remains under submission.

**IT IS SO ORDERED.**

Dated: 10/29/14

STEPHEN REINHARDT
UNITED STATES CIRCUIT JUDGE
NINTH CIRCUIT COURT OF APPEALS

Dated: 10/29/14

THELTON E. HENDERSON
SENIOR UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF CALIFORNIA

Dated: 10/29/14

KIMBERLY J. MUELLER
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF CALIFORNIA

---

[4] This order does not re-open formal discovery between the parties.

4