DONALD SPECTER – 083925
STEVEN FAMA – 099641
ALISON HARDY – 135966
SARA NORMAN – 189536
RITA LOMIO – 254501
MARGOT MENDELSON – 268583
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California  94710-1916
Telephone:   (510) 280-2621

MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
LISA ELLS – 243657
JESSICA WINTER – 294237
MARC J. SHINN-KRANTZ – 312968
CARA E. TRAPANI – 313411
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:   (415) 433-6830

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURTS

EASTERN DISTRICT OF CALIFORNIA

AND NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>GAVIN NEWSOM, et al.,<br><br>        Defendants. | Case No. 2:90-CV-00520-KJM-DB<br><br>**THREE JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>GAVIN NEWSOM,<br><br>        Defendants. | Case No. C01-1351 JST<br><br>**THREE JUDGE COURT**<br><br>**DECLARATION OF MICHAEL W. BIEN IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION TO MODIFY POPULATION REDUCTION ORDER** |

I, Michael W. Bien, declare:

1.  I am an attorney duly admitted to practice before this Court. I am a partner in the law firm of Rosen Bien Galvan & Grunfeld LLP, counsel of record for *Coleman* Plaintiffs. I have personal knowledge of the facts set forth herein, and if called as a witness, I could competently so testify. I make this declaration in support of Plaintiffs' Emergency Motion to Modify Population Reduction Order.

2.  For the past two years, my co-counsel, Donald Specter of the Prison Law Office, and I have been engaged in ongoing discussions with Defendants about the need to reduce the number of prisoners with serious mental illness in CDCR in light of the ongoing chronic shortages of clinical staff, specialized treatment beds, and treatment and office space. Several of these meetings occurred in the past few months, including meetings on March 9, 2020. Soon thereafter, the COVID-19 pandemic and the management and operation of the prisons quickly became the only topic of discussion.

3.  On March 18, 2020, we were informed by the Department of State Hospitals ("DSH") that they were closing admissions to *Coleman* class members in need of inpatient psychiatric hospitalization as a result of COVID-19. We were also provided with the first version of CDCR's medical plan to address the pandemic.

4.  On March 19, 2020, I spoke with Kelli Evans, Chief Deputy Legal Affairs Secretary for Criminal Justice for Defendant Newsom, by telephone. I informed Ms. Evans that a rapid and significant reduction in CDCR's population was urgently needed to address the COVID-19 crisis. I offered various ideas on how such a population reduction could be completed in a safe and appropriate manner, with the understanding that the selection of any particular method of reduction would be up to Defendants. Ms. Evans stated that various proposals to reduce the prison population in response to the pandemic were under consideration, but that no decision to do anything had been made.

5.  Also on March 19, 2020, in advance of a previously scheduled March 20, 2020 status conference in *Coleman v. Newsom*, I informed the Court of DSH's closure and of Plaintiffs' position that CDCR cannot protect the health and safety of CDCR's prisoners

1

and staff, nor the general public, from the COVID-19 pandemic without significantly reducing the extreme level of overcrowding in the system. After hearing from the parties and the Special Master at the status conference on March 20, 2020, the Court ordered the parties, in consultation with the *Coleman* Special Master, to immediately convene a task force to focus on developing responses to the pandemic, including consideration of reducing the prison population.

6. The first task force meeting was held telephonically the same day. When I and Mr. Specter raised the possibility of reducing the population with Defendants on that call, lead counsel for Defendants, Deputy Attorney General Kyle Lewis, said that population reductions should not be part of the task force's conversations.

7. On March 21, 2020, Mr. Specter, Lisa Ells, and I spoke with Ralph Diaz, Secretary of the California Department of Corrections (CDCR), and Jennifer Neill, Chief Counsel for CDCR, as well as the *Coleman* Special Master, Matthew Lopes. Mr. Diaz and Ms. Neill informed us that various population reduction options in response to COVID-19 were under consideration, but no decisions had been made, and that she was not permitted to disclose or discuss the various possibilities with the Special Master or Plaintiffs' counsel. Plaintiffs' counsel informed Defendants that the Court had "put population on the table" and that if Defendants refused to discuss population reduction we would so inform the Court.

8. On March 22, 2020, I spoke privately with Ms. Neill and insisted that Defendants schedule a substantive meeting to discuss population. On March 23, 2020, Mr. Specter, Ms. Ells, and I spoke with Ms. Evans, Mr. Diaz, Ms. Neill, as well as Mr. Lopes. Again, we were informed that Defendants were considering taking various steps to address the dangerously overcrowded conditions in CDCR in light of the COVID-19 crisis, including restricting new admissions to CDCR from County Jails, but that no decisions had been made.

9. On the morning of March 24, 2020, Mr. Specter and I spoke again with Ms. Evans, Mr. Diaz, and Ms. Neill. Mr. Lopes was also on the phone call with Ms. Evans.

1  We were informed yet again that Defendants still had not decided whether or not to take
2  steps to reduce the prison overcrowding in response to the COVID-19 pandemic.  Mr.
3  Specter and I then informed Defendants that we would be filing the instant motion seeking
4  emergency relief.

5       10.   Expedited consideration of this motion is appropriate given the extremely
6  urgent and time-sensitive nature of the relief requested, namely a population reduction
7  order to contain the COVID-19 pandemic in CDCR's prisons.  According to Plaintiffs'
8  expert, Dr. Marc Stern, COVID-19 is a novel virus for which no vaccine or cure exists, and
9  for which no one has immunity.  It can be deadly.  It progresses extremely rapidly and has
10 spread at exponential rates across the world.  COVID-19 is already in CDCR, with at least
11 one incarcerated person and seven employees confirmed to have the virus.  Urgent
12 consideration and relief is needed because people incarcerated in CDCR's prisons are
13 presently at an extraordinary risk of dying from COVID-19.

14      11.   Attached hereto as **Exhibit 1** is a true and correct copy of the California
15 Correctional Health Care Services ("CCHCS") Interim Guidance for Health Care and
16 Public Health Providers Regarding COVID-19, dated March 2020, which I received via
17 email from Defendants on March 21, 2020.

18      12.   Attached hereto as **Exhibit 2** is a true and correct copy of a March 20, 2020
19 CCHCS memorandum to the field entitled "COVID-19 Pandemic – Guidance Regarding
20 Field Operations," which I received via email from Defendants on March 21, 2020.

21      13.   Attached hereto as **Exhibit 3** is a true and correct copy of Defendants'
22 Institutional Bed Audit, dated March 23, 2020, which my co-counsel, Steven Fama,
23 received via email from Defendants on March 23, 2020 and provided to me.

24      14.   Attached hereto as **Exhibit 4** is a true and correct copy of a signed
25 CCHCS/CDCR memorandum to the field and attached chart dated March 25, 2020,
26 entitled "COVID-19 – Mental Health Delivery of Care Guidance," which I received via
27 email from Defendants on March 25, 2020.

28

15. Attached hereto as **Exhibit 5** is a true and correct copy of an email I received from Nicholas Weber, counsel for CDCR, on March 20, 2020 entitled "Coleman - March 19 2020 Inpatient Census and Waitlist Data," and an enclosure to that email providing Defendants' inpatient census and waitlist data as of March 19, 2020.

16. As of March 23, 2020, 46,265 people in California's prisons currently live in dorms. This amounts to 38% of the State's total in-custody population as of March 18, 2020. Amber Norris, an investigator and monitor employed at the Prison Law Office working under the direction and supervision of a lawyer at my office, Cara E. Trapani, calculated these numbers. To calculate the number of people housed in dorms, Ms. Norris, under Ms. Trapani's supervision, analyzed data provided in the March 23, 2020 Institutional Bed Audit ("March 23 Institutional Bed Audit"), which the State provided to me via email and which I have attached hereto as Exhibit 3. *See* ¶ 13, *supra*. Specifically, Ms. Norris reviewed each page of the 48-page Bed Audit and added together all numbers listed in the column entitled "Occupied Count" for all rows that listed "Dorm" in the column entitled "Type of Bed." To obtain total percentage of individuals who live in dorms statewide, Ms. Trapani, at my direction, then divided the total number of people who live in dorms by the total in-custody population figure for March 18, 2020 that is reported in CDCR's Monthly Total Population Report. Attached hereto as **Exhibit 6** is a true and correct copy of the CDCR population report used for this calculation, available at https://www.cdcr.ca.gov/research/wp-content/uploads/sites/174/2020/03/Tpop1d200318.pdf.

17. As of March 23, 2020, 37,677 people live in CDCR dorms that are at or over 100% design capacity. Of those, 78% (29,401 people) live in dorms at or over 137.5% design capacity, including 13,458 people living in dorms at or over 175% design capacity. Ms. Norris, again under Ms. Trapani's supervision and at my direction, calculated these numbers using data provided in the March 23 Institutional Bed Audit. Specifically, to obtain the number of patients housed in dorms at or over 100% design capacity, Ms. Norris added together all numbers listed in the column entitled "Occupied Count" for all rows that

4

listed "Dorm" in the column entitled "Type of Bed" and an "O/C%" (i.e., "Occupied Count Percentage," or the percentage of "Occupied Beds" as compared to the "Design Bed Count") of 100 or more percent.  Under Ms. Trapani's supervision, and at my direction, Ms. Norris repeated these steps for rows noting an "O/C%" 137.5 or more percent, and an "O/C%" of 175 or more percent.

18. As March 23, 2020, 1,654 EOP class members live in CDCR dorms, which is approximately 25% of all EOP class members in CDCR.  Lisa Ells, a lawyer in my office, calculated these numbers.  To calculate the number of EOP class members housed in dorms, Ms. Ells analyzed data provided in the March 23 Institutional Bed Audit. Specifically, Ms. Ells reviewed each page of the 48-page Bed Audit and added together all numbers listed in the column entitled "Occupied Count" for all rows that listed "Dorm" in the column entitled "Type of Bed" and "EOP" in the column entitled "Program."  To obtain the total percentage of EOP class members who live in dorms statewide, Ms. Ells then divided the total number of EOP class members who live in dorms by the total number of EOP class members systemwide as of February 18, 2020, as reported in Defendants' Mental Health Services Delivery System Management Information Summary Report, attached hereto as Exhibit 32, *supra*.

19. As March 23, 2020, 1,063 of the 1,654 EOP class members were living in CDCR dorms that are or over 100% design capacity (64%), and of those, 251 were in dorms operating at or over 137.5% design capacity (24%).  Ms. Ells calculated these numbers using data provided in the March 23 Institutional Bed Audit.  Specifically, to obtain the number of EOP class members housed in dorms at or over 100% design capacity, Ms. Ells added together all numbers listed in the column entitled "Occupied Count" for all rows that listed "Dorm" in the column entitled "Type of Bed," "EOP" in the column entitled "Program," and an "O/C%" of 100 or more percent.  Ms. Ells repeated these steps for rows noting an "O/C%" 137.5 or more percent.

20. Out of CDCR's 35 institutions, 65% (or 24 facilities) have dorms that are at or over 100% design capacity.  Ms. Trapani, at my direction, obtained this number by

adding the total number of institutions listed in the March 23 Institutional Bed Audit that showed at least one dorm with an "O/C%" over 100% and dividing the total number (24) by the total number of institutions (35).

21. Attached hereto as **Exhibit 7** is a true and correct copy of the Centers for Disease Control and Prevention ("CDC") Interim Guidance on Management Of Coronavirus Disease 2019 (COVID-19) in Correction and Detention Facilities, dated March 23, 2020, available at https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html.

22. Attached hereto as **Exhibit 8** is a true and correct copy of a news article dated March 18, 2020 from The Guardian entitled "Iran to pardon 10,000, including 'security' prisoners: Announcement follows temporary release of 85,000 to ease pressure on prisons amid coronavirus crisis," available at https://www.theguardian.com/world/2020/mar/19/iran-to-pardon-10000-including-security-prisoners.

23. Attached hereto as **Exhibit 9** is a true and correct copy of a news article dated March 24, 2020 from U.S. News and World Report entitled "New Jersey Set to Release Up to 1,000 County Jail Inmates," available at https://www.usnews.com/news/best-states/articles/2020-03-24/new-jersey-will-release-county-jail-inmates-to-combat-coronavirus.

24. Attached hereto as **Exhibit 10** is a true and correct copy of a news article dated March 23, 2020 from The Times Republican entitled "Iowa's prisons will accelerate release of approved inmates to mitigate COVID-19," available at https://www.timesrepublican.com/news/todays-news/2020/03/iowas-prisons-will-accelerate-release-of-approved-inmates-to-mitigate-covid-19/.

25. Attached hereto as **Exhibit 11** is a true and correct copy of a news article dated March 19, 2020 from The San Francisco Chronicle entitled "Alameda County approves early release for nearly 250 inmates at Santa Rita Jail," available at

https://www.sfchronicle.com/crime/article/Alameda-County-approves-early-release-for-nearly-15144181.php.

26. Attached hereto as **Exhibit 12** is a true and correct copy of a news article dated March 19, 2020 from Fox KTVU entitled "Jails across California, country release inmates because of coronavirus," available at https://www.ktvu.com/news/jails-across-california-country-release-inmates-because-of-coronavirus.

27. Attached hereto as **Exhibit 13** is a true and correct copy of a news article dated March 22, 2020 from The Wisconsin State Journal entitled "Wisconsin Gov. Tony Evers halting prison admissions to prevent COVID-19 spread," available at https://madison.com/wsj/news/local/crime-and-courts/wisconsin-gov-tony-evers-halting-prison-admissions-to-prevent-covid/article_032e01f1-931c-5347-9e96-b9dd2894248a.html.

28. Attached hereto as **Exhibit 14** is a true and correct copy of a news article dated March 19, 2020 from Florida Today entitled "Florida state prisons suspend intake of new inmates," available at https://www.floridatoday.com/story/news/crime/2020/03/19/florida-state-prisons-suspend-intake-new-inmates/2875038001/.

29. Attached hereto as **Exhibit 15** is a true and correct copy of a news article dated March 21, 2020 from The Montgomery Advertiser entitled "Alabama prisons block new jail intakes for 30 days amid coronavirus pandemic," available at https://www.montgomeryadvertiser.com/story/news/2020/03/20/alabama-prisons-ban-new-inmates-30-days-amid-coronavirus-pandemic/2889797001/.

30. Attached hereto as **Exhibit 16** is a true and correct copy of a news article dated March 21, 2020 from MPRNews entitled "At least 38 test positive for coronavirus in New York City jails," available at https://www.mprnews.org/story/2020/03/21/at-least-38-test-positive-for-coronavirus-in-new-york-city-jails.

31. Attached hereto as **Exhibit 17** is a true and correct copy of the World Health Organization's (WHO's) March 15, 2020 Interim Guidance entitled "Preparedness,

1  prevention and control of COVID-19 in prisons and other places of detention," available at

2  http://www.euro.who.int/en/health-topics/health-determinants/prisons-and-

3  health/publications/2020/preparedness,-prevention-and-control-of-covid-19-in-prisons-

4  and-other-places-of-detention-2020.

5        32.    Attached hereto as **Exhibit 18** is a true and correct copy of The Center For

6  Disease Control's (CDC's) Coronavirus Disease 2019 (COVID-19) guidance entitled

7  "Coronavirus Disease 2019 (COVID-19): How to Protect Yourself," last accessed March

8  24, 2020, available at  https://www.cdc.gov/coronavirus/2019-

9  ncov/prepare/prevention.html.

10        33.    Attached hereto as **Exhibit 19** is a true and correct copy of California State

11  Employee Demographics dated December 2019, last accessed March 24, 2020, available at

12  https://www.sco.ca.gov/Files-PPSD/empinfo_demo_dept.pdf.

13        34.    Attached hereto as **Exhibit 20** is a true and correct copy of a news article

14  dated March 23, 2020 from KQED entitled "California Prisons Are a 'Tinderbox of

15  Potential Infection,' Former CDCR Secretary Warns," available at

16  https://www.kqed.org/news/11808282/california-prisons-are-a-tinderbox-of-potential-

17  infection-former-cdcr-secretary-warns.

18        35.    Attached hereto as **Exhibit 21** is a true and correct copy of a paper by Public

19  Policy Institute of California, dated May 2015, last accessed March 24, 2020, available at

20  https://www.ppic.org/publication/realignment-incarceration-and-crime-trends-in-

21  california/.

22        36.    Attached hereto as **Exhibit 22** is a true and correct copy of Governor

23  Newsom's Executive Order N-33-20 dated March 19, 2020, available at

24  https://covid19.ca.gov/img/Executive-Order-N-33-20.pdf.

25        37.    Attached hereto as **Exhibit 23** is a true and correct copy of Governor

26  Newsom's Executive Order N-36-20 dated March 24, 2020, available at http://cert1.mail-

27  west.com/anmc7rmlSyyF/myuzj/lSgt/str1ep71/uo66f/le/3lSlmw.

28

38.     Attached hereto as **Exhibit 24** is a true and correct copy of a March 13, 2020 letter sent to Governor Newsom by a coalition of over twenty organizations, some of whom had consulted with me and Mr. Specter, urging the governor to take immediate action to reduce the population of people in CDCR due to the extreme risk posed by COVID-19.

39.     Attached hereto as **Exhibit 25** is a true and correct copy of a March 20, 2020 follow up letter sent to Daniel Seeman and Kelli Evans, Governor Newsom's Deputy Cabinet Secretary and Chief Deputy Legal Affairs Secretary, respectively, by the same coalition, which by then had doubled in size.  The March 20 letter again urges immediate action and suggests steps that could be taken to address the crisis, including ways to ensure safe and appropriate transitions of released people into the community.

40.     Attached hereto as **Exhibit 26** is a true and correct copy of President Donald Trump's Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak, dated March 13, 2020, available at https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/.

41.     Attached hereto as **Exhibit 27** is a true and correct copy of the World Health Organization (WHO), Coronavirus disease (COVID-19) outbreak situation, listing statistics regarding confirmed cases, deaths, and geographic areas with cases as of March 24, 2020, 14:53 GMT-7, available at https://www.who.int/emergencies/diseases/novel-coronavirus-2019.

42.     Attached hereto as **Exhibit 28** is a true and correct copy of a letter from Governor Gavin Newsom to President Donald Trump, dated March 18, 2020, available at https://www.gov.ca.gov/wp-content/uploads/2020/03/3.18.20-Letter-USNS-Mercy-Hospital-Ship.pdf.

43.     Attached hereto as **Exhibit 29** is a true and correct copy of an excerpt of the CCHCS, Healthcare Services Dashboard dated February 14, 2020 (based on October 2019

data), available at https://cchcs.ca.gov/wp-content/uploads/sites/60/QM/Public-Dashboard-2019-10.pdf.

44. Attached hereto as **Exhibit 30** is a true and correct copy of then-Governor of the State of California Arnold Schwarzenegger's October 4, 2006 Proclamation entitled "Prison Overcrowding State of Emergency Proclamation," available at https://www.clearinghouse.net/chDocs/public/PC-CA-0057-0002.pdf.

45. Attached hereto as **Exhibit 31** is a true and correct copy of Appendix 1 of the CCHCS Health Care Department Operations Manual 1.2.14, last accessed March 25, 2020, available at https://cchcs.ca.gov/wp-content/uploads/sites/60/HC/HCDOM-ch01-art2.14.pdf.

46. Attached hereto as **Exhibit 32** is a true and correct copy of CDCR's Mental Health Services Delivery System (MHSDS) Management Information Summary (MIS) Report providing point-in-time population data as of February 18, 2020, which CDCR Counsel Nicholas Weber emailed to Plaintiffs' counsel and the Special Master on February 27, 2020.

47. Attached hereto as **Exhibit 33** is a true and correct copy of the CDCR, COVID-19 Preparedness website: March 24, 2020 Update, last accessed March 24, 2020, available at https://www.cdcr.ca.gov/covid19/.

48. Attached hereto as **Exhibit 34** is a true and correct copy of the Shelter-In-Place Order issued by the Health Officer of the County of Marin dated March 16, 2020, available at https://coronavirus.marinhhs.org/sites/default/files/Files/Shelter%20in%20Place/Shelter%20in%20Place%20Order%2016%20March%202020.pdf.

49. Attached hereto as **Exhibit 35** is a true and correct copy of a news article dated March 23, 2020 from The Guardian entitled "'Everyone Will be Contaminated': Prisons Face Strict Coronavirus Controls," available at https://www.theguardian.com/global-development/2020/mar/23/everyone-will-be-contaminated-prisons-face-strict-coronavirus-controls.

50.     Attached hereto as **Exhibit 36** is a true and correct copy of the California Department of Public Health website page on COVID-19, last accessed March 25, 2020, available at https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/Immunization/ncov2019.aspx.

51.     Attached hereto as **Exhibit 37** is a true and correct copy of the Center for Disease Control's (CDC's) webpage entitled "Coronavirus Disease 2019 (COVID-19): People Who are at Higher Risk," last updated March 22, 2020, available at https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/people-at-higher-risk.html.

52.     Attached hereto as **Exhibit 38** is a true and correct copy of Governor Newsom's Proclamation of a State of Emergency, dated March 4, 2020, available at https://www.gov.ca.gov/2020/03/04/governor-newsom-declares-state-of-emergency-to-help-state-prepare-for-broader-spread-of-covid-19/.

53.     The CDCR suicide rate for 2019 was 30.3 deaths per 100,000 people. Dylan Verner-Crist, a paralegal employed at my firm working under my direction and supervision, calculated the 2019 rates by using the methodology employed by the *Coleman* Special Master's experts in their 2014 Suicide Report. *See* Report on Suicides Completed in the California Department of Corrections and Rehabilitation, January 1, 2014 – December 31, 2014 ("2014 Suicide Report"), March 29, 2016, ECF No. 5428, at 1-6. In the report, the Special Master's experts give the CDCR suicide rates for the years 1999 through 2014, calculated by multiplying the number of suicides for the given year by 100,000 and then dividing this number by the total in-custody population as of June 30 of that same year. *See id.* at 2. Following this methodology, Mr. Verner-Crist used the total in-custody population figure for June 30, 2019 that is reported in CDCR's Monthly Total Population Report. Attached hereto as **Exhibit 39** is a true and correct copy of the CDCR population report used for this calculation, available at https://www.cdcr.ca.gov/research/wp-content/uploads/sites/174/2019/07/Tpop1d1906.pdf, which shows that the total in-custody population as of June 30, 2019 was 125,472 prisoners.

54. To calculate the number of suicides for 2019, Mr. Verner-Crist, under my supervision, used CDCR's Suicide Death Notifications, which Defendants regularly provide to Plaintiffs' Counsel in this case. Mr. Verner-Crist then multiplied the number of suicides by 100,000 and divided the resulting figure by the total in-custody population as of June 30, 2019.

55. In the course of my work on *Coleman*, I am provided by Defendants with various sources of data and statistics regarding the characteristics of the *Coleman* class. Based on my knowledge of that data, the class tends on average to be older than the rest of the people incarcerated in CDCR. The most recent data I have reviewed indicated that approximately 30% of the class is over the age of 50.

56. Attached hereto as **Exhibit 40** is a true and correct copy of an email sent on March 23, 2020 by the *Plata* Receiver, Clark Kelso, to my co-counsel Don Specter and various high-ranking CDCR officials regarding Mr. Kelso's current thoughts in favor of an immediate, substantial reduction in CDCR's population in response to COVID-19.

57. Attached hereto as **Exhibit 41** is a true and correct copy of a news article dated March 25, 2020 from Pew Trusts entitled "'Prisons Are Bacteria Factories'; Elderly Most at Risk," available at https://www.pewtrusts.org/en/research-and-analysis/blogs/stateline/2020/03/25/prisons-are-bacteria-factories-elderly-most-at-risk.

58. Attached hereto as **Exhibit 42** is a true and correct copy of a news article dated October 8, 2019 from The San Francisco Chronicle entitled "California prisons head acknowledges 'inmate suicide crisis' after reports," available at https://www.sfchronicle.com/crime/article/California-prisons-head-acknowledges-inmate-14502131.php.

59. As of March 11, 2020, 13,415 *Coleman* class members were housed in dorms. To calculate the number of *Coleman* class members housed in Level I or II housing in CDCR, Jessica Winter, an attorney in my office operating at my direction, relied on Defendants' Out of Level Housing Report, which Defendants provide to Plaintiffs and the Special Master as Enclosure 11 to their routine monthly reporting in

*Coleman*. Attached hereto as **Exhibit 43** is a true and correct copy of the most recent Enclosure 11 - Out of Level Housing Report provided to us by Defendants, which we received on March 16, 2020 and reflects data as of March 11, 2020. This report contains the housing level and individual security scores for EOP and CCCMS patients, along with non-class members and those who fall into the "other" category. The column entitled "Inmate Score Level" denotes each prisoner's individual security score. The column entitled "Housing Level" denotes the security level of each prisoner's housing unit. Because CDCR houses some class members in units that do not match their individual security scores, the numbers in the "Housing Level" and "Inmate Score Level" columns do not match. Ms. Winter used the columns "EOP" and "CCCMS" under "Mental Health Code" to calculate the number of class members in each housing level. Ms. Winter added all the numbers of EOP and CCCMS patients for each of the Level I and II rows under the column "Housing Level." This resulted in a total of 13,415 EOP or CCCMS class members housed in Level I or II housing as of March 11, 2020: 1,248 + 1 (Level I EOP and CCCMS in Level I housing) + 386 + 345 (Level I EOP and CCCMS in Level II housing) + 48 (Level II EOP and CCCMS in Level I housing) + 8,908 + 2,286 (Level II EOP and CCCMS in Level II housing) + 139 + 42 (Level III EOP and CCCMS in Level II housing) + 4 + 8 (Level IV EOP and CCCMS in Level II housing).

60. Attached hereto as **Exhibit 44** is a true and correct copy of a report, last updated March 25, 2020, from the Prison Policy Initiative entitled "Responses to COVID-19 Pandemic," available at https://www.prisonpolicy.org/virusresponse.html.

61. Attached hereto as **Exhibit 45** is a true and correct copy of the U.S. Department of Justice, Bureau of Justice Statistics Report NCJ 251920, released February 12, 2020, entitled "Mortality in State and Federal Prisons, 2001-2016 – Statistical Tables," available at https://www.bjs.gov/index.cfm?ty=pbdetail&iid=6766.

62. Attached hereto as **Exhibit 46** is a true and correct copy of a news article dated March 23, 2020 from the Nashville Scene entitled "25 People Released From Davidson: Nashville's district attorney and public defender have agreements to release

dozens more," available at https://www.nashvillescene.com/news/pith-in-the-wind/article/21123961/25-people-released-from-davidson-county-jail-in-antioutbreak-effort?utm_source=The+Marshall+Project+Newsletter&utm_campaign=cc1354b3f1-EMAIL_CAMPAIGN_2020_03_25_11_31&utm_medium=email&utm_term=0_5e02cdad9d-cc1354b3f1-174502021.

63. Attached hereto as **Exhibit 47** is a true and correct copy of an excerpt of the CDCR Division of Correctional Policy Research and Internal Oversight report published January 2020, entitled "Offender Data Points: Offender Demographics for the 24-month Period Ending December 2018," available at https://www.cdcr.ca.gov/research/wp-content/uploads/sites/174/2020/01/201812_DataPoints.pdf.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration is executed at San Francisco, California this 25th day of March, 2020.

*/s/ Michael W. Bien*
Michael W. Bien