DONALD SPECTER – 083925
STEVEN FAMA – 099641
ALISON HARDY – 135966
SARA NORMAN – 189536
RITA LOMIO – 254501
MARGOT MENDELSON – 268583
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California  94710-1916
Telephone:   (510) 280-2621

MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
LISA ELLS – 243657
JESSICA WINTER – 294237
MARC J. SHINN-KRANTZ – 312968
CARA E. TRAPANI – 313411
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:   (415) 433-6830

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURTS

EASTERN DISTRICT OF CALIFORNIA

AND NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>   Plaintiffs,<br><br>   v.<br><br>GAVIN NEWSOM, et al.,<br><br>   Defendants. | Case No. 2:90-CV-00520-KJM-DB<br><br>**THREE JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>   Plaintiffs,<br><br>   v.<br><br>GAVIN NEWSOM,<br><br>   Defendants. | Case No. C01-1351 JST<br><br>**THREE JUDGE COURT**<br><br>**DECLARATION OF JAMES AUSTIN PH.D. IN SUPPORT OF PLAINTIFFS' REPLY BRIEF** |

[3521253.4]

DECLARATION OF JAMES AUSTIN PH.D. IN SUPPORT OF PLAINTIFFS' REPLY BRIEF

I, JAMES AUSTIN PH.D., declare:

1. I am the Senior Policy Analyst for the JFA Institute, a nationally recognized criminal justice and corrections research organization. I have personal knowledge of the matters set forth herein, and if called as a witness, I could and would competently so testify. I make this declaration in support of Plaintiffs' reply brief on their Emergency Motion.

2. I received my Ph.D. in sociology from the University of California at Davis in 1980. I am currently the President of JFA Institute, a corrections consulting firm. Prior to that, I was the Director of the Institute of Crime, Justice and Corrections at the George Washington University, and Executive Vice President for the National Council on Crime and Delinquency. I began my career in corrections with the Illinois Department of Corrections in 1970 at Stateville Penitentiary.

3. I have implemented inmate classification and risk assessment systems for juvenile and adult custody in over 30 local and state correctional systems.

4. I have implemented parole guidelines and related risk assessment systems in a number of states and local jurisdictions including most recently Maryland, Texas, Arkansas, Kentucky, Illinois, South Carolina, Charleston SC, and New Orleans, Louisiana.

5. I have assisted a number of states and local jail systems in identifying policies and procedures that have resulted in a safe reduction in their prison and jail systems.

6. I correctly argued that the CDCR prison population could be safely reduced from over 170,000 inmates in 2007 to 120,000 without increasing crime rates.

7. I was the primary author for the National Institute of Corrections (NIC) manuscript on Objective Prison and Jail Classification Systems, which provides details on the same types of classification systems employed by the California Department of Corrections.

8. I have served as the project director of the corrections options technical assistance program of the Bureau of Justice Assistance (BJA), an arm of the U.S.

Department of Justice that provides a wide variety of assistance to local jails, probation, parole, and prison systems.

9. In 1991, I was named by the American Correctional Association as its recipient of the Peter P. Lejin's Research Award. In 1999, I received the Western Society of Criminology Paul Tappin award for outstanding contributions in the field of criminology. In 2009, I was the recipient of the Marguerite Q. Warren and Ted B. Palmer Differential Intervention Award, American Society of Criminology, Corrections and Sentencing Division.

10. In 2006, I was appointed to the Expert Panel on Adult Offender and Recidivism Reduction Programming, California Department of Corrections and Rehabilitation.

11. The issue to be addressed is whether the current CDCR prison population can be safely reduced for the purpose of lowering the risk of infection from the COVID-19 virus for inmates and staff.

12. Regarding the question of whether prison populations can be safely lowered without increasing the crime rates or recidivism rates, the scientific answer is clearly yes. As shown in Table 1, a number of states (including California) have lowered both their prison populations and crime rates.

**Table 1. Prison Population and Crime Rate Reductions in New York, California, New Jersey, and Maryland**

|  | NY | CA | NJ | MD |
|---|---|---|---|---|
| Year Reforms Initiated | 1999 | 2006 | 1999 | 2008 |
| Prison Population Before Reform | 72,899 | 175,512 | 31,493 | 23,239 |
| 2017 Prison Population | 49,461 | 131,039 | 19,585 | 19,367 |
| Prison Reduction | -23,438 | -44,473 | -11,908 | -3,872 |
| % Reduction | -32% | -25% | -38% | -17% |
| UCR Crime Rate Before Reform | 3,279 | 3,743 | 3,400 | 4,126 |
| 2017 Crime Rate | 1,871 | 2,946 | 1,785 | 2,722 |
| Crime Rate Reduction | -1,408 | -797 | -1,615 | 1,404 |
| % Reduction | -43% | -21% | -48% | -34% |

Sources: Bureau of Justice Statistics, Prisoners Series and UCR Crime in the United States series.

13. A closer look at California shows that all forms of corrections have declined since 2007 as a number of reforms have been implemented (largely realignment and Propositions 47 and 57). At the same time, crime rates per 100,000 population have declined (Table 2).

14. This is not because reductions in correctional populations "caused" crime rates to decline. Rather we now know that crime rates and the rates of incarceration are largely unrelated to one another. Crime rates are more associated with the far more powerful demographic (aging population, lower and delayed birth rates, smaller households, declining juvenile arrests) and economic (lower interest rates, low inflation) factors that dwarf the impact of incarceration.[1]

**Table 2. Changes in California Corrections Populations and Crime Rates 2007-2019**

| Year | CDCR Prison | Jail | Parole | Felony Probation | Grand Totals | Crime Rates | Violent Rates |
|---|---|---|---|---|---|---|---|
| 2007 | 173,312 | 83,184 | 126,330 | 269,384 | 652,210 | 3,556 | 523 |
| 2008 | 171,085 | 82,397 | 125,097 | 269,023 | 647,602 | 3,461 | 506 |
| 2009 | 168,830 | 80,866 | 111,202 | 266,249 | 627,147 | 3,204 | 473 |
| 2010 | 162,821 | 73,445 | 94,748 | 255,006 | 586,020 | 3,070 | 440 |
| 2011 | 160,774 | 71,293 | 90,813 | 247,770 | 570,650 | 2,995 | 411 |
| 2012 | 133,768 | 80,136 | 69,453 | 249,173 | 532,530 | 3,185 | 424 |
| 2013 | 132,911 | 82,019 | 51,300 | 254,106 | 520,336 | 3,054 | 403 |
| 2014 | 134,433 | 82,896 | 44,499 | 244,122 | 505,950 | 2,838 | 396 |
| 2015 | 127,421 | 73,045 | 45,473 | 221,243 | 467,182 | 3,056 | 428 |
| 2016 | 129,416 | 73,174 | 43,814 | 190,686 | 437,090 | 2,995 | 445 |
| 2017 | 129,192 | 73,548 | 45,261 | 183,623 | 431,624 | 2,959 | 453 |
| 2018 | 124,837 | 74,377 | 47,370 | 166745 | 413,329 | 2,828 | 447 |
| 2019 | 124,027 | 73047 | 51923 | NA | NA | NA | NA |
| Change | -49,285 | -8,807 | -78,960 | -102,639 | -238,881 | -728 | -76 |

15. Ironically, these reductions in the CDCR population have created a larger pool of inmates who are assessed as low risk to recidivate. Based on a 2009 data file I

---

[1] Austin, James, Todd Clear, and Richard Rosenfield. 2019. *Explaining the Past and Projecting Future Crime Rates:* Washington, DC: JFA Institute.

received from the CDCR, there were approximately 164,000 inmates who were scored on the Static Risk Assessment instrument.  Of that population, 35% were scored as Level 1 or Low Risk. The most recent publication by the CDCR shows that the percentage scored as Low Risk has increased to 50% even as the prison population has declined by about 50,000 inmates.

16. The declining prison population and the increased percentage of low risk inmates is the result of Realignment, Proposition 47 and Proposition 57 targeting prisoners with non-violent and drug possession crimes, which tend to have higher recidivism rates, and providing credits for participation in certain programs.

17. The CDCR's Static Risk Assessment (CSRA) instrument is a statistically valid instrument that incorporates the nature of the commitment offense, including whether an individual has been convicted of a violent crime.

18. Mr. Green in his declaration makes the analytic mistake of associating a current violence conviction as a predictor of future recidivism or future violent crimes. The relationship is just the opposite.  CDCR's own data show that people convicted of violent crimes have significantly lower recidivism rates.

19. The CDCR's own publication on recidivism shows an inverse relationship between the severity of the sentencing offense and recidivism rates.[2]  Specifically, prisoners with a conviction for violent crimes have reconviction rates that are about half the rates of the prisoners convicted of non-violent crimes.[3]

20. Further, for all of California's released prisoners, only 7% are convicted for violent crime after release.[4]

---

[2] CDCR Recidivism Report for Offenders Released From The California Department Of Corrections And Rehabilitation In Fiscal Year 2014-15. Figure 12, p. 23

[3] CDCR Recidivism Report For Offenders Released From The California Department Of Corrections And Rehabilitation In Fiscal Year 2014-15. Figure 12, p. 23.

[4] CDCR Recidivism Report For Offenders Released From The California Department Of Corrections And Rehabilitation In Fiscal Year 2014-15.  Page 10.

21. The National Bureau of Justice Statistics' recidivism studies, which California participates in, shows that released prisoners convicted of violent crimes have equivalent re-arrest rates with 2/3rds not being arrested for a violent crime.[5] The percentage convicted of a violent crime is even lower.

22. California prisoners convicted of violent crimes who have longer lengths of stay have significantly lower rates of recidivism than other prisoners largely because they are older, which lowers their risk of recidivism.[6]

23. These facts also explain why the overall CDCR recidivism rates (re-arrest, reconviction, and re-incarceration) have all significantly declined since FY 2010-11.[7]

24. In summary, California has reduced its entire correctional system and at the same time has lowered its prisoner recidivism rates and crime rates. And, the current CDCR population now poses less of a threat to public safety as compared to the prisoner population that existed in 2009.

25. Significant reductions in the current prison population can be quickly achieved without increasing recidivism or crime rates.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration is executed at Camden, Carolina this 1st day of April, 2020.

*/s/ James Austin Ph.D.*
JAMES AUSTIN PH.D.

---

[5] Bureau of Justice Statistics. April 2014. Recidivism of Prisoners Released in 30 states in 2005: Patterns from 2005 to 2010, April 2014. Table 10, p. 9.

[6] CDCR Recidivism Report for Offenders Released From The California Department Of Corrections And Rehabilitation In Fiscal Year 2014-15. Appendix To The Recidivism Report For Offenders Released From The California Department Of Corrections And Rehabilitation In Fiscal Year 2014-15, Table 20, p. 44.

[7] CDCR Recidivism Report For Offenders Released From The California Department Of Corrections And Rehabilitation In Fiscal Year 2014-15. Figure 2, p. 3