Gregg McLean Adam, Bar No. 203436
  gregg@majlabor.com
**MESSING ADAM & JASMINE LLP**
235 Montgomery St., Suite 828
San Francisco, California 94104
Telephone:    415.266.1800
Facsimile:    415.266.1128

David A. Sanders, Bar No. 221393
  david.sanders@ccpoa.org
Daniel M. Lindsay, Bar No. 142895
  dan.lindsay@ccpoa.org
**CALIFORNIA CORRECTIONAL PEACE OFFICERS' ASSOCIATION**
755 Riverpoint Drive, Suite 200
West Sacramento, CA 95605-1634
Telephone:    916.340.2959
Facsimile:    916.374.1824

Attorneys for Amicus Curiae California Correctional Peace Officers' Association

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| MARCIANO PLATA, et al., | Case No. 4:01-cv-01351-JST |
| Plaintiffs, | **SUBMISSION OF *AMICUS CURIAE* CALIFORNIA CORRECTIONAL PEACE OFFICERS' ASSOCIATION REGARDING STAFF TESTING** |
| v. | |
| GAVIN NEWSOM, et al., | The Hon. Jon. S. Tigar |
| Defendants. | |

Amicus Curiae, the California Correctional Peace Officers Association ("the Union"), offers a short statement of relevant issues relating to the Court's June 28, 2020 ORDER TO SHOW CAUSE RE: BASELINE STAFF TESTING FOR COVID-19 ("June 28th Order"). Subject to the Order to Show Cause, the June 28th Order directs Defendants to:

1. Test all staff at San Quentin by July 2, 2020;

2. Test all staff at CCC and CCI by July 3, 2020; and

3. Test all staff at all remaining CDCR institutions, including California City, by July 6, 2020.

1  Staff, as well as inmates, are at the forefront of the impacts of COVID-19 on the state
2  prison system. (https://eji.org/news/covid-19s-impact-on-people-in-prison/.)  They expose
3  themselves and their families to danger every time they go to work.  The Court has recognized
4  this—repeatedly—which the Union appreciates.

5  Anticipating the increasing spread of COVID-19, and beginning in early June, following
6  case management conferences in both *Plata* and in *Coleman v. Newsom,* in which both courts had
7  spent considerable time discussing staff testing, David Sanders, the Union's General Counsel, and
8  the undersigned, spoke separately with counsel for Plaintiffs and Defendants about staff testing.
9  The Union encouraged both sides to engage the Union on staff testing early.  The Union's
10 perspective is that while the Union's state law collective bargaining rights are somewhat
11 marginalized by a federal court proceeding and a worldwide pandemic, it is nonetheless important
12 for representatives of the employees who are to be tested to be involved in the process of setting
13 up testing protocols.  The Union has articulated similar views at a case management conference.

14 Thus far, the Union has had no involvement in discussing how staff testing will be
15 conducted.  Health screening of employees is a mandatory subject of bargaining.  (*Virginia Mason*
16 *Hospital* (2011) 357 NLRB 564 [employer's unilateral implementation of flu-prevention policy
17 unlawful]; *Salinas Valley Memorial Healthcare System* (2012) PERB Dec. No. 2298 [Hospital's
18 refusal to meet and confer on safety and workload issues unlawful].)  The Union's memorandum
19 of understanding with the State has multiple provisions addressing safety equipment, substance
20 abuse testing and random testing, and even an Infectious Disease Control Plan.  (See
21 https://www.calhr.ca.gov/labor-relations/Documents/ta-20200703-20220702-bu06.pdf and
22 sections §§ 7.05 - 7.06, 7.07, 9.12 - 9.13.)

23 Normally, under the Ralph C. Dills Act, Government Code section 3512 *et seq*., the
24 collective bargaining law governing state employee relations, if a matter is within the scope of
25 bargaining, an employer is required to complete the meet and confer process before implementing
26 any change in working conditions.  Emergency exceptions allow the State to "implement first and
27 negotiate later."

28 On June 9, 2020, in an effort to expedite the process, the Union wrote to CDCR seeking to

negotiate—urgently—about the "the issue of staff testing and to develop best practices to ensure the safety of custody staff in this COVID-19 era." (A true and correct copy of the letter is attached hereto as Exhibit "A.") Some informal acknowledgements from CDCR followed; however, as of the time of filing, no meetings have occurred and none are scheduled.

To the best of the undersigned's knowledge, the first the Union knew about CDCR's "COVID-19 Staff Testing Guidance" was when we received the parties' Joint Case Management Conference in this case on the afternoon of June 18, 2020.

As a threshold issue, and on behalf of the almost 30,000 correctional peace officers it represents, the Union has identified five components that would increase the efficiency and success of COVID-19 testing and protect employees and the incarcerated:

    i) Testing at the facility where employees are employed;

    ii) on duty;

    iii) at no cost to the employees;

    iv) a policy whereby if an employee tests positive or otherwise exhibits symptoms of illness, and the employee is sent home, the employee will be placed on paid administrative leave; and

    v) safeguard employees' personal and medical information and prevent its use beyond what is necessary to effectuate the Court's Order.

Dated: June 30, 2020

MESSING ADAM & JASMINE LLP

By _____
Gregg McLean Adam
Attorneys for Amicus Curiae California
Correctional Peace Officers' Association

# Exhibit A



SACRAMENTO
SAN FRANCISCO

Gregg McLean Adam
gregg@majlabor.com
direct: 415.266.1801

June 9, 2020

**VIA E-MAIL**

Candace Murch
Chief of Labor
California Department of Corrections and Rehabilitation
1515 K Street
Sacramento, CA 95815

Re:   **URGENT: COVID-19 Testing of Correctional Officers, Sergeants and Lieutenants—Request to Meet and Confer**

Dear Murch:

The undersigned are the Chief of Labor of the California Correctional Peace Officers' Association ("the Union") and its outside legal counsel, who represents the Union in its capacity as a friend of the court and an intervener in *Coleman, et al. v. Newsom, et al.,* Eastern District, No. 2:90-cv-00520 and *Plata, et al. v. Newsom, et al.,* Northern District, No. 4:01-cv-01351 (collectively referred to as "the federal litigation").  As the judges in these cases grapple with the impacts of COVID-19 on their oversight of medical and mental health care in our State prisons, the issue of staff testing is moving to the fore.

This matter is urgent.  Infection rates among inmates and employees continue to rise, as CDCR is tracking daily.  It is likely that COVID-19 will be in our prisons for some time.  We must tackle its challenges collaboratively.

To that end, the Union requests to meet and confer to address the issue of staff testing and to develop best practices to ensure the safety of custody staff in this COVID-19 era.  The State Bargaining Unit 6 memorandum of understanding has numerous clauses addressing safety equipment (§§ 7.05-7.06), substance abuse testing and random testing (§§ 9.12-9.13), and even an Infectious Disease Control Plan (§7.07).  And while the latter is a good starting off point, COVID-19 presents unique issues, especially how easily it spreads and how infected people can be asymptomatic.

CDCR and the Union have already successfully collaborated on testing at a local level at the California Institute for Men, Avenal State Prison, and the California Men's Colony.  We should memorialize those successes and be prepared to apply them in other institutions as the need arises, as it undoubtedly will.

Candace Murch
Re:   URGENT: COVID-19 Testing of Correctional Officers, Sergeants and Lieutenants—
      Request to Meet and Confer
June 9, 2020
Page 2


We understand that counsel for the plaintiffs (some of whom we have spoken with directly about this issue and who are copy recipients of this letter), counsel for the State (same), and the Receiver's Office (Martin Dodd, the Receiver's counsel is copied) have already begun discussions on staff testing. The Union is not seeking to interrupt that process; however, employee safety and testing are mandatory subjects of bargaining and efforts to create best practices will be aided, not hindered, by direct discussions with the representatives of the employees who rights and bodies are at issue.

Whether the court and collective bargaining processes dovetail at some point or not, CDCR and its primary employee union should start addressing these crucial subjects as soon as possible.

Please contact the undersigned at your earliest opportunity to begin these discussions.

Very truly yours,

MESSING ADAM & JASMINE LLP               CALIFORNIA CORRECTIONAL PEACE
                                          OFFICERS' ASSOCIATION

Gregg McLean Adam                         Phillip Auzins
                                          Chief Of Labor

GMA:jo
cc:   Paul B. Mello, Esq., Hanson Bridgett LLP
      Kyle A. Lewis, Office of the Attorney General
      Donald Specter, Esq., Prison Law Office
      Michael W. Bien Esq., Rosen Bien & Galvan LLP
      Martin Dodd, Esq., Futterman Dupree Dodd Croley Maier LLP
      David Sanders, General Counsel, CCPOA


00089044-2