# Exhibit B

### IV. Safely Housing Medically Vulnerable People

On June 24, CDCR provided an analysis of CDCR's cell capacity, which was prepared by CDCR's Division of Adult Institutions in consultation with CCHCS, plus a report that set forth the number of empty cell beds at the respective institutions and the number of medically high-risk incarcerated patients at each listed institution.

*Plaintiffs' Position*: People with medical conditions or who are of an age that make them at risk for severe complications if infected with COVID-19 remain in CDCR's crowded dorms throughout the state where, the Receiver has determined, they are at significantly higher risk of contracting the disease than they would be if housed in cells. Although the parties reported in the last Case Management Conference Statement having reached an agreement in principle on a plan to move as many medically vulnerable patients from dorms to cells as possible and to prioritize moving the most elderly, this plan has not been implemented.

The Receiver has determined that transfers between prisons are too dangerous at this time, so any movement from dorms to cells can happen only at prisons that have both dorms and cells. Thus, CDCR provided Plaintiffs an analysis of cell beds available in prisons that have both cell and dorm living. The data produced demonstrates that the movement of vulnerable medical patients from dorms to cells within their current prison as a means of protecting the medically vulnerable will be of limited or even very limited effectiveness because the system is too overcrowded. First, there are not enough available beds in cells in many prisons with the most vulnerable patients. For instance, according to the data produced by Defendants, there are currently ~~666~~284 high risk medical patients at California Health Care Facility (CHCF) who are residing in dorms~~, of whom 414 have a COVID-weighted score of over 4.~~. Even assuming that these patients could be housed in any available cell – which is not the case given program restrictions (discussed below) – Defendants report only ~~20~~349 beds that are empty and available. This leaves over ~~half the~~200 high risk medical patients ~~with COVID-weighted scores over 4~~ in their current

1  dorm arrangements.  Similarly, with ~~1054~~953 high risk patients, ~~of whom 540 have a~~
2  ~~COVID-weighted score over 4,~~ Mule Creek State Prison has only ~~454 cells~~369 celled beds
3  available.  California Rehabilitation Center (CRC) currently has an outbreak, with 103
4  active cases.  That prison has ~~578~~121 high risk patients~~, of whom 39 have a~~ and 582
5  patients with at least one COVID-~~weighted score of over 4~~19 risk factor, yet there are no
6  cells at that prison.

7       Even in a scenario where there are "enough" cell beds empty and available to
8  accommodate vulnerable patients living in the dorms, many, if not most, of these cell
9  moves would not be feasible. ~~~~According to the Defendants, "while it may appear that
10 there are abundant cells available for housing medically high-risk dorm inmate-patients, it
11 is important to note that many of the identified empty cell beds are not appropriate for
12 particular inmates for various reasons."  ~~For instance, among the "empty" cell beds~~
13 ~~identified for CMF, the list includes ICF, CTC, and MCB, which are specialized mental~~
14 ~~health beds likely not appropriate for long term use by medically vulnerable patients.~~For
15 instance, some beds may not be accessible based on an individual's ADA needs.  At all of
16 the prisons, it is likely that at least half, and probably much more than half, of the available
17 cell beds are upper bunks, and thus cannot be assigned to people with certain mobility
18 impairments.  ~~Finally~~And, at prisons like R.J. Donovan, where most of the available cells
19 are either on a Sensitive Needs Yard or an Administrative Segregation Unit, patients will
20 have a huge disincentive to accepting the cell move.  Defendants lack sufficient space to
21 place medically vulnerable people in safe and appropriate housing during this pandemic.

22       *Defendants' Position*:  Defendants are in the process of confirming the accuracy of
23 the numbers reported by Plaintiffs above.  CDCR's Division of Adult Institutions is ready
24 to facilitate moves of medically high-risk patients from dorms to cells within the same
25 institution once CCHCS has provided DAI with a list of patients who, after patient
26 education has been provided to them, have agreed to move from their current dorm to a
27 cell.

28