XAVIER BECERRA
Attorney General of California
MONICA N. ANDERSON
Senior Assistant Attorney General
DAMON G. MCCLAIN - 209508
Supervising Deputy Attorney General
NASSTARAN RUHPARWAR - 263293
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 703-5500
Facsimile: (415) 703-3035
Email: Nasstaran.Ruhparwar@doj.ca.gov
Attorneys for Defendants

HANSON BRIDGETT LLP
PAUL B. MELLO - 179755
SAMANTHA D. WOLFF - 240280
KAYLEN KADOTANI - 294114
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:    (415) 777--3200
Facsimile:    (415) 541-9366
pmello@hansonbridgett.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| MARCIANO PLATA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GAVIN NEWSOM, et al.,<br><br>Defendants. | CASE NO. 01-1351 JST<br><br>**DECLARATION OF CONNIE GIPSON IN SUPPORT OF DEFENDANTS' RESPONSE TO PLAINTIFFS' PROPOSED ORDER RE: QUARANTINE AND ISOLATION SPACE**<br><br>Judge:   Hon. Jon S. Tigar |

I, Connie Gipson, declare:

1.     I am the Director of the California Department of Corrections and Rehabilitation's (CDCR) Division of Adult Institutions. I have been working for CDCR since 1988 when I was a medical technical assistant at the California Institution for Women. From 1997 to 2008, I held several positions at Wasco State Prison, including captain, business manager and health program coordinator. From 2008 to 2010, I was the Associate Warden at North Kern State Prison. From 2010 to 2013, I served in multiple positions at California State Prison, Corcoran, including as Warden, Acting Warden and Chief Deputy Warden. From 2013 to 2016, I served as the Associate Director of general population male offenders at CDCR's Division of Adult Institutions. From

1  2016 to 2019, I served as deputy director of facility operations at the Division of Adult
2  Institutions. And in 2019, I was promoted to the Acting Director of the Division of Adult
3  Institutions, and was appointed to my current position as the Director in April 2019. I am
4  competent to testify to the matters set forth in this declaration and, if called upon by this Court,
5  would do so. I submit this declaration in support of Defendants' Opposition to Plaintiffs'
6  Emergency Motion to Modify the Population Reduction Order.

   2.   On July 18, 2020, I reached out to officials at a number of institutions that have medium sized outbreaks (in the range of 100 to 500 cases) of COVID-19. I asked each institution to evaluate whether the availability of a vacant housing unit would have helped them address the potential outbreak they faced. I learned the following in response from officials at those institutions:

   a. California Institution for Women (CIW) had a vacant building prior to its outbreak. Due to mass testing and isolation of incarcerated persons within hours of being confirmed positive, CIW never exceeded its isolation unit capacity.

   b. California State Prison—Los Angeles County (LAC) reported that a vacant building "might" have helped to cohort the high risk patients and make room to isolate the positive cases in one location; however, the biggest factor in controlling the spread of COVID-19 was the institution's ability to change the air handler dampers from air recirculating in the housing units to 100% outside air intake and exhaust. According to leadership at LAC, increased cleaning efforts in the housing unit and on the yard also played a tremendous role in controlling the spread of the virus.

   c. California State Prison—Corcoran (COR) responded that a vacant building would have further mitigated the spread of COVID-19. However, at the time of the outbreak, current guidance required single-celling of COVID-19 positive patients (contrary to more recent CDC guidance which now encourages cohorting COVID-19 positive patients together).

   d. California Rehabilitation Center (CRC) reported that one vacant building would

not have been sufficient to manage the number of COVID-19 positive patients during the peak of its outbreak. Indeed, CRC created a vacant dorm for this purpose, but delays in receiving test results appear to have complicated efforts to mitigate the spread of the virus.

 e. California Correctional Center's (CCC) first COVID-19 positive patients were received at the institution from San Quentin on June 8, 2020. The Institution received notification of four positive test results on June 21, 2020. These patients had been housed on all levels of the institution, including in dorms and cells. Due to enhanced testing of the incarcerated population and the various custody levels at the institution, it was impossible to house all positive COVID-19 patients in one building. Instead, CCC designated isolation and quarantine dorms or cells at each facility (with the exception of CCC's MSF).

3. Regarding CRC's observation that it would have needed more than one vacant housing unit to accommodate isolation and quarantine needs, this is because CRC's dorm units have only 40-50 beds. It is my understanding that CDCR's proposed order would require at least one entire housing unit of at least 100 beds be set aside. Thus, at CRC, the proposed order would have required two to three housing units be set aside.

I declare under penalty of perjury that I have read this document, and its contents are true and correct to the best of my knowledge. Executed on July 20, 2020, in Sacramento, California.

CONNIE GIPSON