United States District Court
Northern District of California

1

2

3

4          UNITED STATES DISTRICT COURT

5          NORTHERN DISTRICT OF CALIFORNIA

6

7    MARCIANO PLATA, et al.,                    Case No. 01-cv-01351-JST

              Plaintiffs,
8
                                               **ORDER TO SET ASIDE ISOLATION**
         v.                                    **AND QUARANTINE SPACE**
9

10   GAVIN NEWSOM, et al.,

              Defendants.
11

12

13          On July 7, 2020, the Court ordered the parties to meet and confer with the Receiver

14   regarding the need for "sufficient space at each institution to allow the institution to follow public

15   health guidance on isolating and quarantining patients in the event of a COVID-19 outbreak."

16   ECF No. 3381 at 1.  The Court set a deadline for the parties to submit a joint or competing

17   proposed order(s) on that subject, as well as a deadline for the parties to respond to each other's

18   competing proposed orders.  *Id.* at 1-2.  The Court subsequently granted the parties' stipulation to

19   extend both deadlines.  ECF No. 3386.

20          On July 11, the Receiver provided the parties with a statement summarizing his views on

21   isolation and quarantine space, including that "[e]ach facility shall maintain empty beds equivalent

22   to the capacity of its largest congregate living space or 20% of the current population of the

23   facility, whichever is larger."  ECF No. 3391-1 at 34.  "Facility" was defined as "that portion of a

24   prison designated as a separate functional unit, usually denoted by a letter (e.g., Facility A,

25   Facility B)."  *Id.* at 35.

26          On July 15, the parties submitted competing proposed orders and briefing.  ECF Nos.

27   3391, 3392.  Plaintiffs proposed an order requiring implementation of the guidelines set forth in

28   the Receiver's statement.  ECF No. 3391-2.  Defendants proposed an order "allow[ing] the parties

United States District Court
Northern District of California

1    an additional two weeks to meet and confer with the Receiver to reach agreement on a

2    methodology for determining reserved space needs in the prisons." ECF No. 3392-3 at 1.

3         At the July 16 case management conference, the Court ordered the parties to continue

4    meeting and conferring. ECF No. 3399 at 44. The Court recognized that the parties' positions

5    might continue to evolve and invited the parties to submit revised proposed orders with their

6    July 20 responses. *Id.* The Court explained that a third round of briefing would be unnecessary

7    because the parties would, through the meet-and-confer process, be aware of any revisions the

8    other side was preparing to propose. *Id.*

9         On July 20, the parties filed responses to each other's proposed orders. ECF Nos. 3396,

10   3397. Defendants submitted a revised proposed order that would require them to set aside at least

11   100 beds for isolation and quarantine space at each institution, and that would allow a process for

12   modifying the amount of space set aside at each institution.[1] ECF No. 3397-5. Plaintiffs urged

13   the Court to adopt their initial proposed order and did not include any discussion of Defendants'

14   revised proposed order in their response. ECF No. 3396.

15        No one disputes that setting aside space for isolation and quarantine in the event of an

16   outbreak is necessary. Plaintiffs' expert, for example, states that "[p]eople with confirmed cases

17   or who have systems of the virus must be separated from those in quarantine as suspected cases,

18   and both groups must be separated from people who are asymptomatic and not suspected of

19   infection. Without adequate space to accomplish this separation, minor outbreaks can quickly

20   flare up to a disastrous level. . . ." ECF No. 3391-1 ¶ 5 (Decl. of Adam Lauring). Defendants'

21   expert "agree[s] that it is important to have space available for quarantine and isolation purposes

22   in the event of an outbreak of COVID-19 in CDCR's prisons." ECF No. 3398-1 ¶ 10 (Decl. of

23   Anne Spaulding). However, the parties' experts also agree that "[t]here is no current consensus

24   among the scientific community about how to determine exactly how much space is enough in a

25

26   _____

[1] Defendants' revised proposed order states that "CDCR intends to vacate a minimum of one
     entire housing unit at 30 to 32 of the 35 prisons for use in the event of an outbreak, and that each

27   of these reserved units will have a minimum of 100 beds and possibly more. The remaining 3-5
     prisons will identify and reserve other viable space to allow a minimum of 100 beds for use in the

28   event of an outbreak." ECF No. 3397-5 at 1-2. Defendants do not explain how they will
     determine how many, and which, institutions will fall into either category.

1    correctional institution for that purpose." ECF No. 3391-1 ¶ 7; *see also* ECF No. 3398-1 ¶ 8.

2    While Plaintiffs' expert opined that he saw "no other reasonable alternative" aside from the

3    Receiver's plan, ECF No. 3391-1 ¶ 9, there is no evidence that he considered any plan similar to

4    Defendants' revised proposal, or that he considered the issues raised in Defendants' response,

5    including the impact, if any, of recently adopted testing protocols and the presence of recovered

6    individuals in the population of incarcerated persons.

7         To be clear, there is no evidence in the record that Defendants' plan to set aside a

8    minimum of 100 beds at each institution is sufficient. To the contrary, Defendants' expert states

9    that she "would like to hear more details about [Defendants'] plan so that [she] can better assess

10   it." ECF No. 3398-1 ¶ 15. She does believe, however, that the Receiver's plan "*seems* to require

11   an excessive amount of reserved space at each prison based on an assumption that future outbreaks

12   will look similar to the four very large outbreaks that have occurred so far," and that "it *generally*

13   appears that a plan like [Defendants' revised proposal] would comport with public health

14   guidance." *Id.* (emphasis added).

15        Having reviewed the parties' proposed orders, as well as the briefing and declarations

16   submitted in support, the Court will adopt a modified version of Defendants' revised proposed

17   order as set forth below. The Court cannot now find on the current record that the level of

18   isolation and quarantine space suggested by the Receiver is required. However, there is no dispute

19   that at least the number of beds Defendants have agreed to set aside are required, and there is no

20   reason to delay implementation of that plan. The Court also finds it prudent to impose rolling

21   deadlines for each task to encourage prompt implementation.

22        With good cause appearing, IT IS HEREBY ORDERED that:

23        1.  CDCR shall disclose to Plaintiffs and the Receiver which housing unit of at least 100

24   beds will be vacated at 30 or more institutions, and what space will be reserved at the remaining

25   institutions to allow a minimum of 100 beds for use in the event of an outbreak at those

26   institutions. Defendants shall make such disclosures for as many institutions as practicable within

27   three days of the date of this order. Disclosures for at least 30 institutions shall be completed

28   within seven days of the date of this order, and disclosures for the remaining institutions shall be

United States District Court
Northern District of California

3

1    completed within 14 days of the date of this order.

2          2.   The identified space at each institution must be vacated or reserved as soon as

3    practicable, and no later than 14 days after disclosure.  If CDCR intends to use alternative space

4    such as gymnasiums, tents, or other converted space to satisfy this order, those spaces must be

5    ready for occupancy by that deadline.

6          3.   Once space has been vacated or reserved at an institution, CDCR shall assess whether

7    additional space is required at the institution for isolation and quarantine purposes and, if so,

8    whether that space will be obtained by vacating additional housing units or through other means.

9    The Receiver and the parties' health experts, as well as institution leadership, shall be included in

10   these discussions.  Assessments shall be guided by health considerations, without regard to

11   whether sufficient space can be reserved at the institution without a further reduction in

12   population.  The Court expects these assessments to occur on a rolling basis.  The process shall be

13   completed at all 35 institutions no later than 28 days from the date of this order.[2]

14         4.   All additional space identified pursuant to the above paragraph shall be ready for

15   occupancy no later than 42 days from the date of this order.

16         5.   In planning for effective isolation and quarantine space, each institution must take into

17   account unique factors that may impact where an incarcerated person can be housed.  Examples of

18   these factors include disability, mental health, and restricted housing needs.

19         6.   The Receiver will continually monitor whether isolation and quarantine space reserves

20   are appropriate in light of changing circumstances.  He will advise the parties if he believes

21   reserve levels should be modified at a particular institution.  The parties may also request that the

22   Receiver consider whether reserve levels at a particular institution should be modified.  The

23   parties and the Receiver shall meet and confer regarding any proposed modifications.  If they

24   cannot reach agreement, the parties shall present a joint brief to the Court setting forth their

25

26   [2] This is more than the 15 days requested by Defendants.  *See* ECF No. 3397-5 at 2.  However, the
     Court wants to ensure sufficient time for the parties and the Receiver to consider "the best
27   information and the highest level of expertise regarding public health and prison health care."
     ECF No. 3342 at 1 (order providing that health experts "may communicate with the Receiver and
28   members of his staff either separately or together, and without the presence of counsel" to promote
     that purpose).

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1    respective positions, supported by evidence from health experts.

2         7.   In the event of an emergency at a prison, such as a fire, riot, or natural disaster, CDCR

3    may house inmates in the reserved housing if necessary, but shall do so only for the period that the

4    emergency requires that arrangement.  If an emergency causes CDCR to transfer inmates into

5    reserved housing, Defendants shall immediately advise Plaintiffs and the Receiver, and meet and

6    confer with them, concerning what steps will be taken to ensure adequate space at the institution in

7    the event of a COVID-19 outbreak.

8         8.   This order will terminate in 180 days unless the parties reach an agreement to extend it

9    or the Court otherwise orders an extension.

10      **IT IS SO ORDERED.**

11   Dated:  July 22, 2020



                    JON S. TIGAR
              United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28