PRISON LAW OFFICE
DONALD SPECTER (83925)
STEVEN FAMA (99641)
ALISON HARDY (135966)
SARA NORMAN (189536)
RANA ANABTAWI (267073)
SOPHIE HART (321663)
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Fax: (510) 280-2704
dspecter@prisonlaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| MARCIANO PLATA, et al.,<br><br>        Plaintiffs,<br><br>  v.<br><br>GAVIN NEWSOM, et al.,<br><br>        Defendants. | CASE NO. 01-1351 JST<br><br>**PLAINTIFFS' NOTICE OF MOTION & MOTION FOR AN ORDER MODIFYING CDCR'S COVID-19 STAFF TESTING PLAN**<br><br>Date:<br>Time:<br>Crtrm.: 6, 2nd Floor<br>Judge: Hon. Jon S. Tigar |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that as soon as the matter may be heard by the above Court, Plaintiffs will and hereby do move, pursuant to Civil L.R. 7-1, for an order directing Defendants to modify CDCR's plan to test staff for COVID-19 to protect Plaintiffs against unreasonable risk of infection and harm.

This Motion is supported by the following Memorandum of Points and Authorities, the Proposed Order, the supporting declarations, and the entire record in this matter.

DATED: July 24, 2020                                PRISON LAW OFFICE

By:  */s/ Sophie Hart*
　　　Donald Specter
　　　Steven Fama
　　　Alison Hardy
　　　Sara Norman
　　　Rana Anabtawi
　　　Sophie Hart
　　　*Attorneys for Plaintiffs*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

As the Receiver, this Court, and the parties have all recognized, staff are the most significant vector for spreading COVID-19 in the state prisons. *See* Declaration of Sophie Hart, ¶ 16 & Ex. H (Transcript of May 21, 2020 CMC); Joint Case Management Conference Statement (June 8, 2020), ECF No. 3345 at 3; Order Regarding Staff Testing for COVID-19 (June 11, 2020), ECF No. 3353 at 1; Order to Show Cause re: Baseline Staff Testing for COVID-19 (June 28, 2020), ECF No. 3366 at 1. As of July 23, 2020, more than 1500 CDCR employees had tested positive for COVID-19, with new cases reported daily. *See* Hart Decl., ¶ 14 & Ex. F (CDCR/CCHCS COVID-19 Employee Tracker).

In recognition of the risk that staff will continue to introduce and spread the virus in the prisons, this Court previously ordered Defendants to "produce a comprehensive plan for testing staff at all prisons in the California Department of Corrections and Rehabilitation." Order Regarding Staff Testing for COVID-19 (June 11, 2020), ECF No. 3353 at 2 (memorializing an order issued from the bench on June 9, 2020). Pursuant to the Court's order, Defendants provided the CDCR's interim plan to Plaintiffs on June 16. *See* Hart Decl., ¶ 2 & Ex. A. In writing and through the meet-and-confer process, Plaintiffs' counsel raised serious concerns regarding the plan—including that it did not call for baseline testing, testing of symptomatic staff, or sufficient testing during an active outbreak. *See* Hart Decl., ¶¶ 3-4, 9; Joint Case Management Conference Statement (June 8, 2020), ECF No. 3345 at 4-6; Joint Case Management Conference Statement (June 18, 2020), ECF No. 3356 at 6-7; Joint Case Management Conference Statement (July 1, 2020), ECF No. 3370 at 8-11.

Under threat of Court Order, Defendants agreed to modify their plan to conduct baseline testing at all prisons. *See* Order to Show Case re: Baseline Staff Testing for COVID-19 (June 28, 2020), ECF No. 3366 at 3-4; Defendants' Response to Order to Show

Cause Re: Baseline Staff Testing for COVID-19 (June 30, 2020), ECF No. 3368 at 2-3. In response to Plaintiffs' remaining concerns, on July 2, this Court directed Defendants to provide Plaintiffs a revised plan by July 16. *See* Civil Minutes (July 2, 2020), ECF No. 3374 at 1. Plaintiffs' counsel received the revised plan on July 15. *See* Hart Decl., ¶ 10 & Ex. B (CDCR July 7 Staff Testing Plan). The revised plan did not resolve or respond to Plaintiffs' concerns—it did not call for testing symptomatic staff, nor did it provide for sufficient testing during an outbreak. *See id.*

Plaintiffs again raised their concerns with the plan for staff testing during the July 16 Case Management Conference. The Court directed the parties to meet and confer, and Plaintiffs to file a motion by July 24 if the parties' disputes had not been resolved through the meet-and-confer process. *See* Civil Minutes (July 16, 2020), ECF No. 3393 at 2. The parties met and conferred on July 23, and Defendants thereafter produced a revised staff testing plan. *See* Hart Decl., ¶ 11 & Ex. C (CDCR July 23 Staff Testing Plan). Unfortunately, the parties were unable to reach an agreement on two significant issues: (1) testing of symptomatic staff and (2) the scope of the testing done during an outbreak. Having made every effort to raise and resolve these disputes with Defendants through the meet-and-confer process, Plaintiffs now turn to this Court for relief.

## II.     FACTUAL BACKGROUND

### a. CDCR's Plan for Staff Testing Fails To Mitigate the Risk that Staff Will Spread COVID-19 in the State Prisons

A central component of an adequate COVID-19 testing strategy is to promptly identify symptomatic staff, and to perform comprehensive re-testing when a new case is identified. CDCR's plan falls short in both regards.

First, CDCR's plan does not call for testing symptomatic staff, so that appropriate outbreak investigations can be done at the prison. The U.S. Centers for Disease Control and Prevention ("CDC") advise that "[a]mong persons with extensive and close contact to vulnerable populations . . . , even mild signs and symptoms (e.g., sore throat) of a possible

SARS-CoV-2 infection should prompt consideration for testing." Hart Decl., ¶ 12 & Ex. D (CDC, Overview of Testing for SARS-CoV-2) (updated July 17, 2020). But, CDCR's plan states only that "[i]f a staff member has possible COVID-related symptoms, the staff member shall be directed to obtain a medical evaluation to determine whether he or she should be tested for COVID-19." *See* Hart Decl., ¶ 11 & Ex. C at 1 (CDCR July 23 Staff Testing Plan). In this regard, CDCR's plan appears to mirror a recommendation made by the CDC in their *Interim Considerations for SARS-CoV-2 Testing in Correctional and Detention Facilities*. Hart Decl., ¶ 13 & Ex. E (CDC, Interim Considerations for SARS-CoV-2 Testing in Correctional and Detention Facilities) (July 7, 2020). But, CDCR's plan is missing critical pieces: it does not require the employee to report a positive test, nor does it require any action if the employee does not seek a test on their own. *See id.* (recommending correctional facilities consider and address "staff who decline testing" and the reporting of results to the employer). Moreover, having implemented a staff testing program in the prisons, it is unreasonable to carve out those staff members who are most likely to be infected and to have spread the virus—those who report symptoms while at work.

A referral to an outside medical provider is insufficient. As Dr. Adam Lauring, an expert in infectious disease and COVID-19 prevention, explains in his declaration filed herewith, quickly testing symptomatic staff is key to preventing the spread of the virus in the prisons. *See* Declaration of Dr. Adam Lauring, ¶¶ 6-7. Prompt testing of symptomatic staff members is necessary so that public health officials can perform outbreak investigations and contact tracing, thereby stopping the virus from spreading. *Id.*; *see also* Hart Decl., ¶ 12 & Ex. D (CDC, Overview of Testing for SARS-CoV-2) (explaining that "[b]ecause of the potential for asymptomatic and pre-symptomatic transmission, it is important that contacts of individuals with SARS-CoV-2 infection be quickly identified and tested"). As Dr. Lauring explains, "[t]his is especially true in correctional settings, where the virus can spread rapidly once introduced." Lauring Decl., ¶ 6. Quickly

determining whether symptomatic staff have COVID-19 should be a central component of CDCR's testing strategy. But, the current plan simply outsources this function, with no assurance that the test will in fact occur or that a positive result will be reported. And, under CDCR's current plan, without a positive test result for a staff person, there is no requirement that the prison initiate testing to determine whether, and how far, the virus has spread.

Second, CDCR's plan for testing in the event of an outbreak is inadequate. When a new positive case is identified, CDCR's plan limits outbreak testing to the particular yard where the staff person worked, or incarcerated person lived. Specifically, the plan provides:

> For institutions that are organized by yard, initial testing can be limited to the yard where the positive inmate is housed or staff is assigned. If there are multiple yards at an institution, and those who have tested positive are clustered in one yard, serial testing should only occur among staff regularly assigned to that yard. It is not necessary to test staff across multiple yards as long as staff are not moving among buildings to provide services.

Hart Decl., ¶ 11 & Ex. C at 2 (CDCR July 23 Staff Testing Plan). The plan does not provide for any additional contact tracing of staff. *See id*.

As this Court stated in the June 28 Order to Show Cause, staff in CDCR are not cohorted to work on particular yards: "although the Receiver has recommended consideration of staff cohorting so that staff interact only with limited groups of inmates, no such cohorting has been implemented." Order to Show Case re: Baseline Staff Testing for COVID-19 (June 28, 2020), ECF No. 3366, n.2. Indeed, when public health experts visited San Quentin in the early stages of the outbreak in June, they reported that they had "learned about staff who were working in the Medical Isolation Unit (Adjustment Center) during the shift and were scheduled to work the next shift in the dorms." Hart Decl., ¶ 17 & Ex. I at 7 (SQ Amend Memo) (June 13, 2020). They noted that this presented "an enormous risk for the spread of COVID-19 between housing units." *Id.* And, even if staff

do not work on the same yard, they are likely to interact with each other during shift change, in carpools, and outside of work, as many staff members live and recreate in the same communities. *See id.* at 2-3 (noting "shared vanpools" were a potential source of staff-to-staff infections); Hart Decl., ¶ 18 & Ex. J at 24 (CMC Amend Report) (July 20, 2020) (noting that staff "[c]ommute with each other in 'vanpools' and/or often stay at nearby hotels during shift days").

In recognition of this reality, this Court previously stated: "the Court anticipates that all staff will be serially retested under Defendants' plan, without limitation to particular yards." Order to Show Case re: Baseline Staff Testing for COVID-19 (June 28, 2020), ECF No. 3366, n.2. Yet, CDCR has persisted in limiting outbreak investigations to a particular yard. Indeed, under Defendants' current plan, if a staff member tests positive, the other staff person he or she drove to work with that day, or had dinner with the night before, will only be tested by CDCR if they happen to work on the same yard. This policy is unreasonable, and presents a significant risk of harm to the Plaintiff class. *See* Lauring Decl., ¶¶ 8-9.

### III. LEGAL ARGUMENT

#### a. The Court Should Order Defendants to Test Symptomatic Staff and Perform Appropriate Outbreak Investigations

This Court previously ordered Defendants to "produce a comprehensive plan for testing staff at all prisons in the California Department of Corrections and Rehabilitation to Plaintiffs by June 16, 2020." Order Regarding Staff Testing for COVID-19 (June 11, 2020), ECF No. 3353 at 2. Six weeks later, CDCR's plan remains insufficient to mitigate the risk that the virus will spread throughout a prison once it is introduced. It does not ensure that symptomatic staff will be tested, nor does it require that all staff will be re-tested in the event of an outbreak. Given the urgency of this issue—every prison has reported multiple positive staff cases—this Court should order Defendants to revise CDCR's plan to immediately address these issues. *See* Hart Decl., ¶ 14 & Ex. F (CDCR/CCHCS COVID-19 Employee Tracker).

This Court need not make a new finding of deliberate indifference to enter such an order.  *See* Stipulation for Injunctive Relief and Order (June 13, 2002), ECF No. 68 at ¶ 29 and Order at p. 18; *see also* Findings of Fact and Conclusions of Law Re Appointment of Receiver (October 3, 2005), ECF No. 371.  As the Court in *Coleman v. Newsom* has held, "once an Eighth Amendment violation is found and injunctive relief ordered, the focus shifts to remediation of the serious deprivations that formed the objective component of the identified Eighth Amendment violation."  *Coleman v. Brown*, 28 F. Supp. 3d 1068, 1077 (E.D. Cal. 2014); *see also Coleman v. Brown*, 756 Fed. Appx. 677, 678-79 (9th Cir. 2018) (unpublished) (district court is entitled to rely on its previous rulings of deliberative indifference and "the persistence of objectively unconstitutional conditions satisfies the subjective 'deliberate indifference' inquiry" (citations omitted)).

Even if a new finding of deliberate indifference is necessary, that standard is met here.  It is well established that "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *see also Parsons v. Ryan*, 754 F.3d 657, 677 (9th Cir. 2014).  As the Three Judge Court in this case observed in April, "Defendants themselves acknowledge that the virus presents a 'substantial risk of serious harm' and that the Eighth Amendment therefore requires them to take reasonable measures to abate that risk."  Order Denying Plaintiffs' Emergency Motion to Modify Population Reduction Order (April 4, 2020), ECF No. 3261 at 9; *see also Helling v. McKinney*, 509 U.S. 25, 33 (1993) (recognizing that officials cannot be "deliberately indifferent to the exposure of inmates to a serious, communicable disease").

Failing to test symptomatic staff members, and failing to perform appropriate outbreak testing when a positive case is identified, places the Plaintiff class at unreasonable risk of harm.  Lauring Decl., ¶¶ 6-9.  Defendants have persisted in deliberate indifference to this risk.  Plaintiffs have repeatedly raised these concerns with Defendants in writing, through the meet-and-confer process, and at the Case Management

Conferences.  *See* Hart Decl., ¶¶ 3-4, 9; Joint Case Management Conference Statement (June 8, 2020), ECF No. 3345 at 4-6; Joint Case Management Conference Statement (June 18, 2020), ECF No. 3356 at 6-7; Joint Case Management Conference Statement (July 1, 2020), ECF No. 3370 at 8-11.

Yet, Defendants have refused to appropriately modify these provisions.  The failure to do so, while simultaneously recognizing that staff are the *most significant vector* for spreading COVID-19 in the state prisons, constitutes deliberate indifference, and requires this Court's intervention.

### b. The Requested Relief Meets the Requirements of the Prison Litigation Reform Act (PLRA)

Plaintiffs' proposed order satisfies the needs-narrowness-intrusiveness requirements of the Prison Litigation Reform Act.  *See* 18 U.S.C. § 3626(a)(1)(A) ("The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."). Plaintiffs have proposed two discrete, targeted modifications to CDCR's staff testing plan. These changes are critical to mitigating the risk that staff will continue to spread COVID-19—a disease that has already taken the lives of 42 incarcerated people—in the prisons. *See* Lauring Decl., ¶¶ 6-9; Hart Decl., ¶ 15 & Ex. G (CDCR/CCHCS COVID-19 Patient Tracker).

### IV. Conclusion

Plaintiffs respectfully request this Court order Defendants to modify CDCR's staff testing plan, to require prompt testing of symptomatic staff members, and re-testing of all staff in response to an outbreak, consistent with the public health recommendations of Plaintiffs' expert.

| | |
|---|---|
| DATED: July 24, 2020 | PRISON LAW OFFICE |
| | By:    */s/ Sophie Hart* |
| | Donald Specter |
| | Steven Fama |
| | Alison Hardy |
| | Sara Norman |
| | Rana Anabtawi |
| | Sophie Hart |
| | *Attorneys for Plaintiffs* |

-10-   Case No. 01-1351 JST
PLTFS' MOT. FOR ORDER MODIFYING CDCR'S COVID-19 STAFF TESTING PLAN