XAVIER BECERRA
Attorney General of California
MONICA N. ANDERSON
Senior Assistant Attorney General
DAMON G. MCCLAIN - 209508
Supervising Deputy Attorney General
NASSTARAN RUHPARWAR – 263293
IRAM HASAN - 320802
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
Telephone: (415) 703-5500
Facsimile: (415) 703-3035
Email:  Nasstaran.Ruhparwar@doj.ca.gov
Attorneys for Defendants

HANSON BRIDGETT LLP
PAUL B. MELLO - 179755
SAMANTHA D. WOLFF -  240280
KAYLEN KADOTANI - 294114
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:     (415) 777--3200
Facsimile:      (415) 541-9366
pmello@hansonbridgett.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| MARCIANO PLATA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GAVIN NEWSOM, et al., <br><br> Defendants. | CASE NO. 01-1351 JST <br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR AN ORDER MODIFYING CDCR'S COVID-19 STAFF TESTING PLAN** <br><br> Judge:   Hon. Jon S. Tigar |

## INTRODUCTION

Plaintiffs ask this court to micromanage CDCR's existing and constantly evolving staff testing plan, which is updated as scientific knowledge and public health guidance warrant. Such an order would impose unduly restrictive and unworkable confines in an area where flexibility is necessitated by the constantly evolving nature of the COVID-19 pandemic. Moreover, this order is legally impermissible insofar as Plaintiffs have not – and cannot – establish CDCR's deliberate indifference to the COVID-19 pandemic response in general, and staff testing plan specifically, as they must in order to be entitled to relief under the Prison Litigation Reform Act (PLRA).

The current science and strategies to mitigate the risks associated with the spread of

COVID-19 improve daily, if not hourly.  CDCR's current staff testing plan recognizes the dynamic nature of this situation, and was therefore created with the understanding that it would (and does) evolve as the science and public health guidance changes.  In fact, the current iteration of CDCR's staff testing plan, dated July 23, is again in the process of being updated based on new guidance issued by the California Department of Public Health (CDPH) and the California Correctional Health Care Services (CCHCS).  Therefore, it would be an unnecessary and inappropriate step for this Court to issue an order that would dictate the parameters of CDCR's staff testing plan and inhibit CDCR and CDPH's ability to modify CDCR's testing policies in the future as further scientific advances are made and public health guidance on the topic evolves.

Finally, Plaintiffs ignore that CDCR's current staff testing plan, which was developed based on input and recommendations received from CDPH and CCHCS, is already sufficient to mitigate the risks of COVID-19 for the incarcerated population and staff.  While Plaintiffs and their expert, Dr. Lauring, might disagree with some of the provisions in CDCR's staff testing plan, mere difference of opinion does not amount to deliberate indifference, which is a finding this Court must make before it can issue the order Plaintiffs request.

Plaintiffs' motion must therefore be denied in its entirety.

## BACKGROUND FACTS

CDCR's staff testing plan was developed based on recommendations and input from CDPH and CCHCS.  (Declaration of Katherine Minnich (Minnich Decl.), at ¶ 3.)  On July 15, Defendants produced the then-current iteration of CDCR's staff testing plan to Plaintiffs. (Declaration of Nasstaran Ruhparwar (Ruhparwar Decl.), at ¶ 2.)  On July 23, Plaintiffs, Defendants, CCHCS, and CDPH met and conferred to discuss Plaintiffs' concerns with the plan. (*Id.*, at ¶ 3; Declaration of Dr. James Watt (Watt Decl.), at ¶ 9.)  The parties' meet and confer efforts were, for the most part, successful.  The same day, Defendants produced a revised version of CDCR's staff testing plan to Plaintiffs, which alleviated several of Plaintiffs' concerns. (Ruhparwar Decl., ¶ 4, Ex. A.)  The only remaining concerns are the two modifications that Plaintiffs are seeking in their motion.  Defendants did not agree to these two modifications because they are not required based on current CDC guidelines and recommendations from public

16742083.2

-2-

Defs.' Opp. to Pls.' Motion for Order Mod. Staff Testing Plan

Case No. 01-1351 JST

health experts.

Further, consistent with Defendants' representations to this Court and Plaintiffs that the staff testing plan is updated as guidance changes, the current (July 23) plan is in the process of being further updated based on new guidance from CDPH and CCHCS. Defendants will present the plan to Plaintiffs as soon as it is finalized and approved by all stakeholders.

**LEGAL ARGUMENT**

**I.    The State Is Entitled To Deference In Their Response to the COVID-19 Pandemic.**

The separation of powers is one of the core principles upon which our federal and state governments are built. This constitutional construct mandates that the three branches of government — executive, legislative, and judicial — remain separate and not otherwise infringe upon the authority of one another. As it relates to prisons, the Supreme Court has aptly observed that "'courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform,'" recognizing that "running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner v. Safley*, 482 U.S. 78, 84-85 (1987) (citing *Procunier v. Martinez*, 416 U.S. 396, 405 (1974) [overruled on other grounds in *Thornburgh v. Abbott*, 490 U.S. 401 (1989)]) (emphasis added). Critically, the Supreme Court has held that "[p]rison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint. Where a state penal system is involved, federal courts have, as we indicated in *Martinez*, additional reason to accord deference to the appropriate prison authorities." *Turner*, 482 U.S. at 85. These separation of powers interests are particularly salient when the executive branch is responding in real time to a global pandemic with no precedent.

The above separation of powers and deference concepts have been relied upon in a wide range of matters involving prison administration and reform. *See, e.g., O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987) (examining extent of incarcerated persons' free exercise of religion and deference given to prison officials); *Gates v. Rowland*, 39 F.3d 1439, 1448 (9th Cir. 1994)

16742083.2

-3-   Case No. 01-1351 JST

Defs.' Opp. to Pls.' Motion for Order Mod. Staff Testing Plan

(prison policy preventing HIV-positive incarcerated persons from holding food service jobs was properly within prison authorities' discretion); *Griffin v. Gomez*, 741 F.3d 10 (9th Cir. 2014) (holding district court improperly impeded state prison management by ordering release of an incarcerated person from administrative segregation unit during standard evaluation of his gang status); *see also, Sandin v. Conner*, 515 U.S. 472, 482-83 (1995) (observing that "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment [in a prison]").

In short, the same longstanding and foundational principles must not be set aside in connection with Plaintiffs' motion. This is particularly true in a situation in which Plaintiffs are seeking a modification to CDCR's staff testing plan. Here, CDCR's plan was developed based on input and recommendations received from CDPH and CCHCS. (Minnich Decl., at ¶ 3.) But as with many things during this unprecedented pandemic, public health guidance and recommendations pertaining to testing protocols can evolve and change rapidly. Therefore, it is crucial that CDCR maintain flexibility to respond to such changes and modify the provisions of its staff testing plan in response, with the input of all stakeholders and public health experts. Should this Court issue the order that Plaintiffs are seeking and mandate certain provisions be included in CDCR's staff testing plan, it sets a harmful precedent that the testing plan must remain static at a time when flexibility is demanded most. Each time CDCR would seek to amend its plan, it would need to seek an order to modify the court's order on the staff testing plan first. This cumbersome routine is likely to result in a constantly outdated plan that, despite best efforts, cannot be based on current guidelines and science.

## II. Plaintiffs Are Not Entitled To The Relief They Seek Because Defendants Are Not Deliberatively Indifferent To The Risk Of COVID-19.

Courts may only order prospective relief consistent with the PLRA when "necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a)(1)(A). In order to establish a violation of Plaintiffs' Federal rights, Plaintiffs must demonstrate that Defendants have acted with deliberate indifference toward those rights. Plaintiffs' reliance on *Coleman v. Brown*, 28 F. Supp. 3d 1068, 1077 (E.D. Cal. 2014) and

16742083.2

-4-   Case No. 01-1351 JST

Defs.' Opp. to Pls.' Motion for Order Mod. Staff Testing Plan

*Coleman v. Brown*, 756 Fed. Appx. 677, 678-79 (9th Cir. 2018) is entirely misplaced. There has not been a prior finding from this Court that CDCR's response to the COVID-19 pandemic violated the Eighth Amendment. Accordingly, there has not been a "persistence of objectively unconstitutional conditions" with respect to CDCR's response to the pandemic that warrants court intervention.

Therefore, to be entitled to relief here, Plaintiffs must first demonstrate that prison administrators and state actors are acting with deliberate indifference to the COVID-19 pandemic. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). A showing of deliberate indifference requires Plaintiffs to establish that "the deprivation alleged must be, objectively, 'sufficiently serious'" and that, subjectively, Defendants are acting with a "'sufficiently culpable state of mind.'" *Farmer*, 511 U.S. at 834 (citations omitted). Under this second, subjective prong, Plaintiffs must also show that prison officials knew of and disregarded "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. This standard affords "due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Id.* at 845 (quoting *Spain v. Procunier*, 600 F.2d 189, 193 (9th Cir. 1979)). Prison officials must act to "'ensure reasonable safety.'" *Id.* at 844 (*quoting Helling v. McKinney*, 509 U.S. 25, 33 (1993)). Where prison officials act reasonably, they do not violate the Eighth Amendment's Cruel and Unusual Punishment Clause. *Id.* at 845.

For the reasons set forth below, Plaintiffs have not, and cannot, establish the second subjective prong under the deliberate indifference standard. This is particularly true in light of CDCR's overall response to the COVID-19 pandemic, and the fact that in July alone, CDCR coordinated over 49,000 tests as part of its statewide staff testing efforts. (Minnich Decl., at ¶ 4.)

**A.  CDCR's plan, which requires symptomatic staff to first be assessed by a healthcare provider, is consistent with public health guidance.**

CDCR's July 23 staff testing plan provides that, "if a staff member has possible COVID-related symptoms, the staff member shall be directed to obtain a medical evaluation to determine

16742083.2

-5-   Case No. 01-1351 JST
Defs.' Opp. to Pls.' Motion for Order Mod. Staff Testing Plan

whether he or she should be tested for COVID-19." (Ruhparwar Decl., Ex. A, at page 1.) Plaintiffs take the position that CDCR's plan should be modified mandate testing of symptomatic staff (either at the institution or elsewhere) without exception. But this provision of CDCR's staff testing plan is supported by public health guidance. The list of potential COVID-19 symptoms (according to the most recent CDC guidelines) is "very long" and "includes symptoms that are often (and more likely) attributable to other causes." (Watt Decl., at ¶ 10.) It is therefore important for staff who believe they may have a symptom consistent with COVID-19 to undergo a medical evaluation and to be assessed by a medical professional who can better determine whether testing is warranted in light of their symptomatology. (*Id.*) This is particularly important given that testing resources are at a premium and testing volumes and turnaround times statewide are stretched thin. (*Id.* at ¶ 14.) CDC guidance pertaining to "Interim Considerations for SARS-CoV-2 Testing in Correctional and Detention Facilities supports this approach, stating: "All staff with suspected or confirmed COVID-19 should wear cloth face coverings (unless contraindicated), self-isolate at home, *connect with appropriate medical care* as soon as possible, and *follow medical care and instructions*." (Emphasis added.)[1]

In addition, to further safeguard the incarcerated population and staff members at its institutions from the risks of COVID-19, CDCR's plan also provides that staff who are sick shall stay home. (Ruhparwar Decl., Ex. A, at page 1.) Personnel who develop fever, respiratory symptoms, or other COVID-related symptoms shall be instructed not to report to work and to notify their supervisor. (*Id.*)

Thus, because CDCR's staff testing plan is based upon current CDC guidance and recommendations from CDPH experts, Defendants cannot possibly be disregarding an excessive risk to inmate health or safety. A mere difference in medical opinion cannot support a finding of deliberate indifference. (*See Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004); *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989);

---

[1] CDC's Interim Considerations for SARS-CoV-2 Testing in Correctional and Detention Facilities, last updated July 7, 2020, is available at https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/testing.html.

16742083.2

-6-   Case No. 01-1351 JST
Defs.' Opp. to Pls.' Motion for Order Mod. Staff Testing Plan

*Colwell v. Bannister*, 763 F.3d 1050, 1068 (9th Cir. 2014) ("A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." (citation and quotation marks omitted).) Accordingly, Plaintiffs are not entitled to the relief they seek here.

### B. CDCR's focused re-testing of staff following an outbreak is consistent with public health guidance.

CDCR's plan provides that, after one or more COVID-19 positive individuals are identified at an institution, serial retesting of all staff should be performed every 14 days until no new cases are identified in two sequential rounds of testing. (Ruhparwar Decl., Ex. A, at page 2.) It states further that, for institutions that are organized by yard, initial testing can be limited to the yard where the positive incarcerated person is housed or staff is assigned. (*Id.*) If there are multiple yards at an institution, and those who have tested positive are clustered in one yard, serial retesting should only occur among staff regularly assigned to that yard. (*Id.*) The plan also states that it is not necessary to test staff across multiple yards as long as staff are not moving among buildings to provide services. (*Id.,* at page 3.) ("[I]t is not necessary to test staff across multiple yards [only] as long as staff are not moving among buildings to provide services.").)

Plaintiffs take the position that CDCR's plan should be modified to require retesting of all staff, not just those assigned to a particular yard, in response to an outbreak. However, Plaintiffs' suggested approach disregards the fact that testing and re-testing of staff, as CDCR's plan provides, should be driven by the objectives of the testing and what can realistically be accomplished in light of the availability of testing and the speed by which test results are received. (Watt Decl., at ¶ 11.) Moreover, surveillance testing is a lower priority than testing symptomatic people and people who may have been exposed. (*Id.* at ¶ 13.)

Further, and as mentioned above, testing resources are a challenge across the state. (*Id.,* at ¶ 14.) There are issues with testing volumes and turnaround times statewide, which is a crucial factor that must be considered when recommending a mass testing protocol. (*Id.*) Here, the kind of bi-weekly mass testing that Plaintiffs are seeking at all of CDCR's institutions would severely

16742083.2

-7-   Case No. 01-1351 JST

Defs.' Opp. to Pls.' Motion for Order Mod. Staff Testing Plan

1  strain the already scarce testing availability and increase lengthy turnaround times for results.

2  CDCR's approach to limit re-testing of staff to individual yards where the positive
3  incarcerated person is housed or staff is assigned is not only reasonable, but also prudent in light
4  of the current challenges with testing resources.

### III. Plaintiffs' Motion Fails The PLRA's Needs-Narrowness-Intrusiveness Requirement.

7  The PLRA mandates that prospective relief be narrowly drawn, extend no further than
8  necessary, and be the least intrusive means of addressing the violation of the Federal right. 18
9  U.S.C. § 3626(a)(1)(A). Plaintiffs' requested relief to modify CDCR's staff testing plan does not
10 meet these exacting standards. Instead, Plaintiffs advocate for an inflexible approach that most
11 certainly will ensure CDCR's staff testing plan will become outdated and remain outdated for an
12 unnecessarily long period of time each time public health guidance is updated. CDCR will require
13 court intervention each time it seeks to modify its plan in response to updated guidance, creating
14 an unnecessarily burdensome and impractical approach.

15 But more tailored relief exists. This Court may simply mandate that CDCR's plan comply
16 with current CDC and public health guidance. A court order mandating anything beyond that
17 would hinder CDCR's ability to adjust its plan at a time when flexibility and adoption of evolving
18 standards is critical to mitigating the spread of COVID-19.

### CONCLUSION

20 Plaintiffs have not demonstrated that they are entitled to the relief they request. But even if
21 they could demonstrate Defendants' deliberate indifference to the COVID-19 pandemic, they still
22 would not be entitled to their requested relief because it is not narrowly drawn. Their motion
23 should therefore be denied.

16742083.2

-8-   Case No. 01-1351 JST
Defs.' Opp. to Pls.' Motion for Order Mod. Staff Testing Plan

DATED: July 31, 2020                HANSON BRIDGETT LLP

By: _____*/s/ Samantha D. Wolff*_____
PAUL B. MELLO
SAMANTHA D. WOLFF
KAYLEN KADOTANI
Attorneys for Defendants

DATED: July 31, 2020                XAVIER BECERRA
Attorney General of California

By: _____*/s/ Nasstaran Ruhparwar*_____
DAMON MCCLAIN
Supervising Deputy Attorney General
NASSTARAN RUHPARWAR
Deputy Attorney General
Attorneys for Defendants

CA2001CS0001/42290715.DOCX

16742083.2

-9-                                Case No. 01-1351 JST
Defs.' Opp. to Pls.' Motion for Order Mod. Staff Testing Plan