ROB BONTA
Attorney General of California
MONICA N. ANDERSON
Senior Assistant Attorney General
DAMON G. MCCLAIN
Supervising Deputy Attorney General
IRAM HASAN
Deputy Attorney General
State Bar No. 320802
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA 94102-7004
 Telephone: (415) 510-3793
 Fax: (415) 703-5480
 E-mail: Iram.Hasan@doj.ca.gov

*Attorneys for Defendants*

HANSON BRIDGETT LLP
PAUL B. MELLO - 179755
SAMANTHA D. WOLFF – 240280
LAUREL O'CONNOR – 305478
DAVID CASARRUBIAS – 321994
 425 Market Street, 26th Floor
 San Francisco, CA 94015
 Telephone: (415) 777-3200
 Facsimile: (415) 541-9366
 E-mail: pmello@hansonbridgett.com

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| **MARCIANO PLATA, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>Defendants. | 01-cv-01351-JST<br><br>**DECLARATION OF CONNIE GIPSON IN SUPPORT OF DEFENDANTS' MOTION TO STAY ORDER RE: MANDATORY COVID-19 VACCINATIONS (ECF NO. 3684) PENDING APPEAL**<br><br>Date: December 9, 2021<br>Time: 2:00 p.m.<br>Courtroom: 6, 2nd Floor<br>Judge: The Honorable Jon S. Tigar<br>Action Filed: April 5, 2001 |

I, Connie Gipson, declare:

1. I have personal knowledge regarding the matters stated in this declaration, except for those statements made on information and belief. I am competent to testify to the matters set forth in this declaration and would do so if called upon to testify. I submit this declaration in support of Defendants' motion to stay this Court's September 27, 2021 order regarding mandatory COVID-19 vaccinations (ECF No. 3684) pending appeal.

1

2. I have thirty-three years of experience working for the California Department of Corrections and Rehabilitation (CDCR) and I am currently the Director of CDCR's Division of Adult Institutions. I started my career at CDCR as a medical technical assistant at the California Institution for Women, where I worked from 1988 to 1997. From 1997 to 2008, I held several positions at Wasco State Prison, including captain, business manager and health program coordinator. From 2008 to 2010, I was the Associate Warden at North Kern State Prison. From 2010 to 2013, I served in multiple positions at California State Prison, Corcoran, including as Warden, Acting Warden and Chief Deputy Warden. From 2013 to 2016, I served as the Associate Director of general population male offenders at CDCR's Division of Adult Institutions. From 2016 to 2019, I served as deputy director of facility operations at the Division of Adult Institutions. In 2019, I was promoted to the Acting Director of the Division of Adult Institutions, and was appointed to my current position as the Director in April 2019. I am competent to testify to the matters set forth in this declaration and, if called upon by this Court, would do so. I submit this declaration in support of Defendants' motion to stay the Court's vaccine-mandate order.

3. As the Director of Adult Institutions, I am responsible for monitoring and managing staffing levels of correctional officers in CDCR's prisons. Correctional officers are sworn peace officers responsible for, among many other things, maintaining safety, security, and order in the prisons. Programming for the incarcerated population is not possible without sufficient numbers of correctional officers. I currently oversee about 28,248 correctional officers, sergeants, lieutenants, captains, and counselors. This part of my job is extremely important because sufficient officer staffing levels are required to maintain safety, security, and order throughout the prisons. Prisons cannot operate safely without sufficient numbers of correctional officers. And sufficient officer staffing levels are also required to provide the incarcerated population with essential services—such as medical care and meals—and recreational and rehabilitative programming—such as yard, day room, education, self-improvement, and work programs.

4. My team and I closely track staffing levels and strive continuously to ensure sufficient staffing levels throughout the prisons. My staff regularly prepare detailed projections

2

Decl. Connie Gipson Supp. Defs.' Mot. Stay Order (ECF No. 3684) Pending Appeal (01-cv-01351-JST)

of correctional officer staffing levels for each prison. These projections account for incoming cadets, lateral transfers into and out of each prison, planned retirements, and estimated attrition. We use these projections to plan for potential staffing shortages and to manage staffing issues.

5. As the Director of Adult Institutions, I am also responsible for monitoring and managing staffing levels of essential noncustodial workers throughout the prisons, such as culinary staff, electricians, plumbers, carpenters, maintenance mechanics, warehouse workers, and administrative staff. I currently oversee about 8,558 noncustodial workers throughout CDCR's prisons. These workers are also critical to prison operations. If culinary positions are insufficiently staffed it becomes challenging to provide meals for the prison population. If electrician, plumber, and maintenance mechanic positions are insufficiently staffed, work orders for various critical repairs throughout the prisons cannot be timely completed. And if there are insufficient administrative personnel, critical administrative functions that keep the prisons running cannot be timely carried out. The basic functions of each prison depend on these worker classifications.

6. Although different prisons may be impacted differently by officer vacancies, lower levels of officer vacancies usually result in increased voluntary overtime, occasional involuntary overtime for officers, and little to no impact to programs for the incarcerated population. However, as officer vacancies increase, significant operational impacts are likely, including more extensive involuntary overtime for correctional officers and reductions in programming for the incarcerated population, including recreation, day room, rehabilitation, education, and work programs. Officer fatigue, burn out, and injuries tend to increase when vacancies are higher, and continue to increase as vacancy levels rise. High officer vacancies can also have severe impacts on prison operations and security, require drastic cuts in programming, and even basic services, such as phone calls and daily showers for the incarcerated population must be curtailed. Limiting or suspending these programs allows the prison to redirect correctional officers to help ensure the delivery of essential services, such as medical care and meals for the incarcerated population. High vacancy levels also place a high level of stress on correctional officers, who are required to work extensive overtime. As a result, more officers request extended periods of leave, which can

3

Decl. Connie Gipson Supp. Defs.' Mot. Stay Order (ECF No. 3684) Pending Appeal (01-cv-01351-JST)

further exacerbate staffing shortages. If the number of vacancies continues to increase, all programming may need to be suspended, and the incarcerated population might be required to remain in cells or dorms for extended periods.

7. Extremely high vacancy rates also create challenges for prisons to maintain safety, security, and order, and the risk of security breaches and violence rises. This is because there may be insufficient staff on hand to adequately respond to serious security breaches and to maintain order. Violent security breaches can lead to physical injuries to staff and incarcerated people, and result in workers compensation claims and lawsuits.

8. What has recently happened at two of CDCR's prisons—California Medical Facility (CMF) in Vacaville and California Health Care Facility (CHCF) in Stockton—affirmed and greatly increased my concerns that a requirement to vaccinate all correctional officers with no testing option will cause a substantial increase in correctional-officer vacancies above current projections. Because CMF and CHCF are both medical prisons, an order issued by the California Department of Public Health (CDPH) in August 2021 already mandates that all staff at CMF and CHCF, including all correctional officers, be vaccinated. The deadline for compliance with that CDPH order was October 14, 2021. I have been closely watching what is happening at CMF and CHCF because they can serve as a barometer for what will happen when all correctional officers at all prisons are required to accept the vaccine as a condition of employment under the vaccine-mandate order. As of October 25, 2021—eleven days past the deadline for mandatory compliance with CDPH's order—78 (8.26%) of CHCF correctional officers, and 72 (10.14%) of CMF correctional officers had neither complied by taking the vaccine nor sought a medical or religious exemption. Although Kern County Superior Court issued a temporary restraining order from the bench in the afternoon on October 13, 2021, prohibiting CDCR from enforcing mandatory vaccinations against the correctional officers covered by the CDPH order, that court ultimately denied the union's request for a preliminary injunction and lifted the temporary restraining order on October 22, 2021. The high levels of noncompliance up through October 25, 2021, indicate that substantial numbers of officers are simply refusing to comply with the CDPH order. If correctional officers at other institutions exhibit similar rates of noncompliance when

4

the vaccine-mandate order is implemented, the statewide impact will be devastating to CDCR's prison operations.

9. The vigorous pushback from the unions on the CDPH vaccine mandate for healthcare settings is also concerning. The California Correctional Peace Officers Association has sued CDCR in Kern County to block the implementation of the CDPH order; the American Federation of State, County, and Municipal Employees has issued a letter to CDCR and California Correctional Health Care Services (CCHCS) on behalf of psychiatric technicians who work in CDCR's prisons, demanding that CDCR and CCHCS cease and desist from enforcing the CDPH order; and the Service Employees International Union has filed an unfair labor practice charge with California's Public Employment Relations Board against CDCR and CCHCS for implementing the CDPH order.

10. Furthermore, events in another West Coast jurisdiction also forecast that California's prisons will likely experience a significant adverse impact on staffing if the vaccine-mandate order is not stayed. The Seattle Times reported on October 19, 2021, that as a consequence of Washington's vaccine mandate for state workers, the Department of Corrections lost about 4.5% of its prison staff. Although the article stated that a spokesperson for the department asserted that Washington's prisons were still sufficiently staffed to operate, if CDCR were to lose 4.5% of its prison staff across the state, the impact on prison operations would be severe, and normal operations would not be possible in all of CDCR's prisons.

11. It is also noteworthy that as of October 15, 2021, CDCR has received 1,738 religious accommodation requests across multiple classifications of prison workers. About 1,160 of those requests were from custody staff, who are comprised of correctional captains, correctional lieutenants, correctional sergeants, correctional officers and correctional counselors. This too seems to indicate that staff resistance to the vaccine-mandate order will be substantial.

12. If CMF and CHCF's noncompliance rates are consistent across other classifications of workers besides correctional officers throughout the prisons, the impact on operations will be crippling. Prisons simply cannot function without sufficient culinary staff to prepare meals,

5

Decl. Connie Gipson Supp. Defs.' Mot. Stay Order (ECF No. 3684) Pending Appeal (01-cv-01351-JST)

1  sufficient maintenance workers to make critical repairs to electrical, plumbing, and ventilation
2  systems as problems arise, or sufficient administrative staff.

3   13.   If the vaccine-mandate order is implemented, there is also a high risk that a
4  substantial number of highly experienced and skilled officers will simply choose to retire rather
5  than be vaccinated. Difficult and stressful pandemic conditions in the prisons have already
6  resulted in a higher number of retirements than is usual. The resulting staff shortages on top of
7  pandemic conditions required extensive involuntary overtime at some prisons during the
8  pandemic, which resulted in officer injuries, burn out, and increased requests for extended periods
9  of leave. Approximately 729 unvaccinated correctional officers have been employed for over
10 twenty years and are over age 50. This means that they could retire at any time. CDCR normally
11 relies heavily on incoming cadets to help fill positions of officers who have retired, but as
12 discussed below, the cadet resource has been deficient. Consequently, if a significant portion of
13 these officers were to retire in lieu of taking the vaccine, the impact to CDCR's staffing levels
14 and operations would be severe.

15  14.   The likely impact of the vaccine-mandate order will come at a time when CDCR's
16 staffing levels have already been significantly impacted by the COVID-19 pandemic. That is
17 why I was very concerned about the Receiver's recommendation to vaccinate all CDCR staff.
18 Since the pandemic began, staffing levels across the prison system have fallen for a number of
19 reasons, one of which is fewer graduating cadets. CDCR's Correctional Officer Academy has
20 been generating fewer cadets during the pandemic than in previous years. For example, before
21 the pandemic, in fiscal year 2018/19, the Academy graduated 1,608 cadets; in 2019/20, there
22 were 1,316 cadet graduates; and in 2020/21 there were only 892 cadet graduates. So far, only 461
23 cadets have graduated in fiscal year 2021/22. With fewer cadets graduating, it is difficult for
24 CDCR to timely replace officers who quit or retire. Additionally, significant numbers of current
25 cadets in the academy have not been vaccinated, and I have serious concerns that the vaccine
26 mandate is likely to further reduce the number of graduating cadets who will take positions in
27 CDCR's prisons. Of the cadets that are due to graduate on October 22, 2021, only twenty-four
28 percent are currently vaccinated.

6

Decl. Connie Gipson Supp. Defs.' Mot. Stay Order (ECF No. 3684) Pending Appeal (01-cv-01351-JST)

15. Under more normal circumstances, one option for addressing a severe staffing shortage at a single prison is to put together a "strike force" of staff from another nearby prison that is fully staffed to assist the understaffed prison. But this option is not feasible when staffing is stretched thin across many prisons.

16. I am aware that California Correctional Healthcare Services has a number of contracts with healthcare-service providers that allow it to quickly cover vacant healthcare positions that might result from vaccine mandates and avoid negative impacts. There are no similar contracts for correctional officers. Therefore, there is no simple or quick way to address severe shortages of correctional officers, and it could take months or years to fully recover from a substantial loss of correctional officers resulting from the vaccine-mandate order.

I declare under penalty of perjury that I have read this document, and its contents are true and correct to the best of my knowledge. Executed on October 25, 2021, in Sacramento, California.

/S/ CONNIE GIPSON
_____
CONNIE GIPSON
Director of Adult Institutions
California Department of Corrections and Rehabilitation

CA2001CS0001
42936462.docx

7

Decl. Connie Gipson Supp. Defs.' Mot. Stay Order (ECF No. 3684) Pending Appeal (01-cv-01351-JST)