1
2
3
4                      UNITED STATES DISTRICT COURT
5                    NORTHERN DISTRICT OF CALIFORNIA
6
7   MARCIANO PLATA, et al.,              Case No. 01-cv-01351-JST
8                Plaintiffs,
                                         **ORDER DENYING MOTIONS TO**
9        v.                              **STAY PENDING APPEAL**
10  GAVIN NEWSOM, et al.,                Re: ECF Nos. 3715, 3722
                Defendants.
11
12
13        Before the Court are motions to stay filed by Defendants and Intervenor California

14  Correctional Peace Officers' Association ("CCPOA").  ECF Nos. 3715, 3722.  Defendants and

15  CCPOA seek to stay pending appeal this Court's order mandating vaccination against COVID-19

16  and its order setting a January 12, 2022 implementation deadline.  *Plata v. Newsom*, ___ F. Supp.

17  3d ___, 2021 WL 4448953 (N.D. Cal. Sept. 27, 2021) (ECF No. 3684); ECF No. 3721.  The Court

18  will deny both motions.

19        The issuance of a stay is a matter of judicial discretion, not a matter of right, and the "party

20  requesting a stay bears the burden of showing that the circumstances justify an exercise of that

21  discretion."  *Nken v. Holder*, 556 U.S. 418, 433-34 (2009).  The Court must consider four factors

22  in exercising its discretion: "(1) whether the stay applicant has made a strong showing that he is

23  likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay;

24  (3) whether issuance of the stay will substantially injure the other parties interested in the

25  proceeding; and (4) where the public interest lies."  *Id.* at 434 (citation omitted).  Under Ninth

26  Circuit precedent, the movant "must show that irreparable harm is probable and either: (a) a strong

27  likelihood of success on the merits and that the public interest does not weigh heavily against a

28  stay; or (b) a substantial case on the merits and that the balance of hardships tips sharply in the

United States District Court
Northern District of California

[movant's] favor." *Leiva-Perez v. Holder*, 640 F.3d 962, 970 (9th Cir. 2011) (per curiam).

On the merits, the Court already considered and rejected the majority of Defendants' and CCPOA's arguments in its September 27, 2021 Order re: Mandatory Vaccinations. *Plata*, 2021 WL 4448953. Nothing in the parties' briefs persuades the Court to change any of the conclusions it reached in that order. Nonetheless, several issues warrant further discussion.

Both movants point to the Ninth Circuit's opinion in *Fraihat v. U.S. Immigration and Customs Enforcement*, 16 F.4th 613 (9th Cir. 2021), as intervening authority that requires reconsideration of the Court's order. In that case, the Ninth Circuit vacated a nationwide preliminary injunction that "imposed a broad range of obligations on the federal government" related to protecting immigration detainees from COVID-19. *Id.* at 618.

*Fraihat* did not change the deliberate indifference standard this Court applied when it determined that a mandatory vaccination order was required by the Eighth Amendment. Nor does *Fraihat*'s reasoning require a different outcome when applied to the facts of this case. First, in contrast to the broad preliminary relief ordered in *Fraihat*, *see id.* at 629-34, this Court's order is narrowly focused. Additionally, unlike the preliminary injunction reviewed in *Fraihat*, the Court's order comes nearly two years into the pandemic, not "almost immediately" into "an unprecedented and evolving public health problem." *Id.* at 619. The district court in *Fraihat* issued its preliminary injunction order on April 20, 2020, *id.* at 629 – three days after this Court concluded that Defendants were not, at that time, acting with deliberate indifference, *Plata v. Newsom*, 445 F. Supp. 3d 557, 562-69 (N.D. Cal. 2020) (ECF No. 3291).

Many months later, the record in this case now establishes deliberate indifference – and in ways that were not present in *Fraihat*. Here, Defendants are ignoring undisputed medical and scientific evidence, as well as the opinions of their own expert. Nothing similar was present in *Fraihat*. Defendants attempt to manufacture a medical dispute based on a study published in the *Lancet* on October 28, 2021, ECF No. 3742-2, but Defendants misrepresent the findings of that study.[1] They assert that the study found that vaccinated individuals "are just as likely to spread

---

[1] It is not clear that this study presents "fact[s] that [are] not subject to reasonable dispute," as required for the Court to take judicial notice, but the Court nonetheless considers it. Fed. R. Evid.

United States District Court
Northern District of California

the delta variant to contacts in their household as those who have not had a vaccination." ECF No. 3741 at 11. However, while the study confirms that vaccinated individuals who are infected with the delta variant have similar peak viral loads and can spread the disease as readily as infected individuals who have not been vaccinated, it also reports that its findings are "consistent with the known protective effect of COVID-19 vaccination against infection." ECF No. 3742-2 at 11. As the summary to the study explains, "*Vaccination reduces the risk of delta variant infection and accelerates viral clearance*. Nonetheless, fully vaccinated individuals *with breakthrough infections* have peak viral load similar to unvaccinated cases and can efficiently transmit infection in household settings, including to fully vaccinated contacts." *Id.* at 2 (emphasis added). In other words, the study stands for the proposition that vaccinated individuals, *once infected*, may, at least initially, spread the delta variant to the same extent as unvaccinated individuals. But it does not support Defendants' misrepresentation that vaccinated individuals are "*just as likely* to spread the delta variant to contacts in their household as those who have not had a vaccination." ECF No. 3741 at 11 (emphasis added). To the contrary, because vaccinated individuals are less likely to become infected in the first place and also experience accelerated viral clearance, it remains undisputed that vaccinated individuals are less likely to infect others. The *Lancet* study therefore does not undermine the Court's prior conclusions.

Moreover, subsequent to the Court's mandatory vaccination order, Defendants' own expert has now concluded that "COVID-19 vaccination of all employees of the CDCR without a valid contra-indication or exemption is the single most effective intervention available to prevent cases and outbreaks of COVID-19, both among those who are vaccinated and those who cannot be vaccinated." ECF No. 3738-1 at 15. Defendants' expert has also opined that prisons "are highly unlikely to be able to prevent or control outbreaks of COVID-19 solely through the application of non-pharmaceutical interventions," *id.*, thus undercutting Defendants' and CCPOA's contention

---

201(b). Similarly, the Court has considered the news articles for which Defendants have requested judicial notice, even though it is unclear whether those articles – and, in particular, the facts contained therein – are proper subjects of judicial notice. ECF Nos. 3715-4, 3742; *see, e.g.*, *Ali v. Intel Corp.*, No. 18-cv-03981-LHK, 2018 WL 5734673, at *3 (N.D. Cal. Oct. 31, 2018) ("Courts do not take judicial notice of newspaper articles for the truth of the contents of the articles.").

United States District Court
Northern District of California

1   that other COVID-preventive measures are sufficient to reasonably protect Plaintiffs.  In other

2   words, Defendants' position is that, notwithstanding all other measures they continue to

3   implement, staff working at two institutions and in healthcare areas systemwide must be

4   vaccinated to protect the incarcerated population – but Defendants and CCPOA have presented no

5   basis for reaching a different conclusion as to all other institutions.  It is unreasonable, and shows

6   reckless disregard, for Defendants to refuse to implement what their own expert has determined is

7   the "single most effective intervention available." *Id.*  This is not a case where medical opinions

8   differ.

9          The State's adoption of vaccine mandates for other groups of state employees further

10  underscores Defendants' deliberate indifference.  The Court previously described the California

11  Department of Public Health's August 5 and August 19 orders, which mandated vaccines for

12  workers in healthcare facilities and healthcare areas in correctional settings.  *Plata*, 2021 WL

13  4448953, at *3.  The day after the Court's September 27 order, CDPH issued a third vaccine

14  mandate that covers workers at "adult and senior care facilities and in-home direct care settings."

15  CDPH, Order of the State Public Health Officer re: Adult Care Facilities and Direct Care Worker

16  Vaccine Requirement, https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/COVID-19/Order-

17  of-the-State-Public-Health-Officer-Adult-Care-Facilities-and-Direct-Care-Worker-Vaccine-

18  Requirement.aspx (Sept. 28, 2021).  All three of these orders were premised on the State's desire

19  to protect vulnerable populations in settings where workers have frequent contact with such

20  individuals.  Notably – in contrast to Defendants' position in this case, where they suggest that a

21  mandatory vaccine for incarcerated persons is a better solution than a mandatory vaccine for staff

22  members – none of the CDPH orders, nor any other directive from the State, requires any

23  members of vulnerable populations to become vaccinated.  Instead, consistent with Defendants'

24  expert's view that staff vaccination is the most effective intervention available, the CDPH orders

25  adopt that intervention.  Defendants' different treatment of incarcerated persons, except for those

26  who are confined at the two facilities covered by the August 19 CDPH order, shows reckless

27  disregard for the safety of those persons.

28         In sum, for the reasons set forth above and those discussed in the Court's September 27

4

order, the facts of this case satisfy the "formidable" standard for deliberate indifference. *Fraihat*,
16 F.4th at 636. Defendants have "disregarded an excessive risk to [Plaintiffs'] health and safety
by failing to take reasonable and available measures that could have eliminated that risk." *Id.*
(quotation and alteration marks omitted). As the Court previously explained, "Defendants are
aware of a substantial risk of serious harm to incarcerated persons, and, although they have taken
many commendable steps during the course of this pandemic, they have nonetheless failed to
reasonably abate that risk because they refuse to do what the undisputed evidence requires."
*Plata*, 2021 WL 4448953, at *1. Defendants and CCPOA have demonstrated neither "a strong
likelihood of success on the merits" nor "a substantial case on the merits," and their motions to
stay must therefore be denied. *Leiva-Perez*, 640 F.3d at 970.

      Even if Defendants and CCPOA had made a showing of likelihood of success on the
merits, the balance of hardships and the public interest weigh sharply against a stay. Defendants'
and CCPOA's dire predictions of what might happen in the absence of a stay are speculative.
Although some staff might choose to resign or retire rather than comply with a vaccine mandate,
the level of staff departures is unknown at this time.[2] Defendants also base their predictions of
harm on circumstances resulting from implementation of the August 19 CDPH order, yet – in
contrast to their position in this case – they persist in implementing that order, including defending
it against CCPOA's legal challenges. Similarly, notwithstanding its claims of irreparable harm,
CCPOA acknowledged at the hearing on these motions that it has not sought immediate review of
the state court's denial of its motion to preliminarily enjoin the August 19 CDPH order.
Additionally, to the extent that Defendants and CCPOA rely on potential staff shortages in arguing
for a stay, they have not considered that COVID outbreaks – which mandatory vaccination would
help prevent – also result in staff shortages. *See, e.g.*, *Plata*, 2021 WL 4448953, at *6 (noting that
approximately 5,500 staff had to quarantine in the past year "either because they have themselves
contracted COVID-19 or because they 'are identified as close contacts of an infected individual'").

_____

[2] It is also not clear to the Court that, in seeking a stay, a party can rely on harm that might occur if
employees choose not to follow directives that implement a court order. That would appear to
give contumacious employees an undue ability to determine when a court can enforce orders that
require an employer to comply with the law.

1    CCPOA argues that some of its members will face irreparable harm absent a stay because

2    they will be forced to choose between maintaining their employment or taking a vaccine that they

3    do not want.  The vast majority of courts to have considered this issue have concluded that such a

4    choice does not constitute irreparable harm that warrants enjoining a vaccine mandate.[3]  *E.g.*,

5    *Smith v. Biden*, No. 1:21-cv-19457, 2021 WL 5195688, at *8 (D.N.J. Nov. 8, 2021), *appeal filed*

6    (3d Cir. Nov. 10, 2021) ("To date, every court that has considered the allegation that the potential

7    loss of employment due to an employee's decision not to comply with an employer's COVID-19

8    vaccine mandate constitutes irreparable harm has rejected it."); *Bauer v. Summey*, ___ F. Supp. 3d

9    ___, 2021 WL 4900922, at *18 (D.S.C. Oct. 21, 2021) (rejecting plaintiffs' assertion of irreparable

10    harm where plaintiffs argued that the challenged policies "leave them with effectively two options:

11    receive the COVID-19 vaccine and give up their constitutionally protected rights to bodily

12    autonomy and privacy, or refuse to receive the COVID-19 vaccine and risk losing their jobs, a

13    constitutionally protected property interest"); *Mass. Corr. Officers Federated Union v. Baker*, ___

14    F. Supp. 3d ___, 2021 WL 4822154, at *7 (D. Mass. Oct. 15, 2021) ("While Plaintiffs' members

15    may suffer the harm of losing employment, it is well settled that the loss of employment is not

16    considered irreparable for the purposes of an injunction."); *Beckerich v. St. Elizabeth Med. Ctr.*,

17    ___ F. Supp. 3d ___, 2021 WL 4398027, at *7 (E.D. Ky. Sept. 24, 2021), *reconsideration denied*,

18    2021 WL 4722915 (E.D. Ky. Sept. 30, 2021) (finding no irreparable harm where "Plaintiffs are

19    choosing whether to comply with a condition of employment, or to deal with the potential

20    consequences of that choice"); *but see BST Holdings, L.L.C. v. OSHA*, ___ F.4th ___, 2021 WL

21

22    ───────────────
     [3] In addition, that Defendants and CCPOA waited approximately one month before filing their

23    motions to stay weighs against a finding of irreparable harm.  *E.g.*, *Dahl v. Swift Distrib., Inc.*, No.
     CV 10-00551 SJO (RZx), 2010 WL 1458957, at *4 (C.D. Cal. Apr. 1, 2010) (18-day delay

24    between filing of complaint and motion for temporary restraining order "implies a lack of urgency
     and irreparable harm").  Both movants argue that they did not delay in seeking a stay because the

25    September 27 order did not set a timeline for implementation, but this argument is unpersuasive.
     The September 27 order imposed a vaccine mandate and required an implementation plan to be

26    filed, thus giving all parties notice that a vaccine mandate would be imposed.  Defendants argue
     that the implementation deadline was unclear, but they jointly filed an implementation plan with

27    the Receiver setting forth a November 29, 2021 deadline.  ECF No. 3694 at 5.  Moreover,
     Defendants and CCPOA appealed the Court's September 27 order, and Defendants filed their

28    motion for a stay pending appeal, without waiting for the Court to order a specific implementation
     deadline.  ECF Nos. 3693, 3714, 3715.

United States District Court
Northern District of California

5279381, at *8 (5th Cir. Nov. 12, 2021) (finding irreparable harm because a vaccine-or-test mandate "threatens to substantially burden the liberty interests of reluctant individual recipients put to a choice between their job(s) and their jab(s)" (footnote omitted)).[4]

Finally, even assuming that Defendants and CCPOA might face some irreparable harm, the balance of hardships and the public interest would still weigh against a stay.  This Court has determined that its mandatory vaccination order is required to protect the constitutional rights of persons incarcerated by the State of California, and that Plaintiffs face a substantial risk of serious harm, including serious illness and death, in the absence of a vaccine mandate.  Defendants "cannot suffer harm from an injunction that merely ends an unlawful practice," even if they were to "face[] severe logistical difficulties in implementing the order."  *Rodriguez v. Robbins*, 715 F.3d 1127, 1145-46 (9th Cir. 2013), *abrogated on other grounds sub. nom Jennings v. Rodriguez*, 138 S. Ct. 830 (2018).  And, "[e]ven considering the economic impact on [CCPOA members] if they choose not to be vaccinated, when balancing that harm against the legitimate and critical public interest in preventing the spread of COVID-19 by increasing the vaccination rate, particularly in congregate facilities, the Court finds the balance weighs in favor of the broader public interests."  *Mass. Corr. Officers*, 2021 WL 4822154, at *8.

Defendants' and CCPOA's motions for a stay pending appeal are denied.

**IT IS SO ORDERED.**

Dated:  November 17, 2021



JON S. TIGAR
United States District Judge

---

[4] *BST Holdings* has since been consolidated and assigned by the Judicial Panel on Multidistrict Litigation to the United States Court of Appeals for the Sixth Circuit.  *In re: OSHA, Interim Final Rule: COVID-19 Vaccination and Testing; Emergency Temporary Standard, 86 Fed. Reg. 61402, Issued on Nov. 4, 2021*, MCP No. 165, ECF No. 3 (JPML Nov. 16, 2021).