# EXHIBIT A

California Department of Corrections and Rehabilitation  
Division of Correctional Policy Research and Internal Oversight  
Office of Research  
December 8, 2021

```
                        Weekly Report of Population
                      As of Midnight December 8, 2021
```

|  | Total CDCR Population | | | | | |
|---|---|---|---|---|---|---|
| Population | Felon/ Other | Change Since Last Week | Change Since Last Year | Design Capacity | Percent Occupied | Staffed Capacity |
| A. Total In-Custody/CRPP Supervision | 99,622 | +69 | +2,747 | | | |
|   I. In-State | 99,622 | +69 | +2,747 | | | |
|     (Men, Subtotal) | 95,829 | +48 | +2,447 | | | |
|     (Women, Subtotal) | 3,793 | +21 | +300 | | | |
|     1. Institution/Camps | 96,390 | +16 | +2,883 | 85,330 | 113.0 | 119,242 |
|       Institutions | 94,715 | -7 | +2,863 | 81,962 | 115.6 | 115,848 |
|       Camps(CCC, CIW, and SCC) | 1,675 | +23 | +20 | 3,368 | 49.7 | 3,394 |
|     2. In-State Contract Beds | 2,153 | +12 | -293 | | | |
|       Community Prisoner Mother Program | 1 | -1 | -7 | | | |
|       California City Correctional Facility | 2,152 | +13 | +98 | | | |
|     3. Department of State Hospitals | 188 | +2 | -25 | | | |
|     4. CRPP Supervision | 891 | +39 | +182 | | | |
|       Alternative Custody Program | 40 | +1 | +8 | | | |
|       Custody to Community Treatment Reentry Program | 305 | +18 | +35 | | | |
|       Male Community Reentry Program | 462 | +20 | +101 | | | |
|       Medical Parole | 62 | 0 | +27 | | | |
|       Medical Reprieve Program | 19 | 0 | +15 | | | |
|       Medically Vulnerable Release | 3 | 0 | -4 | | | |
| B. Parole | 46,489 | -178 | -8,806 | | | |
|   Community Supervision | 44,981 | -179 | -8,725 | | | |
|   Interstate Cooperative Case | 1,508 | +1 | -81 | | | |
| C. Non-CDCR Jurisdiction | 1,129 | -30 | -2,391 | | | |
|   Other State/Federal Institutions | 243 | 0 | -26 | | | |
|   Out of State Parole | 689 | 0 | -65 | | | |
|   Out of State Parolee at Large | 19 | -1 | 0 | | | |
|   DJJ-W&IC 1731.5(c) Institutions | 10 | 0 | -6 | | | |
|   County Jail | 168 | -29 | -2,294 | | | |
| D. Other Populations | 8,515 | +70 | +201 | | | |
|   Temporary Release to Court and Hospital | 1,299 | +20 | -450 | | | |
|   Escaped | 195 | 0 | -2 | | | |
|   Parolee at Large | 7,021 | +50 | +653 | | | |
| Total CDCR Population | 155,755 | -69 | -8,249 | | | |

This report contains the latest available reliable population figures from SOMS.  They have been carefully audited, but are preliminary, and therefore subject to revision.

Report #: SOMS-TPOP-1, Page 1

California Department of Corrections and Rehabilitation
Division of Correctional Policy Research and Internal Oversight
Office of Research
December 8, 2021

Weekly Report of Population
As of Midnight December 8, 2021

## Weekly Institution Population Detail

| Institutions | Felon/ Other | Design Capacity | Percent Occupied | Staffed Capacity |
|---|---:|---:|---:|---:|
| Avenal State Prison (ASP) | 3,778 | 2,909 | 129.9 | 4,387 |
| Calipatria State Prison (CAL) | 2,945 | 2,308 | 127.6 | 3,451 |
| California Correctional Center (CCC) | 1,719 | 3,377 | 50.9 | 3,487 |
| California Correctional Institution (CCI) | 2,830 | 2,172 | 130.3 | 3,299 |
| Central California Women's Facility (CCWF) | 2,253 | 1,990 | 113.2 | 3,068 |
| Centinela State Prison (CEN) | 2,860 | 2,308 | 123.9 | 3,446 |
| California Health Care Facility - Stockton (CHCF) | 2,205 | 2,953 | 74.7 | 2,951 |
| California Institution for Men (CIM) | 2,672 | 2,736 | 97.7 | 4,226 |
| California Institution for Women (CIW) | 1,007 | 1,281 | 78.6 | 1,777 |
| California Men's Colony (CMC) | 3,200 | 3,816 | 83.9 | 4,407 |
| California Medical Facility (CMF) | 1,980 | 2,318 | 85.4 | 2,888 |
| California State Prison, Corcoran (COR) | 3,632 | 3,115 | 116.6 | 4,476 |
| California Rehabilitation Center (CRC) | 2,751 | 2,380 | 115.6 | 3,174 |
| Correctional Training Facility (CTF) | 4,276 | 2,800 | 152.7 | 4,269 |
| Chuckawalla Valley State Prison (CVSP) | 2,511 | 1,738 | 144.5 | 2,579 |
| Folsom State Prison (FOL) | 2,672 | 2,065 | 129.4 | 3,078 |
| Folsom Women's Facility (FWF) | 231 | 403 | 57.3 | 530 |
| High Desert State Prison (HDSP) | 2,733 | 2,324 | 117.6 | 3,461 |
| Ironwood State Prison (ISP) | 2,222 | 2,200 | 101.0 | 3,300 |
| Kern Valley State Prison (KVSP) | 3,378 | 2,448 | 138.0 | 3,622 |
| California State Prison, Los Angeles County (LAC) | 2,736 | 2,300 | 119.0 | 3,400 |
| Mule Creek State Prison (MCSP) | 3,775 | 3,284 | 115.0 | 4,155 |
| North Kern State Prison (NKSP) | 3,638 | 2,694 | 135.0 | 4,011 |
| Pelican Bay State Prison (PBSP) | 2,013 | 2,380 | 84.6 | 3,361 |
| Pleasant Valley State Prison (PVSP) | 2,641 | 2,308 | 114.4 | 3,433 |
| RJ Donovan Correctional Facility (RJD) | 3,341 | 2,992 | 111.7 | 4,182 |
| California State Prison, Sacramento (SAC) | 1,965 | 1,828 | 107.5 | 2,577 |
| California Substance Abuse Treatment Facility (SATF) | 4,982 | 3,424 | 145.5 | 5,111 |
| Sierra Conservation Center (SCC) | 3,260 | 3,404 | 95.8 | 4,250 |
| California State Prison, Solano (SOL) | 3,310 | 2,594 | 127.6 | 3,992 |
| San Quentin State Prison (SQ) | 3,083 | 3,084 | 100.0 | 3,984 |
| Salinas Valley State Prison (SVSP) | 2,993 | 2,452 | 122.1 | 3,509 |
| Valley State Prison (VSP) | 2,984 | 1,961 | 152.2 | 2,954 |
| Wasco State Prison (WSP) | 3,814 | 2,984 | 127.8 | 4,447 |
| Institution Total | 96,390 | 85,330 | 113.0 | 119,242 |

California Department of Corrections and Rehabilitation
Division of Correctional Policy Research and Internal Oversight
Office of Research
December 8, 2021

Weekly Report of Population
As of Midnight December 8, 2021

## Notes

Felon/Other counts are felons, county contract boarders, federal boarders, state boarders, safekeepers, county diagnostic cases, Department of Mental Health boarders, and Division of Juvenile Justice boarders.

Interstate Cooperative Cases are parolees from other states being supervised in California.

Non-CDCR Jurisdiction are California cases being confined in or paroled to other states or jurisdictions.

Welfare and Institution Code (W&IC) 1731.5(c) covers persons under the age of 21 who were committed to CDCR, had their sentence amended, and were incarcerated at the Division of Juvenile Justice for housing and program participation.

Other Population includes inmates temporarily out-to-court, inmates in hospitals, escapees, and parolees at large.

# EXHIBIT B

STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION                                      GAVIN NEWSOM, GOVERNOR

**OFFICE OF LEGAL AFFAIRS**
Jennifer Neill
General Counsel
P.O. Box 942883
Sacramento, CA 94283-0001



December 9, 2021

Paul Mello
Hanson Bridgett
1676 N. California Boulevard, Suite 620
Walnut Creek, CA 94596

Dear Mr. Mello:

Attached please find the California Department of Corrections and Rehabilitation's December 2021 Status Update for the Three-Judge Court proceeding.

Sincerely,

*Jennifer Neill*

JENNIFER NEILL
General Counsel
Office of Legal Affairs
California Department of Corrections and Rehabilitation

cc: Iram Hasan, Deputy Attorney General

STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION                                                            GAVIN NEWSOM, GOVERNOR



### December 15, 2021 Update to the Three-Judge Court

On February 10, 2014, the Three-Judge Court extended the deadline to achieve the court-ordered reduction in the in-state adult institution population to 137.5 percent of design capacity to February 28, 2016. (ECF Nos. 2766/5060 & 2767/5061.) This report is CDCR's 91st report submitted since the Court issued its population-reduction order, and the 79th report submitted since February 2015, when Defendants informed the Court that the population was below the court-ordered reduction. (ECF No. 2838/5278, filed February 17, 2015.) It has now been nearly seven years since Defendants have been in full compliance with the population-reduction order. As of December 8, 2021, the State's prison population is at 115.6 percent of design capacity, down from 115.8 percent in the previous filing. As of December 8, the State's prison population is 94,715.

A.     **Update on durability:**

As background, voters overwhelmingly approved Proposition 57 in November 2016. Proposition 57 is the State's durable remedy that enacts many Court-ordered reforms, expands credit-earning opportunities, and creates a parole consideration process for nonviolent, determinately-sentenced inmates who have served the full term of their primary offense in state prison.. Information about these regulations can be found at
https://www.cdcr.ca.gov/proposition57/.

CDCR has since passed a number of regulations:

- December 2018, the Office of Administrative Law approved two emergency regulation packages which (1) amended the nonviolent offender parole process to distinguish between determinately and indeterminately sentenced offenders and implemented a parole consideration process for indeterminately sentenced, nonviolent offenders ("Nonviolent Offender Package"); and (2) expanded credit earning opportunities ("Credit Earning Package") for inmates who achieve a High School diploma or its equivalent or who complete 52 hours of programming under the Rehabilitative Achievement Credit program. The Credit Earning Package also reduced the minimum amount of time an inmate must serve until released following a sudden award of substantial credit. The Credit Earning Package went into effect on January 9, 2019. The Nonviolent Offender Package went into effect on January 1, 2019.

- Following the Court of Appeal's decision *In re McGhee*, effective July 9, 2019, CDCR no longer applies the previously mandated public safety screening criteria to eligible nonviolent offenders. All eligible (determinately and indeterminately sentenced) nonviolent offenders are now referred to the Board of Parole Hearings for consideration, regardless of their in-prison behavior. On September 10, 2019, the Office of

- Administrative Law approved the emergency regulations repealing the public safety screening criteria for determinately sentenced, nonviolent offenders. On March 26, 2020, the Office of Administrative Law made the emergency regulations permanent.

- CDCR filed emergency regulations with the Office of Administrative Law on April 9, 2021 to comply with the California Supreme Court's December 28, 2020 decision *In re Gadlin*. The court held that persons required to register under Penal Code section 290, et seq. based on a prior conviction cannot be categorically excluded from parole consideration under Proposition 57. The court also held the Department's regulations cannot exclude inmates for a current offense unless it is defined by the regulations as a violent felony. The Office of Administrative Law approved the emergency regulations on April 29, 2021. CDCR and the Board of Parole Hearings have also made necessary changes to IT systems, policies, and procedures to implement the *Gadlin* decision. All persons who became eligible for parole consideration as a result of the *Gadlin* decision and who otherwise meet the eligibility requirements for parole consideration under Proposition 57 have been referred to the Board of Parole Hearings.

- CDCR reduced the inmate population at CDCR's institutions In response to the COVID-19 pandemic, pursuant to Governor Newsom's March 24, 2020 Executive Order N-36-20 and the CDCR Secretary's independent authority under California Government Code § 8658.

The impact of these regulations includes:

1. Increased credit-earning opportunities for all inmates except the condemned and those serving life without parole:

    859 inmates released between November 1 and November 30, 2021 earned credit authorized by Proposition 57 towards their advanced release date. These inmates earned an estimated average of 256.9 days of additional credit.[1]

2. Determinately-sentenced nonviolent offender parole process:

    CDCR began referring inmates to the Board for this process on July 1, 2017, pursuant to the emergency regulations promulgated on April 13, 2017. From July 1, 2017 through November 30, 2021, 29,404 referrals were made to the Board. As of November 30, 2021, 26,205 referrals have been reviewed on the merits, with 4,343 inmates approved for release and 21,862 denied. Additionally, 2,232 referrals have been closed because the Board's jurisdictional review of the inmates' criminal history and central file revealed they were not eligible for parole consideration. The remaining referrals are pending review, including the 30-day period for written input from inmates, victims, and prosecutors.

---

[1] This number does not include inmates released from fire camps.

3. <u>Indeterminately-sentenced nonviolent offender parole process:</u>

CDCR began screening indeterminately-sentenced, nonviolent offenders for eligibility in January 2019. As of November 30, 2021, 2,966 inmates have been referred to the Board for a parole consideration hearing, of which 66 were closed because the Board's jurisdictional review of the inmates' criminal history and central file revealed they were not eligible for parole consideration. The Board conducted 1,612 hearings for indeterminately sentenced nonviolent offenders. The hearings resulted in 459 grants, 1,036 denials, and 117 stipulations to unsuitability. An additional 1,551 hearings were scheduled but were postponed, waived, continued, or canceled. The remaining referrals are pending parole suitability hearings.

B. **<u>Update on Other Measures Defendants Continue to Implement</u>:**

1. <u>Contracting for additional in-state capacity in county jails, community correctional facilities, private prison(s), and reduction of out-of-state beds:</u>

Defendants have reduced the population in CDCR's 34 institutions by transferring inmates to in-state facilities.

   a. Private Prison (California City):

   The current population of California City is approximately 2,152 inmates.

   b. Community correctional facilities (CCFs), modified community correctional facilities (MCCFs), and Female Community Reentry Facility (FCRFs):

   The State currently has no contracted MCCF and FCRF beds.

   c. Reduction of inmates housed out-of-state:

   On February 10, 2014, the Court ordered Defendants to "explore ways to attempt to reduce the number of inmates housed in out-of-state facilities to the extent feasible." Since that time, the State has reduced the out-of-state inmate population to zero.[2] The last inmates in out-of-state contract beds returned to California at the end of June 2019.

2. <u>Parole process for medically incapacitated inmates:</u>

Due to a new approach to the enforcement of federal licensing requirements by the United States Department of Health and Human Services, Centers for Medicare & Medicaid Services (CMS), changes are being made to the State's medical parole process. The licensing enforcement prevents the Board of Parole Hearings or Division of Adult Parole Operations from imposing any conditions on those placed on medical parole in a skilled nursing facility. These conditions have been used to ensure placement of the person in a community facility will not pose a threat to public safety. CMS has taken the position that no conditions can be placed on persons in community facilities, including

---

[2] This statistic does not include inmates housed in other states under interstate compact agreements.

3

the condition that the patient not leave the facility unless there is an emergency, or unless they have permission from their parole agent. As the basis for this requirement, CMS is relying on a May 3, 2016 memorandum interpreting the regulations, which is attached. These CMS enforcement measures prevent the Board and DAPO from imposing relevant and necessary conditions for an expanded medical parole placement. For most patients this precludes a determination that the placement on expanded medical parole would not reasonably pose a threat to public safety. As a result, at this time the Department is only processing patients who are on a ventilator for expanded medical parole consideration. In addition, only persons who are on a ventilator are being placed in the community at this time. People who are already placed on medical parole will remain in the skilled nursing facility where they are currently placed unless and until the facility receives notice from CMS that it is violating licensing requirements. As of now, only one facility has been notified of licensing violations, but CMS has informed California officials that the memorandum will be enforced at all skilled nursing facilities.

Since its inception, the process for expanded medical parole has included the following steps. Once a person is referred to the Board, an expanded medical parole hearing is held. If the person is approved for placement in a skilled nursing facility, the decision is valid for up to 120 days. The decision is forwarded to California Correctional Health Care Services (CCHCS)/Receiver's Office. CCHCS then works to find a facility in the community who will accept the patient and enforce any restrictions imposed by the Board. If CCHCS is unable to place the patient in the community within 120 days of the decision, the decision will expire and the person will remain in CDCR custody.

As of December 9, 2021, the Board has held 320 medical parole hearings under the revised procedures, resulting in 210 approvals and 110 denials. An additional 80 were scheduled, but were postponed, continued, or canceled.

3. <u>Parole process for elderly inmates:</u>

As discussed in prior reports, the State enacted Assembly Bill 1448 on October 11, 2017, authorizing an elderly parole program for inmates age 60 or older who have served at least 25 years of incarceration. Governor Gavin Newsom signed AB 3234 last fall, lowering the age to 50 and the years served to 20 for this program. Assembly Bill 3234 however, specifically excludes persons sentenced under the Three Strikes Law or who are convicted of first-degree murder of a peace officer. The Board is required to schedule all hearings for persons eligible for a hearing as a result of AB 3234 by no later than December 31, 2022. It is projected this will result in 1,135 inmates being eligible for a parole hearing by December 31, 2022, based on that change. Necessary functionality to identify, screen, and calculate parole eligible dates for persons eligible for a parole hearing under the new law is being developed and it is anticipated that all persons newly eligible for an initial parole hearing due to AB 3234 will be scheduled for a parole hearing no later than December 31, 2022.

The Board continues to schedule eligible inmates for hearings who were not already in the Board's hearing cycle, including inmates sentenced to determinate terms. The Board also continues to give special consideration to whether age, time served, and diminished

physical condition, if any, have reduced a person's risk for future violence in all parole hearings conducted for persons who meet the criteria for an elderly parole hearing. From February 11, 2014, through November 30, 2021, the Board held 6,020 hearings for inmates eligible for elderly parole, resulting in 1,779 grants, 3,737 denials, 503 stipulations to unsuitability, and there is currently one split vote that requires further review by the full Board. An additional 3,529 hearings were scheduled during this period but were waived, postponed, continued, or canceled.

4. Male community reentry programs:

Contracts for the San Diego County, Los Angeles County, Kern County, and Butte County Male Community Reentry Programs are in place. The State continues to review and refer eligible inmates for placement consideration. As of December 8, 2021, 2021, 462 inmates are housed in Male Community Reentry Program facilities.

5. Expanded alternative custody program:

The State's expanded alternative custody program for females, Custody to Community Treatment Reentry Program (CCTRP), provides female inmates with a range of rehabilitative services that assist with alcohol and drug recovery, employment, education, housing, family reunification, and social support. Female inmates in the CCTRP are housed at facilities located in San Diego, Santa Fe Springs, Bakersfield, Stockton, Sacramento, and Los Angeles. As of December 8, 2021, 2021, 305 female inmates are participating in the CCTRP.

6. Reduction of inmate population in response to COVID-19 pandemic:

On March 24, 2020, Governor Newsom issued an Executive Order N-36-20 suspending the intake of new inmates into CDCR facilities for 30 days. CDCR's Secretary extended the suspension of intake. For the period from March 24 through August 24, 2020, intake was mostly suspended, with only very limited intake occurring in May and June 2020. On an intermittent and limited basis, CDCR resumed intake the week of August 24, 2020. In response to the recent increase of COVID-19 cases in the community and consistent with public health and health care guidance, CDCR suspended intake from county jails effective November 26, 2020, through December 27, 2020. Intake resumed on January 11, 2021 on a limited basis, and resumed to a regular basis on April 2021. Individual institutions may temporarily close to intake on a case-by-case basis if experiencing a COVID-19 outbreak.

Further to these efforts to reduce the population, in March 2020, CDCR's Secretary exercised independent authority under California Government Code § 8658 to transition inmates for whom CDCR staff determined that public safety risk does not preclude release to early parole or Post Release Community Supervision. Inmates with 60 days or less remaining on their sentence (as of March 30, 2020) who were not serving a current term for a violent felony, or for a domestic violence offense, and were not required to register as a sex offender had their release to parole or Post Release Community Supervision accelerated under the Secretary's direction. As of April 14, 2020, a total of

3,585 inmates were released as a result of the Secretary's directive and other natural attrition.

In addition, at the end of June 2020, CDCR implemented a new plan—consisting of several discretionary measures—to further safely reduce the prison population under California Government Code section 8658. On July 10, 2020, CDCR formally announced this new plan. Further details can be found at https://www.cdcr.ca.gov/news/2020/07/10/cdcr-announces-additional-actions-to-reduce-population-and-maximize-space-systemwide-to-address-covid-19/. The first measure under this plan released inmates within 180 days of their release date on a rolling basis if they meet certain criteria. As of December 9, 2021, 10,952 inmates have been released from CDCR's 35 institutions under this measure. The second measure under the plan released inmates with less than a year to serve who resided in particular prisons and who met certain criteria. As a result of this measure, 555 qualifying inmates were released early. The third measure under the plan released medically high-risk inmates who met certain criteria and were individually approved by the Secretary for early release. As a result of this measure, 73 people who were not otherwise eligible for release through the first two programs have been released early to date. This early-release program was suspended on July 28, 2021, but CDCR continues to process releases for those previously deemed eligible for release under this program.

Under California Code of Regulations, Title 15, section 3043.6, an additional measure under the plan announced on July 10, 2020 awarded twelve weeks of positive programming credits to inmates who met certain criteria. This effort was undertaken to make up for limited access to programs and credit-earning opportunities during the COVID-19 pandemic. Additional information regarding this measure can be found at https://www.cdcr.ca.gov/covid19/positive-programming-credit-faqs/, and the Secretary's letter to the incarcerated population regarding these credits can be found at https://www.cdcr.ca.gov/covid19/letter-to-all-incarcerated-people/. Between January 1, 2020 and December 31, 2020, CDCR awarded approximately 78,230 days of credits to eligible inmates, including approximately 64,842 days of positive programming credits. This is an increase of more than two-fold from the previous year, when approximately 35,228 days of credits were awarded to eligible inmates between January 1, 2019 and December 31, 2019.

7. <u>New credit earning regulations effective May 1, 2021:</u>

CDCR passed new credit-earning regulations effective May 1, 2021. Significant credit-earning changes include:

- an increase in the rate at which people serving sentences for violent crimes earn credits for good conduct from 20% (one day of credit for every four days served) to 33.3% (one day of credit for every 2 days served);

- an increase in the rate at which people serving sentences for nonviolent crimes with second- or third-strike enhancements earn credits for good conduct from 33.3% (one day of credit for ever two days served) to 50% (one day of credit for each day served); and

- the creation of Minimum Security Credit, through which people assigned to minimum custody workgroups, firefighting camps, or non-firefighting camps will be awarded 30 days of credit after 30 consecutive days of custody.

The new regulations also changed disciplinary practices that previously implemented zero-credit-earning days in response to a rules violation. Under the new regulations, incarcerated people will no longer be disciplined with zero-credit-earning days. Instead, where appropriate, discipline will include restricting certain privileges for a limited period, but they will continue earning Good Conduct Credits during that time. Loss of privileges could, however, limit a person's ability to earn additional credits through certain programs. CDCR anticipates that, in addition to incentivizing positive behavior, these new changes will allow more people to reduce the amount of time spent in prison.

8. <u>Update to design capacity:</u>

In February 2021, CDCR completed a review of its design capacity at all 34 institutions. The purpose of the review was to identify all beds that have been taken out of service or converted to other uses, and adjust the design capacity bed number accordingly. The review included a comparison between the Strategic Offender Management System (SOMS) and the design capacity bed list, with disputes reconciled through a variety of means, including review of source documents, construction projects, and site verification. CDCR identified 672 beds that are no longer in service, either due to conversion of cells to office space, storage, treatment space, or accessible housing, or because extensive repairs would be needed to re-activate the beds. It also identified 299 beds that should be added to the design capacity, but were improperly excluded in prior counts. Thus, CDCR's design capacity was reduced by a total of 373 beds and CDCR's statewide prison design capacity was reduced to 84,710. This updated design capacity took effect on July 1, 2021, and has been reflected in subsequent weekly population reports starting on July 7, 2021.

The recent deactivations of DVI, and portions of CCI and CTF, resulted in reductions of design capacity. DVI had 1,681 design beds, CCI's Secure Level I yard had 567 design beds, and CTF's Secure Level I yard had 500 design beds. As of October 1, 2021, CDCR's statewide prison design capacity is 81,962, and is reflected in CDCR's weekly population reports (*see* Exhibit A).