Rob Bonta
Attorney General of California
Monica N. Anderson
Senior Assistant Attorney General
Damon G. McClain - 209508
Supervising Deputy Attorney General
Iram Hasan - 320802
Deputy Attorney General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 510-3793
  Fax:  (415) 703-5480
  E-mail:  Iram.Hasan@doj.ca.gov
*Attorneys for Defendants*

Hanson Bridgett LLP
Paul B. Mello - 179755
Samantha D. Wolff – 240280
  425 Market Street, 26th Floor
  San Francisco, CA 94015
  Telephone: (415) 777-3200
  Facsimile: (415) 541-9366
  E-mail: pmello@hansonbridgett.com
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br>                        Plaintiffs,<br>v.<br>GAVIN NEWSOM, et al.,<br>                        Defendants. | 2:90-cv-00520 KJM-DB<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br>                        Plaintiffs,<br>v.<br>GAVIN NEWSOM, et al.,<br>                        Defendants. | C01-1351 JST<br><br>**THREE-JUDGE COURT**<br><br>**DEFENDANTS' JANUARY 2022 STATUS REPORT IN RESPONSE TO FEBRUARY 10, 2014 ORDER** |

The State submits this status report on the current in-state and out-of-state adult prison populations and the measures being taken to comply with the Court's February 10, 2014 Order Granting in Part and Denying in Part Defendants' Request for Extension of December 31, 2013 Deadline (February 10, 2014 Order). Exhibit A sets forth the current design bed capacity, population, and population as a percentage of design bed capacity for each state prison and for all state prisons combined. Exhibit B sets forth the status of the measures Defendants have implemented as required by the February 10, 2014 Order. (ECF 2766/5060 at ¶¶ 4-5.)

As of January 12, 2022, 94,428 incarcerated people were housed in the State's 34 adult institutions, occupying approximately 115.6 percent of institutional design capacity, and none[1] were housed in out-of-state facilities. (Ex. A.[2]) In additional to updating data for existing measures, this report also includes updates regarding current placement procedures for those already placed on medical parole (Ex. B. at 4), county jail intake (*id*. at 5), CDCR's credit-earning regulations (*id*. at 7-8), and releases pursuant to Proposition 36 (*id*. at 8.)

Dated:  January 18, 2022

ROB BONTA
Attorney General of California

*/s/ Iram Hasan*
DAMON G. MCCLAIN
Supervising Deputy Attorney General
IRAM HASAN
Deputy Attorney General
*Attorneys for Defendants*

Dated:  January 18, 2022

HANSON BRIDGETT LLP

*/s/ Paul B. Mello*
PAUL B. MELLO
SAMANTHA D. WOLFF
*Attorneys for Defendants*

---

[1] This statistic only concerns incarcerated people in out-of-state contract beds and does not include those housed in other states under interstate compact agreements.
[2] The data in Exhibit A is taken from CDCR's January 12, 2022 weekly population report, available on CDCR's website at https://www.cdcr.ca.gov/research/population-reports-2/.

# EXHIBIT A

California Department of Corrections and Rehabilitation
Division of Correctional Policy Research and Internal Oversight
Office of Research
January 12, 2022

```
                           Weekly Report of Population
                         As of Midnight January 12, 2022
```

|  | Total CDCR Population | | | | | |
|---|---|---|---|---|---|---|
| Population | Felon/ Other | Change Since Last Week | Change Since Last Year | Design Capacity | Percent Occupied | Staffed Capacity |
| A. Total In-Custody/CRPP Supervision | 99,110 | -403 | +4,263 | | | |
|   I.  In-State | 99,110 | -403 | +4,263 | | | |
|     (Men, Subtotal) | 95,287 | -382 | +3,846 | | | |
|     (Women, Subtotal) | 3,823 | -21 | +417 | | | |
|     1. Institution/Camps | 95,917 | -368 | +4,349 | 85,330 | 112.4 | 118,648 |
|       Institutions | 94,428 | -246 | +4,283 | 81,962 | 115.2 | 115,374 |
|       Camps(CCC, CIW, and SCC) | 1,489 | -122 | +66 | 3,368 | 44.2 | 3,274 |
|     2. In-State Contract Beds | 2,132 | -15 | -241 | | | |
|       Community Prisoner Mother Program | 1 | 0 | -5 | | | |
|       California City Correctional Facility | 2,131 | -15 | +145 | | | |
|     3. Department of State Hospitals | 172 | -6 | -34 | | | |
|     4. CRPP Supervision | 889 | -14 | +189 | | | |
|       Alternative Custody Program | 31 | -4 | -5 | | | |
|       Custody to Community Treatment Reentry Program | 296 | -5 | +37 | | | |
|       Male Community Reentry Program | 485 | -4 | +141 | | | |
|       Medical Parole | 58 | -1 | +7 | | | |
|       Medical Reprieve Program | 17 | 0 | +13 | | | |
|       Medically Vulnerable Release | 2 | 0 | -4 | | | |
| B. Parole | 46,148 | -40 | -8,725 | | | |
|   Community Supervision | 44,644 | -38 | -8,635 | | | |
|   Interstate Cooperative Case | 1,504 | -2 | -90 | | | |
| C. Non-CDCR Jurisdiction | 1,055 | -16 | -3,112 | | | |
|   Other State/Federal Institutions | 243 | -3 | -19 | | | |
|   Out of State Parole | 658 | -9 | -102 | | | |
|   Out of State Parolee at Large | 22 | 0 | +3 | | | |
|   DJJ-W&IC 1731.5(c) Institutions | 8 | 0 | -8 | | | |
|   County Jail | 124 | -4 | -2,986 | | | |
| D. Other Populations | 8,378 | -50 | -112 | | | |
|   Temporary Release to Court and Hospital | 1,319 | +6 | -488 | | | |
|   Escaped | 195 | 0 | -3 | | | |
|   Parolee at Large | 6,864 | -56 | +379 | | | |
| Total CDCR Population | 154,691 | -509 | -7,686 | | | |

This report contains the latest available reliable population figures from SOMS.  They have been carefully audited, but are preliminary, and therefore subject to revision.

California Department of Corrections and Rehabilitation
Division of Correctional Policy Research and Internal Oversight
Office of Research
January 12, 2022

Weekly Report of Population
As of Midnight January 12, 2022

## Weekly Institution Population Detail

| Institutions | Felon/ Other | Design Capacity | Percent Occupied | Staffed Capacity |
|---|---:|---:|---:|---:|
| Avenal State Prison (ASP) | 3,817 | 2,909 | 131.2 | 4,387 |
| Calipatria State Prison (CAL) | 2,869 | 2,308 | 124.3 | 3,451 |
| California Correctional Center (CCC) | 1,619 | 3,377 | 47.9 | 3,367 |
| California Correctional Institution (CCI) | 3,084 | 2,172 | 142.0 | 3,329 |
| Central California Women's Facility (CCWF) | 2,282 | 1,990 | 114.7 | 3,068 |
| Centinela State Prison (CEN) | 2,804 | 2,308 | 121.5 | 3,446 |
| California Health Care Facility - Stockton (CHCF) | 2,215 | 2,953 | 75.0 | 2,951 |
| California Institution for Men (CIM) | 2,662 | 2,736 | 97.3 | 4,226 |
| California Institution for Women (CIW) | 1,025 | 1,281 | 80.0 | 1,777 |
| California Men's Colony (CMC) | 3,249 | 3,816 | 85.1 | 4,407 |
| California Medical Facility (CMF) | 2,031 | 2,318 | 87.6 | 2,888 |
| California State Prison, Corcoran (COR) | 3,595 | 3,115 | 115.4 | 4,476 |
| California Rehabilitation Center (CRC) | 2,648 | 2,380 | 111.3 | 3,174 |
| Correctional Training Facility (CTF) | 4,213 | 2,800 | 150.5 | 4,269 |
| Chuckawalla Valley State Prison (CVSP) | 2,491 | 1,738 | 143.3 | 2,579 |
| Folsom State Prison (FOL) | 2,724 | 2,065 | 131.9 | 3,078 |
| Folsom Women's Facility (FWF) | 225 | 403 | 55.8 | 530 |
| High Desert State Prison (HDSP) | 2,290 | 2,324 | 98.5 | 2,711 |
| Ironwood State Prison (ISP) | 2,222 | 2,200 | 101.0 | 3,300 |
| Kern Valley State Prison (KVSP) | 3,348 | 2,448 | 136.8 | 3,622 |
| California State Prison, Los Angeles County (LAC) | 2,773 | 2,300 | 120.6 | 3,400 |
| Mule Creek State Prison (MCSP) | 3,815 | 3,284 | 116.2 | 4,155 |
| North Kern State Prison (NKSP) | 3,927 | 2,694 | 145.8 | 4,011 |
| Pelican Bay State Prison (PBSP) | 1,961 | 2,380 | 82.4 | 3,361 |
| Pleasant Valley State Prison (PVSP) | 2,592 | 2,308 | 112.3 | 3,433 |
| RJ Donovan Correctional Facility (RJD) | 3,390 | 2,992 | 113.3 | 4,182 |
| California State Prison, Sacramento (SAC) | 1,859 | 1,828 | 101.7 | 2,577 |
| California Substance Abuse Treatment Facility (SATF) | 4,920 | 3,424 | 143.7 | 5,111 |
| Sierra Conservation Center (SCC) | 3,166 | 3,404 | 93.0 | 4,370 |
| California State Prison, Solano (SOL) | 3,316 | 2,594 | 127.8 | 3,992 |
| San Quentin State Prison (SQ) | 3,097 | 3,084 | 100.4 | 4,122 |
| Salinas Valley State Prison (SVSP) | 3,005 | 2,452 | 122.6 | 3,509 |
| Valley State Prison (VSP) | 2,933 | 1,961 | 149.6 | 2,942 |
| Wasco State Prison (WSP) | 3,750 | 2,984 | 125.7 | 4,447 |
| Institution Total | 95,917 | 85,330 | 112.4 | 118,648 |

```
California Department of Corrections and Rehabilitation
Division of Correctional Policy Research and Internal Oversight
Office of Research
January 12, 2022
```

## Weekly Report of Population
### As of Midnight January 12, 2022

---

#### Notes

---

Felon/Other counts are felons, county contract boarders, federal boarders, state boarders, safekeepers, county diagnostic cases, Department of Mental Health boarders, and Division of Juvenile Justice boarders.

Interstate Cooperative Cases are parolees from other states being supervised in California.

Non-CDCR Jurisdiction are California cases being confined in or paroled to other states or jurisdictions.

Welfare and Institution Code (W&IC) 1731.5(c) covers persons under the age of 21 who were committed to CDCR, had their sentence amended, and were incarcerated at the Division of Juvenile Justice for housing and program participation.

Other Population includes inmates temporarily out-to-court, inmates in hospitals, escapees, and parolees at large.

# EXHIBIT B

STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION                                                                                                                                           GAVIN NEWSOM, GOVERNOR

**OFFICE OF LEGAL AFFAIRS**
Jennifer Neill
General Counsel
P.O. Box 942883
Sacramento, CA 94283-0001



January 14, 2022

Paul Mello
Hanson Bridgett
1676 N. California Boulevard, Suite 620
Walnut Creek, CA 94596

Dear Mr. Mello:

Attached please find the California Department of Corrections and Rehabilitation's January 2022 Status Update for the Three-Judge Court proceeding.

Sincerely,

*Jennifer Neill*

JENNIFER NEILL
General Counsel
Office of Legal Affairs
California Department of Corrections and Rehabilitation

cc: Iram Hasan, Deputy Attorney General

STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION                                                         GAVIN NEWSOM, GOVERNOR



### January 18, 2022 Update to the Three-Judge Court

On February 10, 2014, the Three-Judge Court extended the deadline to achieve the court-ordered reduction in the in-state adult institution population to 137.5 percent of design capacity to February 28, 2016.  (ECF Nos. 2766/5060 & 2767/5061.)  This report is CDCR's 92nd report submitted since the Court issued its population-reduction order, and the 80th report submitted since February 2015, when Defendants informed the Court that the population was below the court-ordered reduction.  (ECF No. 2838/5278, filed February 17, 2015.)  It has now been nearly seven years since Defendants have been in full compliance with the population-reduction order.  As of January 12, 2022, the State's prison population is at 115.2 percent of design capacity, down from 115.6 percent in the previous filing.  As of January 12, the State's prison population is 94,428.  Below are updates regarding CDCR's population reduction efforts, and evidence of durable compliance with the 135.7 percent benchmark.

A.     **Update on Proposition 57 Measures:**

Voters overwhelmingly approved Proposition 57 in November 2016.  Proposition 57 is the State's durable remedy that enacts many Court-ordered reforms, expands credit-earning opportunities, and creates a parole consideration process for nonviolent, determinately-sentenced inmates who have served the full term of their primary offense in state prison..  Information about these regulations can be found at https://www.cdcr.ca.gov/proposition57/.

CDCR has since passed a number of regulations:

- December 2018, the Office of Administrative Law approved two emergency regulation packages which (1) amended the nonviolent offender parole process to distinguish between determinately and indeterminately sentenced offenders and implemented a parole consideration process for indeterminately sentenced, nonviolent offenders ("Nonviolent Offender Package"); and (2) expanded credit earning opportunities ("Credit Earning Package") for inmates who achieve a High School diploma or its equivalent or who complete 52 hours of programming under the Rehabilitative Achievement Credit program.  The Credit Earning Package also reduced the minimum amount of time an inmate must serve until released following a sudden award of substantial credit.  The Credit Earning Package went into effect on January 9, 2019.  The Nonviolent Offender Package went into effect on January 1, 2019.

- Following the Court of Appeal's decision *In re McGhee*, effective July 9, 2019, CDCR no longer applies the previously mandated public safety screening criteria to eligible nonviolent offenders.  All eligible (determinately and indeterminately sentenced) nonviolent offenders are now referred to the Board of Parole Hearings for consideration, regardless of their in-prison behavior.  On September 10, 2019, the Office of Administrative Law approved the emergency regulations repealing the public safety

1

screening criteria for determinately sentenced, nonviolent offenders. On March 26, 2020, the Office of Administrative Law made the emergency regulations permanent.

- CDCR filed emergency regulations with the Office of Administrative Law on April 9, 2021 to comply with the California Supreme Court's December 28, 2020 decision *In re Gadlin*. The court held that persons required to register under Penal Code section 290, et seq. based on a prior conviction cannot be categorically excluded from parole consideration under Proposition 57. The court also held the Department's regulations cannot exclude inmates for a current offense unless it is defined by the regulations as a violent felony. The Office of Administrative Law approved the emergency regulations on April 29, 2021. CDCR and the Board of Parole Hearings have also made necessary changes to IT systems, policies, and procedures to implement the *Gadlin* decision. All persons who became eligible for parole consideration as a result of the *Gadlin* decision and who otherwise meet the eligibility requirements for parole consideration under Proposition 57 have been referred to the Board of Parole Hearings.

- CDCR reduced the inmate population at CDCR's institutions in response to the COVID-19 pandemic, pursuant to Governor Newsom's March 24, 2020 Executive Order N-36-20 and the CDCR Secretary's independent authority under California Government Code § 8658. CDCR's population decreased by 24,330 inmates, or over 20 percent, by mid-December 2020. (ECF No. 3520 at 5-6). This included approximately 7,000 expedited releases. (*Id*. at 6.)

The impact of these regulations includes:

1. <u>Increased credit-earning opportunities for all inmates except the condemned and those serving life without parole:</u>

    1,645 inmates released between December 1 and December 31, 2021 earned credit authorized by Proposition 57 towards their advanced release date. These inmates earned an estimated average of 209.5 days of additional credit.[1]

2. <u>Determinately-sentenced nonviolent offender parole process:</u>

    CDCR began referring inmates to the Board for this process on July 1, 2017, pursuant to the emergency regulations promulgated on April 13, 2017. From July 1, 2017, through December 31, 2021, 29,762 referrals were made to the Board. As of December 31, 2021, 26,755 referrals have been reviewed on the merits, with 4,372 inmates approved for release and 22,383 denied. Additionally, 2,245 referrals have been closed because the Board's jurisdictional review of the inmates' criminal history and central file revealed they were not eligible for parole consideration. The remaining referrals are pending review, including the 30-day period for written input from inmates, victims, and prosecutors.

---

[1] This number does not include inmates released from fire camps.

3. <u>Indeterminately-sentenced nonviolent offender parole process:</u>

CDCR began screening indeterminately-sentenced, nonviolent offenders for eligibility in January 2019. As of December 31, 2021, 2,968 inmates have been referred to the Board for a parole consideration hearing, of which 69 were closed because the Board's jurisdictional review of the inmates' criminal history and central file revealed they were not eligible for parole consideration. The Board conducted 1,732 hearings for indeterminately sentenced nonviolent offenders. The hearings resulted in 486 grants, 1,120 denials, and 126 stipulations to unsuitability. An additional 1,639 hearings were scheduled but were postponed, waived, continued, or canceled. The remaining referrals are pending parole suitability hearings.

B. **<u>Update on Other Measures Defendants Continue to Implement</u>:**

1. <u>Contracting for additional in-state capacity in county jails, community correctional facilities, private prison(s), and reduction of out-of-state beds:</u>

Defendants have reduced the population in CDCR's 34 institutions by transferring inmates to in-state facilities.

   a. Private Prison (California City):

   The population of California City is approximately 2,131 inmates as of January 12, 2022.

   b. Community correctional facilities (CCFs), modified community correctional facilities (MCCFs), and Female Community Reentry Facility (FCRFs):

   The State currently has no contracted MCCF and FCRF beds.

   c. Reduction of inmates housed out-of-state:

   On February 10, 2014, the Court ordered Defendants to "explore ways to attempt to reduce the number of inmates housed in out-of-state facilities to the extent feasible." The State no longer houses inmates out of state.[2] The last inmates in out-of-state contract beds returned to California at the end of June 2019.

2. <u>Parole process for medically incapacitated inmates:</u>

Due to a new approach in 2021 to the enforcement of federal licensing requirements by the United States Department of Health and Human Services, Centers for Medicare & Medicaid Services (CMS), changes are being made to the State's medical parole process. The licensing enforcement prevents the Board of Parole Hearings or Division of Adult Parole Operations from imposing any conditions on those placed on medical parole in a skilled nursing facility that receives Medicare or Medicaid funds. These conditions have been used to ensure placement of the person in a community facility will not pose a threat to public safety. CMS has taken the position that no conditions can be placed on

---

[2] This statistic does not include inmates housed in other states under interstate compact agreements.

3

persons in community facilities, including the condition that the patient not leave the facility unless there is an emergency, or unless they have permission from their parole agent. As the basis for this requirement, CMS is relying on a May 3, 2016 memorandum interpreting the regulations. (*See* ECF No. 3747-2/7374-2.) These CMS enforcement measures prevent the Board and DAPO from imposing relevant and necessary conditions for an expanded medical parole placement. For most patients, this precludes a determination that the placement on expanded medical parole would not reasonably pose a threat to public safety. As a result, at this time CDCR is only processing patients who are on a ventilator for expanded medical parole consideration. In addition, only persons who are on a ventilator are being placed in the community at this time. People who are already placed on medical parole will remain in a skilled nursing facility that is not receiving Medicare or Medicaid funds, but that is licensed through the State of California. Ventilator-dependent inmates will remain at their current skilled nursing facility, until and if their condition improves. As of now, only one facility has been notified of licensing violations, but CMS has informed California officials that the memorandum will be enforced at all skilled nursing facilities.

Since its inception, the process for expanded medical parole has included the following steps. Once a person is referred to the Board, an expanded medical parole hearing is held. If the person is approved for placement in a skilled nursing facility, the decision is valid for up to 120 days. The decision is forwarded to California Correctional Health Care Services (CCHCS)/Receiver's Office. CCHCS then works to find a facility in the community who will accept the patient and enforce any restrictions imposed by the Board. If CCHCS is unable to place the patient in the community within 120 days of the decision, the decision will expire and the person will remain in CDCR custody.

As of December 9, 2021, the Board has held 320 medical parole hearings under the revised procedures, resulting in 210 approvals and 110 denials. An additional 81 were scheduled, but were postponed, continued, or canceled.

3. Parole process for elderly inmates:

As discussed in prior reports, the State enacted Assembly Bill 1448 on October 11, 2017, authorizing an elderly parole program for inmates age 60 or older who have served at least 25 years of incarceration. Governor Gavin Newsom signed AB 3234 in September 2020, lowering the age to 50 and the years served to 20 for this program. Assembly Bill 3234 however, specifically excludes persons sentenced under the Three Strikes Law or who are convicted of first-degree murder of a peace officer. The Board is required to schedule all hearings for persons eligible for a hearing as a result of AB 3234 by no later than December 31, 2022. It is projected this will result in 1,135 inmates being eligible for a parole hearing by December 31, 2022, based on that change. Necessary functionality to identify, screen, and calculate parole eligible dates for persons eligible for a parole hearing under the new law has been deployed and it is anticipated that all persons newly eligible for an initial parole hearing due to AB 3234 will be scheduled for a parole hearing no later than December 31, 2022.

The Board continues to schedule eligible inmates for hearings who were not already in the Board's hearing cycle, including inmates sentenced to determinate terms. The Board also continues to give special consideration to whether age, time served, and diminished physical condition, if any, have reduced a person's risk for future violence in all parole hearings conducted for persons who meet the criteria for an elderly parole hearing. From February 11, 2014, through December 31, 2021, the Board held 6,136 hearings for inmates eligible for elderly parole, resulting in 1,818 grants, 3,803 denials, and 515 stipulations to unsuitability. An additional 3,621 hearings were scheduled during this period but were waived, postponed, continued, or canceled.

4. <u>Male community reentry programs:</u>

   Contracts for the San Diego County, Los Angeles County, Kern County, and Butte County Male Community Reentry Programs are in place. The State continues to review and refer eligible inmates for placement consideration. As of January 12, 2022, 485 inmates are housed in Male Community Reentry Program facilities.

5. <u>Expanded alternative custody program:</u>

   The State's expanded alternative custody program for females, Custody to Community Treatment Reentry Program (CCTRP), provides female inmates with a range of rehabilitative services that assist with alcohol and drug recovery, employment, education, housing, family reunification, and social support. Female inmates in the CCTRP are housed at facilities located in San Diego, Santa Fe Springs, Bakersfield, Stockton, Sacramento, and Los Angeles. As of January 12, 2022, 296 female inmates are participating in the CCTRP.

6. <u>Reduction of inmate population in response to COVID-19 pandemic:</u>

   On March 24, 2020, Governor Newsom issued an Executive Order N-36-20 suspending the intake of new inmates into CDCR facilities for 30 days. CDCR mostly suspended intake between March 24 and August 24, 2020, with only very limited intake occurring in May and June 2020. On an intermittent and limited basis, CDCR resumed intake the week of August 24, 2020. In response to a subsequent increase of COVID-19 cases in the community and consistent with public health and health care guidance, CDCR suspended intake from county jails from November 26, 2020, through December 27, 2020. Intake resumed on January 11, 2021 on a limited basis, and resumed to a regular basis on April 2021. Individual institutions may temporarily close to intake on a case-by-case basis if experiencing a COVID-19 outbreak. For example, in light of the recent spread of the Omicron variant of COVID-19, as of January 13, 2022, North Kern State Prison and Wasco State Prison are temporarily closed to county jail intake. These institutions will remain closed to intake through the week of January 24, 2022, after which CDCR will evaluate the propriety of reopening intake based on COVID-19 cases at these institutions. Additionally, CDCR has temporarily paused movement in and out of several institutions to minimize the spread of COVID-19 cases. As of this filing, CDCR is evaluating intake and movement at its institutions on a daily basis.

Further to these efforts to reduce the population, in March 2020, CDCR's Secretary exercised independent authority under California Government Code § 8658 to transition inmates for whom CDCR staff determined that public safety risk does not preclude release to early parole or Post Release Community Supervision. Inmates with 60 days or less remaining on their sentence (as of March 30, 2020) who were not serving a current term for a violent felony, or for a domestic violence offense, and were not required to register as a sex offender had their release to parole or Post Release Community Supervision accelerated under the Secretary's direction. As of April 14, 2020, a total of 3,585 inmates were released as a result of the Secretary's directive and other natural attrition.

In addition, at the end of June 2020, CDCR implemented a new plan—consisting of several discretionary measures—to further safely reduce the prison population under California Government Code section 8658. On July 10, 2020, CDCR formally announced this new plan. Further details can be found at https://www.cdcr.ca.gov/news/2020/07/10/cdcr-announces-additional-actions-to-reduce-population-and-maximize-space-systemwide-to-address-covid-19/. The first measure under this plan released inmates within 180 days of their release date on a rolling basis if they meet certain criteria. As of January 12, 2022, 10,955 inmates have been released from CDCR's 35 institutions under this measure. The second measure under the plan released inmates with less than a year to serve who resided in particular prisons and who met certain criteria. As a result of this measure, 555 qualifying inmates were released early. The third measure under the plan released medically high-risk inmates who met certain criteria and were individually approved by the Secretary for early release. As a result of this measure, 73 people who were not otherwise eligible for release through the first two programs have been released early to date. This early-release program was suspended on July 28, 2021, but CDCR continues to process releases for those previously deemed eligible for release under this program.

Under California Code of Regulations, Title 15, section 3043.6, an additional measure under the plan announced on July 10, 2020 awarded twelve weeks of positive programming credits to inmates who met certain criteria. This effort was undertaken to make up for limited access to programs and credit-earning opportunities during the COVID-19 pandemic. Additional information regarding this measure can be found at https://www.cdcr.ca.gov/covid19/memo-positive-programming-credits/, and the Secretary's letter to the incarcerated population regarding these credits can be found at https://www.cdcr.ca.gov/covid19/letter-to-all-incarcerated-people/. Between January 1, 2020 and December 31, 2020, CDCR awarded approximately 78,230 days of credits to eligible inmates, including approximately 64,842 days of positive programming credits. This is an increase of more than two-fold from the previous year, when approximately 35,228 days of credits were awarded to eligible inmates between January 1, 2019 and December 31, 2019.

7. <u>New credit-earning regulations effective May 1, 2021 and December 28, 2021:</u>

CDCR passed new credit-earning regulations effective May 1, 2021. The Office of Administrative Law (OAL) approved these regulations, noting they would expire on

February 8, 2022. Significant credit-earning changes included:

- an increase in the rate at which people serving sentences for violent crimes earn credits for good conduct from 20% (one day of credit for every four days served) to 33.3% (one day of credit for every 2 days served);

- an increase in the rate at which people serving sentences for nonviolent crimes with second- or third-strike enhancements earn credits for good conduct from 33.3% (one day of credit for ever two days served) to 50% (one day of credit for each day served); and

- the creation of Minimum Security Credit, through which people assigned to minimum custody workgroups, firefighting camps, or non-firefighting camps will be awarded 30 days of credit after 30 consecutive days of custody.

The new regulations also changed disciplinary practices that previously implemented zero-credit-earning days in response to a rules violation. Under the new regulations, incarcerated people will no longer be disciplined with zero-credit-earning days. Instead, where appropriate, discipline will include restricting certain privileges for a limited period, but they will continue earning Good Conduct Credits during that time. Loss of privileges could, however, limit a person's ability to earn additional credits through certain programs. CDCR anticipates that, in addition to incentivizing positive behavior, these new changes will allow more people to reduce the amount of time spent in prison. In June 2021, 44 California district attorneys sought a preliminary injunction to halt the use of CDCR's new credit-earning regulations, primarily alleging the State and CDCR did not comply with the regular rule-making process in passing these regulations. The Superior Court of California, Sacramento County found for the State and did not enjoin the regulations. *See Schubert, et al. v. State of California, CDCR, and K. Allison*, Superior Court of California, County of Sacramento, Case No. 34-2021-00301253.

On December 8, 2021, CDCR requested OAL to readopt the May 1 regulations pursuant to Penal Code section 5058.3. This readoption would extend the expiration date of the May 1 regulations for another 90 days. OAL readopted the regulations on December 28, 2021. The readopted regulations are substantially similar to the May 1 regulations, and further increase some types of credit-earning opportunities to encourage inmates to rehabilitate and become eligible for placement in minimum-security facilities and fire camps. Specifically, the readopted regulations allow people sentenced for non-violent crimes eligible for minimum security housing and fire camps, including non-violent second striker inmates, to earn Good Conduct Credits at a rate of 66%, rather than 50%. The readopted regulations also increased the rate at which inmates in fire camps convicted of violent offenses could earn Good Conduct Credits from 33.3% to 50%. In a new lawsuit filed in December 2021, twenty-eight California district attorneys challenged the ninety-day extension of these regulations. The Sacramento Superior Court granted Plaintiffs a temporary restraining order on December 29, 2021. *Schubert, et al. v. State of California, CDCR, and K. Allison,* Superior Court of California, County of Sacramento, Case No. 34-2021-00312867. A hearing on an order to show case as to why the temporary restraining order should not be converted to a preliminary injunction is set for January 18, 2022.

8. <u>Update to design capacity:</u>

In February 2021, CDCR completed a review of its design capacity at all 34 institutions. The purpose of the review was to identify all beds that have been taken out of service or converted to other uses, and adjust the design capacity bed number accordingly. The review included a comparison between the Strategic Offender Management System (SOMS) and the design capacity bed list, with disputes reconciled through a variety of means, including review of source documents, construction projects, and site verification. CDCR identified 672 beds that are no longer in service, either due to conversion of cells to office space, storage, treatment space, or accessible housing, or because extensive repairs would be needed to re-activate the beds. It also identified 299 beds that should be added to the design capacity, but were improperly excluded in prior counts. Thus, CDCR's design capacity was reduced by a total of 373 beds and CDCR's statewide prison design capacity was reduced to 84,710. This updated design capacity took effect on July 1, 2021.

The deactivations of DVI and portions of CCI and CTF in 2021 resulted in further reductions to design capacity. DVI had 1,681 design beds, CCI's Secure Level I yard had 567 design beds, and CTF's Secure Level I yard had 500 design beds. As of October 1, 2021, CDCR's statewide prison design capacity is 81,962, and is reflected in CDCR's weekly population reports (*see* Exhibit A).

9. <u>Inmates Released Pursuant to Proposition 36</u>

Voters passed Proposition 36 in November 2012. Proposition 36 revised the State's three-strikes law to permit resentencing for qualifying third-strike inmates whose third strike was not serious or violent. As of December 31, 2021, approximately 3,118[3] third-strike inmates have been released under Proposition 36.

---

[3] This number does not include inmates who were eligible for Proposition 36 resentencing but released from CDCR through different methods (e.g. Proposition 47 resentencing or nonviolent parole process).